## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

QUYNH VU BAIN,                                              )

    Plaintiff,                                         )

        v.                                        )

**OFFICE OF THE ATTORNEY GENERAL**                          )
U.S. Department of Justice,                                 )
                                                            )
**OFFICE OF THE DEPUTY ATTORNEY GENERAL**
U.S. Department of Justice,

**OFFICE OF PROFESSIONAL RESPONSIBILITY**
U.S. Department of Justice,

**EXECUTIVE OFFICE FOR IMMIGRATION**                        )
**REVIEW,** U.S. Department of Justice,                     )
                                                            )
**OFFICE OF INFORMATION POLICY**                            )
U.S. Department of Justice,                                 )
                                                            )
    Defendants.                                        )
                                                            )

Case: 1:21−cv−01751 JURY DEMAND
Assigned To : Moss, Randolph D.
Assign. Date : 6/22/2021
Description: Employ. Discrim. (H−DECK)

**Jury Trial Demanded**
**for Second and Third**
**Causes of Action**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Quynh Vu Bain, proceeding *pro se*, brings this action against the United States

Department of Justice and its various named components, collectively referred to as "Defendants."

### Nature of Action

1.    This action asserts three separate but related causes of action arising from

Defendants' September 17, 2020 decision to terminate Plaintiff's employment after 29 years of

exemplary service in the U.S. Department of Justice. *See* Exhibit 1 (filed under seal).



1

## Parties

2.      Plaintiff is a resident of the District of Columbia and a citizen of the United States. She is an Asian-American female of Vietnamese descent in her fifties. She was employed as a career civil servant in the U.S. Department of Justice from October 1991 to September 2020. Most recently, she served as an Immigration Judge in the Executive Office for Immigration Review for 12 years. At various times, she was assigned to the Headquarters Immigration Court in Falls Church, Virginia and the Arlington Immigration Court in Arlington, Virginia.

3.      Until March 2021, Plaintiff was represented by attorneys who specialized in government investigations and labor and employment law. At the present time, Plaintiff is proceeding *pro se* and is filing a separate motion for appointment of *pro bono* counsel to assist her in prosecuting this action.

4.      All of the offices and agencies collectively denoted as Defendants are components of the United States Department of Justice.

        a.      The Office of the Attorney General ("OAG") makes hiring, firing, and other personnel-related decisions concerning immigration judges.

        b.      The Office of the Deputy Attorney General ("ODAG") formulates and recommends disciplinary or adverse actions against immigration judges.

        c.      The Office of Professional Responsibility ("OPR") investigates allegations of misconduct involving Department attorneys, including immigration judges.

        d.      The Office of Information Policy ("OIP") adjudicates appeals from the decisions of individual DOJ components to withhold information that is requested under the Freedom of Information Act and the Privacy Act.

e.    The Executive Office for Immigration Review ("EOIR") manages the operations of the Nation's 58 immigration courts through the Office of the Director, Office of the Deputy Director, and Office of the Chief Immigration Judge.   At the time of Plaintiff's employment, the Office of the Chief Immigration Judge had three Deputy Chief Immigration Judges and approximately sixteen Assistant Chief Immigration Judges.  The assistant chief judges ("ACIJ's") oversee the day-to-day work of non-supervisory immigration judges.

## Jurisdiction and Venue

5.    This civil action consolidates three separate but related causes of action arising from Defendants' decision to terminate Plaintiff's employment.  This Court has subject matter jurisdiction under the following statutes:

The Freedom of Information Act and the Privacy Act, 5 U.S.C. §§ 552 & 552a;

The Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*;

The Civil Service Reform Act (CSRA) of 1978, 5 U.S.C. §§ 1204, 7701, 7702, and 7512;

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*;

The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*;

The Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b);

The federal question statute, 28 U.S.C. § 1331;

The mandamus statute, 28 U.S.C. § 1361; and

The declaratory judgment act, 28 U.S.C. § 2201.

6.    The first cause of action relates to Plaintiff's complaint under the Freedom of Information Act and Privacy Act, brought to challenge Defendants' willful failure to release

3

information in response to three FOIA requests that Plaintiff filed in September 2015, January 2018, and August 2019. *See* Exhibit 2 (filed under seal).

      a.     All of the FOIA requests seek information in the possession, control and custody of Defendants.

      b.     Plaintiff has properly and timely exhausted each of the three FOIA requests. *See* 5 U.S.C. §§ 552(a)(4)(B).

      c.     This cause of action is timely commenced within six years after Plaintiff became aware of the non-disclosure of the requested information and materials. *See* Spannaus v. U.S. Department of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987)

      d.     This Court has original jurisdiction over Plaintiff's complaint under the FOIA and Privacy Act and reviews *de novo* the Defendants' decisions regarding the withholding or release of information. 5 U.S.C. §§ 552a(g)(3).

7.     The first cause of action also challenges Defendants' willful failure to correct errors in Plaintiff's personnel records in a timely fashion, which contributed to the use of those erroneous personnel records in subsequent adverse actions brought against Plaintiff. This Court has original jurisdiction and reviews *de novo* the Defendants' decisions to take or not to take corrective action. 5 U.S.C. §§ 552a(g)(1), 552a(g)(2)(A), and 552a(g)(5).

8.     The second cause of action relates to Plaintiff's complaint of discrimination, retaliation for engaging in protected activity, and hostile work environment. The events underlying the discrimination complaint occurred between January 2015 and September 2020.

      a.     Plaintiff has properly exhausted this cause of action with the administrative agencies authorized to adjudicate her discrimination complaint. Her administrative complaint was filed with the EEOC on December 10, 2015 and was amended on May 18, 2018. *See* Exhibit 3

(filed under seal).  It alleges discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973, regarding the events starting in January 2015 that directly led to her removal on September 17, 2020.

      b.     On February 26, 2020, an EEOC administrative judge dismissed Plaintiff's discrimination complaint by summary judgment without a hearing.  Plaintiff timely appealed the administrative judge's decision to the Justice Department's Complaint Adjudication Office (CAO).  Thereafter, Plaintiff timely filed a Notice of Appeal and letter brief with the EEOC on May 1, 2020.  *See* Exhibit 4 (filed under seal).

      c.     In her appeal to the CAO, Plaintiff advised that <u>one day</u> after the EEOC administrative judge dismissed her complaint by summary judgment, the Justice Department proposed her removal on February 27, 2020.  Plaintiff requested that the CAO hold the appeal in abeyance, pending the Attorney General's disposition of the proposal to terminate her employment.  The CAO declined her request to hold the appeal.  Plaintiff next requested that the EEOC vacate the administrative judge's decision, reopen the evidentiary record, and remand the matter for further discovery.

      d.     While her EEOC appeal was pending, the Attorney General issued a removal decision on September 17, 2020, terminating Plaintiff's employment in the Justice Department after 29 years.  *See* Exhibit 1 (filed under seal).

      e.     On October 19, 2020, within 30 days after her discharge, Plaintiff timely filed a "mixed case appeal" with the Merit Systems Protection Board ("MSPB"), challenging her removal on the merits.  The appeal notice asserts that Defendants failed to prove the charges and, in selecting an appropriate penalty, failed to properly weigh the mitigating and aggravating factors in <u>Douglas v. Veterans Administration</u>, 5 M.S.P.R. 280 (1981).  In addition, the appeal notice

asserts that the Removal Decision relied on information that Defendants refused to produce to Plaintiff, in violation of 5 U.S.C. §§ 7701(c)(2)(A) & (C). *See also* 5 U.S.C. § 7701(c)(3). Finally, the notice asserts two affirmative defenses to removal, one based on violations of federal anti-discrimination laws, and the other, on violations of the Whistleblower Protection Act.[1] *See* Exhibit 5 (filed under seal).

      f.      Regarding her affirmative defense based on discrimination, the MSPB appeal notice asserts that her removal violates Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the Anti-Age Discrimination in Employment Act.

      g.      Regarding her affirmative defense based on whistleblower retaliation, the MSPB appeal notice asserts that Plaintiff's removal violates the Whistleblower Protection Act of 1989. *See* 5 U.S.C. §§ 2308 & 2309.

      h.      By notice sent to Defendants on November 1, 2020, within 45 days of her removal, Plaintiff advised Defendants that she intends to pursue a "mixed case appeal" before the MSPB, in which discrimination and whistleblower retaliation are asserted as affirmative defenses to her removal. *See* Exhibit 7 (filed under seal).

      i.      On April 29, 2021, after the EEOC affirmed the administrative judge's decision to grant summary judgment to Defendants, Plaintiff filed a Motion for Reconsideration with the EEOC, advising the EEOC of her discharge from federal employment on September 17, 2020. *See* Exhibit 6 (filed under seal). Plaintiff further advised the EEOC that she is pursuing a mixed case appeal before the MSPB, in which she asserts discrimination as an affirmative defense to her removal. Plaintiff requested that the EEOC reconsider its decision to dismiss her EEOC

---

[1] A "mixed case appeal" is one in which a federal employee "alleges that an appealable agency action was effected in whole or in part because of discrimination." <u>Kloeckner v. Solis</u>, 568 U.S. 41, 44-45 (2012). *See also* 29 C.F.R. § 1614.302(a)(2); 5 C.F.R. § 1201.151 (2019).

action by summary judgment, reopen the evidentiary record, and hold the EEOC proceeding in abeyance pending resolution of the MSPB mixed case appeal, to avoid any potential res judicata effect or issue preclusion that the EEOC decision might present in the MSPB proceeding.

j.      Thereafter, Plaintiff timely commenced this district court action on June 22, 2021, within 90 days of the EEOC's March 24, 2021 decision to grant summary judgment to Defendants, without a hearing.

9.      The third cause of action relates to Plaintiff's whistleblower retaliation claim brought under the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b).   Plaintiff has properly and timely exhausted this cause of action with the administrative agencies responsible for adjudicating it.

a.      Through her timely Notice of Appeal filed with the MSPB on October 19, 2020, Plaintiff asserted the whistleblower retaliation claim as an affirmative defense to her removal. *See* Exhibit 5 (filed under seal).

b.      Through a communication dated November 1, 2020, Plaintiff provided courtesy notice to Defendants EOIR.

c.      Through her April 29, 2021 Motion for Reconsideration filed with the EEOC, Plaintiff provided courtesy notice to the EEOC. *See* Exhibit 6 (filed under seal).

10.     Soon after Plaintiff filed her October 19, 2020 MSPB appeal, Defendants filed a "Motion to Reassign/Dismiss" asserting that the MSPB judge assigned to Plaintiff's appeal lacked Constitutional authority to hear her mixed case appeal, because that judge had not been duly appointed in accordance with the Appointments Clause of Article II, Section 2, Clause 2 of the United States Constitution. *See* Lucia v. Securities and Exchange Commission. 138 S. Ct. 2044 (2018).  Plaintiff opposed the dismissal motion.

11.     By Order dated November 16, 2020, the MSPB granted Defendants' motion to dismiss for lack of jurisdiction without prejudice to reinstatement, based on the reasoning of Lucia. The Order of Dismissal provides that Plaintiff's appeal will automatically be reinstated within 180 days of the date of the Order. *See* Exhibit 8 (filed under seal).

12.     On May 18, 2021, the MSPB reinstated Plaintiff's appeal in accordance with its November 16, 2020 Order of Dismissal. The MSPB, however, stated that it still lacks jurisdiction over Plaintiff's appeal and would again dismiss the appeal without prejudice to reinstatement, unless both parties were to consent to the MSPB's exercise of jurisdiction by June 7, 2021. *See* Exhibit 9 (filed under seal).

13.     Thereafter, the MSPB issued a second Order of Dismissal without prejudice to reinstatement. Dated June 8, 2021, the second Order provides that Plaintiff's MSPB appeal will be automatically reinstated on December 21, 2021. *See* Exhibit 10 (filed under seal).

14.     Upon information and belief, the MSPB has operated without a full quorum of Board Members since 2017. Without a quorum of Board Members, the MSPB lacks authority to appoint individual administrative judges in accordance with the Supreme Court's decision in Lucia.

15.     In view of the MSPB's continuing lack of jurisdiction over Plaintiff's mixed case appeal, this district court may exercise subject matter jurisdiction over the MSPB mixed case appeal and adjudicate it in the first instance. *See* Perry v. MSPB, 137 S. Ct. 1975, 1979 (2017) (holding that when the MSPB dismisses a mixed case appeal for lack of subject matter jurisdiction, the plaintiff may appeal her removal to the federal district court); Kloeckner v. Solis, 568 U.S. 41, 46 (2012) (holding that a federal employee who claims that an agency action appealable to the MSPB violates an anti-discrimination statute listed in 5 U.S.C. § 7702(a)(1) should seek judicial

8

review of the dismissal of her complaint in federal district court, not in the Federal Circuit). *See id.* at 604 (stating that under 5 U.S.C. § 7703(b)(2), cases of discrimination subject to § 7702 the federal district court has original jurisdiction to review *de novo* the EEOC's decision on the merits of a complaint of discrimination, where the action is commenced within 90 days after the issuance of the EEOC decision).

16.     Personal jurisdiction and venue are proper in the District of Columbia, because this is the district in which Plaintiff resides and in which a substantial number of the acts or omissions giving rise to Plaintiff's claims occurred.  5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(5); and 28 U.S.C. § 1391.

## Factual Allegations

17.     After six years of successful service as an immigration judge, Plaintiff began to experience severe, debilitating migraine headaches while conducting court hearings by tele-videoconference.  At the urging of her physicians, she requested a reasonable accommodation of her medical condition.  The requested accommodation was a permanent reassignment to the Immigration Court in Arlington, Virginia, and, specifically, to that court's non-videoconference docket. As Plaintiff was already working in the Arlington court location (but was still assigned to the Headquarters court's tele-videoconference court), a reassignment to the Arlington court's non-videoconference docket would have been a most suitable accommodation.

18.     When her first reasonable accommodation request was denied, Plaintiff filed an informal EEO complaint with Defendant EOIR in June 2014, challenging the reasonable accommodation denial as violating Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. Shortly thereafter, Plaintiff began to experience severe harassment that prompted her to withdraw the internal complaint in August 2014.

19.     The harassment continued even after Plaintiff withdrew her informal EEO complaint. The harassment took the form of discriminatory and retaliatory personnel actions that were intended to oust her from the agency, so that her immigration judge position could be given to an external or internal immigration judge candidate the agency favored.

     a.     In January 2015, the former Chief Immigration Judge[2] admonished Plaintiff for communicating by email in a rude and disrespectful manner, after Plaintiff complained that persistently malfunctioning tele-videoconference equipment had prevented her timely completion of assigned court hearings in detained cases.

     b.     In March 2015, Plaintiff's immediate supervisor ("ACIJ One")[3] issued a reprimand accusing Plaintiff of intemperate behavior. This was the very first disciplinary action that Plaintiff received in her then 24th year of service in the Justice Department. The reprimand was issued after Plaintiff objected to a new work assignment that would have (1) exacerbated her medical condition, and (2) caused her to violate the law governing immigration detention. The reprimand had the effect of barring Plaintiff from obtaining a reassignment to the Arlington Immigration Court for a period of three years.

     c.     In June 2015, the same supervisor issued a counseling letter accusing Plaintiff of traveling without his authorization to a court location where she conducted her assigned court hearings in person. Upon his return from a two-week vacation, the supervisor revoked the travel authorization that Plaintiff had received from other agency personnel and denied her request for travel reimbursement.

---

[2] The former Chief Immigration Judge is a white female in her fifties. Upon information and belief, she left the Defendants' employ in July 2019.

[3] ACIJ One is a white male in his forties. Upon information and belief, he left the Defendants' employ sometime in 2020.

d.      In August 2015, the same supervisor issued an annual performance rating that – while crediting Plaintiff with satisfactory work performance – rated her professionalism as needing improvement.  The performance rating referenced the March 2015 reprimand and June 2015 counseling letter as justification for the downgraded performance rating.

e.      In November 2015, Plaintiff learned that her second reasonable accommodation request was denied because of the March 2015 reprimand.  Her application for a Board Member position on the Board of Immigration Appeals, a position for which she was rated "most qualified," was also denied.

20.     On December 10, 2015, Plaintiff timely filed a formal complaint of discrimination with the EEOC, alleging that the denial of her second reassignment request and her Board Member application violated Title VII of the Civil Rights Act of 1964 and the 1973 Rehabilitation Act.

21.     Within a month of filing her EEO complaint, Plaintiff was suddenly reassigned to the Arlington Immigration Court's non-videoconference docket.  However, over the next four years she continued to experience progressively worse acts of discrimination and retaliation that eventually culminated in her discharge in September 2020.

22.     From 2016 to 2019, Plaintiff's next supervisor ("ACIJ Two")[4] assigned her to complete aged, non-detained cases on the dockets of three white male judges.  Many of the cases had been pending for as long as 15 to 20 years, and Plaintiff was to complete the cases expeditiously.  Plaintiff's supervisor also permitted white judges to dump their unwanted cases on Plaintiff's hearing calendar, causing numerous scheduling conflicts.  During that same period,

---

[4] ACIJ Two is an Asian-American female of Indian descent in her forties.  In July 2019, she resigned from her position as supervisory judge and began working in the Arlington Immigration Court as a non-supervisory judge.

Plaintiff's supervisor assigned her two to three times the number of new cases as we[5] re assigned to white judges. In addition to handling a burgeoning Arlington court caseload, Plaintiff had to continue hearing detained cases out of the detention facility in York, Pennsylvania by tele-videoconference.

23.    When Plaintiff voiced concern about the very burdensome assignments and scheduling conflicts, her supervisor issued a counseling letter in August 2016 criticizing Plaintiff for an email communication with a white female judge. The counseling letter threatened to terminate Plaintiff's employment. At the time, Plaintiff did not know that, on the same date, the supervisor issued a similarly worded counseling letter to the white female judge, faulting that judge for acting unprofessionally toward Plaintiff.

24.    In September 2016, Supervisor Two issued a performance rating that – while crediting Plaintiff with satisfactory work performance – criticized her for a lack of professionalism. The performance rating referenced the August 2016 counseling letter that the supervisor had issued the previous month. However, it did not mention the August 2016 counseling letter that she issued to the white female judge. The performance rating also referenced anonymous complaints that the supervisor claimed to have received during the rating period. When asked to divulge the identities of the complainants and the substance of their complaints, the supervisor refused to do so.

25.    In late January 2017, Plaintiff learned that Defendant EOIR had released sensitive information from her personnel file to the American Immigration Lawyers Association ("AILA"), a voluntary bar association of immigration attorneys. Plaintiff immediately demanded that EOIR retract or claw back the information, but EOIR refused.

---

[5] The former Chief Immigration Judge is a white female in her fifties. Upon information and belief, she resigned or retired in July 2019.

26.     On March 1, 2017, two immigration bar attorneys ("Attorney One and Attorney Two") filed a complaint with Plaintiff's supervisor.   The complaint alleged that Plaintiff mishandled four court hearings between February and March 2017, and that she manifested improper judicial bias, demeanor, and incompetence in those hearings.  Notably, the complaint stated that "Judge Bain has been counseled in the past but that apparently has not been sufficient to instill the necessary dignity and decorum required in her proceedings."  Plaintiff understood this comment to be a reference to the privacy-protected information that EOIR had released to AILA two months earlier.

27.     The March 1, 2017 complaint was the first such complaint filed against Plaintiff, then in her seventh year of service as an immigration judge.

28.     Plaintiff's supervisor did not apprise Plaintiff of the two attorneys' March 1, 2017 complaint.  Plaintiff learned about the complaint at the start of a March 7, 2017 court hearing, when Attorney One presented a Motion for Recusal that attached her March 1, 2017 complaint as an exhibit.  Attorney One informed Plaintiff that a copy of the complaint had been emailed to the court administrator the day before the hearing, and that she expected Plaintiff to immediately recuse.

29.     Concerned that the court administrator might have engaged in an impermissible *ex parte* communication, Plaintiff asked the court administrator to testify concerning that communication in open court.  The court administrator's testimony served two purposes: (1) to cure the *ex parte* nature of the communication by divulging it to government counsel; and (2) to confirm that, prior to the March 7, 2017 court hearing, Plaintiff did not receive from the court administrator the two attorneys' March 1, 2017 complaint or their joint Motion for Recusal.

30.     On March 28, 2017, the two immigration attorneys filed a second complaint with Plaintiff's supervisor. The second complaint alleged that Plaintiff abused her judicial authority by refusing immediately to recuse from all of their cases, and by requiring the court administrator to testify about the *ex parte* communication with Attorney One. The second complaint also accused Plaintiff of witness intimidation.

31.     Plaintiff's supervisor directed Plaintiff to respond to both the recusal motion and the underlying March 1, 2017 and March 28, 2017 complaints. While on extended work-related travel to New Mexico, Plaintiff prepared a response without the benefit of her paper records.

32.     Through an order dated June 8, 2017, Plaintiff responded to the recusal motion and the two underlying complaints. The Recusal Order applied the recusal procedure and standards prescribed in EOIR's policy memorandum, known as OPPM 05:02. Promulgated in 2005, OPPM 05:02 was modeled after the recusal procedure for federal judicial officers in 28 U.S.C. § 455(a) & (b), and the United States Supreme Court's decision in Liteky v. United States, 510 U.S. 540 (1994). In addition, Plaintiff's Recusal Order applied the Immigration Judges' Ethics Guide, which is a code of judicial ethics and conduct for immigration judges. The Recusal Order was subsequently affirmed by the Board of Immigration Appeals ("BIA").

33.     Nevertheless, in early August 2017 EOIR referred Plaintiff to OPR for an investigation. The referral email was prepared by the former EOIR Deputy Director.[6] The former Deputy Director had supervised the litigation of Plaintiff's EEOC action. Upon information and belief, she had worked in OPR for 12 years and had applied for an immigration judge position in the Arlington Immigration Court at the same time that Plaintiff applied for a reassignment to that

---

[6] The former EOIR Deputy Director is a white female in her fifties. Upon information and belief, she left the Defendants' employ in 2019 or 2020.

14

court. Her email communication with OPR indicated that she was aware of OPR's policy of not intervening in pending litigation; however, she pleaded with OPR to initiate and expedite an investigation of Plaintiff, asserting – without any factual basis – that an OPR investigation would prevent further harm to the two complaining attorneys' reputation.

34.     Later that month (August 2017), ACIJ Two issued a performance rating that again credited Plaintiff with satisfactory work performance but noted a deficiency in professionalism. The performance rating referenced the August 2016 counseling letter that the supervisor had issued to Plaintiff; however, it did not reference the counseling letter that the supervisor had issued to her white female colleague, which faulted that colleague for unprofessional behavior toward Plaintiff.

35.     On August 29, 2017, Plaintiff received a Letter of Inquiry from OPR that directed her to respond to the two immigration bar attorneys' March 2017 complaints.  Plaintiff prepared a response while on extended work-related travel to Louisiana, where she did not have access to her counsel or her paper records.

36.     In November 2017, Plaintiff filed a 97-page written response to the OPR Letter of Inquiry.  Thereafter, Plaintiff sat for a seven-hour interview with OPR investigative counsel on June 29, 2018.

37.     In her November 2017 written response, Plaintiff documented the abuse of EOIR's Immigration Judge Complaint Resolution Program ("CRP") by which Plaintiff was referred to OPR for an investigation.  Plaintiff described the structural and Constitutional infirmities of the program and explained how litigants misused it to gain a litigation advantage over their opponents. Using hearing records from the four court cases that OPR was investigating, Plaintiff showed that her referral to OPR for an investigation lacked sufficient predication, because the BIA had already affirmed her Recusal Orders in seven of the attorneys' cases.

38.     Soon thereafter, the BIA adjudicated an appeal in one of the four cases that OPR was investigating.  On January 2, 2018, the Board issued an order vacating Plaintiff's decision on the merits and remanded the case to another immigration judge for a new hearing.  *See* Exhibit 8 (filed under seal).

39.     According to the BIA, Plaintiff displayed unprofessional behavior toward Attorney One while conducting a February 17, 2017 court hearing.  The BIA found that Plaintiff had berated and screamed at Attorney One during an off-record exchange that lasted five minutes.  The BIA also found that Plaintiff unreasonably denied Attorney One's request for a break in the middle of her client's cross-examination.

40.     Plaintiff promptly filed a Motion for Reconsideration, asserting that the BIA's findings and conclusions were erroneous.  The BIA, however, denied the motion upon concluding that Plaintiff lacked standing to bring it.

41.     Plaintiff subsequently called OPR's attention to the BIA's erroneous January 2, 2018 decision.  After completing its investigation, OPR agreed that two of the BIA's findings were clear errors.

a.     In particular, OPR determined that Plaintiff could not have berated and screamed at Attorney One for five minutes during the off-record exchange, because the courtroom's audio recordings indicated that Plaintiff went off-the-record for only 31 seconds.

b.     OPR also determined that Plaintiff did not mistreat Attorney One by denying a recess in the middle of her client's cross-examination.  OPR concluded that it was reasonable to make the attorney wait until after cross-examination was completed to take a break.

42.     Notwithstanding the clear errors, the Board's January 2, 2018 unpublished decision was swiftly dispatched to the news media.  It was published in a news article on January 5, 2018.

16

The publication has caused much embarrassment and mental anguish to Plaintiff, because she has been unable to obtain its retraction or rescission. The publication of the errant January 2, 2018 decision has harmed Plaintiff's professional reputation and has impeded her ability to find another job. Moreover, the Defendants' eventual decision to terminate Plaintiff's employment rested, in part, on a mistaken belief that Plaintiff herself had disseminated the BIA's January 2, 2018 decision to the media.

43.     In May 2018, Plaintiff amended her pending EEO complaint to add allegations of discrimination, retaliation for engaging in protected activity, and hostile work environment. The additional allegations asserted that Plaintiff's referral to OPR for an investigation in August 2017 and the BIA's January 2, 2018 decision were motivated by discriminatory and retaliatory animus.

44.     After discovery in the EEOC action closed and in April 2019, Defendant EOIR moved for dismissal by summary judgment.

45.     On July 22, 2019, while Defendants' Motion for Summary Judgment was pending before the EEOC, OPR issued a draft Report of Investigation after completing its two-year investigation of Plaintiff. As the draft Report cited, referenced, incorporated, or discussed evidence that Plaintiff did not have, Plaintiff requested that OPR investigative counsel immediately release the full OPR investigative record, so that she could prepare a fulsome response to the draft Report. OPR investigative counsel denied the request, stating that OPR had not "designated" a Record of Investigation. OPR counsel further stated that OPR does not release records of witness interviews.

46.     On August 5, 2019, Plaintiff filed a request for release of information under the FOIA and Privacy Act. This was Plaintiff's third FOIA request, and it was directed to the OPR FOIA Office. The third FOIA request sought the full OPR record of investigative evidence. It

17

also requested expedited processing, citing as the reason the short time frame Plaintiff was given to respond to the draft OPR Report.

47.     The OPR FOIA Office did not respond to Plaintiff's FOIA request until after the deadline for responding to the OPR Report had passed.

48.     Without access to the full OPR evidentiary record, Plaintiff filed a cursory response to the draft Report of Investigation on September 6, 2019, citing only evidence that was available to her at the time.  Her response strenuously objected to OPR's refusal to produce the full record of evidence.

49.     On September 27, 2019, OPR issued a final Report of Investigation.  The OPR Final Report quoted, referenced, or discussed the testimonies of 13 eyewitnesses whom OPR had interviewed in the course of its two-year investigation.  The 13 eyewitnesses included the two complaining attorneys, their attorney, Plaintiff's immediate supervisor (ACIJ 2), the court administrator, two government attorneys, three court interpreters, and at least one court security officer.  Of the 13 interviews, OPR released to Plaintiff only one interview transcript – Plaintiff's.

50.     On October 4, 2019, OPR formally acknowledged receipt of Plaintiff's August 5, 2019 FOIA request.  OPR assigned the request a processing number but declined to expedite it. Between October 2019 and March 2020, OPR took no further action.

51.     On October 8, 2019, Plaintiff was placed on administrative leave as a result of the OPR Report of Investigation.  She would remain on paid administrative leave until her removal on September 17, 2020.  During that time, Plaintiff attempted to find another job but was unable to do so, she suspects, because the BIA's January 2, 2018 decision had been published in the news media.

52.     Thereafter, and on February 26, 2020, the EEOC administrative judge granted Defendant EOIR's Motion for Summary Judgment without a hearing.

53.     The day after the EEOC administrative judge dismissed Plaintiff's EEO complaint, Defendants proposed Plaintiff's removal from the career federal service. The February 27, 2020 Notice of Proposed Removal was explicitly predicated on the OPR Final Report of Investigation.

54.     Along with the Notice of Proposed Removal, EOIR released 1801 pages of documents that comprised the "EOIR Removal Record." The EOIR Removal Record, however, contained only four of the 13 interview transcripts or audio recordings referenced in the OPR Final Report.

55.     On March 30, 2020, seven months after Plaintiff filed her August 5, 2019 FOIA request, OPR finally responded to the FOIA request and released 45 pages of documents. OPR withheld 530 pages on a claim of exemption but did not provide a Vaughn Index. The 45 pages of record materials were not part of the 1801-page EOIR Removal Record. As of today, OPR has continued to withhold the nine remaining OPR witness interview transcripts that it referenced, quoted, or discussed in the Final Report of Investigation.

56.     Without the full OPR record of evidence, Plaintiff was unable to provide a fulsome response to the EOIR Notice of Proposed Removal. In her response filed with the Office of the Deputy Attorney General on May 12, 2020, Plaintiff argued that Defendants' refusal to release the full OPR record of evidence was a denial of due process and a violation of the CSRA's pre-termination procedures.

57.     On June 3, 2020, Plaintiff filed an appeal with the Justice Department's Office of Information Policy ("OIP"), requesting that it release the remaining records of the OPR

investigation and provide a Vaughn Index, so that she could prepare for the July 16, 2020 pre-termination hearing.  OIP did not respond.

58.     Following the pre-termination hearing, Plaintiff submitted a Supplemental Response on August 11, 2020 that called out the most significant factual and legal errors in the OPR Final Report of Investigation.  The supplemental response also explained why the penalty of removal would be grossly disproportionate to the alleged misconduct, even if the charges against Plaintiff could be proven.  An accompanying 150-page compilation of documents shows that Plaintiff's white male colleagues routinely received preferential treatment on such matters as case assignment, court assignment, special work opportunities, promotion, retention, and discipline. They had been subjects of misconduct complaints that were far more serious than what Plaintiff was charged with.  Yet, they received very lenient treatment.  They were not disciplined at all, let alone removed from federal service.

59.     On August 17, 2020, a career Associate Deputy Attorney General in the Office of the Deputy Attorney General issued a decision proposing to terminate Plaintiff's 29-year employment with the Justice Department.[7]  The decision acknowledged that this was Plaintiff's first encounter with the attorney discipline process in nearly 29 years of employment.  It further acknowledged that Defendants failed to maintain a Table of Penalties and to keep complete records of disciplinary and adverse actions involving immigration judges.  Nevertheless, the decision found that Plaintiff's removal from federal service was the most appropriate sanction.  The

---

[7] Upon information and belief, the career Associate Deputy Attorney General is a white male in his fifties.  Previously, he served as an associate counsel and deputy chief counsel in OPR.  He also served as Chief of Staff of the National Security Division from 2016 until July 2018, when he was promoted to the position of Associate Deputy Attorney General by then-Attorney General Jeff Sessions.

decision further acknowledged that Plaintiff was denied access to the full OPR record of evidence. However, it concluded that Plaintiff suffered no resulting prejudice.

60.     On September 17, 2020, former Attorney General William Barr signed the proposed Removal Decision to indicate his concurrence.

<u>**COUNT I:  Violations of the FOIA and Privacy Act**</u>
<u>**for Failure to Make Records Available**</u>

61.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs 1 to 60, as if fully set forth herein.

62.     The FOIA statute confers on the district court sole and exclusive jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

63.     Plaintiff seeks immediate disclosure of improperly withheld records that are responsive to her three FOIA and Privacy Act requests, filed in September 2015, January 2018, and August 2019, respectively.

64.     The three FOIA requests sought records that were exclusively within Defendants' custody and control.

65.     Defendants failed to process Plaintiff's three FOIA requests on a timely basis.

66.     Defendants failed to process Plaintiff's three FOIA requests on an expedited basis.

67.     In response to Plaintiff's September 2015 FOIA request, Defendant EOIR released a total of 100 pages of documents, on a rolling basis.  The last release was in August 2017.  EOIR asserted a general claim of privilege over the remaining documents, but it refused to identify the withheld records or provide a Vaughn Index.

68.     As Plaintiff would later discover, EOIR improperly withheld approximately 1,000 pages of documents that were responsive to her September 2015 FOIA request.  While taking an

ethics training course, she came upon the 1,000 pages which were stored in an electronic folder labeled "BAIN FOIA 2015." The folder was found in an EOIR shared drive that was mapped to her office computer. Plaintiff promptly reproduced the 1,000 pages to EOIR during discovery in the EEOC action and expressed her intention to use the documents as evidence of the agency's discriminatory actions. A time-consuming, costly, and protracted discovery battle ensued.

69.     Initially, the EEOC administrative judge determined that she lacked the authority to compel EOIR's release of the "BAIN FOIA 2015" documents. However, after EOIR moved for sanctions in October 2018, the administrative judge determined that EOIR had failed to demonstrate that Plaintiff acted improperly or engaged in misconduct when she obtained and reproduced the documents in the "BAIN FOIA 2015" folder for use in the EEOC litigation.

70.     Subsequently, in April 2019 the administrative judge determined that the "BAIN FOIA 2015" documents were not privileged, because any privilege that EOIR might have asserted had been waived by the posting of those documents on its shared drive, which was accessible by many EOIR employees.

71.     Plaintiff brought the EEOC judge's determinations to OPR's attention. However, there is no indication in the Final Report of Investigation that OPR had considered any of the "BAIN FOIA 2015" documents.

72.     On February 26, 2020, the same date on which the EEOC administrative judge granted summary judgment to Defendant EOIR, she issued a Protective Order that covered the documents in the "BAIN FOIA 2015" folder. The Protective Order requires special handling to preserve EOIR's right to assert privilege over those documents. The Protective Order further states that the use of those documents is not restricted in any non-EEOC proceeding. Accordingly, in

this district court action, Plaintiff intends to use some – if not all – of the "BAIN FOIA 2015" documents as direct evidence of the agency's discriminatory and retaliatory motives.

73.    Plaintiff's January 2018 FOIA request sought substantially the same information as her September 2015 FOIA request. In addition, it sought information relating to the BIA's January 2, 2018 decision finding that Plaintiff manifested improprieties in conducting the February 17, 2017 court hearing.

74.    In response to the January 2018 FOIA request, Defendant EOIR released 34 pages of non-responsive records. After Plaintiff appealed to the OIP, EOIR released additional records that were not responsive. EOIR asserted a general claim of privilege over the remaining documents, but it refused to identify the withheld materials or provide a Vaughn Index.

75.    Plaintiff's August 5, 2019 FOIA request sought release of the entire compilation of OPR investigative evidence.

76.    In response to the August 5, 2019 FOIA request, OPR released 45 pages of documents. It withheld the remaining 530 pages on a general claim of exemption but failed to provide a Vaughn Index. The 45 pages of documents that OPR released to Plaintiff were not included in the EOIR Record of Removal. Thus, at the time of Plaintiff's removal from federal service in September 2020, OPR had continued to withhold nine of the 13 witness interview transcripts or records that OPR cited, discussed, or incorporated into its draft and final Reports of Investigation.

77.    Plaintiff has exhausted all administrative remedies available to her under the FOIA and Privacy Act, with respect to the three FOIA requests filed in September 2015, January 2018, and August 2019.

78.     Plaintiff has a legal right under FOIA and the Privacy Act to obtain the requested records, and there exists no legal basis for Defendants to refuse to promptly identify and make the records available to Plaintiff.

79.     Defendants' failure to promptly identify and release the requested records to Plaintiff violates the FOIA statute.   *See* 5 U.S.C. § 552(a)(3)(A).   *See also* Bartko v. U.S. Department of Justice, 898 F.3d 51 (D.C. Cir. 2018), and Jefferson v. U.S. Department of Justice, 284 F.3d 172 (D.C. Cir. 2002) (holding that DOJ is legally obligated to release records of OPR investigations to a first-party requestor, where the information was not compiled for law enforcement purposes but rather for managerial-supervision purposes).

## COUNT II:  Discrimination, Retaliation for Protected Activity, and Hostile Work Environment

80.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs 1 to 79, as if fully set forth herein.

### Past and Continuing Discrimination

81.     Plaintiff's removal from the federal service was the direct result of past and continuing discrimination that began in January 2015 and ended with her removal in September 2020.  By undertaking a series of discriminatory "materially adverse actions" during that time period, Defendants laid the groundwork for her removal.  These discriminatory adverse actions are described in preceding Paragraphs 6 to 60.  They are summarized below.

a.     The March 2015 reprimand letter, June 2015 counseling letter, and August 2015 performance ratings contained significant factual errors that EOIR managers refused to correct.  In 2015, EOIR used these personnel actions to justify denying Plaintiff's second request for a reassignment to the Arlington Immigration Court and her application for a Board Member position, a position for which she was rated "most qualified."  As a result, Plaintiff's medical

condition was exacerbated by the continuing use of frequently malfunctioning videoconference equipment.

b.      The August 2016 counseling letter and September 2016 performance rating were discriminatory and retaliatory personnel actions that Defendants undertook to punish Plaintiff for pursuing the December 2015 EEOC action. They exacerbated her medical condition by requiring her to handle an extremely heavy caseload as compared to her white colleagues' caseloads, and to suffer their abusive case dumping practices.

c.      The January 2017 release of privacy-protected information from Plaintiff's personnel file to AILA, and the inclusion of that information in the AILA attorneys' March 2017 complaints, constituted retaliation for Plaintiff's pursuit of legal redress for the discrimination through her EEOC action. The release of privacy-protected information caused emotional distress for Plaintiff, triggering fears about misuse of the leaked information, and heightening undeserved scrutiny of her work performance and conduct.

d.      Plaintiff's referral to OPR for an investigation in August 2017 was improperly predicated on the questionable, false claims of EOIR's former Deputy Director. As a result, Plaintiff had to devote an enormous amount of time, energy, and money to defending herself against the charges and to dealing with the fall-out.

e.      EOIR's discriminatory motive was manifested throughout the OPR investigation. A time-consuming, costly, and protracted discovery battle it orchestrated in the EEOC litigation prevented Plaintiff from using approximately 1,000 pages of documents stored the shared drive folder "BAIN FOIA 2015." Although the documents were accessible by many EOIR employees, EOIR falsely accused Plaintiff of hacking into the shared drive, stealing the information, and replicating it for use in her EEOC action. Ultimately, the administrative judge

determined that Plaintiff did not improperly access the "BAIN FOIA 2015" folder, and that any privilege EOIR could have asserted over those documents had been waived. The protracted discovery dispute, in turn, prevented proper factual development in the EEOC action, allowing EOIR to move for summary judgment as soon as discovery closed.

    f.      EOIR's deliberate concealment of adverse evidence in the EEOC action contributed to its dismissal by summary judgment. The evidence EOIR withheld included the BIA's decisions affirming Plaintiff's Recusal Orders in seven cases. Those documents created a genuine dispute of material fact concerning the propriety of Plaintiff's Recusal Order. Because that key piece of evidence was withheld, the administrative judge was left with the mistaken impression that Plaintiff's Recusal Order was so highly improper that it would justify an OPR investigation.

    g.      Similarly, EOIR's failure to divulge key evidence to OPR skewed the investigation in its favor. The OPR Report was predicated on the highly improper, misleading claim of the former EOIR Deputy Director that Plaintiff's Recusal Order warranted an investigation. Had she disclosed the BIA's affirmance of the Recusal Order in seven cases, OPR would have been hard pressed to justify the investigation.

    h.      In the end, the misplaced OPR investigation, which was motivated by discriminatory and retaliatory animus, cost Plaintiff her job, left her without health or life insurance in the midst of the raging COVID-19 pandemic, irreparably damaged her professional reputation, and diminished her future employment prospects.

### New Claim of Discrimination

82.      Plaintiff further asserts that her removal from federal service in September 2020 is a discrete, new act of discrimination that violates federal anti-discrimination statutes, as well as

the Whistleblower Protection Act. She properly raised this new claim of discrimination and whistleblower retaliation to the Office of the Deputy Attorney General through her May 12, 2020 Response and August 11, 2020 Supplemental Response to the Notice of Proposed Removal.

83.     Regarding the new claim of discrimination, the materially adverse actions described above are also discriminatory "prohibited personnel practices" that contributed to Plaintiff's removal. Defendants undertook those discriminatory personnel practices for the purpose of ousting Plaintiff from the Arlington Immigration Court and replacing her with an external white male immigration judge candidate whom Defendants favored. *See* 5 U.S.C. §§ 2302(b)(8) & (9). Below is a summary of the discriminatory personnel practices.

a.     In March 2015, the judge candidate submitted his first immigration judge application to EOIR, at a time when there was no vacancy in the Arlington Immigration Court. That same month, Plaintiff received a reprimand from her supervisor for intemperate behavior. The reprimand effectively barred her from obtaining a reassignment to the Arlington court for three years.

b.     In November 2015, the same judge candidate resubmitted his application after a vacancy was announced. That month, Plaintiff learned that her request for a reassignment to the Arlington court was denied, as was her application for a Board Member position.

c.     In March 2017, the judge candidate was offered an immigration judge position in the Arlington Immigration Court, at a time when courtroom space was insufficient to accommodate him. That same month, two immigration bar attorneys filed a complaint of improper conduct with Plaintiff's supervisor, alleging that Plaintiff's treatment of them warranted an investigation.

d.      In June 2018, former Attorney General Jefferson Sessions appointed the judge candidate to the Arlington Immigration Court. That month, Plaintiff sat for a hostile, seven-hour interview with OPR investigative counsel and was later found to have lacked candor in answering two questions.

e.      In September 2018, the judge candidate was invested as an immigration judge on the same day that Attorney General Sessions resigned. The new judge began his employment in the Arlington Immigration Court. He was assigned his own courtroom, while Plaintiff had to share her courtroom with one or two other female judges.

f.      In April 2019, a federal court of appeals determined that the new judge had violated the rules of judicial ethics and professional responsibility, in the manner in which he pursued his immigration judge appointment. While pursuing the appointment, the judge presided over a military commission trial in which Justice Department lawyers from the National Security Division served as prosecutors, and the judge refused to disclose his immigration judge application to defense counsel, despite being asked to do so. To remedy this serious ethical violation, the court of appeals tossed the judge's rulings going back four years, to the time when he first began pursuing an immigration judge position in March 2015.

g.      Despite this very serious ethical breach, the new judge's employment was not terminated while he was still on probation. Instead, in September 2020, after he completed his two-year probationary term, Defendants terminated Plaintiff's employment after 29 years of exemplary public service to the Justice Department.

84.     The discriminatory and retaliatory personnel practices that Defendants undertook over the course of those five years directly resulted in Plaintiff's removal. She was replaced by an external white male judge candidate who, by Defendants' admission, had virtually no prior

immigration practice experience when he was appointed an immigration judge.  That the new judge was not discharged – and, indeed, was subsequently promoted to a supervisory position – after a federal court of appeals found that he violated the rules of ethical and judicial conduct further underscores the disparate and discriminatory hiring, promotion, disciplinary and retention practices at EOIR.

## COUNT III:  Whistleblower Retaliation

85.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs 1-84, as if fully set forth herein.  Plaintiff's claim of whistleblower retaliation is based on the following allegations of discriminatory "prohibited personnel practices" that Defendants undertook to punish Plaintiff for making disclosures of violations of law; gross mismanagement; and fraud, waste, and abuse.  The disclosures directly contributed to her removal in September 2020.

86.    In March 2015, Plaintiff objected to a work assignment that would have caused her to violate the law governing immigration detention.

a.    At the time, Plaintiff was detailed to the York, Pennsylvania Immigration Court and was to conduct hearings in over 100 aged, detained cases by tele-videoconference. Most of the cases involved detainees who had been detained for three to four years pending completion of their court proceedings.  After they were denied bond hearings, many detainees filed habeas corpus petitions seeking immediate release from immigration custody.

b.    When Plaintiff expressed concern about the heightened litigation risks that prolonged detentions without bond hearings presented to the agency as well as to Plaintiff, her supervisor (ACIJ One) retaliated by issuing a March 2015 reprimand that criticized her for displaying intemperate behavior toward him.  The reprimand was effective for a period of three

years, and it barred Plaintiff from obtaining a reassignment to the Arlington Immigration Court's non-videoconference docket. The reprimand forced Plaintiff to continue hearing aged, detained cases out of the York Immigration Court, using dated tele-videoconference equipment that frequently malfunctioned and caused her to suffer migraine headaches.

        c.     Within a month of the disclosure to her supervisor, EOIR replaced failing videoconference equipment in her courtroom. The new equipment, however, also failed because of deficient infrastructure. Plaintiff then received authorization to travel to the York Immigration Court to conduct her assigned court hearings in person. However, in June 2015 her supervisor issued a counseling letter accusing Plaintiff of traveling without his permission. He revoked the travel authorization that Plaintiff had received from other EOIR personnel, which resulted in Plaintiff being denied approximately $400 in travel expense reimbursement.

        d.     After OPR commenced an investigation of Plaintiff on unrelated charges, Defendants retaliated against her by providing the March 2015 reprimand and June 2015 counseling letter to OPR. The OPR Final Report cited those personnel actions as evidence of Plaintiff's tendency toward insubordination and lack of professionalism. Thereafter, the former EOIR Director[8] used the March 2015 reprimand and June 2015 counseling letter to propose her proposed removal.

87.     In August 2016, Plaintiff voiced concern about the abusive case assignment practices that her next supervisor (ACIJ Two) employed. The supervisor had transferred fifteen-to-twenty-year-old, problematic cases from the dockets of white male judges to Plaintiff's docket and required Plaintiff to expeditiously complete those cases. The supervisor also allowed other non-supervisory judges to dump their unwanted cases on Plaintiff's docket, which caused

---

[8] The former EOIR Director was a white male in his forties.

numerous scheduling conflicts.  Finally, the supervisor assigned Plaintiff two to three times the number of new cases as she assigned to other judges.

      a.     When Plaintiff expressed concern about her unsustainable workload, the supervisor issued an August 2016 counseling letter that criticized Plaintiff for sending an email to another judge, demanding that the other judge stop scheduling court hearings directly on Plaintiff's hearing calendar.  The counseling letter threatened to terminate Plaintiff's employment.  The counseling letter was then used to justify a downgrade of her September 2016 and August 2017 performance ratings.  It was released to AILA in January 2017, which cited the counseling in the two attorneys' March 1, 2017 complaint filed with Plaintiff's supervisor.

      b.     After Plaintiff amended her EEO complaint in May 2018 to oppose these gross and abusive management practices, EOIR officials changed the regulation concerning case assignment.  The new regulation provides that only the EOIR Director or the Chief Immigration Judge may direct the deferral of adjudication of any case or cases by an immigration judge.  *See* 8 C.F.R. 1003.10(b) (2019).  It augments a pre-existing regulation that limited case reassignments among sitting judges to circumstances such as disability, retirement, or death of the originally assigned judge.

      c.     Notwithstanding the regulatory change, EOIR continued to use the disingenuous August 2016 counseling letter to justify Plaintiff's removal.  The counseling letter was released to OPR, which used the letter to support its finding of improper courtroom conduct.[9]

---

[9] Throughout the two-year OPR investigation, Plaintiff apprised OPR counsel of developments in her EEOC case, to the extent they were relevant to the OPR investigation.  For example, Plaintiff called OPR counsel's attention to the illegal disclosure of privacy-protected information from her personnel file to AILA two months before the filing of the immigration attorneys' March 2017 complaint with Plaintiff's supervisor.  In response, OPR investigative counsel stated that the unauthorized disclosure was not harmful to Plaintiff, because in conducting the investigation, OPR had to consider that information anyway.  In 2018, Plaintiff advised OPR

The EOIR Director cited the counseling letter to propose Plaintiff's removal and in moving for summary judgment in her EEOC action. The Office of the Deputy Attorney General also cited the counseling letter as justification for her removal.

88.     In February 2018, Plaintiff objected to her supervisor's (ACIJ Two's) instruction that she grant relief in several pending cases, against her best judgment. Plaintiff's objection rested on the regulation at 8 C.F.R. 1003.9 (2018), which prohibits a supervisory judge from dictating case outcomes to subordinate judges. When the supervisor continued pressuring Plaintiff to grant relief, Plaintiff copied EOIR senior management on the email correspondence. In her email, Plaintiff objected to the supervisor's interference with her work, and asked that the supervisor respect her decisional independence.

a.     Soon thereafter, EOIR revised the regulation to make it clear that a supervisory judge may not dictate case outcomes to a line judge. A new regulation at 8 C.F.R. 1003.10 (2019) provides that in deciding the individual cases before them, "immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." *Id.*

b.     Notwithstanding the regulatory change, EOIR used Plaintiff's February 2018 email communication with the supervisor to justify her removal. A copy of that email was provided to OPR, which quoted the email out of context to support its finding of insubordination. The former EOIR Director referred to the email in his affidavit supporting the agency's Motion for Summary Judgment in the EEOC action. Based on that affidavit and other evidence EOIR

_____

counsel that she had located the "BAIN FOIA 2015" documents in the agency's shared drive and asked that OPR counsel examine those documents for evidence of discrimination and retaliation. There is no indication in the OPR Final Report of Investigation that OPR counsel did so.

provided, the EEOC concluded that Plaintiff had failed to show that her supervisors' actions were motivated by discrimination or retaliation.

89.     In November 2017, Plaintiff disclosed to OPR her concerns about EOIR's Constitutionally infirm Immigration Judge Complaint Resolution Program. Plaintiff disclosed the structural flaws in the program that litigants exploited to their advantage. Using statistical evidence, she described how the program encouraged dissatisfied litigants to engage in judge shopping, by misusing the recusal procedure to obtain immediate disqualification of a disfavored judge.

a.     As a result of this disclosure, EOIR immediately revamped its process for investigating misconduct complaints. The first draft of the new immigration judge complaint resolution protocol was circulated in November 2017. The second draft was published in April 2018. As of today, EOIR has not implemented a final version of the new complaint resolution protocol.

b.     This disclosure by Plaintiff to OPR apparently triggered another disclosure: The Justice Department's view on *ex parte* communications between immigration judges and litigants. On October 8, 2019, the Justice Department's Professional Responsibility Advisory Office ("PRAO") issued an advisory opinion that contradicts EOIR's April 2018 version of the complaint resolution protocol. According to the PRAO advisory opinion, an *ex parte* complaint of judicial misconduct filed with a supervisory immigration judge should be disclosed to the judge who is the subject of the complaint, as well as to the opposing party, as soon as practicable. According to PRAO, this would disincentivize the use of *ex parte* complaints by immigration court litigants to gain an unfair advantage over their opponents.

c.     Defendants' response to Plaintiff's disclosure of this abuse of process was to ignore it.   OPR concluded that Plaintiff exhibited poor judgment in asking the court administrator to testify about her *ex parte* communication with Attorney One, even though it triggered Plaintiff's disclosure obligation under the Immigration Judges Ethics Guide and the PRAO advisory opinion.  The EOIR Director ignored the PRAO advisory opinion and found that Plaintiff engaged in "conduct unbecoming an immigration judge" when she asked the court administrator to testify about the *ex parte* communication.  In the Removal Decision, the Associate Deputy Attorney General did, too.

90.     As described above, Plaintiff's protected disclosures effectuated meaningful changes in EOIR regulation, policy, and practices.  However, rather than crediting Plaintiff with the improvements, EOIR terminated her employment in retaliation for the disclosures.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court award the following declaratory and injunctive relief:

### Count I:  Violation of the FOIA

91.     Declare that Defendants violated the FOIA by failing to identify the requested information and materials;

92.     Declare that Defendants violated the FOIA by unlawfully withholding the requested information and materials;

93.     Declare that Plaintiff has a legal right to access the entire OPR record of investigative evidence, including all OPR witness interview records that are cited, discussed, or incorporated into the OPR Final Report of Investigation;

94.     Declare that the approximately 1,000 pages of documents that were stored in the agency's shared drive, in a folder labeled as "BAIN FOIA 2015," are admissible in this district court action and may be used in any related judicial or administrative proceeding;

95.     Order Defendants to release immediately the requested information and materials to Plaintiff in a suitable format without charge for any search or duplication fees. In the alternative, provide for expedited proceedings to adjudicate Plaintiff's rights under the FOIA and Privacy Act;

96.     As to any requested information and materials responsive to Plaintiff's requests that Defendants wish to withhold or redact as being exempt from disclosure, Order Defendants to provide Plaintiff with an itemized, indexed inventory thereof, accompanied by a statement of justification explaining each such withholding or redaction, in accordance with the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974);

97.     Award Plaintiff her reasonable costs and attorneys' fees;

### Count II: Discrimination

98.     Declare that Plaintiff has a due process right under the Fifth and Fourteenth Amendments to be from interference in the discharge of her duties.

99.     Declare that Defendants' materially adverse personnel actions injured Plaintiff's liberty or property interest in her continued employment, and that they also interfered with the lawful discharge of the duties of her office. See 42 U.S.C. § 1985(1).

100.    Declare that Defendants committed harmful errors in arriving at the September 17, 2020 Removal Decision, in violation of 5 U.S.C. §§ 7701(c)(2)(A) & (C), 7701(c)(3).

101.    Declare that Defendants have not proven the charges by a preponderance of the evidence, and that they improperly weighed the Douglas mitigating and aggravating factors;

102.   Declare that Plaintiff experienced severe discrimination and retaliation for engaging in protected EEO activity as well as a hostile work environment, in violation of anti-discrimination statutes.

103.   Declare that Defendants evaluated Plaintiff's performance and conduct in a discriminatory and retaliatory manner, and that the records of such personnel evaluations contain significant mistakes of fact requiring correction;

104.   To remedy the substantial interference with Plaintiff's Constitutional and statutory rights in her employment:

      a.   Order the rescission and sealing of the Attorney General's September 17, 2020 Removal Decision.

      b.   Order the rescission and sealing of OPR's draft Report of Investigation and Final Report of Investigation;

      c.   Order the rescission of the BIA's erroneous January 2, 2018 decision and its retraction from all internet and media outlets.

      d.   Order correction of the errors in Plaintiff's official personnel file, performance rating files, and similar record files in a manner consistent with 5 U.S.C. § 552a. The personnel actions that require correction include the March 2015 reprimand, June 2015 counseling letter, August 2015 performance rating, August 2016 counseling letter, September 2016 performance rating, August 2017 performance rating.

105.   Award Plaintiff reasonable attorneys' fees, costs, and other consequential damages;

106.   Award Plaintiff compensatory damages for pain and suffering, emotional distress, damage to professional reputation that resulted from Defendants' discriminatory employment

actions between March 2015 and September 2020, to include full back pay, interest, and loss of employment-related benefits;

107.    Award compensatory damages for the mental anguish and public humiliation that Plaintiff has suffered as a result of the public dissemination of the January 2, 2018 BIA decision.

### Count III:  Whistleblower Retaliation

108.    Declare that Plaintiff experienced severe and discriminatory retaliation for engaging in protected whistleblower activity, and that her protected disclosures contributed to her discharge on September 17, 2020, in violation of the Whistleblower Protection Act.

109.    Award Plaintiff her reasonable costs and attorneys' fees;

110.    Award Plaintiff compensatory damages for pain and suffering caused by the severe harassment and retaliation that she experienced on account of her protected disclosures;

111.    Reinstate Plaintiff to the position she held before her removal, or, in the alternative, reassign her to a comparable position at the same pay level and in the same commuting area.

112.    Any other relief as the Court deems just and proper.

Dated:  June 22, 2021

Respectfully submitted,

/s/ Quynh Vu Bain

Quynh Vu Bain
Plaintiff, *pro se*

RECEIVED

2021 JUN 28 P 2: 59

CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC