Exhibit I

*Bain v. Office of the Attorney General*, Civ. A. No. 21-01751 (RDM)
Defendants' Motion to Dismiss, In Part



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Quynh V. Bain, a/k/a
Tammi W.,[1]
Complainant,

v.

Merrick B. Garland,
Attorney General,
Department of Justice,
Agency.

Appeal No. 2020002553

Hearing No. 570-2016-01466XX

Agency No. EOI-2016-00137

DECISION

Complainant appeals to the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403, from the Agency's April 2, 2020 final order concerning her complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.  For the following reasons, the Commission AFFIRMS the Agency's final order finding no discrimination.

BACKGROUND

At the time of events giving rise to this complaint, Complainant was employed by the Agency as an Immigration Judge, SL-04, in its Executive Office for Immigration Review, Immigration Court in Arlington, Virginia.

On December 10, 2015, Complainant filed an EEO complaint alleging that:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

                                  2                                    2020002553

A. Was Complainant subjected to a hostile work environment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), sex (female), national origin (Vietnamese), or disability (migraines/record of medical conditions requiring Family and Medical Leave Act (FMLA) leave) when, from March 11, 2015 to January 2016:

1. She was the only one of the four Headquarters Immigration court judges who was required to work on a detained docket full-time. The other judges were assigned to handle a combination of detained and non-detained cases, or only non-detained cases. Her detained docket consisted of aged detained cases (i.e., pending more than 60 days) that other detained judges were allowed to reassign to her. Such aged detained cases often involved challenges to long-term detention by habeas corpus and other litigation risks.

2. In those aged detained cases (i.e., detained cases pending over 60 days), Complainant was not permitted to hold status conferences or conduct bond hearings to manage her caseload. She was expected to complete each evidentiary hearing on the same day. If she did not, Assistant Chief Immigration Judge (ACIJ1) chided her for being inefficient. She was not allowed to see the case files ahead of time and often received a case file the day before the hearing. Pleadings filed with the York court were not delivered to the Complainant in time for the hearings.

3. She was denied the eight hours of administrative time per pay period to which every judge was entitled under the Agency's Collective Bargaining Agreement with the union in order to work on written motions and orders and prepare for hearings.

4. Rather than providing her with a functional VTC (Video Tele-Conference) system to conduct hearings for York detainees, ACIJ1 required Complainant to travel to York to conduct hearings in person. Complainant made seven such trips during June and July 2015.

5. Though Complainant was asked to make two additional trips to York, Pennsylvania and received approval from other Agency personnel, ACIJ1 refused to approve her travel for those trips after she had completed the travel, and Complainant was accordingly denied reimbursement for approximately $400 in travel expenses.

6. ACIJ1 then issued Complainant a letter of counseling in which he falsely claimed that she had violated the Agency's travel regulations by making the two trips to York.

7. Though Complainant pointed out that she had received authorization for the two additional trips from other Agency personnel and that the letter of counseling cited a repealed regulation, ACIJ1 refused to rescind the letter of counseling.

8. Complainant's similarly situated coworkers were allowed to assign her cases from their dockets that were aged (i.e., pending more than five years) and/or complex, and

    she was forced to conduct hearings and issue oral or written decisions in their cases. The cases were then returned to the other judges' dockets once Complainant had done all of the work to complete the cases, with the result that the other judges' case completion statistics were significantly higher than Complainant's.

9. For cases that were assigned to Complainant, the York court repeatedly postponed hearings in Complainant's cases in order to open up time slots for hearings in cases that were assigned to four identified judges so that she had to complete cases assigned to those judges before she could complete cases that were assigned to her.

10. When Complainant pointed out the unfairness of being forced to hear and complete large numbers of other judges' cases and asked for additional administrative time, ACIJ1 issued a reprimand letter in March 2015, accusing her of displaying intemperate and unprofessional behavior. In August 2015, ACIJ1 incorporated that letter into an unfavorable performance evaluation that cited a lack of professionalism as a deficiency needing correction.

11. After ACIJ1 was promoted to Acting Deputy Chief Immigration Judge for the East Coast in July 2015, he was succeeded by an identified ACIJ (ACIJ2) in Arlington and another identified ACIJ (ACIJ3) in York. Due to the high number of York cases that had been transferred to her docket for the benefit of other judges that involved habeas corpus petitions, Complainant was required by ACIJ2 to cancel her two-week Christmas vacation in late 2015, to early 2016, in order to complete all of her York cases by the end of the year. In early 2016, the Agency finally agreed to transfer Complainant to the Arlington court.

12. Following Complainant's transfer to the Arlington court, ACIJ2 continued the practice of assigning Complainant a substantially higher number of cases than her colleagues.

13. In July 2016, during the investigation of the instant complaint, ACIJ2 emailed Complainant and her colleagues a plan for an equitable distribution of cases going forward. She then failed to implement that plan and instead modified Complainant's case assignment plan twice more. The first modified plan had Complainant handle aged non-detained cases (i.e., pending more than 5 years) for several colleagues who were unable to complete their caseloads within a reasonable time. Complainant was the only judge who had this case assignment plan. The second modified plan required Complainant to conduct hearings in approximately 200 new or reassigned "family unit" cases a week. In just two years, Complainant accrued approximately 6,000 family unit cases and completed 1,400 cases. Because cases involving family units were prioritized, Complainant had to schedule hearings in a timely fashion and complete the cases expeditiously.

                                    4                                  2020002553

B. Was Complainant subjected to disparate treatment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), sex (female), national origin (Vietnamese), or disability (record of medical condition requiring FMLA leave) when:

14. In August 2015, ACIJ1 issued Complainant a performance evaluation that included a deficiency rating for professionalism, included numerous inaccuracies, and did not reflect her actual performance. The rating was issued to Complainant on August 29, 2015.

15. ACIJ1 cited the August 2015 rating as a basis for denying Complainant permission to participate in special work opportunities, including serving as a guest speaker at a training conference and serving as a pro bono liaison judge.

16. In November 2015, shortly after Complainant filed the instant EEO complaint, the Agency denied her application to work for the Board of Immigration Appeals as a Board Member.

17. On July 28, 2016, Complainant received a letter of counseling based on her objections to the continuing unfair distribution of cases by ACIJ2.

C. Complainant was subjected to the following additional adverse acts that were a continuation of the alleged hostile work environment based on race (Asian), sex (female), national origin (Vietnamese), and/or reprisal (for prior EEO activity) when:

18. From January 2016 to present: ACIJ2 has continued the practice of assigning to Complainant a disproportionate number of cases compared to her colleagues such that from April 2016, to April 2018, her caseload went from zero to 4,500 Arlington cases. By contrast, ACIJ2 made similarly situated judges' case statistics look better by placing many of their cases on "visiting judges" dockets known as VJ1, VJ2, and VJ3, though there were no visiting judges detailed to the Arlington court to hear those cases.

19. From January 2016, to present: ACIJ2 and the Court Administrator (CA1) have continued to assign aged cases (some between 15 and 20 years old) to Complainant for completion and allowed other Arlington judges to assign their unwanted aged cases to Complainant.

20. From March 2016, to present: By having other judges reassign their cases to Complainant, ACIJ2 created schedule conflicts that Complainant then must resolve on her own. When Complainant asked that one judge take back a case that caused a double-booking on her calendar ACIJ2 sided with the other judge.

21. From March 2016, to present: ACIJ2 instructed court staff to structure Complainant's calendar such that she had to hear many more master calendar cases per day than her

colleagues in the Arlington court. For example, during Summer 2016, Complainant heard approximately 100+ master calendar hearings every Monday and Tuesday, while her colleagues heard between 15 and 50 master calendar hearings on their master calendar days.

22. From March 2016, to present: When Complainant requested that CA1 reduce the number of master calendar hearings on her hearing calendar, CA1 complained to ACIJ2 that Complainant had complained about the workload. She also complained to ACIJ2 that Complainant was being unprofessional when she reported the chronic problems of missing case files, double-booking, and not having enough time to hear all 100+ cases on her calendar in a single day. ACIJ2 later used CA1's complaints as support for an unfavorable October 2016 performance evaluation.

23. August 2016: In a counseling letter ACIJ2 threatened Complainant with termination.

24. August 2016: Consistent with ACIJ1's practice, ACIJ2 initially refused to authorize travel expenses that Complainant legitimately incurred for required work travel. Specifically, she refused to reimburse parking expenses for Complainant's attendance at the Immigration Judge training conference because of some undisclosed policy about carpooling or use of Metrorail.

25. During September 2016: ACIJ2 and CA1 developed a court hearing schedule that dedicated two days a week of Complainant's time to hearing aged cases on the dockets of two identified judges. This allowed other Arlington judges to shed their unwanted aged cases by having those cases transferred to Complainant's docket. Complainant was the only judge who had that schedule.

26. October 2016: ACIJ2 issued Complainant an unfavorable performance evaluation, stating Complainant needs improvement in the area of "professionalism." She cited her August 2016 counseling letter and ACIJ1's August 2015 performance evaluation as support.

27. Throughout 2016 and 2017: ACIJ2 rarely responded to Complainant's emails asking for guidance or instructions. As the most recent FOIA (Freedom of Information Act) request will show, she usually ignores Complainant's emails. When she does respond, she either misses the point or fails to answer the question.

28. Throughout 2017: ACIJ2 denied Complainant's requests for time off the bench to prepare written decisions. She then criticized Complainant for not finishing her written decisions in a timely fashion though Complainant repeatedly explained that she is in court five days a week, about 7 hours a day and has no time to prepare written opinions. While denying Complainant's request for time off the bench to write decisions, ACIJ2 has assisted similarly situated three identified judges by writing opinions for them.

29. March 28, 2017: ACIJ2 finally alerted Complainant to the ethics complaint that was filed with OCIJ (the Office of the Chief Immigration Judge) on March 1, 2018. She requested a response to the complaint within 2 weeks. When Complainant requested an extension of time, she gave an additional 2 weeks, until April 30, 2017.

30. March 2017: After two judges' aged cases had been transferred to Complainant, ACIJ2 switched to yet another new hearing schedule which allowed her to transfer more than 2,000 cases that had been parked on the three inactive dockets known as "visiting judges' dockets" to Complainant's docket.

31. May 2017: ACIJ2 sent Complainant on a two-week detail to New Mexico which prevented Complainant from responding to the recusal motions in a timely fashion.

32. May 2017: ACIJ2 required Complainant to listen to the audio recordings of the hearings that were the subject of the ethics complaint in her office, and refused to authorize the Court Administrator to give Complainant CD copies of the audio-recordings until Complainant copied the Director of EOIR (Executive Office of Immigration Review) and the Chief Immigration Judge on an email exchange about the denial.

33. May 2017: ACIJ2's Executive Administrative Assistant accused Complainant of being late in paying her government credit card balance. In fact, the Agency was responsible for paying the travel expenses because Complainant had to sign over her rights to reimbursement when she used the on-line travel service to make travel arrangements.

34. August 1, 2017: ACIJ2 issued a final performance evaluation stating that Complainant needed improvement in the area of professionalism. The performance evaluation relied on the ethics complaint that two private bar attorneys filed with OCIJ on March 1, 2017, but which OCIJ had not resolved by the time ACIJ2 issued the performance evaluation. The final performance evaluation criticized Complainant for "unprofessional exchanges" in court hearings.

35. August 29, 2017: Complainant was notified that the Office of General Counsel received a letter of inquiry from the Agency's Office of Professional Responsibility (OPR) about the ethics complaint by two private attorneys. Complainant was required to submit a written response to the OPR.

36. September and October 2017: After the Board of Immigration Appeals dismissed 7 interlocutory appeals that the two private attorneys, identified claim 35 above, filed from Complainant's decisions to deny their motions for recusal, on remand ACIJ2 nevertheless reassigned the 7 cases to other Arlington judges for handling. This effectively overruled Complainant's decision to deny recusal and the Board's decision to dismiss the two private attorneys' interlocutory appeals.

37. October 2017: ACIJ2 sent Complainant on another two-week detail to Jena, Louisiana, so that Complainant had to work on the OPR response while on the detail - away from home, without all of her documents, and unable to communicate with her attorneys because she was in court 9 hours a day and stayed late into the evening to write opinions.

38. November 2017**:** Complainant was not selected for a six-month detail to the Board of Immigration Appeals. Instead, a white male judge who was less efficient than Complainant in disposing of his cases was selected. Before he went on detail, ACIJ2 transferred many of his aged cases to Complainant's docket. She also prepared orders and opinions in some of his cases, so that he would not fall behind on his caseload while he is on detail.

39. May 1, 2018**:** ACIJ2 accused Complainant of taking leave without approval, when in fact she had previously approved the leave.

Complainant does not challenge the framing of the claims.  After its investigation into the complaint, the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an EEOC Administrative Judge (AJ).  Complainant requested a hearing.  The Agency submitted a motion for a decision without a hearing.  The AJ subsequently issued a decision by summary judgment in favor of the Agency.  Complainant failed to show that the Agency's discrete actions (i.e., managing and distributing hearing caseloads to its judges, assessing her conduct and lack of professionalism, responding to private attorneys' complaint against her, and other general workplace issues) of which she disagreed or felt unfair were based on any discrimination as alleged or in retaliation for her prior EEO activity.  Regarding her harassment claim, Complainant failed to show that it was related to any protected basis of discrimination.

The Agency issued its final order adopting the AJ's finding that Complainant failed to prove discrimination as alleged.  The instant appeal followed.

## ANALYSIS AND FINDINGS

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact.  29 C.F.R. § 1614.109(g).  An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party.  Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2D 103, 105 (1st Cir. 1988).  A fact is "material" if it has the potential to affect the outcome of the case.  In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, *de novo*.  See 29 C.F.R. § 1614.405(a)(stating that a "decision on an appeal from an Agency's final action shall be based on a *de novo* review…"); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), at Chap. 9, § VI.B. (as revised, August 5, 2015)(providing that

an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed *de novo*).

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory animus. Here, however, Complainant has failed to establish such a dispute. Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact-finder could not find in Complainant's favor.

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated against by the Agency as alleged.

## CONCLUSION

Accordingly, we AFFIRM the Agency's final order adopting the AJ's decision finding no discrimination.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx.

9                                               2020002553

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.  In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period.  See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP).  See 29 C.F.R. § 1614.403(g).  Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.  **Any supporting documentation must be submitted together with the request for reconsideration.**  The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.  See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

                        10                        2020002553

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature]*

Carlton M. Hadden, Director
Office of Federal Operations

<u>March 24, 2021</u>
Date