Exhibit K

*Bain v. Office of the Attorney General*, Civ. A. No. 21-01751 (RDM)
Defendants' Motion to Dismiss, In Part



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Quynh V. Bain, a/k/a
Tammi W.,[1]
Complainant,

v.

Merrick B. Garland,
Attorney General,
Department of Justice,
Agency.

Request No. 2021003097

Appeal No. 2020002553

Hearing No. 570-2016-01466XX

Agency No. EOI-2016-00137

DECISION ON REQUEST FOR RECONSIDERATION

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in Tammi W. v. Dep't of Justice, EEOC Appeal No. 2020002553 (Mar. 24, 2021). EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c).

During the period at issue, Complainant worked as an Immigration Judge, SL-04, at the Agency's Executive Office for Immigration Review, Immigration Court in Arlington, Virginia.

On December 10, 2015, Complainant filed a formal EEO complaint consisting of the following claims:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2 2021003097

A. Was Complainant subjected to a hostile work environment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), sex (female), national origin (Vietnamese), or disability (migraines/ record of medical conditions requiring Family Medical Leave Act (FMLA) leave) when, from March 11, 2015 to January 2016:

1. She was the only one of the four Headquarters Immigration court judges who was required to work on a detained docket full-time. The other judges were assigned to handle a combination of detained and non-detained cases, or only non-detained cases. Her detained docket consisted of aged detained cases (i.e., pending more than 60 days) that other detained judges were allowed to reassign to her. Such aged detained cases often involved challenges to long-term detention by habeas corpus and other litigation risks.

2. In those aged detained cases (i.e., detained cases pending over 60 days), Complainant was not permitted to hold status conferences or conduct bond hearings to manage her caseload. She was expected to complete each evidentiary hearing on the same day. If she did not, Assistant Chief Immigration Judge (ACJI1) chided her from being inefficient. She was not allowed to see the case files ahead of time and often received a case file the day before the hearing. Pleadings filed with the York court were not delivered to the Complainant in time for the hearings.

3. She was denied the eight hours of administrative time per pay period to which every judge was entitled under the Agency's Collective Bargaining Agreement with the union in order to work on written motions and orders and prepare for hearings.

4. Rather than providing her with a functional VTC (Video Tele-Conference) system to conduct hearings for York detainees, ACIJ1 required Complainant to travel to York to conduct hearings in person. Complainant made seven such trips during June and July 2015.

5. Though Complainant was asked to make two additional trips to York, Pennsylvania and received approval from other Agency personnel, ACIJ1 refused to approve her travel for those trips after she had completed the travel, and Complainant was accordingly denied reimbursement for approximately $400 in travel expenses.

6. ACIJ1 then issued Complainant a letter of counseling in which he falsely claimed that she had violated the Agency's travel regulations by making the two trips to York.

7. Though Complainant pointed out that she had received authorization for the two additional trips from other Agency personnel and that the letter of counseling cited a repealed regulation, ACIJ1 refused to rescind the letter of counseling.

8. Complainant's similarly situated co-workers were allowed to assign her cases from their dockets that were aged (i.e., pending more than five years) and/or complex, and she was forced to conduct hearings and issue oral or written decisions in their cases. The cases were then returned to the other judges' dockets once Complainant had done all of the work to complete the cases, with the result that the other judges' case completion statistics were significantly higher than Complainant's.

9. For cases that were assigned to Complainant, the York court repeatedly postponed hearings in Complainant's cases in order to open up time slots for hearings in cases that were assigned to four identified judges so that she had to complete cases assigned to those judges before she could complete cases that were assigned to her.

10. When Complainant pointed out the unfairness of being forced to hear and complete large numbers of other judges' cases and asked for additional administrative time, ACIJ1 issued a reprimand letter in March 2015, accusing her of displaying intemperate and unprofessional behavior. In August 2015, ACIJ1 incorporated that letter into an unfavorable performance evaluation that cited a lack of professionalism as a deficiency needing correction.

11. After ACIJ1 was promoted to Acting Deputy Chief Immigration Judge for the East Coast in July 2015, he was succeeded by an identified ACIJ (ACIJ2) in Arlington and another identified ACIJ (ACIJ3) in York. Due to the high number of York cases which had been transferred to her docket for the benefit of other judges that involved habeas corpus petitions, Complainant was required by ACIJ2 to cancel her two-week Christmas vacation in late 2015, to early 2016, in order to complete all of her York cases by the end of the year. In early 2016, the Agency finally agreed to transfer Complainant to the Arlington court.

12. Following Complainant's transfer to the Arlington court, ACIJ2 continued the practice of assigning Complainant a substantially higher number of cases than her colleagues.

13. In July 2016, during the investigation of the instant complaint, ACIJ2 emailed Complainant and her colleagues a plan for an equitable distribution of cases going forward. She then failed to implement that plan and instead modified Complainant's case assignment plan twice more.

14. The first modified plan had Complainant handle aged non-detained cases (i.e., pending more than 5 years) for several colleagues who were unable to complete their caseloads within a reasonable time. Complainant was the only judge who had this case assignment plan. The second modified plan required Complainant to conduct hearings in approximately 200 new or reassigned "family unit" cases a week. In just two years, Complainant accrued approximately 6,000 family unit cases and completed 1,400 cases. Because cases involving family units were prioritized, Complainant had to schedule hearings in a timely fashion and complete the cases expeditiously.

B. Was Complainant subjected to disparate treatment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), sex (female), national origin (Vietnamese), or disability (record of medical condition requiring FMLA leave) when:

15. In August 2015, ACIJ1 issued Complainant a performance evaluation that included a deficiency rating for professionalism, included numerous inaccuracies, and did not reflect her actual performance. The rating was issued to Complainant on August 29, 2015.

16. ACIJ1 cited the August 2015 rating as a basis for denying Complainant permission to participate in special work opportunities, including serving as a guest speaker at a training conference and serving as a pro bono liaison judge.

17. In November 2015, shortly after Complainant filed the instant EEO complaint, the Agency denied her application to work for the Board of Immigration Appeal (BIA) as a Board Member.

18. On July 28, 2016, Complainant received a letter of counseling based on her objections to the continuing unfair distribution of cases by ACIJ2.

C. Complainant was subjected to the following additional adverse acts that were a continuation of the alleged hostile work environment based on race (Asian), sex (female), national origin (Vietnamese), and/or reprisal (for prior EEO activity) when:

19. From January 2016 to present: ACIJ2 has continued the practice of assigning to Complainant a disproportionate number of cases compared to her colleagues such that from April 2016, to April 2018, her caseload went from zero to 4,500 Arlington cases. By contrast, ACIJ2 made similarly situated judges' case statistics look better by placing many of their cases on "visiting judges" dockets known as VJI, JV2, and VJ3, though there were no visiting judges detailed to the Arlington court to hear those cases.

20. From January 2016, to present: ACIJ2 and the Court Administrator (CAI) have continued to assign aged cases (some between 15 and 20 years old) to

5                                                                             2021003097

Complainant for completion and allowed other Arlington judges to assign their unwanted aged cases to Complainant.

21. From March 2016, to present: By having other judges reassign their cases to Complainant, ACIJ2 created schedule conflicts that Complainant must then resolve on her own. When Complainant asked that one judge take back a case that caused a double-booking on her calendar ACIJ2 sided with the other judge.

22. From March 2016, to present: ACIJ2 instructed court staff to structure Complainant's calendar such that she had to hear many more master calendar cases per day than her colleagues in the Arlington court. For example, during Sumer 2016, Complainant heard approximately 100+ master calendar hearings every Monday and Tuesday, while her colleagues heard between 15 and 50 master calendar hearings on their master calendar days.

23. From March 2016, to present: When Complainant requested that CA1 reduce the number of master calendar hearings on her hearing calendar, CA1 complained to ACIJ2 that Complainant had complained about the workload. She also complained to ACIJ2 that Complainant was being unprofessional when she reported the chronic problems of missing case files, double-booking, and not having enough time to hear all 100+ cases on her calendar in a single day. ACIJ2 later used CA1's complaints as support for an unfavorable October 2016 performance evaluation.

24. August 2016: In a counseling letter ACIJ2 threatened Complainant with termination.

25. August 2016: Consistent with ACIJ1's practice, ACIJ2 initially refused to authorize travel expenses that Complainant legitimately incurred for required work travel. Specifically, she refused to reimburse parking expenses for Complainant's attendance at the Immigration Judge training conference because of some undisclosed policy about carpooling or use of Metrorail.

26. During September 2016: ACIJ2 and CA1 developed a court hearing schedule that dedicated two days a week of Complainant's time to hearing aged cases on the dockets of two identified judges. This allowed other Arlington judges to shed their unwanted aged cases by having those cases transferred to Complainant's docket. Complainant was the only judge who had that schedule.

27. October 2016: ACIJ2 issued Complainant an unfavorable performance evaluation, stating Complainant needs improvement in the area of "professionalism." She cited her August 2016 counseling letter and ACIJ1's August 2015 performance evaluation as support.

28. Throughout 2016 and 2017: ACIJ2 rarely responded to Complainant's emails asking for guidance or instructions. As the most recent FOIA (Freedom of Information Act) request will show, she usually ignores Complainant's emails. When she does respond, she either misses the point or fails to answer the question.

29. Throughout 2017: ACIJ2 denied Complainant's requests for time off the bench to prepare written decisions. She then criticized Complainant for not finishing her written decisions in a timely fashion though Complainant repeatedly explained that she is in court five days a week, about 7 hours a day and had no time to prepare written opinions. While denying Complainant's request for time off the bench to write decisions, ACIJ2 has assisted similarly situated three identified judges by writing opinions for them.

30. March 28, 2017: ACIJ2 finally alerted Complainant to the ethics complaint that was filed with OCIJ (the Office of Chief Immigration Judge) on March 1, 2018. She requested a response to the complaint within 2 weeks. When Complainant requested an extension of time, she gave an additional 2 weeks, until April 30, 2017.

31. March 2017: After two judges' aged cases had been transferred to Complainant, ACIJ2 switched to yet another new hearing schedule which allowed her to transfer more than 2,000 cases that had been parked on the three inactive dockets known as "visiting judges' dockets" to Complainant's docket.

32. May 2017: ACIJ2 sent Complainant on a two-week detail to New Mexico which prevented Complainant from responding to the recusal motions in a timely fashion.

33. May 2017: ACIJ2 required Complainant to listen to the audio recordings of the hearings that were the subject of the ethics complaint in her office, and refused to authorize the Court Administrator to give Complainant CD copies of the audio-recordings until Complainant copied the Director of EOIR (Executive Office of Immigration Review) and the Chief Immigration Judge on an email exchange about the denial.

34. May 2017: ACIJ2's Executive Administrative Assistant accused Complainant of being late in paying her government credit card balance. In fact, the Agency was responsible for paying the travel expenses because Complainant had to sign over her rights to reimbursement when she used the on-line travel service to make travel arrangement.

35. August 1, 2017: ACIJ2 issued a final performance evaluation stating that Complainant needed improvement in the area of professionalism. The

performance evaluation relied on the ethics complaint that two private bar attorneys filed with OCIJ on March 1, 2017, but which OCIJ had not resolved by the time ACIJ2 issued the performance evaluation. The final performance evaluation criticized Complainant for "unprofessional exchanges" in court hearings.

36. August 29, 2017: Complainant was notified that the Office of General Counsel received a letter of inquiry from the Agency's Office of Professional Responsibility (OPR) about the ethics complaint by two private attorneys. Complainant was required to submit a written response to the OPR.

37. September and October 2017: After the Board of Immigration Appeals dismissed 7 interlocutory appeals that the two private attorneys, identified claim 35 above, filed from Complainant's decisions to deny their motions for recusal, on remand ACIJ2 nevertheless reassigned the 7 cases to other Arlington judges for handling. This effectively overruled Complainant's decision to deny recusal and the Board's decision to dismiss the two private attorneys' interlocutory appeals.

38. October 2017: ACIJ2 sent Complainant on another two-week detail to Jena, Louisiana, so that Complainant had to work on the OPR response while on the detail away from home, without all of her documents, and unable to communicate with her attorneys because she was in court 9 hours a day and stayed late into the evening to write opinions.

39. November 2017: Complainant was not selected for a six-month detail to the Board of Immigration Appeals. Instead, a white male judge who was less efficient than Complainant in disposing of his cases was selected. Before he went on detail, ACIJ2 transferred many of his aged cases to Complainant's docket. She also prepared orders and opinions in some of his cases, so that he would not fall behind on his caseload while he is on detail.

40. May 1, 2018: ACIJ2 accused Complainant of taking leave without approval, when in fact she had previously approved the leave.

On February 26, 2020, an EEOC Administrative Judge (AJ) issued a decision by summary judgment, over Complainant's objection, in favor of the Agency. In doing so, the AJ acknowledged that Complainant alleged numerous facts were in dispute. However, the AJ determined that Complainant's disputes were either not material or relied on assertions not supported by the record. Consequently, the AJ adopted and incorporated by reference the Agency's motion for summary judgment.

Based on the evidence of record, the AJ determined that Complainant failed to demonstrate that the discrete acts identified in claim B were based on discriminatory or retaliatory animus.[2] The AJ further determined, regarding Complainant's harassment claims, that the record lacked evidence of discriminatory motive.[3]

On April 2, 2020, the Agency issued a final order adopting the AJ's finding of no discrimination. Complainant appealed.

In EEOC Appeal No. 2020002553, we determined that Complainant failed to identify any material facts in dispute. The decision further determined that the AJ correctly concluded that the preponderance of the evidence did not establish that Complainant was discriminated against by the Agency as alleged.

In the instant request for reconsideration, Complainant submits statements expressing her disagreement with the appellate decision and reiterates arguments previously made during the original appeal. The Commission emphasizes that a request for reconsideration is not a second appeal to the Commission. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007). Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request.

---

[2] Although the AJ did not analyze these claims individually, the Agency's April 5, 2019 motion for summary judgement, which the AJ summarily adopted, indicated that: (1) Complainant's August 2015 rating was based on an assessment of Complainant's performance against the standards set forth in the rating criteria; (2) Complainant was denied permission to speak at a training conference based on her recent displays of unprofessional conduct; (3) Complainant was not selected to be a BIA Board Member because she was not one of the most qualified candidates, she was not selected for an interview, and the selection panel had made interview determinations in September 2015 which occurred before Complainant contacted the EEO office in October 2015; and (4) Complainant was issued a Letter of Counseling because of her unprofessional conduct with a co-worker.

[3] While the AJ did not specifically address each harassment claim in the decision, the Agency's April 5, 2019 motion for summary judgment, which the AJ summarily adopted, indicated that these claims involved Complainant's disagreements with her supervisors' decisions, their perceptions about her behavior, and their actions taken to correct Complainant's behavior. The Agency noted that Complainant failed to demonstrate that any of these actions had discriminatory animus.

9                                                                                            2021003097

The decision in EEOC Appeal No. 2020002553 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

Because we find that the criteria of 29 C.F.R. § 1614.405(c) has not been met, we need not address the Agency's alternative argument, stated on appeal, for dismissal of Complainant's request for reconsideration. Additionally, we deny Complainant's request to reopen the instant proceedings and hold in abeyance pending resolution of Complainant's subsequent termination claim filed with the Merit Systems Protection Board.[4]

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office facility or department in which you work.

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

---

[4] Complainant states on appeal that the Agency issued a proposal to terminate her employment on February 27, 2020, one day after the AJ issued the instant February 26, 2020 decision. Complainant states that her termination was completed on September 17, 2020.

            10            2021003097

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature: Carlton M. Hadden]*

Carlton M. Hadden, Director
Office of Federal Operations

<u>August 19, 2021</u>
Date