Exhibit F

*Bain v. Office of the Attorney General*, Civ. A. No. 21-01751 (RDM)
Defendants' Motion to Dismiss, In Part



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

131 M Street, N.E.
Suite 4NW02F
Washington, DC 20507
(202) 419-0713
1-800-669-4000

|  |  |
|---|---|
| Quynh V. Bain<br>    Complainant,<br><br>           v.<br><br>William P. Barr, Attorney General,<br>U.S. Department of Justice,<br>    Agency | )<br>)<br>)<br>)<br>) EEOC No.  570-2016-01466XX<br>) Agency No. EOI-2016-00137<br>)<br>) Administrative Judge Antoinette Eates<br>)<br>)<br>)   Date:    February 26, 2020<br>)<br>) |

## ORDER ENTERING JUDGMENT

     For the reasons set forth in the enclosed Decision, judgment in the above-captioned matter is entered.  A Notice to The Parties explaining their appeal rights and responsibilities is attached to the Decision.   The hearing record is uploaded to the electronic docket for this case.

                                       It is so ORDERED.

For the Commission:

                                       Antoinette Eates
                                       Administrative Judge
                                         Telephone: (202) 419-0762
                                         Antoinette.Eates@eeoc.gov

Order and Decision uploaded to EEOC's electronic portal and emailed on February 26, 2020 to:

Complainant
Quynh Bain
quynhb@verizon.net

1

<u>Complainant's Representative</u>
Heather G. White, Esq.
The Federal Practice Group
hwhite@fedpractice.com

**<u>Agency Representative</u>**
Maria N. Coleman
Maria.coleman@usdoj.gov



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N.E.
Suite 4NW02F
Washington, DC 20507
(202) 419-0713
1-800-669-4000

|  |  |
|---|---|
| Quynh V. Bain<br>    Complainant,<br><br>            v.<br><br>William P. Barr, Attorney General,<br>U.S. Department of Justice,<br>    Agency | ) <br> ) <br> ) <br> ) <br> ) EEOC No.  570-2016-01466XX<br> ) Agency No. EOI-2016-00137<br> ) <br> ) Administrative Judge Antoinette Eates<br> ) <br> ) <br> ) Date:    February 26, 2020<br> ) <br> ) |

## **DECISION**

   For the reasons set forth below, this Decision is being issued without a hearing pursuant to 29 C.F.R. § 1614.109(g)(2019).  Quynh V. Bain ("Complainant") filed a formal complaint of discrimination against the U.S. Department of Justice, Executive Office of Immigration Review ("Agency" or "EOIR") on December 10, 2015, alleging the Agency discriminated against her in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e and Section 501 of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 791.  Following the Agency's investigation, Complainant requested a hearing on her complaint with the Equal Employment Opportunity Commission (EEOC), Washington Field Office (WFO).

   On March 23, 2018, I issued an Order of Acknowledgment and Scheduling of Initial Teleconference, and held an Initial Teleconference on May 1, 2018.  On May 2, 2018, I issued a Case Management Order, setting forth hearing procedures and deadlines for discovery, dispositive motions and responses.  In the Case Management Order, I also denied Complainant's motion for sanctions for an untimely investigation by the Agency and granted Complainant's first motion to amend.  By Order dated June 5, 2018, I granted in part and denied in part Complainant's second motion to amend, filed on May 7, 2018, and opposed by the Agency.  The discovery process was lengthy because the parties had numerous disputes requiring significant attention and resources.  My orders on the parties' disputes and

1

sanctions motions have been uploaded to the electronic portal for this case and are part of the record in this matter.

After discovery, the Agency filed a Motion for Summary Judgment ("Agency's MSJ" or "Agency's Motion") on April 5, 2019. Complainant filed an Opposition to the Agency's Motion on May 6, 2019. On May 9, 2019, Complainant filed "Corrected Exhibits" to her Opposition. On May 20, 2019, the Agency filed a Reply to Complainant's Opposition. Also on May 20, 2019, the Agency filed a Motion to Strike the "Corrected Exhibits" and a Renewed Motion for Protective Order.[1] On May 23, 2019, Complainant filed an Opposition to the Agency's motion to strike and a Motion for Leave to Amend Statement of Facts, which included an amended statement of disputed facts and a new Exhibit 9 to the statement of facts. On May 30, 2019, the Agency filed an Opposition to Complainant's motion for leave to file an amended statement of facts. After consideration of all of these filings, and despite Complainant's clear untimeliness in filing her "Corrected Exhibits," Amended Statement of Disputed Facts and new Exhibit 9, I will exercise my discretion to consider the untimely filings and include them as part of the record for the sake of full consideration of Complainant's arguments.

The record consists of the Report of Investigation ("ROI") and the parties' summary judgment filings and other filings, as outlined above. After consideration of the entire record, and viewing the facts in the light most favorable to Complainant, I hereby GRANT the Agency's Motion and issue this Decision without a hearing.[2]

### Issues and Claims for Adjudication[3]

A. Was Complainant subjected to a hostile work environment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), gender (female), national origin (Vietnamese) or disability (migraines/record of medical conditions requiring FMLA leave) when, from March 11, 2015 to January 2016:

1. She was the only one of the four Headquarters Immigration court judges who was required to work on a detained docket full-time. The other judges were assigned to handle a combination of detained and non-detained cases, or only non-detained cases. Her detained

---

[1] By separate order, I am granting the Agency's Renewed Motion for Protective Order.

[2] In reaching this decision, I have considered all documents and arguments presented by the parties in this matter, even if they are not specifically referenced herein.

[3] As previously determined, and as set forth by Complainant, the claims listed under section A are background evidence for the hostile work environment claim, and claims listed under section B are discrete acts raising individual claims for relief. Claims under section C, which were added pursuant to Complainant's second motion to amend, are additional examples of harassment in support of Complainant's hostile work environment claim.

docket consisted of aged detained cases (*i.e.* pending more than 60 days) that other detained judges were allowed to reassign to her. Such aged detained cases often involved challenges to long-term detention by habeas corpus and other litigation risks;

2. In those aged detained cases (*i.e.* detained cases pending over 60 days), Complainant was not permitted to hold status conferences or conduct bond hearings to manage her caseload. She was expected to complete each evidentiary hearing on the same day. If she did not, Assistant Chief Immigration Judge (ACIJ) Santoro chided her for being inefficient. She was not allowed to see the case files ahead of time and often received a case file the day before the hearing. Pleadings filed with the York court were not delivered to the Complainant in time for the hearings;

3. She was denied the eight hours of administrative time per pay period to which every judge was entitled under the Agency's Collective Bargaining Agreement (CBA) with the union in order to work on written motions and orders and prepare for hearings;

4. Rather than providing her with a functional VTC system to conduct hearings for York detainees, ACIJ Santoro required Complainant to travel to York to conduct hearings in person. Complainant made seven such trips during June and July 2015;

5. Though Complainant was asked to make two additional trips to York, PA and received approval from other Agency personnel, ACIJ Santoro refused to approve her travel for those trips after she had completed the travel, and Complainant was accordingly denied reimbursement for approximately $400 in travel expenses;

6. ACIJ Santoro then issued Complainant a letter of counseling in which he falsely claimed that she had violated the agency's travel regulations by making the two trips to York;

7. Though Complainant pointed out that she had received authorization for the two additional trips from other agency personnel and that the letter of counseling cited a repealed regulation, ACIJ Santoro refused to rescind the letter of counseling;

8. Complainant's similarly-situated coworkers were allowed to assign her cases from their dockets that were aged (*i.e.* pending more than five years) and/or complex, and she was forced to conduct hearings and issue oral or written decisions in their cases. The cases were then returned to the other judges' dockets once Complainant had done all of the work to complete the cases, with the result that the other judges' case completion statistics were significantly higher than Complainant's;

9. For cases that were assigned to Complainant, the York court repeatedly postponed hearings in Complainant's cases in order to open up time slots for hearings in cases that were assigned to Judges Durling, Arthur, Owens, and Hladylowycz, so that she had to complete cases assigned to those judges before she could complete cases that were assigned to her;

10. When Complainant pointed out the unfairness of being forced to hear and complete large numbers of other judges' cases and asked for additional administrative time, ACIJ Santoro issued a reprimand letter in March 2015 accusing her of displaying intemperate and

unprofessional behavior. In August 2015, ACIJ Santoro incorporated that letter into an unfavorable performance evaluation that cited a lack of professionalism as a deficiency needing correction;

11. After ACIJ Santoro was promoted to Acting Deputy Chief IJ for the East Coast in July 2015, he was succeeded by ACIJ Nadkarni in Arlington and ACIJ Weil in York. Due to the high number of York cases that had been transferred to her docket for the benefit of other judges that involved *habeas corpus* petitions, Complainant was required by ACIJ Nadkarni to cancel her two-week Christmas vacation in late 2015 to early 2016 in order to complete all of her York cases by the end of the year. In early 2016, the Agency finally agreed to transfer the Complainant to the Arlington court;

12. Following Complainant's transfer to the Arlington court, ACIJ Nadkarni continued the practice of assigning Complainant a substantially higher number of cases than her colleagues; and,

13. In July 2016, during the investigation of the instant complaint, ACIJ Nadkarni emailed Complainant and her colleagues a plan for an equitable distribution of cases going forward. She then failed to implement that plan and instead modified the Complainant's case assignment plan twice more. The first modified plan had Complainant handle aged non-detained cases (*i.e*. pending more than 5 years) for several colleagues who were unable to complete their caseloads within a reasonable time. Complainant was the only judge who had this case assignment plan. The second modified plan required Complainant to conduct hearings in approximately 200 new or reassigned "family unit" cases a week. In just two years, Complainant accrued approximately 6,000 family unit cases and completed 1,400 cases. Because cases involving family units were prioritized, Complainant had to schedule hearings in a timely fashion and complete the cases expeditiously.

B. Was Complainant subjected to disparate treatment based on reprisal (prior EEO activity) and/or discrimination based on race (Asian), gender (female), national origin (Vietnamese) or disability (record of medical condition requiring FMLA leave) when:

14. In August 2015, ACIJ Santoro issued Complainant a performance evaluation that included a deficiency rating for professionalism, included numerous inaccuracies, and did not reflect her actual performance. The rating was issued to Complainant on August 29, 2015;

15. ACIJ Santoro cited the August 2015 rating as a basis for denying Complainant permission to participate in special work opportunities, including serving as a guest speaker at a training conference and serving as a pro bono liaison judge;

16. In November 2015, shortly after Complainant filed the instant EEO complaint, the Agency denied her application to work for the Board of Immigration Appeals as a Board Member; and,

17. On July 28, 2016, Complainant received a letter of counseling based on her objections to the continuing unfair distribution of cases by ACIJ Nadkarni.

C. Complainant was subjected to the following additional adverse acts that were a continuation of the alleged hostile work environment based on race (Asian), gender (female), national origin (Vietnamese), and/or reprisal (for prior EEO activity):

18. From January 2016 to present: ACIJ Nadkarni has continued the practice of assigning to Complainant a disproportionate number of cases compared to her colleagues such that from April 2016 to April 2018, her caseload went from zero to 4,500 Arlington cases. By contrast, ACIJ Nadkarni made similarly situated judges' case statistics look better by placing many of their cases on "visiting judges" dockets known as VJ1, VJ2, and VJ3, though there were no visiting judges detailed to the Arlington court to hear those cases;

19. From January 2016 to present: ACIJ Nadkarni and Court Administrator Deborah Castro have continued to assign aged cases (some between 15 and 20 years old) to Complainant for completion and allowed other Arlington judges to assign their unwanted aged cases to Complainant;

20. From March 2016 to present: By having other judges reassign their cases to Complainant, ACIJ Nadkarni created schedule conflicts that Complainant then must resolve on her own. When Complainant asked that one judge take back a case that caused a double-booking on her calendar ACIJ Nadkarni sided with the other judge;

21. From March 2016 to present: ACIJ Nadkarni instructed court staff to structure Complainant's calendar such that she had to hear many more master calendar cases per day than her colleagues in the Arlington court. For example, during Summer 2016, Complainant heard approximately 100+ master calendar hearings every Monday and Tuesday, while her colleagues heard between 15 and 50 master calendar hearings on their master calendar days;

22. From March 2016 to present: When Complainant requested that the court administrator (CA Castro) reduce the number of master calendar hearings on her hearing calendar, Ms. Castro complained to ACIJ Nadkarni that Complainant had complained about the workload. She also complained to ACIJ Nadkarni that Complainant was being unprofessional when she reported the chronic problems of missing case files, double-booking, and not having enough time to hear all 100+ cases on her calendar in a single day. ACIJ Nadkarni later used Ms. Castro's complaints as support for an unfavorable October 2016 performance evaluation.

23. August 2016: In a counseling letter ACIJ Nadkarni threatened Complainant with termination.

24. August 2016: Consistent with ACIJ Santoro's practice, ACIJ Nadkarni initially refused to authorize travel expenses that Complainant legitimately incurred for required work travel. Specifically, she refused to reimburse parking expenses for Complainant's attendance at the IJ training conference because of some undisclosed policy about carpooling or use of Metrorail.

25. During September 2016:  ACIJ Nadkarni and Court Administrator Castro developed a court hearing schedule that dedicated two days a week of Complainant's time to hearing aged cases on the dockets of Judges Larry Burman and Paul Schmidt (ret.).  This allowed other Arlington judges to shed their unwanted aged cases by having those cases transferred to Complainant's docket.  Complainant was the only judge who had that schedule.

26. October 2016: ACIJ Nadkarni issued Complainant an unfavorable performance evaluation, stating Complainant needs improvement in the area of "professionalism."  She cited her August 2016 counseling letter and ACIJ's Santoro's August 2015 performance evaluation as support.

27. Throughout 2016 and 2017:  ACIJ Nadkarni rarely responded to Complainant's emails asking for guidance or instructions.  As the most recent FOIA request will show, she usually ignores Complainant's emails.  When she does respond, she either misses the point or fails to answer the question.

28. Throughout 2017:  ACIJ Nadkarni denied Complainant's requests for time off the bench to prepare written decisions.  She then criticized Complainant for not finishing her written decisions in a timely fashion though Complainant repeatedly explained that she is in court five days a week, about 7 hours a day and has no time to prepare written opinions.  While denying Complainant's request for time off the bench to write decisions, ACIJ Nadkarni has assisted similarly-situated judges (such as Judges Snow, Burman, and Owens) by writing opinions for them.

29. March 28, 2017:  ACIJ Nadkarni finally alerted Complainant to the ethics complaint that was filed with OCIJ on March 1, 2018.  She requested a response to the complaint within 2 weeks.  When Complainant requested an extension of time, she gave an additional 2 weeks, until April 30, 2017.

30. March 2017:  After Judges Burman's and Schmidt's aged cases had been transferred to Complainant, ACIJ Nadkarni switched to yet another new hearing schedule which allowed her to transfer more than 2,000 cases that had been parked on the three inactive dockets known as "visiting judges' dockets"  to Complainant's docket.

31. May 2017:  ACIJ Nadkarni sent Complainant on a two-week detail to New Mexico which prevented Complainant from responding to the recusal motions in a timely fashion.

32. May 2017**:** ACIJ Nadkarni required Complainant to listen to the audio recordings of the hearings that were the subject of the ethics complaint in her office, and refused to authorize the Court Administrator to give Complainant CD copies of the audio-recordings until Complainant copied the Director of EOIR (James McHenry) and the Chief Immigration Judge (Mary Beth Keller) on an email exchange about the denial.

33. May 2017: ACIJ Nadkarni's Executive Administrative Assistant, Susana Ortiz-Ang, accused Complainant of being late in paying her government credit card balance.  In fact, the agency was responsible for paying the travel expenses because Complainant had to sign over her rights to reimbursement when she used the on-line travel service to make travel arrangements.

34. August 1, 2017:  ACIJ Nadkarni issued a final performance evaluation stating that Complainant needed improvement in the area of professionalism.  The performance evaluation relied on the ethics complaint that two private bar attorneys filed with OCIJ on March 1, 2017 but which OCIJ had not resolved by the time ACIJ Nadkarni issued the performance evaluation.  The final performance evaluation criticized Complainant for "unprofessional exchanges" in court hearings.

35. August 29, 2017:  Complainant was notified that the OGC received a letter of inquiry from the DOJ Office of Professional Responsibility about the ethics complaint by Blessinger and Boykin.  Complainant was required to submit a written response to the OPR.

36. September and October 2017:  After the Board of Immigration Appeals dismissed 7 interlocutory appeals that attorneys Blessinger and Boykin filed from Complainant's decisions to deny their motions for recusal, on remand ACIJ Nadkarni nevertheless reassigned the 7 cases to other Arlington judges for handling.  This effectively overruled Complainant's decision to deny recusal and the Board's decision to dismiss attorneys Blessinger and Boykin's interlocutory appeals.

37. October 2017:  ACIJ Nadkarni sent Complainant on another two-week detail to Jena, Louisiana, so that Complainant had to work on the OPR response while on the detail - away from home, without all of her documents, and unable to communicate with her attorneys because she was in court 9 hours a day and stayed late into the evening to write opinions.

38. November 2017**:**  Complainant was not selected for a six-month detail to the Board of Immigration Appeals.  Instead, a white male judge who was less efficient than Complainant in disposing of his cases was selected.  Before he went on detail, ACIJ Nadkarni transferred many of his aged cases to Complainant's docket.  She also prepared orders and opinions in some of his cases, so that he would not fall behind on his caseload while he is on detail.

39. May 1, 2018**:**  ACIJ Nadkarni accused Complainant of taking leave without approval, when in fact she had previously approved the leave.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other evidence establish no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* 29 C.F.R. § 1614.109(g); *see also Murphy v. Dep't of the Army*, EEOC Appeal No. 01A04099 at 3 (July 11, 2003) (noting that the regulation governing decisions without a hearing is modeled after the Federal Rules of Civil Procedure, Rule 56). Only disputes over facts that might affect the outcome of the suit under governing law, and not irrelevant or unnecessary factual disputes, will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. *Id.* Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Where the factual context renders his position implausible, the party opposing summary judgment must come forward with strong persuasive evidence to defeat it. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, a complainant "may not rest upon … mere allegations." *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c). Instead, he "must set forth specific facts showing that there is a genuine issue" that requires a hearing. *Id.* To establish a factual dispute, affidavits must "be made on personal knowledge, …set[ting] [forth such] facts as would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see also Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999). Issues of material fact are not "genuine" merely because there is "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In this administrative process, summary judgment may only be granted when the record is sufficiently developed to support a decision without a hearing, keeping in mind the quasi-investigative nature of these proceedings. *See Petty v. Dep't of Defense,* EEOC Appeal No. 01A24206 (July 11, 2003); *Murphy, supra.* Here, I find that the record has been adequately developed, and both parties have had the opportunity to engage in discovery. Complainant was given ample notice of the Agency's MSJ, the Agency provided a comprehensive statement of the undisputed facts, and Complainant had the opportunity to respond, and did respond, to the Agency's MSJ. Because there are no genuine issues of disputed material fact or credibility in this case, I find that summary judgment in favor of the Agency is appropriate.

**FACTS**

Upon review of the Agency's Statement of Undisputed Material Facts at Exhibit 1 of the MSJ and the entire record, I find that the Agency accurately sets forth the undisputed material facts in this case. Although Complainant alleges numerous disputes of fact, I find that the alleged disputes are either not material or rely on assertions that are entirely unsupported by legally sufficient evidence. Therefore, I adopt and incorporate by reference the Agency's statement of undisputed material facts. The Agency's MSJ including the Statement of Undisputed Material Facts, is attached to this Decision. The exhibits to the MSJ are too voluminous to attach, but have been uploaded to EEOC's electronic portal for this case.

**APPLICABLE LAW**

Disparate Treatment

In the absence of direct evidence of discrimination, a disparate treatment claim is examined under the three-part test set forth in *McDonnell-Douglas Corporation v. Green,* 411 U.S. 792 (1973). Under this analysis, a complainant initially must establish a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. *See St Mary's Honor Center. v. Hicks,* 509 U.S. 502, 507 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell-Douglas,* 411 U.S. at 802.

To establish a *prima facie* case of reprisal a complainant must show that: (1) she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the agency that is reasonably likely to deter the charging party or others from engaging in protected activity; and, (4) a nexus exists between the protected activity and the adverse treatment. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)*; McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F. Supp. 318, 324 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976); *Elmore v. United States Postal Serv.*, EEOC Appeal No. 01997056 (Dec. 21, 2001); *Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000); *see also* EEOC Enforcement Guidance on Retaliation and Related Issues § II-B-1 (Aug. 25, 2016).

Once a *prima facie* case is established, the burden shifts to the agency to articulate a legitimate, nondiscriminatory reason for the challenged actions. *Burdine*, 450 U.S. at 253; *McDonnell-Douglas*, 411 U.S. at 802. Ultimately, a complainant must prove, by a preponderance of the evidence, that the agency's articulated reason for its action was not its true reason, but a sham or pretext for unlawful

discrimination. *Burdine,* 450 U.S. at 253; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Hicks,* 509 U.S. at 511; *McDonnell-Douglas,* 411 U.S. at 804.

The *prima facie* inquiry may be dispensed with when an agency, as in this case, articulates legitimate and non-discriminatory reasons for its conduct. *See USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *Holley v. Dep't of Veterans Affairs*, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, a complainant must prove, by a preponderance of the evidence, that an agency's explanation is a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Hostile Work Environment Harassment

To warrant a hearing on her claim of discriminatory hostile work environment harassment, a complainant must present legally sufficient evidence that because of her protected bases, she was subjected to conduct so severe or pervasive that a reasonable person in her position would have considered it hostile or abusive. *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 22 (1993); *see also* Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002 (March 8, 1994).

Regarding her claim of retaliatory harassment, a complainant must show that the alleged harassment was "materially adverse," *i.e.,* that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," regardless of whether the harassment is severe or pervasive enough to create a hostile work environment**.** *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 68; *see also* EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice 915.004, Section I-B, II-B (August 26, 2016).

Regardless of whether a harassment claim is predicated on reprisal or a complainant's protected bases, if the record fails to present genuine issues of material fact that the actions were motivated by unlawful intent, summary judgment will be appropriate, and no further inquiry into liability will be necessary. *See Nicki D. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120133247 (October 15, 2015)*; Complainant v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120132783 (Sept. 11, 2015).

**CONCLUSION AND ORDER**

The Agency's MSJ and Reply to Complainant's Opposition (attached and incorporated in this decision) accurately identify the issues and outline the factual background, establish that there are no genuine disputes of material fact, and provide sound and persuasive analysis of the claims and

Complainant's arguments. I hereby adopt the Agency's Motion and Reply in their entirety. The dispositive motion filings include exhibits that are too voluminous to attach to this decision, but the full filings, including Complainant's Opposition and Amended Statement of Facts, are uploaded to the EEOC electronic portal, to which both parties have access.

In summary, I find that Complainant's allegations amount to mere disagreements and dissatisfaction with the exercise of management authority by her supervisors. With respect to each of her allegations, Complainant presents only unsupported assertions of unlawful motivation and fails to provide legally sufficient evidence that creates an inference of unlawful retaliation or discrimination based on her national origin, race, sex or disability. In other words, although Complainant is deeply dissatisfied with many of the Agency's actions, she has failed to present evidence of a nexus between these actions and her protected bases or her EEO activity. Nor is such evidence contained in the record. Moreover, I find that Complainant has failed to present, nor does the record contain probative evidence that the Agency's reasons for its actions are pretextual.

Here, Complainant disputes a plethora of actions taken by the Agency, as outlined in her complaint, affidavits and Opposition. While Complainant is clearly upset about much of the way she has been supervised and actions to which she has been subjected, her differences of opinion with Agency managers about these actions and her subjective belief of bias on the part of the Agency officials, without more, will not create genuine issues of material fact that warrant a hearing. Contrary to her assertions, my review of the record and the evidence she presents reveals no support for her claims of discrimination and retaliation arising from the challenged actions. Moreover, as accurately and thoroughly presented in the Agency's MSJ and Reply, the record is replete with evidence supporting the Agency's actions, including their efforts to manage intense hearings caseloads, to address Complainant's deficiencies in professionalism, and to respond to attorney complaints against Complainant, among other concerns. Complainant's bare assertions of pretext in response to the Agency's actions will not suffice to establish genuine issues of material fact to warrant a hearing.

With respect to her harassment claims, the Commission has held that disagreement over "routine work assignments, instructions, and admonishments [are by definition] neither severe nor pervasive enough to rise to the level of abuse on par with a racial slur or otherwise engender a hostile work environment." *Complainant v. Dep't. of State*, EEOC Appeal No. 0120123299 (Feb. 25, 2015). The Court in *Greene v. Dalton* held that, "[a]lthough, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." 164 F.3d 671, 675 (1999). In

*Greene*, the Court found the retaliation claim "conclusory," because plaintiff had offered nothing more than a mere generalized representation of retaliation in her affidavit. *Id.* My review of Complainant's arguments and the entire record reveals such conclusory assertions and insufficient evidence from which a reasonable fact-finder could find in her favor.

The Commission cannot second-guess agency decisions involving personnel unless there is evidence of a discriminatory motivation on the part of the officials responsible for making those decisions. *See Burdine*, 450 U.S. at 259. Here, such evidence is wholly lacking.

After a review of the entire record in the light most favorable to Complainant, the Agency's Motion for Summary Judgment is **GRANTED.**

For the Commission:

Antoinette Eates
Administrative Judge

## NOTICE TO THE PARTIES

*TO THE AGENCY*:

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, August 5, 2015, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

*TO THE COMPLAINANT*:

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision.

29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
O. Box 77960
Washington, D.C. 20013

BY PERSONAL DELIVERY:

U.S. Equal Employment Opportunity Commission
Office of Federal Operations
131 M Street, NE
Suite 5SW12G
Washington, DC 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

**COMPLIANCE WITH AN AGENCY FINAL ACTION**

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of

non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.