Exhibit J

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**OFFICE OF FEDERAL OPERATIONS**
**WASHINGTON, DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **QUYNH VU BAIN,** | \| | **APPEAL NO. 2020002553** |
| | \| | **HEARING NO. 570-2016-01466XX** |
| **Appellant** | \| | |
| | \| | **ON APPEAL FROM DECISIONS AND** |
| **v.** | \| | **ORDERS OF ADMINISTRATIVE** |
| | \| | **JUDGE GRANTING SUMMARY** |
| **U.S. DEPARTMENT OF JUSTICE,** | \| | **JUDGMENT AND PROTECTIVE** |
| **U.S. ATTORNEY GENERAL &** | \| | **ORDER** |
| **EXECUTIVE OFFICE FOR** | \| | |
| **IMMIGRATION REVIEW,** | \| | **DATE:  April 28, 2021** |
| | \| | |
| **Appellee** | \| | **HEARING REQUESTED** |

**MOTION FOR RECONSIDERATION AND MOTION TO REOPEN AND HOLD IN
ABEYANCE THE EEOC PROCEEDING PENDING RESOLUTION OF RELATED
ISSUES OF DISCRIMINATION BY THE MERIT SYSTEMS PROTECTION BOARD**

Pursuant 29 C.F.R. 1614.405 (2021), the *pro se* Complainant-Appellant respectfully seeks reconsideration of the EEOC Office of Federal Operations' March 24, 2021 decision to affirm the February 26, 2020 Decision and Order of the Honorable Antoinette Eates granting the Agency's Motion for Summary Judgment, and Protective Order.   *See* Attachment A.   In addition, Complainant-Appellant requests that the EEOC reopen the instant proceedings and hold it in abeyance pending resolution of related issues of continuing discrimination and retaliation arising from events occurring after the Administrative Judge entered her Order granting Summary Judgment on February 26, 2020.[1]

---

[1] A paper copy of the March 24, 2021 OFO decision was mailed to the Complainant-Appellant's home address and was received on April 8, 2021.  Although Complainant-Appellant's time period for replying by EEOC Public Portal was set at 30 days from the date of the OFO Order, Complainant is entitled to the presumption that the paper copy of the OFO decision was received within five days of mailing, or by March 29, 2021.  On April 28, 2021, Complainant attempted to file the entire Motion for Reconsideration and accompanying attachments through the EEOC Public Portal.  However, she discovered that the file had been closed.  Accordingly, Complainant is filing this Motion for Reconsideration by express mail or delivery service, scheduled for delivery

The related issues of discrimination and retaliation are raised in a timely Notice of Appeal filed with the Merit Systems Protection Board on October 19, 2020. Those related issues of continuing discrimination and retaliation for prior EEO activity are being asserted as an affirmative defense to an adverse action that the Agency proposed on February 27, 2020 – one day after the EEOC Administrative Judge granted summary judgment to the Agency. *See* Attachment B. The adverse action was finalized seven months later, on September 17, 2020, and resulted in the termination of Complainant-Appellant's employment in the Justice Department after 29 years.

In support of this Motion, Complainant-Appellant asserts the following under penalty of perjury.

## BACKGROUND AND PROCEDURAL HISTORY

1.      Until September 17, 2020, I was a 29-year career employee of the U.S. Department of Justice whose work was dedicated to upholding the rule of law. Upon graduating from law school in 1991, I began working for the Justice Department as an Honor Law Graduate. Over the next 29 years, I worked in five different DOJ offices, defending the United States government in civil immigration enforcement actions and appeals, as well as environmental tort lawsuits. After the September 11 terrorist attacks, I volunteered for a detail to the Office of the Deputy Attorney General, to work on counter-terrorism matters. In March 2008, I was appointed an immigration judge in the Executive Office for Immigration Review (EOIR). Over the next 12 years, I served in two immigration courts—the Headquarters Immigration Court in Falls Church, Virginia, and the Arlington, Virginia Immigration Court. *See* Attachment J, at BAIN 1000-1028. *See also* Attachment I.

2.      After performing my job satisfactorily for seven years, I became the target of an Agency scheme to dispossess me of my immigration judge position, so that it could be given to internal or external immigration judge candidates the Agency favored. This scheme began in March 2015 and ended with my discharge in September 2020. Throughout that five-year period, the Agency took a series of discriminatory and retaliatory actions that created a hostile work environment. These maneuvers put tremendous pressure on me to quit my job or accept a demotion so that my job could be given to a favored immigration judge candidate. They also were meant to retaliate against me for pursuing an EEO complaint against the Agency after my reasonable accommodation request was denied. Those discriminatory and retaliatory actions are

---

to the OFO and Agency counsel within one business day, or by April 29, 2021. *See* 29 C.F.R. 1614.604.

Because I have elected to appeal the termination of my employment to the MSPB, *see* Attachments B and K, not all of the evidentiary materials that are or will be presented to the MSPB are included in this submission because they are too voluminous. Only those evidentiary materials that are intended to satisfy the standard for reconsideration are provided.

well-documented in my December 2015 Complaint of Discrimination and May 2018 Amended Complaint of Discrimination, which are the subject of the instant EEO action. *See* Attachment C.

3.      The scheme to purge me from EOIR began in March 2015, with the issuance of a reprimand letter by former supervisory Immigration Judge Christopher A. Santoro. The letter criticized me for displaying intemperate behavior toward ACIJ Santoro after I objected to a work assignment that would have caused me to violate the law governing immigration detention. *See* Attachment J, at BAIN 1099-1018. At that point, I had been employed with DOJ for 24 years and as an immigration judge for 7 years. Never before had I been the subject of a reprimand, nor did I have a disciplinary record. *See* Attachment I.

4.      The effect of the reprimand letter was to bar me from securing a reassignment to the Arlington Immigration Court's non-videoconference court for a period of three years. *See* Attachment J, at BAIN 1099. During that three-year period, ACIJ Santoro assisted a friend and colleague in applying for an immigration judge position in the Arlington Immigration Court. *See* Attachment J, at BAIN 1225. The same month that ACIJ Santoro issued the reprimand letter to me (March 2015), his friend and colleague Vance Spath applied for an immigration judge position in the Arlington court as an external candidate. *See* Attachment J, at BAIN 1224.

5.      Over the next five years, the Agency continued perpetrating the scheme to oust me from the Agency. Acting through management officials, including former EOIR Director James McHenry, former Deputy Director Marlene Wahowiak, former Chief Immigration Judge Mary Beth Keller, former Assistant Chief Immigration Judge Christopher A. Santoro, former Assistant Chief Immigration Judge Deepali Nadkarni, and Arlington Court Administrator Deborah Castro, EOIR discriminated against me on the basis of my race, national origin, sex, and temporary disability or non-disabling medical condition. They also were motivated to retaliate against me for pursuing an EEO complaint after my request for a reasonable accommodation was denied. *See* Attachment C. *See also* Attachment Y (Letter of Phuong Dinh Vu, dated April 24, 2021).

6.      In August 2016, another supervisor, ACIJ Deepali Nadkarni, continued to retaliate against me for engaging in EEO activity. On August 28, 2016, ACIJ Nadkarni issued to me a bogus counseling letter that threatened to terminate my employment for a relatively minor incident. I had requested that Roxanne Hladlylowycz, a fellow immigration judge, not schedule court hearings directly on my hearing calendar as she had no apparently authority to do so, and her action caused numerous schedule conflicts that I must then resolve on my own. *See* Attachment J, at BAIN 1145-1147. At the time, I was not aware that, on the same day that ACIJ Nadkarni issued the counseling letter to me, ACIJ Nadkarni also issued to Judge Hladylowycz a similarly-worded counseling letter that faulted her for the same incident. *See* Attachment J, at BAIN 1148-1150. The Hladlylowycz counseling letter was not disclosed to me until the close of discovery in this EEO action (in March 2019). Even worse, ACIJ Nadkarni deceptively referenced my counseling letter in an October 2016 performance rating that – while crediting me with satisfactory

3

performance – criticized me for "unprofessional exchanges" with supervisors and colleagues. When asked to explain what she meant by the "unprofessional exchanges" language, ACIJ Nadkarni refused to provide and explanation or divulge the identity of the person or persons who allegedly complained and the nature of that complaint.  *See* Attachment O.

7.      Upon receiving my August 2016 counseling letter, my first employment counsel, Heather White, filed a Motion for Sanctions, because the Agency had unjustifiably delayed the investigation of my December 2015 EEO complaint of discrimination and retaliation.  In response, the Agency hastily conducted an investigation in August 2016 and filed the Record of Investigation with the EEOC, without giving me an opportunity to respond or to file objections or corrections. Notably, the Record of Investigation contains the August 2016 counseling letter that I received, but the counseling letter that Judge Hladlyowycz received was omitted.  As stated, the Agency refused to disclose a copy of the Hladlyowycz counseling letter until the end of discovery in the instant proceeding, when it was too late to challenge the propriety and accuracy of my August 2016 counseling letter and  my October 2016 performance rating, except to raise them in the instant EEOC proceeding.  AJ Eates ultimately denied my Motion for Sanctions and permitted the Agency to file the Record of Investigation out of time.  As it stands today, the Record of Investigation that is on file with the EEOC contains many factual errors like the one just described.  *See* Attachment M.

8.      In May 2018, I moved to amend the EEO complaint to lodge additional allegations of discrimination, retaliation, and hostile work environment.  AJ Eates accepted all of the additional allegations, except those allegations that related to the Agency's refusal to release responsive records in response to my FOIA requests.[2]  The FOIA requests sought release of information that I intended to use in the instant EEOC action.  In excluding the FOIA-related allegations, AJ Eates reasoned that she had no authority to review the Agency's decision to withhold or release records under the FOIA statute, nor did she have the authority under that statute to compel production of the requested documents.  *See* Attachment M.

9.      The Agency did not conduct an additional investigation of the allegations in the May 2018 Amended Complaint that AJ Eates approved.  Nor did it release any responsive documents that I sought through the two FOIA requests.  Instead, the Agency used the EEOC discovery process to wage a discovery war that was time-consuming and costly.  *See* Attachment M.

---

[2] I filed two FOIA requests in September 2015 and January 2018 that sought information relating to the allegations of discrimination, retaliation, and hostile work environment.  Between November 2015 and August 2017, the Agency released only 100 pages, on a rolling basis.  The 100 pages were clearly inadequate.

10.     Discovery in the EEO action was a very contentious process.  Although discovery lasted more than one-and-a-half-years, the Agency used most of that time to litigate a claim of privilege that it asserted over approximately 1,000 pages of digital documents that I had obtained from a shared drive that was mapped to my office computer.  Because access to the shared drive was universal, AJ Eates initially determined that the documents I obtained from the shared drive were not privileged, and that the Agency had waived any claimed privilege by making the documents accessible to other Agency personnel.  Accordingly, AJ Eates permitted the use of those documents in the EEOC action.  One downside to this time-consuming, expensive protracted discovery dispute was that many factual disputes remained unresolved by the close of discovery in March 2019.  *See* Attachment M.

11.     In April 2019, the Agency moved for summary judgment, arguing that there was no genuine dispute of material facts and that the law clearly favored a grant of summary judgment. In support of the summary judgment motion, the Agency filed a Statement of Undisputed Facts that actually contained many disputed facts.  The Agency attached to its Motion for Summary Judgment a compilation of approximately 450 pages of supporting documents.  Some of those documents, such as the Hladylowycz counseling letter described in paragraph 7 above, had not been produced in the Record of Investigation or before the close of discovery.  *See* Attachment C.

12.     In response to the Agency's Motion for Summary Judgment, my former counsel filed an Opposition along with a Statement of Disputed Material Facts and a Supplemental Statement of Disputed Material Facts.  The two Statements highlighted genuine disputes of material facts that needed to be resolved before AJ Eates could dispose of the Agency's Summary Judgment Motion.  Finally, my former counsel requested a hearing to resolve the outstanding factual disputes.  *See* Attachments D and E.

13.     On February 26, 2020, AJ Eates granted the Agency's Motion for Summary Judgment without a hearing.  Her decision did not set forth detailed, meaningful findings of facts and was merely a rote recitation of the 39 accepted allegations.  Nor did the decision meaningfully articulate the reasons that she resolved the factual disputes in the Agency's favor.  Her legal analysis of the issues consisted of a recitation of the standards of proof for claims of discrimination, retaliation, and hostile work environment, followed by a one-page conclusory statement of opinion that adopted wholesale all of the arguments in the Agency's Motion for Summary Judgment and its Statement of Undisputed Facts, by incorporating both in their entirety.  *See* Attachment C.

14.     On the same day that she issued the Summary Judgment decision (February 26, 2020), AJ Eates also granted the Agency's renewed Motion for Protective Order.  The protective order covered the approximately 1,000 pages that I had obtained from the shared drive, as well as other documents that I obtained independently.  Those 1,000 pages comprised the approximately 300 documents that I had produced during discovery.  This Order was quite puzzling because AJ

Eates previously determined that the documents were not privileged or that any applicable privilege had been waived by the Agency's intentional or inadvertent disclosure of the same documents to a large group of EOIR personnel.  *See* Attachment F.

15.     The very next day, on February 27, 2020, the Agency proposed to terminate my 29-year employment with DOJ and in the federal service.  The temporal connection between the dismissal of my EEO action and the proposed termination of my employment suggests that the Agency was motivated to retaliate against me for pursuing the instant EEOC action.  Indeed, this temporal connection was the clearest evidence that in seeking to terminate my employment, the Agency acted with discriminatory and retaliatory motives.

16.     On March 27, 2020, I filed with the Justice Department's Complaint Adjudications Office (CAO) a response to the February 26, 2020 decision of AJ Eates granting the Agency's Motion for Summary Judgment and renewed Motion for a Protective Order.  Through that response letter, I invited the Justice Department to join in a request to hold the instant EEOC proceeding in abeyance pending the Attorney General's resolution of the proposed termination of my employment.  *See* Attachment G.  The Agency, however, declined the request.

17.     On May 1, 2020, I filed a timely Notice of Appeal of AJ Eates's Orders granting summary judgment and protective order with the EEOC Office of Federal Operations.  Through a letter brief that accompanied the Notice of Appeal, I requested that the EEOC reconsider and rescind AJ Eates's February 26, 2020 decision granting the Agency's Motion for Summary Judgment, on two grounds.  *See* Attachment H.

a.     First, the Agency failed to produce material evidence that would have demonstrated no existence of genuine disputes of material fact.  For example, I noted that through its Summary Judgment Motion the Agency introduced a court order that I had issued on June 8, 2017, which denied a Motion for Recusal filed by two immigration bar attorneys.  The two attorneys sought to disqualify me from hearing all their cases, on the ground that they were pursuing a complaint of judicial bias and misconduct that they had filed with my supervisor in March 2017.  In moving for summary judgment, the Agency cited the March 2017 complaint and June 8, 2017 Order as examples of professional misconduct.  The Agency, however, failed to advise AJ Eates that the June 8, 2017 Order had been affirmed on interlocutory appeal by the Board of Immigration Appeals.  As a direct result of that material omission, AJ Eates found that the Agency was justified in referring the June 8, 2017 Order to the DOJ Office of Professional Responsibility (OPR) for an investigation.  She further concluded that the June 8, 2017 Order showed that management officials such as ACIJ Nadkarni needed to rein me in for professionalism and conduct issues.  I brought this outrageous failure to disclose material evidence to the EEOC's attention in my May 1, 2020 letter appeal brief.  *See* Attachment H.

      b.     Second, in anticipation that the Agency would move forward with its proposal to terminate my employment one day following AJ Eates's issuance of the February 26, 2020 summary judgment decision and protective order, I requested that the EEOC reopen the evidentiary record for further discovery and fact finding.  *See* Attachment H.

      c.     The Agency opposed the above requests.

18.    While my administrative appeal to the EEOC OFO was pending, the Agency moved forward with its plan to terminate my 29-year DOJ legal career.  In the February 27, 2020 Notice of Proposed Removal, the Agency alleged that I had engaged in "conduct unbecoming an immigration judge" because of the manner in which I responded to the two immigration attorneys' Motion for Recusal (i.e., the June 8, 2017 Order discussed in paragraph 17.a above), as well as their underlying March 2017 complaint of judicial bias and misconduct.  The Agency also alleged that I lacked candor in responding to two interview questions that OPR investigative counsel asked me during an exhausting, seven-hour interview.

19.    With the assistance of private counsel (Steptoe), I refuted the allegations of "conduct unbecoming an immigration judge" and the lack-of-candor charge.  *See* Attachment I.

20.    Nevertheless, after seven months and several unsuccessful attempts to negotiate an appropriate settlement, I was discharged from DOJ after 29 years of distinguished service.  *See* Attachment J, at BAIN 1000-1028.  The termination decision was prepared by Associate Deputy Attorney General Bradley G. Weinsheimer in the Office of the Deputy Attorney General.  It was prepared on August 17, 2020, or within 180 days after AJ Eates issued her summary judgment decision.  However, Attorney General Barr did not sign the decision to indicate his concurrence until September 17, 2020, more than 180 days after AJ Eates's decision.

21.    On October 19, 2020, with the assistance of my second employment counsel (the Alden Law Firm), I filed a timely Notice of Appeal of the termination decision with the Merit Systems Protection Board.  *See* Attachment B.  That appeal is still pending.[3]

---

[3] The Alden Law Firm did not agree to represent me in the instant EEOC proceeding and suggested instead that I pursue the broader remedy of an appeal to the MSPB.  On November 16, 2020, the MSPB Administrative Judge dismissed the appeal without prejudice to reinstatement. The dismissal was for lack subject matter jurisdiction and a lack of quorum under the reasoning of Lucia v. SEC, 138 S. Ct. 2044 (2018).  *See* Attachment B.  Under the terms of the order dismissing without prejudice, the appeal will automatically be reinstated within 180 days, or by May 16, 2021. After the MSPB administrative judge entered the order dismissing the MSPB appeal for lack of jurisdiction, the Alden Law Firm withdrew its representation at my request, due to a conflict of interest.  I retained new employment counsel, the Alan Lescht Law Firm, to represent me. However, after three months of virtually no activity, I learned that the attorney assigned to represent me, Krista Wallace, had accepted an offer of employment with the MSPB.  She withdrew

22.     The MSPB appeal notice asserts that the termination of my 29-year DOJ legal career was an act of continuing discrimination and new discrimination that violated the Civil Service Reform Act, as amended.  In addition, the MSPB appeal notice asserts that my discharge was a new discrete act of discrimination that violated Title VII of the 1964 Equal Employment Opportunity Act, the 1973 Rehabilitation Act (as amended), and the Anti-Age Discrimination in Employment Act (as amended).  Finally, the MSPB appeal notice asserts that the removal decision was retaliation for protected whistleblowing activity, and that my discharge violated the Whistleblower Protection Act (as amended).  *See* Attachment B.

23.     The affirmative defense of discrimination involves two related but distinct claims. The first claim asserts continuing discrimination that related back to the events described in my EEO complaints of December 2015 and May 2018, which are the subject of this EEOC proceeding. The second claim asserts a new discrete act of discrimination based on the September 17, 2020 removal decision, which post-dates AJ Eates's summary judgment decision.

24.     The factual basis for my continuing and new discrimination claims is as follows:

a.      My discharge from EOIR, DOJ, and the federal service constitutes continuing discrimination that directly flowed from the acts of discrimination and retaliation described in my December 2015 Complaint and May 2018 Amended Complaint of discrimination, retaliation, and hostile work environment.  Those discriminatory and retaliatory acts were part of a scheme to divest me of my job so that it could be given to an internal or external immigration judge candidate whom the Agency favored.  In this case, the favored judge who was hired to replace me in the Arlington Immigration Court was a white male named Vance Spath, who had virtually no prior immigration knowledge or practice experience when he was hired.  The timing of his job application and appointment to the Arlington Immigration Court closely correlated with the timing of the various personnel matters that my former supervisors undertook to make a record for my removal and the decision to terminate my employment with DOJ and the federal service.

b.      In March 2015, I received a reprimand from ACIJ Santoro the same month that Vance Spath applied for an immigration judge position in the Arlington court.  The reprimand prevented me from obtaining a transfer to the Arlington court for a period of three years.  *See* Attachment J, at BAIN 1224.  The same month in which my transfer request was official denied (November 2015), Vance Spath reapplied for a judgeship in the Arlington Immigration Court.  *See* Attachment J, at BAIN 1220.

c.      During the three-year period in which I was barred from obtaining a transfer to the Arlington court under the terms of the union contract, the Agency processed Vance Spath's

from representation at the end of March 2021.  As of now, I am representing myself in both the MSPB and the instant EEOC proceedings.

job application with the goal of onboarding him quickly.  But his job application hit a snag in April 2016, when he reportedly turned down a job offer from former Attorney General Loretta Lynch because the salary that he was offered was too low.  *See* Attachment J, at BAIN 1220-1224.

       d.      In March 2017, former Attorney General Jeff Sessions appointed Vance Spath as an immigration judge to the Arlington Immigration Court.  That month, I received a complaint from two immigration bar attorneys who had filed a complaint with ACIJ Nadkarni, alleging that I had manifested improper judicial bias and conduct during four separate court hearings.  At ACIJ Nadkarni's direction, I responded to the attorneys' Motion for Recusal as well as the underlying March 2017 complaint of judicial bias and misconduct.  (As stated earlier, the June 8, 2017 Order was affirmed by the Board of Immigration Appeals on interlocutory appeal).

       e.      In August 2017, the Agency referred the complaint of judicial bias and misconduct to OPR for an investigation.  In June 2018, I sat for a seven-hour OPR interview during which OPR asked a barrage of questions about the March 2017 complaint of judicial bias and misconduct, and the June 8, 2017 Order that denied the two attorneys' Motion for Recusal.

       f.      In September 2018, Vance Spath was invested as an immigration judge and began conducting court hearings in the Arlington Court.  At the time, there were not enough courtrooms in the Arlington Immigration Court to accommodate him. Nevertheless, he was assigned a courtroom of his own, while I had to share my courtroom with another incumbent judge.

       g.      In April 2019, barely seven months into his two-year probationary period, a federal court of appeals found that Vance Spath had violated the rules of ethical conduct and professional responsibility in the most fundamental way:  He pursued the immigration judge position while presiding over a military commission trial in which Justice Department lawyers from the National Security Division were party to the case.  The court of appeals determined that Spath's failure to divulge his job application to defense counsel was a serious ethical breach, as well as conduct that was prejudicial to the administration of justice.  The court of appeals further concluded that Spath's failure to divulge his job application to defense counsel constituted a lack of candor.  Astoundingly, Vance Spath did not face any sort of disciplinary or adverse action.  *See* Attachment J, at BAIN 1227-1233.  Instead, he was allowed to complete his two-year probationary period and keep his job.[4]

       h.      On September 27, 2019, the DOJ Office of Professional Responsibility issued a Final Report of Investigations.  The Report found that I had engaged in professional

---

[4] Upon information and belief, in December 2020 Spath was promoted to the position of supervisory immigration judge.  Shortly thereafter, he was granted a transfer to the Miami, Florida Immigration Court where he currently works.

misconduct because of the manner in which I had responded to the two immigration lawyers' March 2017 complaint of judicial bias and misconduct through the June 8, 2017 Order denying their Motion for Recusal.  OPR also determined that I lacked candor in answering two of the hundreds of interview questions that OPR investigative counsel posed during the exhausting seven-hour OPR Interview.  *See* Attachment W.   As a result of that OPR Report, the Agency placed me on administrative leave, effective October 8, 2019.

        i.      In September 2020, the same month that Vance Spath completed his two-year probationary term, I was discharged from DOJ.

        j.      As a result, I was deprived of an immigration judge position that I had been performing satisfactorily and enjoyed for 12 years.  My 29-year DOJ legal career was extinguished, and my life is in shambles.  The life and health insurance that I had been carrying for 29 years were cut off amid the raging covid-19 pandemic.  Approximately six years' worth of retirement benefits were forfeited because I was fired one year shy of accruing minimum retirement eligibility (*i.e.*, at age 55, with 30 years of service).  I had spent more than $287,000 in attorneys fees to defend myself against the discrimination, retaliation, and hostile work environment as well as the OPR investigation.  This was a devasting loss from which I am still trying to recover.

        k.      Furthermore, not only was my livelihood taken away so discriminately and cruelly, but my future earning potential is also threatened.  Although the Attorney General's letter of termination acknowledged that my conduct of the court hearings and ruling on the Motion for Recusal merely implicated, but did not necessarily violate, my state bar rules of professional responsibility, DOJ has pledged to refer me to my state bar for disciplinary action if I do not prevail in the MSPB appeal.  All of this is premised on its highly flawed analysis of the facts and law that govern the work of immigration judges, as well as its very questionable lack-of-candor finding which does not meet legal and evidentiary standards.  *See* Attachment I.

        l.      To my knowledge, the Agency has never disciplined any other immigration judge in this manner.  My discharge from EOIR, DOJ, and the federal service is highly suspect, for no other reason than that the alleged misconduct occurred in the context of my performing judicial duties.  Indeed, the Attorney General's removal decision wholly ignored the presumption of impartiality that attaches to administrative judge decisions, *see* Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("We must start . . . from the presumption that the hearing officers . . . are unbiased.").  The removal decision fails to acknowledge, much less discuss, that I was merely following the Agency's own process for recusal of immigration judges and the Supreme Court's standards of judicial conduct that apply directly to judicial officers' adjudication of recusal motions in Liteky v. United States, 510 U.S. 554 (1994), which the Agency's process adopted.  Finally, the

termination decision wholly overlooks administrative and federal court case law governing judicial proceedings in general and immigration court proceedings in particular.[5]

        m.     Furthermore, during the pre-MSPB process, the Agency admitted that it had not maintained a Table of Penalties for imposing disciplinary or adverse action. It also had not kept accurate and complete disciplinary records and thus was unable to provide reliable data for comparison. *See* Attachment I. That the Agency would then select the most severe penalty possible is clear evidence of its discriminatory and retaliatory motives. Even Mr. Weinsheimer had to acknowledge that the penalty of removal from DOJ and the federal service would have no comparable in this situation, but for OPR's lack-of-candor finding which I submit is flimsy and overreaching. In any event, Vance Spath was not disciplined in any way for violating clear rules of ethical and judicial conduct that should have resulted in his termination with cause, or even without cause because he was still on probation. Likewise, other Arlington Immigration Court judges were not disciplined in any way for conduct that was far more egregious than anything that I have ever been accused of, much less engaged in. *See* Attachment J, at BAIN 1039-1044, 1047-1048, 1051-1056. *See also* Attachments P, Q, R, S, T, U, V, and Z (all subject to AJ Eates's February 26, 2020 Protective Order).

        n.     Given that the events leading up to my removal from DOJ and the federal service relate back to the time period covered by AJ Eates's summary judgment decision, my removal is an act of continuing discrimination for which the Agency should have to account.

---

[5] For example, in Hassan v. Holder, 640 F.2d 915 (6th Cir. 2010), the court of appeals rejected a similar claim of judicial bias and misconduct filed against a female immigration judge of color.

> At different points in their brief, Petitioners point to three different alleged defects in the process they received: 1) the immigration judge's failure to recuse herself due to her previous job as a DHS trial attorney and later as Chief Counsel of the Detroit DHS office; 2) the IJ's failure to recuse herself due to her previous "close working relationship" with Officer Wells; and 3) the IJ's active questioning of the witnesses during the merits hearing.

> Immigration judges, however, have "broad discretion in conducting" removal proceedings. Castellano-Chacon, 341 F.3d at 553. Furthermore, IJs are statutorily authorized to "interrogate, examine, and cross-examine the alien and any witness." 8 U.S.C. § 1229a(b)(1); *see* Abdulahad, 581 F.3d at 296. Judge Nettles' behavior did not amount to an abuse of this broad discretion or of Petitioners' due process rights. Although the record indicates that the judge took a somewhat active role in the examination of several, if not all, of the witnesses, the judge was well within her rights to do so. Accordingly, we affirm the Board's decision rejecting Petitioners' claim that the IJ should have recused herself.

25.     In addition, my discharge on September 17, 2020, pursuant to Attorney General Barr's decision issued on that date, constitutes a discrete new act of discrimination.  Consistent with the administrative claim/exhaustion requirement, I notified the EOIR EEO Program Director, Andrew Press, within 45 days of the discharge that I intended to pursue a new claim of discrimination in an MSPB "mixed case" appeal.  *See* Attachment K.  This notice sufficiently preserved the discrimination issue for litigation before the EEOC, if necessary.

### B.     THE EEOC SHOULD RECONSIDER ITS DECISION TO AFFIRM THE ADMINISTRATIVE JUDGE'S FEBRUARY 26, 2020 DECISION GRANTING SUMMARY JUDGMENT.

26.     The EEOC Administrative Judge's decision granting summary judgment to the Agency is clear error.  *See* Celotex v. Catreet, 477 U.S. 317, 322-23 (1986).

a.     First, the Administrative Judge incorporated into her decision the Agency's Summary Judgment Motion and a 450-page compilation of exhibits in their entirety.  She did not just reference the Agency's arguments or evidence, she adopted them wholesale as reflecting her own analysis of the facts and law.  Her decision granting summary judgment thus suffers from a failure to exercise independent judicial decision-making authority as well as a failure of articulation.

b.     Second, AJ Eates's summary judgment decision does not adequately reflect a proper balancing of the evidence.  She accepted as true all the facts asserted in the Agency's Statement of Undisputed Facts, even though many of those facts were still in dispute.  This decisional error had the effect of shifting the burden of proof to the non-moving party (me) to demonstrate that there were genuine disputes of material facts that counsel against a grant of summary judgment, when that burden should have been borne by the moving party (the Agency).  This impermissible shifting of the burden of proof is plain error.  It also violates substantive and procedural due process.

c.     Third, the Administrative Judge erred by not holding a hearing to resolve outstanding material facts in dispute, and by not requiring the Agency to show why those material facts should be resolved in its favor.  As it stands, the Administrative Judge's fact findings are deficient.  They do not adequately examine and resolve all 39 of the allegations of discrimination, retaliation, and hostile work environment that she accepted.  Without a meaningful of analysis of the evidence, the decision merely states that AJ Eates adopted the Agency's version of undisputed facts as credible, and that any facts still in dispute were not material enough to foreclose summary judgment.  Although AJ Eates stated that she had considered all of the evidence I introduced into evidence, including my Statement of Disputed Material Facts and Amended Statement of Disputed Material Facts, her decision does not adequately explain the weight (if any) that she assigned to

my compilation of evidence, or why the preponderance of evidence weighs in the Agency's favor. These inadequate fact findings will make judicial review exceedingly difficult and will likely result in a remand for further fact finding and articulation of the judge's reasoning.

        d.    Fourth, the Administrative Judge's legal reasoning also suffers from a lack of articulation.  It does not adequately explain why she concluded that each element of the summary judgment standard has been satisfied by the Agency, as the moving party.  Previously, AJ Eates ruled that the compilation of 300 documents that I obtained from a shared drive that was accessible by EOIR personnel were not privileged materials that had to be returned to the Agency or destroyed.  However, on the same day that she granted the Agency's Summary Judgment Motion on February 26, 2020, she inexplicably reversed course and granted the Agency's renewed Motion for Protective Order.  The effect of the Protective Order was to treat the more than 300 documents as sensitive information that may not be disclosed without taking the necessary precaution of placing the documents under seal.  The protective order, however, does not disturb AJ Eates's prior ruling on the admissibility of the 300 documents as non-privileged materials that she may consider, as the trier of fact.  Thus, AJ Eates's failure to discuss her analysis of the 300 protected documents and to assign the proper weight to them in her summary judgment decision is clear error.  Due to this failure of articulation, judicial review of AJ Eates's decision in the United States District Court would be exceedingly difficult and would likely result in a remand for further fact finding and proper articulation of her legal reasoning.

        e.    For all these reasons, the EEOC should reconsider its decision to affirm AJ Eates's summary judgment decision and protective order.  A reconsideration would facilitate judicial review in the event AJ Eates's decisions and orders are appealed to the federal district court.

    **C.**    **THE EEOC SHOULD REOPEN AND HOLD IN ABEYANCE THIS EEOC PROCEEDING, PENDING THE MSPB'S RESOLUTION OF THE AFFIRMATIVE DEFENSE BASED ON DISCRIMINATION.**

    27.    In addition, the EEOC should reopen the underlying evidentiary record and hold the instant EEOC proceeding in abeyance, pending the MSPB's resolution of an affirmative defense based on the discriminatory acts described above.  This would allow for discovery in the MSPB proceeding to go forward on the <u>continuing</u> discrimination claim and the new claim of discrimination, without regard to the potential preclusive effect that AJ Eates's superficial fact findings and minimal, conclusory legal analysis might pose in the MSPB appeal.

    28.    The affirmative defense of discrimination relates back to the 39 allegations contained in my December 2015 EEO complaint and May 2018 amended EEO complaint that AJ Eates disposed of in the Agency's favor.  Although AJ Eates dismissed all 39 allegations through

her summary judgment decision, she did not consider or anticipate the impact that her decision would have on the Agency's future course of action, namely its move to terminate my employment the <u>very next day</u>.  Had the termination of my employment occurred before the Motion for Summary Judgment was presented to AJ Eates, her decision might have been different.  She might have reopened the evidentiary record to allow for an amendment of the EEO complaint.  For this reason, the proposed termination of my employment one day after AJ Eates granted the Agency's Summary Judgment Motion provides the clearest evidence of the Agency's long-standing discriminatory and retaliatory animus toward me.

29.    Reopening the underlying evidentiary record is warranted to allow for additional discovery in the MSPB proceeding and the presentation of the affirmative defense before the MSPB.  Doing so will also preserve for the MSPB judge the option of referring the affirmative defense to the EEOC for resolution in the first instance.  In addition, this approach would preserve an avenue of appeal to the EEOC, in the event the MSPB administrative judge rules against the discrimination-based affirmative defense.

30.    The Agency might oppose this request to reopen the EEOC proceeding by contending that there is no clear temporal connection between the past acts of discrimination and the termination of my employment, insofar as I was discharged more than 180 days after AJ Eates's summary judgment decision.  This argument fails for several reasons.

a.    First, a temporal connection between the past acts of discrimination and the recent termination of my employment is clearly established by the Agency's issuance of a Notice of Proposed Removal the <u>very next day</u> after AJ Eates granted the Agency's Summary Judgment Motion.  The temporal proximity of the two events gives rise to a reasonable inference that the Agency had planned to retaliate against me for pursuing the instant EEO action.

b.    Second, the Agency delayed the resolution of the proposed removal past the six-month period.  On August 17, 2020, approximately six months after the Notice of Proposed Removal was issued, Associate Deputy Attorney General Bradley G. Weinsheimer prepared a written decision recommending my removal.  Although the Weinsheimer decision was prepared within the 180-day window, a copy of that decision was not provided to me right away.  Instead, it was delivered to the Office of former Attorney General William P. Barr for his concurrence.  Mr. Barr did not sign the decision until a full month later, on September 17, 2020.  By then, more than 180 days had elapsed since AJ Eates issued the summary judgment decision in this EEOC proceeding.  Given the Agency's slowness in finalizing the removal decision, I should not be penalized for missing the statutory deadline for seeking to amend the original 2015 Complaint and 2018 Amended Complaint of discrimination.  Surely, this is a situation in which equitable estoppel or equitable tolling of the regulatory amendment deadline is warranted.  *See* Attachment L.

c.      Consequently, and on the advice of former counsel, I elected the broader remedy of an MSPB appeal.  I reached out to EOIR's Program Director, Andrew Press, to let him know about the remedy election.  *See* Attachment K.  As of this time, I intend to pursue the MSPB appeal and assert an affirmative defense based on discrimination.

31.     The Agency might oppose reopening and holding the instant EEOC proceeding by arguing that discovery will yield no new probative evidence.  It might even assert that my removal rested on an intervening OPR Report of Investigation issued on September 27, 2019.  *See* Attachment W.

a.      The OPR Report concluded that I had engaged in professional misconduct because of how responded to the two immigration bar attorneys' March 2017 complaint and their blanket Motion for Recusal.  As stated earlier, the Board of Immigration Appeals had affirmed my June 8, 2017 Order on interlocutory appeal.  This is clear evidence that the Agency lacked a proper motive for referring me to OPR for an investigation into a judicial ruling that the Board had affirmed.  At a minimum, reopening the evidentiary record is warranted because AJ Eates's decision rested on an incomplete and inaccurate record of evidence.

b.      In addition, the OPR Report is rife with factual and legal errors that I intend to challenge on appeal to the MSPB.  As of today, the Agency still has refused to release the full OPR Record of Investigation.  I intend to assert that this unreasonable, obstinate refusal to give me the very evidence that it has used to terminate my employment is an egregious due process violation as well as a discriminatory prohibited personnel practice.  There is also every reason to believe that once the MSPB or a federal district court compels the Agency to produce the full OPR investigative record, additional discoverable evidence will come to light and will show that the OPR investigation itself and the consequential decision to terminate my 29-year legal career with DOJ were motivated by discriminatory and retaliatory animus.  *See* Attachments X & Y.

For the above-stated reasons, the EEOC should reconsider its March 24, 2021 decision, reopen the evidentiary record, and hold the instant proceeding in abeyance to allow for discovery in the pending MSPB appeal to proceed unimpeded by considerations of the preclusive effect that AJ Eates's February 26, 2020 decisions and orders might pose.

Dated:   April 28, 2021                                              Respectfully submitted,

                                                                     Quynh Vu Bain
                                                                     *Pro Se* Complainant-Appellant

## CERTIFICATE OF SERVICE

I certify that, on April 29, 2021, I served the foregoing Motion for Reconsideration and the 975-page Compilation of Supporting Documents on the Agency by express mail or same-day delivery courier, addressed to the following:

Richard Toscano, Director
EEO Staff
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC  20530-0001
Richard.Toscano@usdoj.gov
(202) 616-4800

At Mr. Toscano's request, I also served the following Agency personnel in the same manner, but also with a courtesy copy of the Motion delivered by email:

Andrew Press, EEO Director
Executive Office for Immigration Review
U.S. Department of Justice
Executive Office for Immigration Review
Office of the Director
Equal Employment Opportunity Program
5107 Leesburg Pike, Suite 2160
Falls Church, VA  22041
Andrew.Press@usdoj.gov
(703) 605-1285 (direct line)


Dated: April 28, 2021

Quynh Vu Bain,
*Pro Se* Complainant-Appellant
213 Third Street, SE
Washington, DC   20003
(202) 910-8553