# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QUYNH VU BAIN,                          )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )
                                        )
**OFFICE OF THE ATTORNEY GENERAL**      )
U.S. Department of Justice,             )
                                        )
**OFFICE OF THE DEPUTY ATTORNEY GENERAL** )
U.S. Department of Justice,             )
                                        )
**OFFICE OF PROFESSIONAL RESPONSIBILITY** )
U.S. Department of Justice,             )
                                        )
**EXECUTIVE OFFICE FOR IMMIGRATION**    )
**REVIEW**, U.S. Department of Justice, )
                                        )
**OFFICE OF INFORMATION POLICY**        )
U.S. Department of Justice,             )
                                        )
    Defendants.                         )
                                        )

**No. 21-Civ-1751 (RDM)**



RECEIVED
Mail Room

DEC 2 0 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

RECEIVED
2021 DEC 17 P 4: 04
CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC

# TABLE OF CONTENTS
## <u>Bain v. U.S. Department of Justice</u>, 21-cv-1751 (RDM)

I.     PLAINTIFF HAS PLEADED ACTIONABLE ADVERSE
      EMPLOYMENT ACTIONS.................................................................. 2

     A.    The Judicial Definition of "Adverse Employment Action".................... 2

     B.    Each Discrete Act of Discriminatory Treatment Leading Up
            to Plaintiff's Removal Was an Adverse Employment Action............... 3

         • January 2015 email ............................................................ 5

         • March 16, 2015 reprimand ................................................... 6

         • June 2015 counseling letter .................................................. 8

         • August 2015 final performance rating ...................................... 9

         • November 17, 2015 denial of Board Member application .............. 10

         • July 28, 2016 counseling letter ............................................. 11

         • October 2016 mid-term performance rating and August 2017
           final performance rating ...................................................... 12

         • January 2017 release of privacy protected information from
           Plaintiff's personnel file. ..................................................... 13

         • August 2017 referral to OPR for an investigation ......................... 14

         • September 2019 OPR Report of Investigation ............................15

         • February 2020 Notice of Proposed Removal .............................. 15

         • September 2020 Removal Decision .......................................... 16

     C.    Plaintiff Has Pleaded a *Prima Facie* Claim of Hostile Work Environment. .16

     D.    Plaintiff Has Pleaded a *Prima Facie* Claim of Retaliation for Engaging
          in Prior EEO Activity. .......................................................... 16

II.    THIS COURT HAS JURISDICTION OVER PLAINTIFF'S
      DISCRIMINATION CAUSE OF ACTION. ...........................................17

A.      The Administrative Exhaustion Requirement ..................................... 17

B.      Plaintiff Initiated Contact With the EEO Counselor Within 45 Days
        Of Each Incident of Discrimination. .............................................. 19

        1.      The two discrete incidents of discriminatory conduct in 2015
                were timely exhausted with EOIR. ..................................... 20

        2.      Plaintiff did not waive her right to contest the March 2015
                reprimand. ................................................................21

        3.      Plaintiff Did Not Waive Her Right to Contest the June 2015
                Counseling Letter............................................................ 24

C.      Plaintiff Timely Raised Additional Related Claims of Discrimination
        That Arose After Filing Her Formal Complaint. .............................. 24

        1.      Plaintiff timely appealed the administrative judge's decision. .......25

        2.      Plaintiff timely appealed the September 17, 2020
                removal decision............................................................. 25

        3.      Plaintiff timely sought reconsideration of the EEOC's
                March 24, 2021 decision. ................................................. 25

D.      Plaintiff Timely Filed This District Court Action. .............................26

III.    THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS
        UNDER THE FOIA AND PRIVACY ACT. ............................................. 27

A.      Plaintiff Has Timely Exhausted Her FOIA Release Claims ...................28

        1.      September 2015 FOIA Request ........................................... 28

        2.      January 2018 FOIA Request .............................................30

        3.      August 2019 FOIA Request ............................................... 31

B.      Plaintiff Has Timely Exhausted Her Privacy Act Claims. .....................33

        1.      Unauthorized release of privacy-protected information from
                Plaintiff's personnel file...................................................34

        2.      Refusal to amend Plaintiff's personnel records. .......................36

        3.      Refusal to amend January 2, 2018 BIA decision ..................... 37

          4.      <u>Refusal to Amend the OPR Report of Investigation</u> ................. 43

   C.   The Court Has Ancillary Jurisdiction to Consider Plaintiff's
       Privacy Act Claims...............................................................41

CONCLUSION.................................................................................... 42

# TABLE OF AUTHORITIES
## <u>Bain v. U.S. Department of Justice</u>, 21-cv-1751 (RDM)

**CASES**

<u>Brown v. Brody</u>, 199 F.3d 446 (D.C. Cir. 1999)....................................................3, 16

<u>Brown v. Hartshorne Public School District</u>, 864 F.2d 680 (10th Cir. 1988)..................17, 26

<u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998)….......................................... 3

<u>Carney v. The American University</u>, 151 F.3d 1090 (D.C. Cir. 1998).............................16

<u>Childers v. Slater</u>, 44 F. Supp.2d 8 (D.D.C. 1999)..................................................4, 7

<u>Cones v. Shalala</u>, 199 F.3d 512 (D.C. Cir. 2000)........................................................3

<u>Crenshaw v. Georgetown Univ.</u>, 23 F. Supp. 2d 11 (D.D.C. 1998),
   *aff'd without opinion*, 194 F.3d 173 (D.C. Cir. 1999)................................7, 10, 12

<u>Douglas v. Pierce</u>, 707 F. Supp. 567 (D.D.C. 1998),
   *aff'd sub nom.* <u>Douglas v. Kemp</u>, 906 F.2d 783 (D.C. Cir. 1990).......................... 3

<u>Gottlieb v. Tulane University of Louisiana</u>, 809 F.2d 278 (5th Cir. 1987).......................27

<u>Int'l Brotherhood of Teamsters v. United States</u>, 431 U.S. 324 (1977)..............................2

<u>Khader v. Aspin</u>, 1 F.3d 968 (10th Cir. 1993).......................................................... 18

<u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 373 (1994)..................................43

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.C. 792 (1973).........................................3

<u>McKenna v. Weinberger</u>, 729 F.2d 783 (D.C. Cir. 1984)..............................................3

<u>Meritor Savings Bank, FB v. Vinson</u>, 477 U.S. 57 (1986)............................................16

<u>Mitchell v. Baldridge</u>, 759 F.2d 80 (D.C. Cir. 1985). ................................................16

<u>Mungin v. Katten Muchin Zavis</u>, 116 F.3d 1549 (D.C. Cir. 1997). ................................4

<u>Palmer v Shultz</u>, 815 F.2d 84 (D.C. Cir. 1987).......................................................2, 7

<u>Phillips v. Holladay Property Servs.</u>, Inc., 937 F. Supp. 32 (D.D.C. 1996)..........................3

<u>Robbins Tire Rubber Co. v. NLRB</u>, 563 F.2d 724 (5th Cir. 1997
   *rev'd on other grounds,* ___).................................................................32

<u>Roberts v. Segal Company</u>, 125 F. Supp. 2d 545 (D.D.C. 2000)....................................3

<u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).............................. 1

<u>Villines v. United Brothers of Carpenters</u>, 999 F. Supp. 97 (D.D.C. 1998).......................17

<u>Youssef v. Holder</u>, 19 F. Supp. 3d 167 (D.D.C. 2014)...........................................10, 13

Walker v. WMATA, 102 F. Supp. 2d 24 (D.D.C. 2000)…………………………………….3, 10

Witherspoon v. Roadway Express, Inc., 782 F. Supp. 567 (D. Kan. 1992)…….……………..2

**STATUTES**

5 U.S.C. § 552(b)(5)…………………………………………………….. 30, 31

5 U.S.C. § 552(b)(6)……………………………………………….30, 31, 33

5 U.S.C. § 552(b)(7)(C)…………………………………………… 30, 31

5 U.S.C. § 552a(b)……………………………………………….30, 31, 33

5 U.S.C. § 552a(d)………………………………………………….28, 31

5 U.S.C. § 552a(d)(1)……………………………………………...29

5 U.S.C. § 552a(d)(2)……………………………………………. 36

5 U.S.C. § 552(d))(3)………………………………………….. .43

5 U.S.C. § 552a(g)(1)(A)…………………………………………….43

5 U.S.C. § 552a(g)(1)(B)…………………………………………….43

5 U.S.C. § 552a(g)(1)(C)………………………………………….33, 36

5 U.S.C. § 552a(g)(1)(D)…………………………………………….32

5 U.S.C. § 552a(g)(2)(A)………………………………………….37, 43

5 U.S.C. § 552a(g)(2)(B)…………………………………………….37

5 U.S.C. § 552a(g)(3)…………………………………………...27

5 U.S.C. § 552a(g)(4)……………………………………………33, 37

29 U.S.C. §§ 794 et seq………………………………………………...5

42 U.S.C. §§ 2000e et seq…………………………………………….4

**REGULATIONS**

29 C.F.R. § 1614.105(a)(1)………………………………………..18

20 C.F.R. § 1620.2(g)……………………………………………….5

**MISCELLANEOUS**

Fed. R. Civ. P. 12(b)(1)……………………………………………1, 17, 28, 44

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 44

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **QUYNH VU BAIN,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**OFFICE OF THE ATTORNEY GENERAL** )<br>U.S. Department of Justice, )<br><br>**OFFICE OF THE DEPUTY ATTORNEY GENERAL** )<br>U.S. Department of Justice, )<br><br>**OFFICE OF PROFESSIONAL RESPONSIBILITY** )<br>U.S. Department of Justice, )<br><br>**EXECUTIVE OFFICE FOR IMMIGRATION** )<br>**REVIEW**, U.S. Department of Justice, )<br><br>**OFFICE OF INFORMATION POLICY** )<br>U.S. Department of Justice, )<br><br>Defendants. )  | **No. 21-Civ-1751 (RDM)** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

On October 12, 2021, Defendants moved to dismiss the Plaintiff's complaint of discrimination for lack of subject matter jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) & (6).  For the reasons discussed below, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and permit the parties to proceed with discovery.[1]

---

[1] Although the burden of establishing a prima facie case of employment discrimination is not onerous, *see* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), Plaintiff affirms that each of the factual statements in this memorandum is true and correct to the best of

## I.    PLAINTIFF HAS PLEADED ACTIONABLE ADVERSE EMPLOYMENT ACTIONS.

The premise of Defendants' Motion to Dismiss is that many of Plaintiff's claims are not actionable, because they are not "adverse employment actions." This argument is unavailing. In September 2020, Plaintiff lost a job that she had been performing satisfactorily for 12 years, because of unlawful discrimination. Her discharge was wrongful. There can be no dispute that a wrongful discharge is the most serious adverse personnel action that could be visited on a federal employee.

As will be discussed, the adverse actions that Defendants took against Plaintiff between 2015 and September 2020 were part of a well-orchestrated scheme to remove her from the federal service so that her full-time employment (FTE) position could be given to an external immigration judge candidate whom Defendants favored. *See* Exh. 21. The Court need not look further than the adverse actions that began in 2015 to find extreme discriminatory animus that was manifested in the most egregious way.

### A.    The Judicial Definition of "Adverse Employment Action"

Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race. Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 355 n. 15 (1977). Because federal anti-discrimination statutes are remedial, they are to be liberally construed in favor of the victims of discrimination. *See* Witherspoon v. Roadway Express, Inc., 782 F. Supp. 567, 572 (D. Kan. 1992). *See also* Palmer v. Shultz, 815 F.2d 84, 97-98 (D.C. Cir. 1987). Accordingly, a proper inquiry into each discrete

---

her knowledge. The pinpoint citations to factual matter refer to the 30 exhibits that Plaintiff previously filed in support of her Amended Complaint. *See* Fed. R. Civ. P. 8(a). Where Plaintiff lacks first-hand knowledge of a particular factual statement or claim, she will so note.

act of alleged discriminatory treatment "must focus on the circumstances surrounding the adverse personnel action." McKenna v. Weinberger, 729 F.2d 783, 789 (D.C. Cir. 1984).

To establish a prima facie case of disparate treatment, Plaintiff must show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Douglas v. Pierce, 707 F. Supp. 567, 571 (D.D.C. 1998), aff'd sub nom. Douglas v. Kemp, 906 F.2d 783 (D.C. Cir. 1990) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n. 13 (1973)). A reasonable inference of unlawful discrimination can be drawn from disparate treatment of Plaintiff as compared with others who are not members of her protected class who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Roberts v. Segal Company, 125 F. Supp. 2d 545 (D.D.C. 2000) (quoting Phillips v. Holladay Property Servs., Inc., 937 F. Supp. 32, 37 (D.D.C. 1996).

While no particular type of personnel action is automatically excluded from serving as the basis for a Title VII claim, see generally Cones v. Shalala, 199 F.3d 512 (D.C. Cir. 2000), this Court has held that a plaintiff must show that the employment action caused "a tangible change in the duties or working conditions constituting a material employment disadvantage." Walker v. WMATA, 102 F. Supp.2d 24, 29 (D.D.C. 2000) (citation omitted). "A tangible employment action" is one that effectuates "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). See also Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) (an "employment decision does not

rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."); Mungin v. Katten Muchin Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes").

Plaintiff's removal from federal service in September 2020 was the culmination of a five-year campaign to purge her from the Arlington Immigration Court. Plaintiff was removed despite her performance record, not because of it. Before coming to EOIR, she had a solid track record of achievements and no disciplinary record. Exh. 16, at 7-36. After coming to EOIR, she received overall satisfactory performance ratings every year until the time she was discharged. Thus, this civil action is not about minor inconveniences or everyday annoyances that animated her workplace. See, e.g., Childers v. Slater, 44 F. Supp. 2d 8, 19 (D.D.C. 1999). Rather, it is about the ultimate decision to terminate her employment after 29 years of exemplary service to the Justice Department, in the most grievous way. The discussion below shows that a discriminatory motive can be inferred from the numerous adverse actions to which Plaintiff was subjected during her twelve-year tenure at EOIR. Moreover, direct evidence of Defendants' discriminatory animus can be found in the "BAIN FOIA 2015" folder. See Exh. 14.

**B.     Each Discrete Act of Discriminatory Treatment Leading Up to Plaintiff's Removal Was an Adverse Employment Action.**

Plaintiff's December 2015 formal complaint asserts discrimination on the basis of her race, national origin, sex, disability status, and reprisal. Exh. 4, at 24. The allegations pertaining to race, national origin, sex, and reprisal were brought under Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. § 2000e et seq. In her formal complaint filed with the EEOC, Plaintiff

alleged that the responsible management officials treated her disparately because of her race (Asian), national origin (Vietnamese), sex (female), or disability or serious medical condition. *Id.*

The disability-based claim was brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, which protects individuals with a disability, defined as someone who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g). The migraine headaches that Plaintiff intermittently suffered at work, while conducting court hearings using dated and frequently malfunctioning tele-videoconference (VTC) equipment, were temporarily disabling in that they occurred in the workplace and remitted when she left her assigned courtroom or took medication to control the pain. Exh. 12.

Finally, her ADEA claim rests upon the reasonable relief that Defendants further discriminated against Plaintiff on the basis of her age. The responsible management officials (RMO's) who committed the discriminatory adverse personnel actions (*i.e.*, ACIJ's Santoro and Nadkarni, Director McHenry) were all younger than Plaintiff. Upon information and belief, the four new white male judges they installed in the Arlington court after they ousted Plaintiff in 2020 were also much younger. *See* note 1.

- January 2015 email

On January 5, 2015, Assistant Chief Immigration Judge Mary Beth Keller unexpectedly sent Plaintiff an email that was highly critical. The email chastised Plaintiff for communicating by email with Judge Keller two months earlier, in a manner that she characterized as "rude" and "disrespectful." Exh. 13, at 2.

EOIR would later claim that the Keller email was not an adverse action but rather a benign attempt to correct perceived deficiencies in Plaintiff's behavior. Exh. 13, at 23. But considering ACIJ Keller's accusatory tone, her email was pretextual. Under the CBA, disciplinary actions were to follow a policy of progressive discipline. An EOIR manager may not impose discipline on a judge who has no prior disciplinary record, unless the manager has first employed remedial measures to improve performance. Exh. 18, at 2-8. The CBA provided that verbal or written counseling was a remedial measure, while a reprimand was a disciplinary sanction. Since Plaintiff had no prior disciplinary record (either before or after coming to EOIR), *see* Exh. 16, ACIJ Santoro could not have issued a reprimand in March 2015, unless he first employed a remedial measure such as counseling. *See* Exh. 31. Judge Keller's January 2015 email "checked that box" for ACIJ Santoro's March 2015 reprimand. Direct evidence of their discriminatory intent in issuing the reprimand can also be found in the "BAIN FOIA 2015" folder. Exh. 14.

- March 16, 2015 reprimand

In early March 2015, Plaintiff attempted to return a three-year-old detained case to the resident judge in the York court that had been reassigned to her. The resident judge, a white male in his sixties, was originally assigned to the case, was familiar with its procedural history and factual background, and thus was in a better position to complete it. Exh. 13, at 52-53. In response, ACIJ Santoro demanded an explanation for why Plaintiff returned case 933 to the resident judge. He then attacked her response as incredible, criticized her choice of words, and concluded that her alleged "intemperate behavior" warranted a stern response. Exh. 13, at 2-53. The reprimand further accused Plaintiff of lying when she stated that case 933 was initially assigned to the resident judge, and that he reassigned the case to a second judge who reassigned it to Plaintiff a day or two before the evidentiary hearing. Exh. 13, at 28-29. The underlying email exchange, however,

confirmed that Plaintiff was telling the truth. Exh. 13, at 31 (resident judge acknowledged that he had assigned case 933 to Plaintiff).

The reprimand was the very first disciplinary sanction that Plaintiff received in her then twenty-fourth year of public service. Exh. 16. It was indisputably an adverse personnel action. *See* Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 17 (D.D.C. 1998), *aff'd without opinion*, 194 F.3d 173 (D.C. Cir. 1999) ("[T]he touchstone in determining whether an employment decision implicates the terms, conditions, or privileges of employment is whether the plaintiff has suffered a materially adverse action that undermines [his] ability to perform [his] job satisfactorily or threatens [his] prospects of future employment."). *Cf.* Childers, 44 F. Supp.2d at 20 (holding that "[a] reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action.").

In the short term, the reprimand impaired Plaintiff's ability to perform her job. She was the only Headquarters court judge who was assigned to an all-videoconference, all-detained case docket. Exh. 4 at 56. As a result of the reprimand, she had to continue working in the videoconference court for an additional year and continued to suffer migraine headaches that necessitated a second period of FMLA leave in April 2015. Exh. 13 at 68. In the long term, the reprimand impaired Plaintiff's employment status. It was placed in her personnel file as a disciplinary record and had a three-year effective period. Exh. 13 at 22. It was subsequently used multiple times to support and justify additional adverse personnel actions, including the denial of her request for a court transfer. Exh. 14 at 75, 82.

Documents from the "BAIN FOIA 2015" folder confirm that the reprimand was motivated by ACIJ Santoro's discriminatory animus. In the days leading up to the reprimand, he made disparaging remarks about Plaintiff's medical condition and her conduct of detained court

7

hearings.  The documents also suggest that the reprimand was racially motivated.  Exh. 14 at 20-21, 29-33, 34, 51, 56, 62, and 89.  To Plaintiff's knowledge, no other judge in the Headquarters or Arlington court had ever received a reprimand from ACIJ Santoro, for any reason.  The documents further show that when those judges displayed hostile, rude, intimidating, or contemptuous behavior, they received nothing more than a "slap-on-the-wrist, don't-do-it-again" counseling email.  And if they did do it again, they merely received another counseling email that was just as apologetic as it was admonishing.  Exh. 14 at 177-207.

- June 2015 counseling letter

In May 2015, after Plaintiff returned from FMLA leave, she began traveling to the York, Pennsylvania Immigration Court to conduct detained court hearings in person.  Exh. 15 at 3; Exh. 4 at 73-74.  ACIJ Santoro had authorized seven trips for the Summer of 2015, but while he was away on a two-week vacation in June 2015, VTC equipment failure necessitated an additional two trips.  *Id.* at 3-7.  With the consent of the York court administrator, Plaintiff made travel arrangements for the two trips using a new software program, E2 Solutions, that the Agency began using three months earlier.  *Id.* at 4-6.  She obtained pre-approval for the two trips from the designated travel approvers and believed that she had authorization to travel.  *Id.*  Upon his return to the office, however, ACIJ Santoro issued a counseling letter that accused Plaintiff of violating the agency's travel regulations, because she did not secure his approval prior to commencing her travels.  He revoked the prior authorization that she received from other agency personnel and denied her reimbursement request for approximately $400 of legitimate travel expenses.  Exh. 15 at 1-2.

The June 2015 counseling letter was an adverse personnel action. It deprived Plaintiff of a way to relieve the migraine headaches that she occasionally suffered when working with VTC

8

equipment for prolonged periods. It also denied her reimbursement for legitimately incurred business travel expenses. Most notably, it reinforced management's decision not to transfer her out of an abusive working environment. Ex. 4 at 6-78. *See* <u>Palmer v Shultz</u>, 815 F.2d 84, 97-98 (D.C. Cir. 1987). It also discriminated against Plaintiff for having a medical condition requiring a reasonable accommodation. Exh. 4 at 64-65, 72. At the time, she was the only Headquarters judge assigned to handle an all-detained, all-VTC court docket. Exh. 4 at 56, 72. The other three Headquarters judges were detailed to the Arlington court or another court location to conduct hearings in person. Exh. 4 at 72. Plaintiff's detail court location, the York Immigration Court, had VTC equipment that frequently malfunctioned. Exh. 4 at 71-73. As a result of the June 2015 counseling letter, Plaintiff had to continue conducting York detained court hearings by videoconference. Exh. 4 at 75-78.

- <u>August 2015 final performance rating</u>

The January 2015 counseling email, March 2015 reprimand, and June 2015 counseling letter were incorporated by reference into a final performance rating that ACIJ Santoro issued on August 4, 2015. Exh. 18 at 24-45. Covering the rating period 2013 to 2015, the performance rating credited Plaintiff with an overall satisfactory performance but noted that she needed improvement in the area of professionalism. *Id.* at 24. The rating was suspect because it did not correlate with the interim performance rating that Plaintiff received only a year earlier. *Id.* at 23.

In August 2014, Plaintiff received a mid-term performance rating that evaluated her work performance as "being at least satisfactory" in all critical elements, including professionalism. Exh. 18 at 23. Four months after that, ACIJ Santoro asked Plaintiff to participate as an instructor in a December 2014 DOJ-sponsored training exercise for 200 pro bono attorneys. Exh. 18 at 46. The training exercise went very well, and Plaintiff received multiple compliments from the

9

conference organizers as well as ACIJ Santoro. Exh. 18 at 47-52.  Plaintiff had hoped that the overwhelmingly positive feedback would help her secure a court transfer once a vacancy was announced in the Arlington court.

ACIJ Santoro and ACIJ Keller, however, had other plans.  The August 2015 performance rating laid the groundwork for denying her request for a court transfer as well as a Board Member application. Exh. 4 at 57.  After he issued the August 2015 final performance rating, ACIJ Santoro used it to justify denying Plaintiff special work opportunities.  Exh 4 at 57.  In October 2015, he denied her permission to participate in a DOJ-sponsored training conference on immigration law. *Id.* at 79.  In November 2015, he removed her name from the list of Pro Bono Liaison Judges.  In November 2015, her Board Member application was denied.  *Id.* at 80.

In subsequent years, the August 2015 performance rating was used to lay the groundwork for Plaintiff's removal from the federal service.  The September 2019 OPR Final Report of Investigation cited it as evidence of a lack of professionalism.  Exh. 1 at 59 & n. 17.  EOIR's Notice of Proposed Removal issued in February 2020 also relied on the August 2015 performance rating. Exh. 1 at 144.  The Removal Decision did as well.  Exh. 1 at 216.  Because it ultimately contributed to her removal, the August 2015 performance rating was an adverse personnel action. *See* Crenshaw, 23 F. Supp. 2d at 17.  *See also* Youssef v. Holder, 19 F. Supp. 3d 167 (D.D.C. 2014) (a performance evaluation that results in the denial of tangible benefits is an adverse personnel action).

- November 17, 2015 denial of Board Member application

The denial of Plaintiff's Board Member application was a materially adverse action that deprived her of a promotion opportunity. *See* Walker, 102 F. Supp. 2d at 29.  In subsequent years,

she applied for temporary Board Members positions but was also denied those opportunities. Exh. 4 at 29-30. Documents from Plaintiff's EEOC action confirm that the former EOIR Director was motivated to deny her temporary Board Member applications because of her race, sex, and other protected characteristics. Exh. 14, at 189-195.

- July 28, 2016 counseling letter

The counseling letter was issued after Plaintiff sent an email to a white female judge who had been double-booking court hearings on Plaintiff's calendar, causing numerous schedule conflicts. Plaintiff sent the other judge an email to let her know that Plaintiff would be returning to that judge a case that the judge had purposely double-booked on Plaintiff's hearing calendar, causing a schedule conflict. Exh. 19, at 17-20. In the weeks leading up to the incident, Plaintiff raised this very concern to the court administrator and ACIJ Nadkarni. Exh. 19 at 8-12, 17-20. Not surprisingly, ACIJ Nadkarni sided with the other judge and issued a counseling letter to Plaintiff, criticizing Plaintiff for engaging the other judge in an "unprofessional exchange." The letter even threatened to terminate Plaintiff's employment. Exh. 19, at 25-28.

The counseling letter was discriminatory. In email exchanges leading up to issuance of the counseling letter, the other judge claimed that ACIJ Nadkarni had "ordered" her to schedule hundreds of court hearings on Plaintiff's calendar, a claim that ACIJ Nadkarni did not deny. Exh. 19 at 34. Yet, the counseling letter claimed the double-booking was inadvertent. *Id.* at 26. The other judge copied senior management on the email exchange, but ACIJ Nadkarni faulted Plaintiff for escalating the conflict. Exh. 19 at 34, 36-53. As if that were not enough, the counseling letter incorporated wholesale the March 2015 reprimand and all of its attachments, even though the two incidents occurred 16 months apart and were unrelated. Exh. 19, at 27. Indeed, other judges in

the Arlington court continued to double-book their court hearings on Plaintiff's hearing calendar even after Plaintiff objected to the counseling letter. Exh. 20 at 23, 25, 26.

Two-and-a-half years later, Plaintiff would learn that ACIJ Nadkarni had issued to the other judge a similarly worded counseling letter on the same date and over the same incident. Exh. 19 at 56-58. The release of the other judge's letter on the eve of EOIR moving for summary judgment in Plaintiff's EEOC action was meant to refute Plaintiff's claim that ACIJ Nadkarni favored white female judges over non-white female. But the other judge has suffered no adverse personnel action as a result of her counseling letter. She remains on the bench today, while Plaintiff is out of a job.

In 2017 or 2018, the counseling letter was forwarded to OPR for use in the investigation. It was cited in the September 2019 OPR Final Report of Investigation as evidence of Plaintiff's alleged mistreatment of the other (white female) judge. Exh. 1 at 59. It also was cited in the February 2020 Notice of Proposed Removal and the September 2020 Removal Decision as evidence that Plaintiff was no longer suited for the job that she had been performing satisfactorily for 12 years. Exh. 1 at 143, 216. No mention of the other (white female) judge's counseling letter was made in the OPR Final Report, the EOIR Director's proposal to terminate Plaintiff's employment, or the Attorney General's Removal Decision. That judge's letter was buried as quickly as it had surfaced. Thus, while the other judge's counseling letter was not an adverse personnel action, Plaintiff's counseling letter certainly was. *See* Crenshaw, 23 F. Supp. 2d at 17 ("[T]he touchstone in determining whether an employment decision implicates the terms, conditions, or privileges of employment is whether the plaintiff has suffered a materially adverse action that undermines [his] ability to perform [his] job satisfactorily or threatens [his] prospects of future employment.").

- October 2016 mid-term performance rating and August 2017 final performance rating

In October 2016, ACIJ Nadkarni issued a mid-term performance rating that – while crediting Plaintiff with an overall satisfactory performance rating – downgraded her rating for the professionalism element.  Exh. 30 at 1795-1801.  The rating cited Plaintiff's July 28, 2016 counseling letter.  The October 2016 mid-term performance rating was an adverse personnel action that was carried forward into Plaintiff's August 2017 final performance rating.  *Id.*  Both performance ratings were subsequently provided to OPR, which cited them as evidence of Plaintiff's alleged lack of professionalism in treating the other (white female) judge.  Exh. 1 at 59.  The ratings were also referenced in the EOIR Director's February 2020 proposal to remove Plaintiff from the federal service and the Attorney General's Removal Decision.  Exh. 1 at 143-144, 216.  Because they were used to effectuate Plaintiff's removal from the federal service, the performance ratings were adverse personnel actions.  *See* Youssef, 19 F. Supp. 3d at 167.

- January 2017 release of privacy protected information from Plaintiff's personnel file.

The year 2017 began with EOIR leaking privacy protected information from Plaintiff's personnel file to the American Immigration Lawyers Association (AILA).  Exh. 24 at 1-2, 9-27.  EOIR claimed that the information release was inadvertent but, when asked to retrieve or claw back the information, it took no action.  Exh. 24 at 3-8.

Two months later, two immigration bar attorneys used the released information to file an ethics complaint against Plaintiff.  The first ethics complaint, filed on March 1, 2017, stated that Plaintiff had been "counseled previously."  Exh. 30 at 87-89.  The second complaint, filed on March 28, 2017, alleged that Plaintiff engaged in witness intimidation.  Exh. 30 at 97-98.  OPR would later sustain some of the allegations in the first complaint regarding Plaintiff's conduct of one hearing on February 17, 2017; however, OPR rejected their claims concerning her conduct of the other three court hearings as well as their witness intimidation claim as factually unsupported.

13

After OPR issued its Final Report of Investigation in September 2019, EOIR proposed Plaintiff's removal based on the report. Exh. 1 at 133-145. Because the January 2017 information leak set up the March 2017 ethics complaints, and the ethics complaints led to the OPR investigation, and the OPR investigation led to Plaintiff's removal, the information leak was an adverse personnel action that caused a significant change in Plaintiff's employment status. Therefore, the information leak constituted an adverse personnel action.

- <u>August 2017 referral to OPR for an investigation</u>

On August 29, 2017, Plaintiff received notice that OPR had initiated an inquiry into her handling of the two ethics complaints. Exh. 4, at 27-28; Exh. 29. The referral to OPR was made by attorney Marlene Wahowiak. Exh. 30 at 83-85. Ms. Wahowiak had worked in OPR for 12 years before transferring to EOIR. The year she arrived at EOIR, she applied for an immigration judge position in the Arlington Immigration Court. Exh. 30 at 281-284. The OPR Letter of Inquiry directed that Plaintiff file a response in two weeks' time. However, because of Plaintiff's work-related travel and other reasons, Plaintiff did not file her 97-page written response until November 2017. Exh. 30 at 124-220. Seven months later, Plaintiff sat for a seven-hour OPR interview on June 29, 2018. Exh. 30 at 349-770.

One-and-a-half years after the OPR inquiry began, Plaintiff learned that Ms. Wahowiak was the EOIR official who had referred Plaintiff for the OPR investigation. Exh. 4 at 761-769. The email communication that Ms. Wahowiak sent to OPR begged OPR to initiate and expedite an investigation of Plaintiff. *Id.* at 768-769. The email asserted questionable factual assumptions and conclusions that were never substantiated by OPR. Nevertheless, the email persuaded OPR to accept the referral and initiate an investigation. Exh. 1 at 54 & note 3, 55-57. As a direct result

of the investigation, Plaintiff lost her job. *See* Exh. 1 at 192 (The Removal Decision adopted and incorporated the OPR Final Report and the EOIR Director's disciplinary proposal).

While Defendants might argue that the outcome of OPR's investigation rested on evidence that OPR independently obtained, the investigation would not have been initiated but for the factually inaccurate and misleading statements in Ms. Wahowiak's email which, in initiating the inquiry, OPR presumed to be accurate and truthful. Exh. 1 at 55-57. Ms. Wahowiak's apparent conflict of interest further tainted the investigation because she had previously worked for OPR. She used her influence with OPR Chief Counsel to initiate the investigation, knowing that it would further her own self-interest in obtaining an immigration judge appointment. The EOIR Director apparently knew about the referral. Exh. 1 at 134. Under these circumstances, the OPR referral was an adverse personnel action that directly resulted in Plaintiff's discharge after 29 years of exemplary public service.

- September 2019 OPR Report of Investigation

Defendants do not contest that OPR's Final Report of Investigation issued on September 27, 2019 was an adverse personnel action. Indeed, the Final Report was cited in the subsequent EOIR Notice of Proposed Removal and the Removal Decision as the basis of Defendants' decision to terminate Plaintiff's 29-year DOJ legal career. Exh 1 at 136-145, 192. In addition, the Final Report was the reason Plaintiff was placed on administrative leave beginning on October 8, 2019. She remained on administrative leave until her removal on September 17, 2020.

- February 2020 Notice of Proposed Removal

Defendants do not contest that EOIR's Notice of Proposed Removal was an adverse personnel action.

- September 2020 Removal Decision

Defendants do not contest that Plaintiff's removal from the Justice Department and the federal service was an adverse personnel action.

### C.   Plaintiff Has Pleaded a *Prima Facie* Claim of Hostile Work Environment.

Hostile and threatening treatment can only constitute an actionable adverse action if the treatment is so severe and pervasive as to create a hostile work environment. Meritor Savings Bank, FB v. Vinson, 477 U.S. 57, 64-65 (1986). In Brody, the United States Court of Appeals for the D.C. Circuit held that a plaintiff who alleges personnel actions without tangible economic effect can only maintain a hostile work environment claim, where the work atmosphere is so polluted with discrimination as to destroy the emotional and psychological stability of minority group workers. 199 F.3d at 454. Consistent with Brody, this Court may consider all of the alleged discrete acts of discriminatory treatment as contributing to a hostile work environment, whether or not they amount to adverse employment actions.

### D.   Plaintiff Has Pleaded a *Prima Facie* Claim of Retaliation for Engaging in Prior EEO Activity.

To establish a prima face case of retaliation, Plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. Brody, 199 F.3d at 452. A reasonable inference that retaliation has occurred can be drawn from facts indicating that Defendants had knowledge of Plaintiff's protected activity and the adverse personnel action took place shortly after that activity. Carney v. The American University, 151 F.3d 1090 (D.C. Cir. 1998); Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).

16

Plaintiff raised the retaliation claim during her initial contact with the EEO Counselor on October 9, 2015. She alleged that the adverse actions that EOIR management took against her in 2015 were in retaliation for her pursuing an EEO complaint in 2014. EOIR recognized her retaliation claim in its statement summarizing the charge. Exh. 4 at 24-25. Plaintiff then pleaded the retaliation claim in her formal complaint filed with the EEOC in December 2015. Exh. 4 at 11-23. The formal complaint thus sufficiently apprised Defendants of each discrete act of reprisal. As Plaintiff's discrimination and retaliation claims are reasonably related, the Court has jurisdiction to consider the retaliation claim. *See* Brown v. Hartshorne Public School District, 864 F.2d 680, 682 (10th Cir. 1988) (acts committed in retaliation for filing EEO complaint are reasonably related to first complaint and obviate need for second EEO complaint).[2]

## II.     THIS COURT HAS JURISDICTION OVER PLAINTIFF'S DISCRIMINATION CAUSE OF ACTION.

Defendants contend that Plaintiff's claims of discrete acts of discriminatory treatment should be dismissed for failure to exhaust her administrative remedies. Because Plaintiff timely raised her claims in the proper administrative forum before filing suit in this Court, the Court has subject matter jurisdiction to consider the claims. Accordingly, the Court should deny Defendants' Motion to Dismiss under Rule 12(b)(1).

### A.     The Administrative Exhaustion Requirement

---

[2] In this action, Plaintiff also asserts a claim of whistleblower retaliation that she earlier raised to the MSPB as an affirmative defense against her removal. Though whistleblower retaliation is beyond the scope of Defendants' Motion to Dismiss, Plaintiff contends that she experienced severe reprisal in the form of a removal or other adverse personnel action, because she disclosed to a governmental body information regarding a violation of law, rule, or regulation which she reasonably believed to be true and which she reasonably believed constituted an improper governmental action. *See* Villines v. United Brothers of Carpenters, 999 F. Supp. 97 (D.D.C. 1998) (stating general elements of a whistleblower retaliation claim).

A federal employee who alleges employment discrimination must first initiate contact with an EEO counselor in her agency within 45 days of the date of the matter alleged to be discriminatory, before she files a formal complaint with the EEOC. *See* 29 C.F.R. § 1614.105(a)(1). Once the EEOC has resolved a formal complaint of discrimination, either party may appeal the EEOC's decision to a federal district court within 90 days of receiving the EEOC decision and order. One exception to this rule is that an age discrimination claim filed under the Anti-Age Discrimination in Employment Act of 1967 (ADEA) may be filed directly with the district court 30 days after a plaintiff notifies the EEOC of the age discrimination claim. Therefore, an ADEA claim need not be exhausted through an initial contact with the employer's EEO counselor, and it need not be resolved by the EEOC before the plaintiff files suit in federal district court.

The exhaustion requirement "serves the purpose of giving the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate is all that exhaustion requires." Khader v. Aspin, 1 F.3d 968, 971 (10th Cir. 1993) (internal quotation marks omitted). Generally, the administrative exhaustion requirement is satisfied if each discrete incident of discriminatory treatment is included in the formal complaint filed with the EEOC.

In the EEOC action below, Plaintiff alleged discriminatory conduct that occurred before and after the filing of her EEOC formal complaint of discrimination on December 10, 2015. The alleged discriminatory conduct included discrete acts of disparate treatment, adverse actions that contributed to a hostile work environment, and retaliation for engaging in protected EEOC activity. Those discrete acts occurring before December 2015 were included in the formal complaint.

18

Discrete acts that arose after December 2015 were pleaded in Plaintiff's two motions to amend the formal complaint, filed on August 25, 2016 and May 7, 2018, respectively.  Exh. 4, at 2-6, 29-52.

Defendants contend that for three of the claims, Plaintiff did not initiate contact with the EEO counselor in her employing agency (EOIR) within 45 days.  For one of the claims, Defendants contend that Plaintiff had earlier initiated contact with the EEOC counselor within 45 days but then withdrew her informal complaint, thereby waiving her right to challenge that discrete act claim in this district court action.  Defendants' arguments, however, do not consist with the evidence that Plaintiff has already produced in this district court action and will produce if this case proceeds to discovery.

### B.      Plaintiff Initiated Contact With the EEO Counselor Within 45 Days of Each Discrete Act of Discrimination Before Filing Her Formal Complaint.

On October 9, 2015, Plaintiff contacted EOIR's EEO Counselor and Program Director, Andrew Press, to initiate an internal EEO complaint after she learned that the Agency had denied her request for a transfer to the Arlington Immigration Court, pursuant to the terms of the Collective Bargaining Agreement (CBA) between EOIR and the Immigration Judges' union (the National Association of Immigration Judges or NAIJ).[3]

---

[3] Article 13 of the CBA provided a process by which incumbent immigration judges who had completed their two-year probationary period may apply for a court transfer to their desired court locations.  The CBA further provided that EOIR was to maintain a roster of judges known as the Reassignment Register.  The Register kept track of individual judges' eligibility for a transfer, by recording the dates on which they registered for a transfer, their assigned and desired court locations, and their seniority.  Priority was given according to the judges' registration dates and length of service.  The Register also tracked, on an anonymized basis, those judges who desired a hardship-based transfer.  The CBA provided that once a vacancy arose in a particular court, and there was a judge on the Reassignment Register who was eligible for a transfer to that court

In early October 2015, Plaintiff learned that her request for a non-hardship transfer to the Arlington court had been denied because of the March 2015 reprimand.  She initiated contact with the EEO Counselor and Program Director within 45 days.  Plaintiff then timely filed a formal complaint of discrimination with the EEOC on December 10, 2015, within the 60-day regulatory filing period.  The formal complaint asserted a series of discrete acts of discriminatory treatment that fell into three categories:   discrete acts of discriminatory treatment, a hostile work environment, and reprisal for engaging in prior EEO activity.

1.      The Two Discrete Incidents of Discriminatory Conduct in 2015
Were Timely Exhausted With EOIR.

Defendants contend that two of the discrete adverse actions alleged in the December 2015 formal complaint must be dismissed because they were not timely raised with EOIR within 45 days.  Those two adverse actions are:

- the January 5, 2015 counseling email, and

- the June 25, 2015 counseling letter.

As part of her initial contact with the EEO Counselor and Program Director, Plaintiff prepared a written statement that precisely identified the responsible management officials (RMO) and each act of discriminatory conduct complained of, in sufficient detail to enable EOIR to resolve the charge before it was filed with the EEOC.  The written statement, moreover, explained that the aggregate discriminatory effect of all those discrete acts of discriminatory treatment culminated in ACIJ Santoro's August 2015 final performance rating, which Plaintiff also alleged was an adverse

---

location, the Agency may elect that judge to fill the vacancy instead of hiring an external judge candidate. *See* Exh. 31.

personnel action.  Because timely contact was made with the EEO Counselor within 45 days of issuance of the August 2015 performance rating, the agency was timely notified of Plaintiff's objections to the January 2015, March 2015 reprimand, and June 2015 counseling letter.

2.   Plaintiff Did Not Waive Her Right to Challenge the March 2015 Reprimand.

Defendants correctly contend that on March 20, 2015, Plaintiff timely initiated contact with the EEO Counselor and Program Director to complain about the March 16, 2015 reprimand that ACIJ Santoro had just issued, and that she subsequently abandoned that claim in April 2015, while she was on FMLA medical leave.[4]  The abandonment of that discrete act claim, however, did not work a forfeiture of her right to challenge EOIR's subsequent uses of the reprimand to justify new adverse personnel actions.  Over the next four years, the reprimand would repeatedly be used to justify additional adverse personnel actions.  The effect of the reprimand's reincarnation in each new adverse personnel action was to extend the time period for challenging it.  Indeed, each time the reprimand resurfaced, Plaintiff challenged it as a continuing act of discrimination that was timely exhausted within 45 days.

Altogether, the March 2015 reprimand was used at least eight more times between August 2015 and September 2020, to justify new adverse employment actions.

- The reprimand was used to justify removing Plaintiff's name from the Reassignment Register in July 2015.  Exh. 31.

---

[4] Plaintiff also detrimentally relied on ACIJ Santoro's misrepresentation that the reprimand would have no consequence on her court transfer request.  Exh. 14 at 17.  She believed his statement, which was made on the same day he issued the reprimand, because her name was not removed from the Reassignment Register right away.  Instead, agency managers changed the register sometime in July 2015 and published the new register in October 2015.  *See* Exh. 31.

- The reprimand was incorporated into the August 2015 final performance rating. Exh. 18 at 25.

- The reprimand was used to justify denying Plaintiff a court transfer in October 2015. Exh. 31.

- The reprimand was placed in Plaintiff's official personnel file and presumably was used to deny her Board Member application in November 2015. Exh. 13 at 22.

- The reprimand was incorporated into Plaintiff's July 28, 2016 counseling letter. Exh. 19 at 27.

- The reprimand was provided to OPR and discussed in the September 27, 2019 OPR Report of Investigation as showing a lack of professionalism. Exh. 1 at 58 & n. 13, 132 n. 474.

- The reprimand was used in proposing Plaintiff's removal in February 2020. Exh. 1 at 143.

- The reprimand was referenced and considered in the Attorney General's Removal Decision in September 2020. Exh. 1 at 216.

By March 2015, Plaintiff was at the top of the Reassignment Register, which meant she had seniority and priority over other judges. *See* Exh. 31. To divest Plaintiff of her right to a court transfer, ACIJ's Santoro and Keller orchestrated the following scheme.

The EOIR managers used the reprimand to justify removing Plaintiff's name from the Reassignment Register in July 2015. Then, they inserted a false narrative into the August 2015 performance rating that – while crediting her with overall satisfactory work performance – obliterated her professional reputation, character, and conduct. The narrative allowed them to refute a charge of discrimination stemming from the denial of her transfer request. Exh. 18 at 25.

After Plaintiff filed a formal complaint with the EEOC in December 2015, EOIR reversed course and announced that it would transfer all Headquarters judges to the Arlington court. This unusual move was at odds with the intent of two judges who did not request a transfer to the

22

Arlington court.  One judge requested a transfer to Charlotte, North Carolina, while the other requested Newark, New Jersey or New York, New York.  Exh. 31.

After 2015, EOIR continued using the March 2015 reprimand to support other adverse personnel actions.  On July 28, 2016, ACIJ Nadkarni issued a counseling letter that incorporated wholesale the March 2015 reprimand, even though the reprimand was from an earlier rating period and had nothing to do with the incident behind the counseling.  Through a timely First Motion to Amend filed with the EEOC on August 25, 2016, Plaintiff asserted that the July 28, 2016 counseling letter was an adverse personnel action.  Exh. 4, at 2-5.

After referring Plaintiff to OPR for an investigation in August 2017, EOIR continued to use the reprimand to harass her.  ACIJ Nadkarni provided a copy to OPR investigative counsel. The Final Report of Investigation that OPR issued two years later, on September 27, 2019, referenced the reprimand as a prior disciplinary record that supported its finding of professional misconduct.  Even though the reprimand's effective period had lapsed, EOIR continued to use it to support its proposed termination of Plaintiff's employment in February 2020.

As each new use of the reprimand constituted a new discrete act of continuing discriminatory or retaliatory treatment, Plaintiff timely challenged it through her formal complaint filed on December 10, 2015, her First Motion to Amend filed on August 25, 2016,[5] and her Motion for Reconsideration filed on April 29, 2021.  Given Plaintiff's timely objection to each new use of the reprimand, Defendants cannot credibly argue that she long ago gave up the right to challenge its ongoing, discriminatory uses.

---

[5] The EEOC lacked jurisdiction to consider Plaintiff's affirmative defense based on whistleblower retaliation.

        3.     <u>Plaintiff Did Not Waive Her Right to Challenge the June 2015
Counseling Letter</u>.

The June 25, 2015 counseling letter was issued after ACIJ Santoro incorrectly concluded

that Plaintiff had violated the travel regulations by making two additional trips to the York

Immigration Court without his pre-approval.  Through a July 25, 2015 response, Plaintiff disputed

the counseling letter and its false premise.  The response closed by asking ACIJ Santoro to rescind

the counseling letter, because it contained mistakes of fact and law, and because it unfairly

penalized Plaintiff for engaging in legitimate government business.

        **C.**     **After Filing Her Formal Complaint, Plaintiff Timely Raised
Additional Related Claims of Discrimination That Arose After
December 2015.**

On August 25, 2016, before the first EEOC pre-trial conference, Plaintiff filed her First

Motion to Amend with the EEOC. Exh. 4, at 1-5.  The Motion asserted one additional discrete act

of discriminatory treatment that occurred after the filing of the December 2015 formal complaint.

The additional discrete act was the issuance of a July 28, 2016 counseling letter by ACIJ Deepali

Nadkarni.  As the Motion was filed within 45 days of the issuance of the counseling letter, the

EEOC administrative judge granted the motion to amend.  Plaintiff subsequently filed a Second

Motion to Amend with the EEOC on May 7, 2018.  Exh. 4, at 30-51.  The second motion

incorporated all of the discrete incidents of discriminatory conduct that occurred between 2015

and May 2018.

Altogether, the three pleadings that were filed with the EEOC in December 2015, August

2016, and May 2018 asserted a total of 42 allegations of discriminatory treatment, retaliation for

engaging in protected EEO activity, and a hostile work environment.  The EEOC administrative

judge accepted 39 of the allegations and rejected the other four.  Exh. 4, at 53-61.  The EEOC

administrative judge concluded that she did not have subject matter jurisdiction over the four claims that asserted violations of the FOIA and Privacy Act.  Exh. 53-54.  Those four rejected claims will be discussed later.  *See* Section III, below.

At the close of discovery in March 2019, Defendant EOIR moved for summary judgment. On February 26, 2020, the EEOC administrative judge granted the agency's summary judgment motion and dismissed the formal complaint without a hearing.

### 1.  Plaintiff timely appealed the administrative judge's decision.

The appeal to the Commission was timely filed on May 1, 2020.

### 2.  Plaintiff timely appealed the September 17, 2020 removal decision.

While her EEOC appeal was still pending, Defendants issued a decision on September 17, 2020 that terminated Plaintiff's 29-year employment with the Justice Department.  Exh. 1 at 192-220.

Plaintiff elected the administrative remedy of an MSPB appeal.  On October 19, 2020, she filed a timely Notice of Appeal with the MSPB.  The appeal asserted two affirmative defenses, one based on discrimination and the other, on whistleblower retaliation.  Since then, the MSPB has twice dismissed her appeal for lack of jurisdiction without prejudice.  The MSPB determined that until its Board has a full quorum of judges, it has no jurisdictional authority to adjudicate Plaintiff's appeal at this time.  Exhs. 5, 8, 9, 10.

### 3.  Plaintiff timely sought reconsideration of the EEOC's March 24, 2021 decision.

After Plaintiff filed her MSPB appeal, the EEOC dismissed her appeal from the February 26, 2020 decision of the administrative judge to grant summary judgment to Defendants.

Through a timely filed Motion for Reconsideration, Plaintiff apprised the EEOC of her wrongful discharge as a continuing discrete act of discrimination. She also notified the EEOC of her timely appeal to the MSPB, and that the MSPB had dismissed her appeal for lack of jurisdiction, without prejudice to reinstatement. The Motion for Reconsideration requested that the EEOC vacate its decision and remand for further discovery on the additional claims of discrimination, which Plaintiff asserted were reasonably related to or grew out of the original charge or formal complaint. Plaintiff further notified the EEOC of her ADEA claim. Exh. 6.

The EEOC denied Plaintiff's Motion for Reconsideration on August 19, 2021. Exh. 10.

### D.      Plaintiff Timely Filed This District Court Action.

On June 22, 2021, after the MSPB dismissed her administrative appeal for lack of jurisdiction a second time, Plaintiff commenced this district court action. She did so in a timely fashion, by filing the district court complaint within 90 days after the EEOC dismissal of her administrative appeal on March 24, 2021. Exh. 10.

The civil complaint included the 39 allegations of unlawful discrimination in Plaintiff's formal EEOC complaint. It also asserted additional claims of discriminatory conduct that occurred after the EEOC dismissed the formal complaint on February 26, 2020. The additional claims included Defendants' proposal to terminate Plaintiff's employment one day following the dismissal of her EEOC appeal, and the Attorney General's decision to terminate her employment. Because the additional claims are reasonably related to or grew out of the allegations contained in the original EEO charge, this Court has jurisdiction to consider them. *See* <u>Brown v. Hartshorne</u>, 864 F.2d at 680 ("A plaintiff may seek relief for discriminatory acts not listed in the original EEO charge if such acts are reasonably related to or grow out of the allegations contained in the original

26

EEO charge, 'including new acts occurring during the pendency of the charge before the EEOC.' ") (citations omitted). *See also* <u>Gottlieb v. Tulane University of Louisiana</u>, 809 F.2d 278, 284 (5th Cir. 1987) (where intentional discrimination claim was properly before the court, it had ancillary jurisdiction over related retaliation claim).

After the EEOC denied her Motion for Reconsideration, Plaintiff filed an Amended Complaint within 90 days. The Amended Complaint asserted a new claim of age discrimination under the ADEA that became ripe 30 days after Plaintiff notified the EEOC of her intent to pursue that claim. The Amended Complaint also raised claims of discriminatory treatment resulting from Defendants' violations of the FOIA and Privacy Act. Those claims were previously presented to the EEOC, but the administrative judge did not consider them upon concluding that she lacked authority to grant the relief Plaintiff requested. Because Plaintiff has timely raised the ADEA and FOIA and Privacy Act claims, the Court has jurisdiction to consider those claims as well.

### III.    THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS UNDER THE FOIA AND PRIVACY ACT.

In this district court action, Plaintiff asserts five discrete claims of violations of the FOIA and Privacy Act that are inextricably intertwined with her complaint of discrimination. Those five claims are:

- EOIR's refusal to expedite the processing of Plaintiff's September 2015 and January 2018 FOIA requests and to release all responsive documents.

- OPR's refusal to expedite the processing of Plaintiff's August 2019 FOIA request and to release all responsive records.

- EOIR's unauthorized release of privacy-protected information from Plaintiff's personnel file in January 2017 and refusal to claw back that information.

- Defendants' failure to maintain a system of records that accurately maintained Plaintiff's personnel records.

- Defendants' refusal to amend or expunge certain personnel records that contain factual errors.

Defendants' Motion to Dismiss for lack of jurisdiction contend that this Court lacks jurisdiction over the Privacy Act claims because they were not timely exhausted at the administrative agency level.  For the reasons discussed below, the Motion to Dismiss under Rule 12(b)(1) should be denied.

### A.      Plaintiff Has Timely Exhausted Her FOIA Release Claims

Section 552a(d) of Title 5 of the United States Code provides a right to access records.[6] Section 552a(g)(3) provides a right of action and civil remedies for non-disclosure of information.[7] Plaintiff has timely exhausted her administrative remedies and has asserted a cause of action for release of documents under Section 552a(d)(1).  Therefore, she respectfully requests that the Court enter an order directing Defendants to produce to Plaintiff improperly withheld records.

#### 1.      September 2015 FOIA Request

---

[6] "Each agency that maintains a system of records shall (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him. . . ." 5 U.S.C. § 552a(d).

[7] "In any suit brought under the provisions of subsection (g)(1)(B) of this subsection, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him.  In such a case the court shall determine the matter *de novo* and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action." 5 U.S.C. § 552a(g)(3).

On September 30, 2015, Plaintiff filed a first-party FOIA request that sought release of information from her official personnel file and other record systems that contained information about her employment with EOIR.

Between September 2015 and August 2017, Plaintiff received a total of 100 pages of documents on a rolling basis. As that batch of documents did not contain information that she knew existed, Plaintiff filed a FOIA appeal with the Office of Information Policy (OIP) in November 2017. Upon information and belief, OIP dismissed the appeal for untimeliness. Sometime after November 2017, however, Plaintiff found a folder labeled "BAIN FOIA 2015" in an EOIR shared drive, while she was taking an on-line ethics training course. Because the folder had her name, she clicked open the folder and discovered approximately 1,000 pages of documents that were responsive to her September 2015 FOIA request. Those documents had not been released to Plaintiff. Many of the 1,000 pages pertained to her and her personnel records, while other pages pertained to similarly situated immigration judges who sought transfers to other court locations. Upon discovering the "BAIN FOIA 2015" folder, Plaintiff printed the 1,000 pages using her office computer. Plaintiff then produced those documents in response to EOIR's discovery requests, because they were relevant to her formal complaint of discrimination. Exh. 4, at 153-147.

In the EEOC proceeding, Defendants opposed Plaintiff's use of the "BAIN FOIA 2015" folder and moved for sanctions. The administrative judge denied the motion for sanctions, finding that Plaintiff did not obtain those documents in violation of law, and that any privilege that may have attached to the documents had been waived. The administrative judge further ruled that Plaintiff may use the "BAIN FOIA 2015" documents in the EEOC action. On February 26, 2020, the administrative judge ruled that she had no authority to prohibit the use of the "BAIN FOIA

2015" documents in non-EEOC proceedings. She placed the "BAIN FOIA 2015" documents under a protective order, to protect them from unauthorized disclosure.

In view of the administrative judge's ruling, Plaintiff requests that the Court enter an order requiring Defendants to produce the "BAIN FOIA 2015" documents for the court's inspection. To the extent Defendants claim that FOIA Exemptions 5, 6, and 7(C) prohibit their disclosure, Plaintiff respectfully requests that the Court order Defendants to prepare and file a privilege log identifying each of the documents it would like to withhold, and the grounds for withholding such documents. With regard to documents that can be released after deleting "[a]ny reasonably segregable portion of a record," Plaintiff respectfully requests that the court order Defendants to release to Plaintiff those documents in redacted form. *See* 5 U.S.C. § 552a(b). For now, Plaintiff will continue to treat the "BAIN FOIA 2015" documents as exempt from disclosure under the FOIA and Privacy Act.

### 2.   January 2018 FOIA Request

After she received ACIJ Nadkarni's October 2016 mid-term performance rating, Plaintiff requested that ACIJ Nadkarni release to her all documents and materials that were used to formulate Plaintiff's performance rating. ACIJ Nadkarni refused. In January 2018, Plaintiff filed a first-party FOIA and Privacy Act request for those records. In April 2018, EOIR responded to the second FOIA request by producing 39 pages of documents and withholding an unspecified number of pages. Because those 39 pages did not reveal or substantiate the factual basis of the performance rating, Plaintiff timely pursued an appeal to the OIP. The OIP sustained the appeal in part and dismissed it in part, and remanded the matter to EOIR without stating its reasoning. On remand, EOIR sent Plaintiff a CD that contained redacted copies of some of the judicial

opinions that she had written during the rating period 2015 to 2017. Those judicial decisions did not contain the information Plaintiff requested. Exh. 2.

Plaintiff raised her FOIA non-release claims to the EEOC through her second motion to amend the formal complaint, filed on May 7, 2018. She asserted that EOIR's willful failure to release documents in response to her 2015 and 2018 FOIA and Privacy Act requests were materially adverse personnel actions that deprived her of her statutory right to prosecute her formal complaint. She further asserted that EOIR's release of privacy-protected information from her personnel file in January 2017 was a personal invasion of privacy that was retaliation for her pursuit of an EEOC action. The administrative judge accepted all but four of the 42 allegations of discrimination. The four allegations that she rejected pertained to Plaintiff's FOIA and Privacy Act claims.

Defendants' withholding of the requested personnel and evaluative records was a violation of Section 552a(d). Plaintiff, therefore, respectfully requests that the Court enter an order directing Defendants to produce those records to Plaintiff. To the extent Defendants claim that FOIA Exemptions 5, 6, and 7(C) prohibit their disclosure, Plaintiff respectfully requests that the Court order Defendants to prepare and file a privilege log identifying each of the documents it would like to withhold, and the grounds for withholding such documents. With regard to documents that can be released after deleting "[a]ny reasonably segregable portion of a record," Plaintiff respectfully requests that the court order Defendants to release to Plaintiff those documents in redacted form. *See* 5 U.S.C. § 552a(b).

3.    August 2019 FOIA Request

On September 27, 2019, OPR issued its Final Report of Investigation.  The Report cited record materials and evidence that OPR did not and would not release to Plaintiff.  Earlier, Plaintiff filed a FOIA and Privacy Act request on August 4, 2019, requesting release of the full record of investigation.

After Plaintiff inquired about the status of her FOIA and Privacy Act request, OPR released 45 pages of documents and withheld 530 pages.  Plaintiff appealed to OIP on June 10, 2020. Because Defendants had released four of the thirteen OPR interview transcripts to Plaintiff without claiming exemption or privilege, Plaintiff had a reasonable expectation that OPR would release the remaining nine interview transcripts or audio recordings.  Those nine transcripts contained eyewitness testimonies on which OPR relied in preparing its Report of Investigation.  Therefore, the nine interview transcripts or audio recordings were relevant to Plaintiff's defense against the agency's proposal to terminate her employment.   The nine interview transcripts were not privileged because they contain pure statements of fact, and they are relevant to Plaintiff's appeal of the removal decision which Plaintiff asserts was motivated by unlawful discrimination. Accordingly, Plaintiff has demonstrated a substantial need for those records.  *See, e.g.*, Robbins Tire Rubber Co. v. NLRB, 563 F.2d 724, 735-37 (5th Cir. 1997), *rev'd on other grounds*, 437 U.S. 214 (1978) (a government attorney may not protect a verbatim witness statement from disclosure (either under the FOIA or in civil discovery) merely by including its text in a memorandum prepared for use in litigation).

OPR's refusal to expedite the processing of Plaintiff's 2019 FOIA request and to release responsive documents was prejudicial.  The withholding of the records substantially diminished Plaintiff's ability to oppose the removal proposal and decision.  Since Plaintiff timely filed this district court action, the Court has jurisdiction over the 2019 FOIA release claim.  Accordingly,

Plaintiff respectfully requests that the Court direct Defendants to release the remaining record materials that comprise the OPR Record of Investigation. To the extent Defendants claim that the undisclosed portions of the record are privileged, Plaintiff respectfully requests that the Court order Defendants to file a privilege log identifying each of the documents it would like to withhold, and the grounds for withholding such documents. With regard to documents that can be released after deleting "[a]ny reasonably segregable portion of a record," Plaintiff respectfully requests that the court order Defendants to produce immediately those documents in redacted form. *See* 5 U.S.C. § 552a(b).

## B.   Plaintiff Has Timely Exhausted Her Privacy Act Claims.

Plaintiff invokes two provisions of the Privacy Act through this civil action to protect her privacy interest and to seek compensation for the deprivation of that interest. The first provision requires Defendants to take corrective action to prevent unwarranted invasion of an individual's privacy-protected personnel records.[8] *See* 5 U.S.C. § 552a(g)(4). An intentional or willful violation of that provision entitles the individual to monetary damages. *See id.* The second provision requires Defendants to maintain an accurate and complete set of Plaintiff's personnel records. *See* 5 U.S.C. § 552a(g)(1)(C). Upon request, the agency maintaining records must permit the requestor to request amendment of a record pertaining to her, in accordance with the procedures prescribed in 5 U.S.C. § 552a(d)(2).

---

[8] "In any suit brought under the provision of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and (B) the costs of the action together with reasonable attorney fees as determined by the court." 5 U.S.C. § 552a(g)(4).

1.    Unauthorized release of privacy-protected information from
        Plaintiff's personnel file.

In January 2017, ACIJ Nadkarni informed Plaintiff that information from her personnel file had been inadvertently released to the American Immigration Lawyers Association (AILA), in response to AILA's lawsuit which sought information about EOIR's Immigration Judge Complaint Resolution Program (CRP). *See* Exh. 24.  EOIR claimed that the leaked information came from its CRP database and that the leaked information concerned a counseling that she received in 2010.   Plaintiff immediately disputed that she was counseled in 2010 for any reason, and that the claim of counseling was simply untrue.[9]  Plaintiff immediately requested that EOIR retract or claw back the information, by tendering a demand to AILA to return the information that it claimed was inadvertently released.  To Plaintiff's knowledge, EOIR never made that demand and the information was never retracted.

Two months later, two immigration bar attorneys filed a complaint with ACIJ Nadkarni, claiming that Plaintiff had committed judicial misconduct in how she conducted four hearings in which they were the attorneys of record.  Exh. 30 at 87-95.  The attorneys also claimed that, in the course of conducting the four hearings, Plaintiff manifested improper demeanor and judicial bias. As support for their ethics complaint – the first Plaintiff received in her then ninth year of service as an immigration judge, the attorneys further contend that Plaintiff was "counseled previously." Id. at 92.  Even though it leaked the information and refused to claw back the information, EOIR presented the ethics complaint to OPR and requested an investigation, which OPR granted based on EOIR's assertions of improper demeanor, bias, and conduct.  Exh. 30 at 83-85, Exh. 1 at 55-

_____

[9] Plaintiff's final performance rating for the period 2009 to 2011 makes no mention of any counseling.  It rated Plaintiff's performance as satisfactory in all critical elements, including the element of professionalism. *See* Ex. 16, at 36-42.

57.  After a two-year investigation, however, OPR would find that Plaintiff did not in fact exhibit improper bias toward attorney Blessinger.  Exh. 1 at 463.  OPR also found that Plaintiff did not intentionally make false statements about Ms. Blessinger or the attorneys in her recusal orders, *see* Exh. 1 at 72; did not intentionally or knowingly violate the Immigration Judges' Ethics Guide or code of conduct in conducting the February 17, 2017 hearing, *see* Exh. 1 at 130; did not engage in any misconduct in the other three hearings OPR investigated, *see* Exh. 1 at 127 n. 445, 130 n. 467, 131-132, and did not engage in witness intimidation, *see* Exh. 1 at 132 at 475.

During the OPR investigation, Plaintiff raised the Privacy Act violation to OPR investigative counsel.  OPR investigators, however, dismissed the violation as a non-issue.  Exh. 1 at 58 n. 13.  OPR counsel stated that since Plaintiff's personnel records was at issue in the OPR investigation, OPR had to consider it anyway and any inadvertent release of the same records was not prejudicial to Plaintiff.  OPR then issued a Report of Investigation finding that Plaintiff had engaged in unintentional (reckless) misconduct in conducting the February 17, 2017 hearing, because of comments that she made to attorney Blessinger during that hearing, such as:  "Hearsay, as you know because you've gone to law school, is a very weak form of evidence."  Exh. 1 at 129.

EOIR used the OPR Final Report to propose that Plaintiff's employment be terminated.  Because Plaintiff filed the instant district court action within two years of the issuance of the OPR Report of Investigation in September 2019 and her removal in September 2020, her Privacy Act claim is timely.

To the extent Defendants contend that they are not liable for the unlawful disclosure of information to AILA, this Court should reject that argument as wholly unsupported by law.  FOIA Exemption 6 protects "personnel and medical files and similar files" from improper disclosure.  5 U.S.C. § 552(b)(6).  For information that is purely and patently contained in personnel files and

medical records, there is no question about the presumptive applicability of Exemption 6.  Here, the information that EOIR knowingly released to an outside requestor, AILA, was a counseling record from Plaintiff's personnel file.  Because it did so without Plaintiff's knowledge or consent, the release presumptively violated Exemption 6 and constituted a privacy invasion.  EOIR's refusal to demand retraction undercuts any argument that the disclosure was unintentional.  Given the chance to correct the error, it chose to do nothing.

The unlawful disclosure caused serious harm to Plaintiff's professional reputation.  The harm was reasonably foreseeable, in that AILA was known for using its resources to eliminate immigration judges it disliked for political and other impertinent reasons, such as a judge's asylum grant rate.  Exh. 24 at 11-27.  AILA used the information to file an ethics complaint against Plaintiff.  The complaint resulted in a referral to OPR.  The OPR Report of Investigation resulted in EOIR proposing to terminate Plaintiff's employment.  Defendants adopted EOIR's proposal and terminated Plaintiff's employment.   OPR's attempt to downplay the information leak is unpersuasive, because its Final Report laid the foundation for Plaintiff's discharge from DOJ and the federal service.

2. <u>Refusal to amend or expunge inaccurate portions of Plaintiff's personnel records.</u>

Section 552a(g)(1)(C) provides that the system of records a federal agency maintains must be accurate and complete.[10]  The Privacy Act prescribes the civil remedies for violations of Section

_____

[10] "Whenever any agency . . . fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual  . . . the individual may bring a civil action against the agency,

552a(g)(1)(C), including the right to request an amendment of the record.  Section 552a(d)(2) entitles the individual to request amendment of a record pertaining to him.  The agency has 10 days in which to acknowledge receipt of the amendment request, and to make the requested amendment, or inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official.  5 U.S.C. § 552a(d)(2).

Once Plaintiff has demonstrated that she timely exhausted the Privacy Act claims, the Court has jurisdiction to consider the inaccuracies and fairness of the statements in those records and determine whether any inaccurate statement resulted in Plaintiff's discharge.  If the Court finds that Defendants' violation of the Privacy Act directly caused or contributed to Plaintiff's wrongful discharge, the Court may order the appropriate remedy under Sections 552a(g)(2)(A) & (B) and 552a(g)(4), which may include costs, fees, damages, and amendment of Plaintiff's personnel records.

As discussed below, Plaintiff timely exhausted the Privacy Act claims using the agency processes that were available to her.

- The March 16, 2015 reprimand

On April 20, 2015, within 30 days of receiving the reprimand, Plaintiff sent ACIJ Santoro a memorandum pointing out the factual and legal errors in the reprimand, and asking that he rescind it.  Exh. 15, at 68-79.  He declined to do so.  ACIJ Santoro, however, did not inform

---

and the district courts of the United States shall have jurisdiction in the matters under the provision of this subsection." 5 U.S.C. § 552a(g)(1)(C).

Plaintiff of the procedures established by the agency for Plaintiff to request a review of that refusal by the head of the agency or an officer designated by the head of the agency.

- The June 2015 counseling letter

Like the reprimand, the June 2015 counseling letter contained erroneous facts and points of law that ACIJ Santoro refused to correct, when they were brought to his attention in a July 23, 2015 response memorandum. *See* Exh. 15, at 5-7, 8-66. Through the response memorandum, Plaintiff requested that ACIJ Santoro rescind the counseling letter. Exh. 15, at 5. He declined to do so. He did not inform Plaintiff of the procedures established by the agency for Plaintiff to request a review of that refusal by the head of the agency or a designated officer. Plaintiff attempted to grieve the counseling letter by presenting it to the Principal Deputy Chief Immigration Judge and the Chief Immigration Judge. However, EOIR did not take action to resolve the grievance. Exh. 15, at 3,7.

- The August 2015 final performance rating

Immediately upon receiving the August 2015 performance rating, Plaintiff requested a telephonic consultation with ACIJ Santoro. During that phone call and in subsequent email exchanges, she pointed out several mistakes of fact and asked that ACIJ Santoro correct them. She also asked that he delete the narrative in the performance rating because it contained so many factual errors as to be untruthful. ACIJ Santoro made one correction to the date of a counseling that he claimed he had given Plaintiff in March 2015. But he refused to make other necessary corrections to make the record accurate, and he did not advise Plaintiff of the procedures by which she could have requested a review by the head of the agency.

Subsequently, in January 2017, Plaintiff requested that EOIR not place the 2015 performance rating in her official personnel file because it was still being challenged as a discriminatory personnel practice through the pending EEOC action. In response, the agency denied Plaintiff's request. Exh. 19, at 54.

- The July 28, 2016 counseling letter

Upon receiving the July 28, 2016 counseling letter, Plaintiff requested that ACIJ Nadkarni take note of the factual errors in her counseling letter. Exh. 19, at 54. Plaintiff then promptly moved to amend her EEOC formal complaint to assert the July 2016 counseling letter as an additional discriminatory adverse personnel action. Exh. 4, at 1-5.

Two-and-a-half years later, Plaintiff learned for the first time that ACIJ Nadkarni had issued the white female judge a counseling letter on the same date (July 28, 2016), faulting that judge for exhibiting unprofessional behavior toward Plaintiff. Because of that very late disclosure, Plaintiff's only recourse was to dispute the accuracy and completeness of her own counseling letter through her Opposition to EOIR's Motion for Summary Judgment, filed with the EEOC in May 2019. Exh. 19, at 6-58.

EOIR's deliberate concealment of the other judge's counseling letter prejudiced Plaintiff in significant ways. It prevented her from timely seeking amendment or rescission of her own counseling letter. The counseling letter was used to justify OPR's findings of judicial misconduct. It was used in EOIR's proposal to remove her from the federal service. The Removal Decision referenced Plaintiff's July 28, 2016 letter, but it did not consider the other judge's counseling letter as a mitigating circumstance. Insofar as EOIR deliberately concealed the other judge's letter from

Plaintiff and the deciding official, Defendants are estopped from asserting a failure to exhaust this Privacy Act claim.

- October 2016 mid-term performance rating and August 2017 final performance rating

In October 2016, ACIJ Nadkarni issued an interim performance rating that cited the July 28, 2016 counseling letter to support her rating. The performance rating did not mention the other judge's counseling letter. The performance rating also referred to anonymous complaints that her co-workers had filed with management. When asked to identify those co-workers and to describe their complaints, ACIJ Nadkarni refused to do so, citing the need to protect their confidentiality. Because ACIJ Nadkarni withheld information to which Plaintiff was entitled, Defendants are estopped from arguing a failure to exhaust the October 2016 counseling letter.

The October 2016 interim rating was incorporated into the August 2017 final performance rating. Both performance ratings were provided to OPR for use in the investigation. OPR incorporated the October 2016 interim rating and August 2017 final rating into its Report of Investigation. Both performance ratings were included in EOIR's February 27, 2020 proposal to terminate Plaintiff's employment. Because Plaintiff filed this Privacy Act claim within two years of her proposed removal, this Court has jurisdiction to consider the claim.

4. Refusal to amend January 2, 2018 BIA decision

On January 2, 2018, the BIA issued a decision in case 050/051, an asylum matter that Plaintiff began hearing on December 1, 2016 and concluded on February 17, 2017. At the conclusion of the two-day hearing which lasted approximately seven hours, Plaintiff issued an oral decision from the bench that denied the asylum and related applications. On appeal, the BIA did

not address the merits of the asylum and related applications, but instead ordered that the case be remanded to another judge for handling.

Based on representations that the attorney for Ms. Blessinger made on appeal, the BIA determined that Plaintiff's conduct of the hearing did not meet the standards of conduct for immigration judges. This decision conflicted with seven other BIA decisions that reached the opposite conclusion. Exh. 25.

As Plaintiff was not privy to the arguments that Ms. Blessinger's attorney made on appeal, she attempted to reconstruct the events using court records that were available to her. On February 5, 2018, within 30 days after issuance of the BIA decision, Plaintiff filed a timely motion for reconsideration with the BIA. The motion requested that the Board reconsider and rescind the January 2, 2018 opinion because it contained numerous mistakes of law and fact. The Board declined to consider the motion and returned it to Plaintiff, citing as the reason her lack of standing to bring the motion.

The BIA's January 2, 2018 decision was erroneous as a matter of law. The ethics complaint that was the subject of the BIA decision had already been referred to OPR for an investigation. Moreover, the BIA's regulations did not authorize it to adjudicate ethics complaints filed against immigration judges or complaints of misconduct filed with OPR. Plaintiff made this argument to the BIA, but the BIA instead dismissed her motion for lack of standing.

Because the BIA decision was *ultra vires*, Plaintiff respectfully requests that the Court vacate the BIA decision. A vacatur would have no effect on the underlying merits of the immigration relief applications, because the Board's January 2, 2018 decision did not reach the

merits of relief applications. Instead, it remanded the proceeding to another judge for a *de novo* hearing.

Most significantly, the BIA's January 2, 2018 decision contained factual mistakes that were confirmed by OPR investigative counsel. OPR acknowledged that Plaintiff did not scream at Ms. Blessinger during an off-record exchange that she claimed lasted five minutes, and her paralegal claimed lasted five to ten minutes. Exh. 30 at EOIR 1647, 305-306, 28, 1122, 1647. Rather, OPR stated that the off-record time was 31 seconds. *Id.* OPR counsel further determined that Plaintiff did not mistreat Ms. Blessinger by denying her request for a break in the middle of her client's cross-examination. *Id.* These fact findings by OPR significantly undercut the BIA's ultimate conclusion that Plaintiff acted in an abusive and hostile manner toward Ms. Blessinger. Moreover, the BIA's January 2, 2018 decision is inconsistent with its rulings in seven other cases. In the other seven cases, the BIA affirmed Plaintiff's decision to deny the recusal motion, finding that it had no concerns about Plaintiff's conduct of the court hearings. Exh. 25.

Given Plaintiff's good faith attempt to seek amendment or rescission of the BIA's decision, she has substantially complied with the statutory and regulatory requirements for exhausting this Privacy Act claim. Accordingly, this Court has jurisdiction to consider the claim.

>           5.      Refusal to Amend the Report of Investigation

Through a September 6, 2019 response memorandum, Plaintiff pointed out several critical errors of fact and law that attended the draft OPR Report of Investigation. She brought these errors to OPR's attention before it issued the Final Report on September 27, 2019, but OPR declined to make the corrections. Exh. 1, at 23-51.

**C.      The Court Has Ancillary Jurisdiction to Consider Plaintiff's Privacy Act Claims.**

As Plaintiff has exhausted all available remedies at the administrative agency level and has timely filed this Privacy Act cause of action within two years of her last adverse personnel action (i.e., the September 17, 2020 Removal Decision), this Court has jurisdiction to consider this cause of action.

Defendants contend that Plaintiff did not properly exhaust all of the administrative procedures prescribed by DOJ regulations.   Even assuming this is true, the Privacy Act still authorizes this Court to entertain this cause of action because Plaintiff has filed the Privacy Act claims within two years of the September 2019 OPR Final Report and the September 2020 Removal Decision, including all of the previous adverse personnel actions that they incorporated, discussed, or relied on.   Section 552a(g)(1)(A) and (B) provides that "[w]henever any agency makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request or fails to make such review in conformity with that subsection," the individual may bring suit in federal court to compel the agency to make the requested amendment. *Id.*

The Privacy Act further states:

> In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct.  In such a case, the court shall determine the mater de novo.

5 U.S.C. § 552a(g)(2)(A).  Plaintiff submits that the Court has jurisdiction to consider her Privacy Act claims under Section 552a(g)(2)(A) or, alternatively, through its exercise of ancillary jurisdiction. *See generally* Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 373, 379-80 (1994) (noting two legitimate forms of ancillary jurisdiction:  "to permit disposition by a single

43

court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, to manage its proceedings, vindicate its authority and effectuate its decrees.").

Accordingly, and for all the reasons stated above, Defendants' Motion to Dismiss the FOIA and Privacy Act cause of action should be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss under Rule 12(b)(1) & (6).

Date:   November 17, 2021

Respectfully submitted,

Quynh Vu Bain
Pro Se Plaintiff
213 Third Street, SE
Washington, DC  20003
quynhbain75@outlook.com

## CERTIFICATE OF SERVICE

I certify that on November 17, 2021, I served the foregoing Opposition to Defendants'

Motion to Dismiss by first-class mail, and by hand delivery, addressed to the following:

Blake Weiner, Esquire
Assistant United States Attorney
Civil Division
Office of the United States Attorney
 for the District of Columbia
555 Fourth Street, NW
Washington, DC   20530


Dated: November 17, 2021

_____

Quynh Vu Bain,
*Pro Se* Plaintiff
213 Third Street, SE
Washington, DC   20003
quynhbain75@outlook.com
(202) 569-0942

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC

2021 DEC 17 P 4:04

RECEIVED

|  |  |
|---|---|
| QUYNH VU BAIN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OFFICE OF THE ATTORNEY GENERAL | ) |
| U.S. Department of Justice, | ) |
| | ) |
| OFFICE OF THE DEPUTY ATTORNEY GENERAL | ) |
| U.S. Department of Justice, | ) |
| | ) |
| OFFICE OF PROFESSIONAL RESPONSIBILITY | ) |
| U.S. Department of Justice, | ) |
| | ) |
| EXECUTIVE OFFICE FOR IMMIGRATION | ) |
| REVIEW, U.S. Department of Justice, | ) |
| | ) |
| OFFICE OF INFORMATION POLICY | ) |
| U.S. Department of Justice, | ) |
| | ) |
| Defendants. | ) |

No. 21-Civ-1751 (RDM)

RECEIVED
Mail Room

DEC 2 0 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

### STATEMENT OF SUPPLEMENTAL AUTHORITIES AND
### ARGUMENTS IN SUPPORT OF PLAINTIFF'S OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS

In their Motion to Dismiss, Defendants incorrectly assert that this Court has no jurisdiction

to consider Plaintiff's amendment claims under the Privacy Act, because Plaintiff did not exhaust

those claims at the administrative agency level. *See* Defendants' Motion to Dismiss, Docket Entry

No. 20, at p. 8-9. This argument finds little support in the law governing exhaustion of Privacy

Act claims and the documentary exhibits that Plaintiff has filed to date.

1

The Privacy Act confers jurisdiction on this Court to consider claims for amendment of inaccurate agency records. *See* 5 U. S.C. 552a(g)(4) & (5). The United States Court of Appeals for the District of Columbia Circuit has suggested that the Privacy Act's two-year statute of limitations at Section 552a(g)(5) is not jurisdictional and, therefore, it is subject to tolling. *See* Chung v. U.S. Dep't of Justice, 333 F.3d 273, 278 (D.C. Cir. 2003). When applying the Privacy Act, the D.C. Circuit has noted the distinction between the tolling doctrines of equitable estoppel and equitable tolling. *Id.* As to the former, the court of appeals explains that "[e]quitable estoppel precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations." *Id.* (internal citations and quotations omitted). As to the latter, equitable tolling "applies most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Id.* (internal quotations omitted). "Thus, the former doctrine involves a defendant's conduct, and the latter involves a plaintiff's conduct." Freeman v. U.S. EPA, Civ. Action No. 02-0387 (RMU), Doc. Nos. 35, 36 at 16-17 (D.D.C. Oct. 25, 2004).

As explained in her Opposition to the Motion to Dismiss, at pp. 27-44, Plaintiff timely exhausted her FOIA and Privacy Act access and amendment claims in sequence. Through the three FOIA requests filed in September 2015, January 2018, and August 2019, she sought personnel records and related information that she intended to use in challenging the various adverse employment actions undertaken by the responsible management officials (RMO's). The erroneous personnel records that Plaintiff sought to amend included the March 2015 reprimand, the June 2015 counseling letter, the August 2015 final performance rating, the July 2016 counseling letter, the performance ratings for 2016 and 2017, and the OPR September 2019 Final Report of Investigation.

As a direct result of Defendants' willful failure to release the requested records, Plaintiff was unable to seek corrective action from the chain of responsible management officials. Without the requisite personnel and related records, she was limited to making good faith requests of her immediate supervisors to amend those records that contained clear factual or legal error, knowing that those requests were futile and likely to be denied. Not surprisingly, the supervisors balked at making the necessary corrections, or they ignored the requests altogether. They also failed to apprise Plaintiff of the internal agency process by which she could have sought further review, as required under 5 U.S.C. 552a(d)(2)(B)(ii).

Defendants' failure-to-exhaust argument presents a catch-22 that drafters of the Privacy Act never intended. The Privacy Act generally requires the release of agency records that are "otherwise accessible" under the FOIA statute. *See* 5 U.S.C. 552a(t).[1] Its basic premise is that records that are accessible under the FOIA are subject to amendment under the Privacy Act. *See* 5 U.S.C. 552a(d)(1) (providing for access) and 552a(d)(2) & (3) (providing for amendment). Under these circumstances, application of the judicial doctrines of equitable tolling or equitable estoppel to permit the Court's consideration of Plaintiff's Section 552a(d) access and amendment claims would be appropriate. It would give effect to all three of the subsections of Section (d).

---

[1] 5 U.S.C. 552a(t) states:

(1) No agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.

(2) No agency shall rely on any exemption in this section to withhold from an individual any record which is otherwise accessible to such individual under the provisions of section 552 of this title.

5 U.S.C. § 552a(t).

3

Defendants further contend that, even if the Privacy Act claims had been timely exhausted, the Court would still have no authority to order the amendment of records such as the September 27, 2019 OPR Final Report of Investigation and the January 2, 2018 Board of Immigration Appeals decision. Grounding this argument in the regulations that DOJ promulgated at 28 C.F.R. 16.80 & 16.84, Defendants argue that those regulations expressly prohibit amendment of OPR and BIA records under any circumstance. *See* Motion to Dismiss, at pp. 9-10.

This argument directly contravenes the Privacy Act's two-year statute of limitations. which states that the district court "may order the agency to amend the individual's record . . . and shall determine the matter *de novo*." 5 U.S.C. 552a(g)(2). Because Plaintiff timely filed her FOIA and Privacy Act lawsuit within two years of the latest incident giving rise to the amendment claim, *i.e.*, the September 17, 2020 Removal Decision, the Court has jurisdiction to consider *de novo* her amendment claims, without regard to those regulations that are meant to bring DOJ into compliance with the Privacy Act's agency requirements. *See* 5 U.S.C. §§ 552a(e) and (f). As Section 552a(g) makes clear, those DOJ regulations cannot interfere with the Court's exercise of jurisdiction under Section 552a(d), *see* 5 U.S.C. § 552a(g)(1), or deprive the Court of authority to grant appropriate monetary or injunctive relief, *see* 5 U.S.C. § 552a(g)(3).

In addition, Defendants' attempt to restrict the Court's exercise of jurisdiction under Section 552a(g)(2) finds little or no support in the language of the regulations that they promulgated. For example, Defendants argue that the DOJ regulation at 28 C.F.R. § 16.80 "exempt[s] OPR reports of investigation from the amendment provisions of 5 U.S.C. § 552a(d). . . ." *See* Defendants' Motion to Dismiss, at 9. Defendants cited no case law that supports this contention, however, and Plaintiff has found none. In the absence of apposite case law, Plaintiff

4

respectfully submits that the plain language of the regulation does not support Defendants' argument.

Subsection (a) of 28 C.F.R. § 16.80 exempts Office of Professional Responsibility Record Indexes from the access and amendment provisions of 5 U.S.C. § 552a(d), but it does not expressly prohibit amendment of an inaccurate or incomplete OPR Report of Investigation.

Similarly, subsection (b) of the same regulation (28 C.F.R. § 16.80) generally exempts "Freedom of Information/Privacy Act (FOI/PA) Records" maintained in the OPR system of records from the access and amendment provisions of 5 U.S.C. § 552a(d).  However, subsection (b) carves out two exceptions that allow for access to and amendment of OPR records in a manner consistent with 5 U.S.C. § 552a(k) – the Privacy Act provision that generally exempts classified information or sensitive law enforcement records or proprietary business information from public disclosure.

The first exception that subsection (b) of 28 C.F.R. § 16.80 provides is codified in subsection (c) of the same regulation.  Subsection (c) permits access to and amendment of OPR records "that do not relate to national defense or foreign policy, official Federal investigations and/or law enforcement matters. . . ."  Subsection (c) further provides:  "In addition, where compliance [with the access and amendment provisions of 5 U.S.C. § 552a(d)] would not appear to interfere with or adversely affect the overall law enforcement process, the applicable exemption may be waived by OPR."  28 C.F.R. § 16.80(c).

The second exception is codified in subsection (d) of the same regulation (28 C.F.R. § 16.80).  Subsection (d) permits access to and amendment of OPR records, unless:

- "The records contained in this [OPR] system of records could inform the subject of an investigation of an actual or potential criminal, civil, or regulatory violation of the existence of that investigation; of the nature and scope of the

information and evidence obtained as to his activities; of the identity of confidential sources, witnesses, and law enforcement personnel; and of information that may enable the subject to avoid detection or apprehension. These factors would present a serious impediment to effective law enforcement where they prevent the successful completion of the investigation, endanger the physical safety of confidential sources, witnesses, and law enforcement personnel, and/or lead to the improper influencing of witnesses, the destruction of evidence, or the fabrication of testimony[;]" or

- "[G]ranting access to such information could disclose security-sensitive or confidential business information or information that would constitute an unwarranted invasion of the personal privacy of third parties[;]" or

- "[A]ccess to the records could result in the release of properly classified information which would compromise the national defense or disrupt foreign policy[;]" or

- "Amendment of the records would interfere with ongoing investigations and law enforcement activities and impose an enormous administrative burden by requiring investigations to be continuously reinvestigated."

28 C.F.R. §16.80(d).

Plaintiff submits that none of the above four circumstances is applicable here. As stated in her Amended Complaint at p. 33, OPR undertook the two-year investigation for a managerial-supervision purpose rather than for a law enforcement purpose. Because the requested OPR records do not contain classified or law enforcement-sensitive or proprietary information, Plaintiff had a right to access the OPR records and to request that OPR amend any record that is inaccurate or incomplete, such as the OPR Final Report of Investigation and the Attorney General's Removal Decision which incorporated all of OPR's findings and conclusions. *See, e.g.*, Bartko v. U.S. Dep't of Justice, 898 F.3d 51 (D.C. Cir. 2018); Jefferson v. U.S. Dep't of Justice, 284 F.3d 172 (D.C. Cir. 2002) (holding that DOJ is legally obligated to release records of OPR investigations to a first-party requestor, where the information was not compiled for law enforcement purposes but rather for managerial-supervision purposes).

Plaintiff has not found any case law that supports Defendants' argument that this Court lacks the authority to amend the Board of Immigration Appeals' January 2, 2018 decision. *See* Defendants' Motion to Dismiss, at 9. Although subsection (a) of the regulation at 28 C.F.R. § 16.84 expressly exempts Board decisions from amendment, the exemption is subject to the requirements of 5 U.S.C. § 552a(d)(2), (3), and (4). Those requirements prohibit amendment of Board decisions under the following circumstances: When the Board decisions "constitute official records of opinions rendered in quasi-judicial proceedings" <u>and</u> when "[a]dministrative due process could not be achieved by the *ex parte* 'correction' of such opinions by the subject of the opinion[s]." 28 C.F.R. § 16.84(a). As explained in Plaintiff's Opposition to the Motion to Dismiss at pp. 40-42, the Board's January 2, 2018 decision remanding cases 050/051 to another immigration judge for a *de novo* hearing was not an adjudication on the merits of the applicant's relief applications. Accordingly, a rescission or amendment of that particular Board decision would not impair the due process right of the applicant to a subsequent adjudication by another immigration judge; it would accord with the Board's limited appellate review authority, insofar as Board regulations do not authorize the Board to adjudicate ethics and misconduct complaints filed against immigration judges; and it would be consistent with the record of evidence that OPR compiled in the course of its two-year investigation. *See* Plaintiff's Opposition to Motion to Dismiss, at pp. 40-42. *See also* Plaintiff's Exhibit 30, at 267-276.

Through this pleading Plaintiff also notifies the Court that on December 14, 2021, the Merits System Protection Board (MSPB) automatically reinstated Plaintiff's appeal after dismissing it twice for lack of jurisdiction. According to the MSPB's Order, the MSPB still lacks a full quorum of judges and, under the reasoning of the United States Supreme Court in <u>Lucia v. SEC</u>, 138 S. Ct. 2044 (2018), the MSPB has no authority to proceed with the appeal at this time.

The MSPB intends to dismiss the appeal again within 20 days, unless both parties agree to "irrevocably consent" to the MSPB's exercise of jurisdiction. *See* Exhibit 32. Considering the current backlog of cases pending before the MSPB (approximately 3,000) and Defendants' previous objection to the MSPB's exercise of jurisdiction in this case, Plaintiff submits that the interests of judicial economy and efficiency weigh in favor of the Court assuming jurisdiction over her whistleblower retaliation cause of action. *See* Perry v. MSPB, 137 S. Ct. 1975, 1979 (2017).

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss for lack of jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1) & (6).

Dated: December 17, 2021

Respectfully submitted,

QUYNH VU BAIN
PRO SE PLAINTIFF
213 3RD ST SE
WASHINGTON DC 20003-1904
(202) 910-8553
quynhbain75@outlook.com

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC

2021 DEC 17 P 4: 03

RECEIVED

|   |   |
|---|---|
| QUYNH VU BAIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| **OFFICE OF THE ATTORNEY GENERAL** U.S. Department of Justice, | ) |
| **OFFICE OF THE DEPUTY ATTORNEY GENERAL** U.S. Department of Justice, | ) |
| **OFFICE OF PROFESSIONAL RESPONSIBILITY** U.S. Department of Justice, | ) |
| **EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**, U.S. Department of Justice, | ) |
| **OFFICE OF INFORMATION POLICY** U.S. Department of Justice, | ) |
| Defendants. | ) |

No. 21-Civ-1751 (RDM)

RECEIVED
Mail Room

DEC 2 0 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**PLAINTIFF'S EXHIBIT 32**

**MSPB Order Reinstating Plaintiff's Appeal And
Notice of Likely Dismissal Due To Lack of Quorum,
Dated December 14, 2021**

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

QUYNH VU BAIN,                                   DOCKET NUMBER
                    Appellant,                   DC-0752-21-0035-I-3

          v.

DEPARTMENT OF JUSTICE,                           DATE: December 14, 2021
                    Agency.


## ACKNOWLEDGMENT ORDER

In accordance with the previously-issued initial decision in this case, the Board has automatically refiled the appellant's appeal of her removal.  I am the administrative judge assigned to this appeal and all submissions filed hereafter should use the following docket number: **DC-0752-21-0035-I-3**.

The parties are advised that the prior Board record in this matter, MSPB Docket No.  DC-0752-21-0035-I-1, may be referred to during the adjudication of this appeal.  Accordingly, any documents previously submitted by either party in connection with the original appeal should not be resubmitted. The procedures and instructions set forth in the previous Acknowledgment Order(s) remain in effect.

The agency previously filed a motion asserting the assigned administrative judge lacks the authority to decide this appeal under *Lucia v. Securities and Exchange Commission,* 138 S. Ct. 2044 (2018).  The issue of whether currently serving Board administrative judges have the authority to decide appeals like this one under the holding in *Lucia* was certified to the Board for interlocutory appeal on April 23, 2019, and remains pending.  <u>In the interest of administrative efficiency, unless the parties are notified to the contrary, this appeal will again be</u>

dismissed without prejudice to allow the Board to address this issue.  This action will be taken no sooner than twenty days after the date of this Order.

Nevertheless, if the parties mutually agree to irrevocably waive any objection to the assigned administrative judge's appointment or authority under the Appointments Clause of the United States Constitution, including an objection pursuant to *Lucia*, for this and all other related appeals, including those dismissed without prejudice and any subsequent addendum proceedings or petitions for review of the appeal to the Board or the U.S Court of Appeals for the Federal Circuit, or any other court, they may file such written waiver with the Board within twenty days of the date of this Order.  Upon receipt of such waiver, adjudication of this appeal will proceed as normal.


FOR THE BOARD:    _____/S/_____
            Edward W. Hertwig
            Administrative Judge
            Washington Regional Office
            1901 South Bell Street, Suite 950
            Arlington, VA  22202
            Phone:  (703) 756-6250
            Fax: (703) 756-7112
            V/TDD (800) 877-8339

## NOTICE TO SELF-REPRESENTED APPELLANTS

Your petition for appeal indicates that you are currently representing yourself before this office.  The Federal Circuit Bar Association (FCBA) may be able to assist you in finding an attorney to represent you, if you are interested in pro bono representation, that is, representation at no cost to you.  If you are interested in being represented in your appeal before this office, please click on this link or paste it into the address bar on your browser:

http://fedcirbar.org/Pro-Bono/Government-Employees-Pro-Bono/Overview-FAQ

**Please note** that the MSPB neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case. It will be the decision of the individual appellant to contact the FCBA about the possibility of pro bono representation, and it will be the decision of any attorney an appellant is referred to whether they will provide pro bono representation.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Mail          Quynh Vu Bain
                         213 3rd St., SE
                         Washington, DC 20003

Agency Representative

Electronic Mail          Eric S. Daniels, Esq.
                         Department of Justice
                         Assistant Director
                         Labor & Employment Law Office
                         Justice Management Division
                         145 N Street, NE, Suite 9W.300
                         Washington, DC 20530

Electronic Mail          Melanie Russell, Esq.
                         Department of Justice
                         Labor and Employment Law Office/JMD/DOJ
                         145 N Street, NE, Suite 9W.300
                         Washington, DC 20530

| December 14, 2021 | /S/ |
| (Date) | Edward W. Hertwig |
|  | Administrative Judge |