**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **QUYNH VU BAIN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **OFFICE OF THE ATTORNEY GENERAL** | ) | |
| U.S. Department of Justice, | ) | |
| | ) | |
| **OFFICE OF THE DEPUTY ATTORNEY GENERAL** | ) | |
| U.S. Department of Justice, | ) | |
| | ) | **No. 21-Civ-1751 (RDM)** |
| **OFFICE OF PROFESSIONAL RESPONSIBILITY** | ) | |
| U.S. Department of Justice, | ) | |
| | ) | |
| **EXECUTIVE OFFICE FOR IMMIGRATION** | ) | |
| **REVIEW**, U.S. Department of Justice, | ) | |
| | ) | |
| **OFFICE OF INFORMATION POLICY** | ) | |
| U.S. Department of Justice, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Defendants' Reply Memorandum misapprehends Plaintiff's arguments concerning administrative exhaustion and overlooks important, well-settled principles of law that govern her formal complaint of discrimination. With the Court's permission, Plaintiff provides clarification concerning her legal arguments and, in doing so, will point out the erroneous assumptions of fact and law in Defendants' Reply.

A.   **Plaintiff Timely Exhausted Her Title VII Claims Before Filing Suit in this Court.**

Title VII of the Civil Rights Act of 1964 requires an employee to exhaust his administrative remedies before filing suit in federal court.  42 U.S.C. § 2000e.  If employed in the federal sector, the employee must first present his Title VII claim to his employing agency before filing a formal charge with the EEOC.  The federal employee must initiate contact with his agency's EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  If the agency does not resolve the matter within 30 days or any extension of that time period, the federal employee then has 15 days to file a formal complaint with the EEOC.  *Id.* at §§ 1614.105(d), 1614.106(a).  Upon receipt of the EEOC's final determination, the employee may file suit in federal district court within 90 days, or, if the EEOC does not take final action, after 180 days have elapsed since the filing of the formal complaint with the EEOC.  *Id.* at § 1614.407(c).  *See also* 42 U.S.C. § 2000e-16(c).  The EEOC regulations further provide that equitable doctrines such as tolling and estoppel may be asserted to save an unexhausted or untimely filed discrete act claim. *See* 29 C.F.R. § 1614.604(c).

In this case, Defendants do not dispute that Plaintiff initiated contact with the EEO Counselor on October 9, 2015, within 45 days of the August 2015 final performance rating and October 2015 decision to deny her court transfer request.  *See also* 29 C.F.R. § 1614.105(a)(1).  Nor do they dispute that she timely filed the formal complaint on December 10, 2015, within 15 days after being notified of her right to do so.  *See* 29 C.F.R. § 1614.106(b).

Defendants, however, contend that Plaintiff only exhausted four of the discrete act claims of disparate treatment asserted in her formal complaint and no claim of retaliatory treatment or

hostile work environment.  *See* Defendant's Reply Memorandum, Doc. 32), at pp. 5-6.  Taking out of context a sentence from the EEOC administrative judge's June 5, 2018 Order, Defendants posit that this Court must dismiss 35 of the 39 accepted allegations in the formal complaint as time-barred, because they were not individually presented to the EEO Counselor or the EEOC administrative judge within 45 days of the event giving rise to each of those 35 claims.  *See id.*; Exh. 4, at p. 55.  This argument reflects a fundamental misunderstanding of the regulatory exhaustion requirement.

Contrary to Defendant's argument, the EEOC regulations do not require a plaintiff to exhaust each and every discrete act of discriminatory conduct within 45 days, either through a contact with the employing agency's EEO Counselor before filing the formal complaint, or through a post-complaint filing amendment filed with the EEOC.  Defendants have not cited any dispositive case law on this point, and Plaintiff's research has yielded none.  Indeed, a close reading of the EEOC administrative judge's June 5, 2018 Order suggests that Defendants may have misunderstood the administrative judge's order.  In that order, four of the 39 accepted allegations were categorized as discrete acts of disparate treatment because they occurred only once (Exh. 4, at p. 57), while the other 35 allegations of adverse acts were classified as discrete acts of disparate treatment that also contributed to a hostile work environment because they occurred over the course of days, weeks and months (Exh. 4, at pp. 55-57, 58-60).  The order further divided the discrete acts of disparate treatment and/or hostile work environment into two sub-categories: Those acts occurring between March 11, 2015 and January 2016, during the charging period; and those acts occurring between January 2016 and May 1, 2018, during the amendment period.  *See id*.  The order labeled the second sub-category of discrete acts as additional adverse acts that were a continuation of the alleged hostile work environment.  *See* Exh. 4, at p. 55.

As Defendants are aware, Plaintiff filed two motions to amend after she filed the formal complaint. The first motion to amend was filed on August 25, 2016, within 45 days after Plaintiff received the July 28, 2016 counseling letter from ACIJ Nadkarni but before EOIR completed its investigation of the formal complaint. Exh. 4, at pp. 26-28; Exh. 3, at pp. 1-3. Under EEOC regulations, a complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. *See* 29 C.F.R. § 1614.106(d). In this case, the EEOC administrative judge granted that motion to amend and recognized the July 28, 2016 counseling letter as a discrete act of disparate treatment and retaliatory conduct that also contributed to a hostile work environment. *See* Exh. 4, at pp. 57, 58.

The second motion to amend was filed after a pre-trial conference on May 1, 2018. Exh. 4, at pp. 30-52. During that pre-trial conference, which Plaintiff attended, the EEOC administrative judge asked Plaintiff to combine the claims that she articulated in her formal complaint (*see* Exh. 4, at pp. 13-23) with the additional claims that arose after the filing of her formal complaint, and put them into a single document. Accordingly, on May 7, 2018, Plaintiff filed a second motion to amend the formal complaint. The second motion set forth a total of 43 allegations of discrimination, retaliation, and a hostile work environment that occurred between January 2015 and May 1, 2018. *See* Exh. 4, at pp. 98-197. The EEOC administrative judge subsequently issued an order accepting 39 of the 43 allegations. *See* Exh. 4, at pp. 53-61. Most notably, the administrative judge did not reject any of those allegations for failure to exhaust. She did not accept the four allegations that pertained to Plaintiff's claims under the FOIA and Privacy Act, upon concluding that she did not have the authority to grant the relief that Plaintiff requested. Exh. 4, at pp. 53-55. Accordingly, the EEOC administrative judge's June 5, 2018 Order does not

support Defendants' argument that all but four of Plaintiff's discrete act claims must be dismissed for failure to exhaust administrative remedies.

Defendants' argument appears to rest on the flawed theory that almost all of the discrete acts of disparate treatment or retaliation asserted in Plaintiff's formal complaint are not "like or related." *See* Defendants' Reply, Doc. 32, at pp. 6-8.  The problem with this argument is that the EEOC considered nearly all of Plaintiff's discrete act claims to be "like or related."  The EEOC's regulatory definition of "alleged issue of discrimination" lists the adverse actions that are presumed to affect the terms or conditions of employment, as listed on EEOC Standard Form 462.  Those adverse actions include:

> Appointment / hire; assignment of duties; awards; conversion to full-time; disciplinary action / demotion; disciplinary action / reprimand; disciplinary action / suspension; disciplinary action / removal; duty hours; evaluation / appraisal; examination / test; harassment / nonsexual; harassment / sexual; medical examination; pay / overtime; promotion / non-selection; reassignment / denied; reassignment / directed; reasonable accommodation; reinstatement; retirement; termination; terms / conditions of employment; time and attendance; training; and other.

29 C.F.R. § 1614.702(k).

As Defendants are also aware, after filing a formal complaint with the EEOC, a federal employee does not have to initiate contact with the EEOC Counselor of her employing agency within 45 days of the incident alleged to be discriminatory or retaliatory, when the employee asserts a subsequent claim that is "like or related" to the original claim.  *See* 29 C.F.R. § 1604.105(b)(1) (providing that after the employee files a formal complaint, she "may amend a complaint *at any time* prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint.") (emphasis added).  Moreover, after the employee

requests a hearing, she "may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint." *Id.* at § 1604.105(d).

Defendants' Motion to Dismiss fails to acknowledge that, at the pleadings stage, the regulatory presumption that all of the discrete acts alleged in the formal complaint were actionable discriminatory conduct. 29 C.F.R. § 1614.702(k). The regulation also presumed that the alleged discriminatory conduct "result[ed] in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.' " Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) (internal citation omitted). In view of the EEOC's broad definition of actionable discriminatory conduct and its liberal amendment rule, there can be no serious dispute that all of the adverse actions that Plaintiff challenged in the EEOC proceeding were "like or related." This conclusion is reinforced by the EEOC administrative judge's June 5, 2018 Order, which accepted 39 of the 43 allegations for adjudication and rejected none for failure to exhaust. Defendants' contrary reading of the administrative judge's order is simply not supported by the judge's order or the applicable regulatory language.

In addition, Defendants assert – for the first time in their Reply – that none of the adverse actions that occurred after the EEOC administrative judge dismissed Plaintiff's formal complaint on February 26, 2020, are "like or related" to the adverse actions that preceded the dismissal of the formal complaint. *See* Defendants' Reply, Doc. 32, at pp. 7. This argument is a red herring, meant to divert attention away from the fact that Defendants moved to terminate Plaintiff's employment *the very next day* after the administrative judge granted summary judgment against Plaintiff. Exh. 1, at pp. 133-145. The timing of the proposed removal provides the clearest evidence of Defendants' discriminatory and retaliatory motive. Moreover, a direct connection can be drawn between the adverse personnel actions that preceded the dismissal of her EEOC action

and those that immediately followed.  Issued one day following the summary judgment decision, Defendants' February 27, 2020 Notice of Proposed Removal relied on the March 2015 reprimand; June 2015 counseling letter; July 28, 2016 counseling letter; October 2016 mid-term performance evaluation; and September 2019 OPR Report of Investigation to argue for Plaintiff's removal. Exh. 1, at pp. 143-144.  Likewise, the September 17, 2020 Removal Decision incorporated entirely the September 2019 Report of Investigation and the EOIR Director's Notice of Proposed Removal. It also relied on adverse actions dating back to 2015, such as the August 2015 performance rating and July 28, 2016 bogus counseling letter, for evidentiary support.  Exh. 1, at 216-217; Exh. 18, at pp. 23-25.  The repeated use of the earlier discriminatory adverse personnel actions to effect Plaintiff's removal belies Defendants' claim that the termination of her employment was a separate and distinct adverse action wholly unrelated to the earlier adverse actions.

Furthermore, even assuming that Plaintiff was required to exhaust the Notice of Proposed Removal as a discrete act of discriminatory conduct, she did so through several filings with the EEOC.  Through a March 27, 2020 response to the Justice Department's Complaint Adjudication Office, Plaintiff notified Defendants of her intent to appeal the administrative judge's February 26, 2020 summary judgment decision and order.  *See* Exh. 34 (new exhibit filed with this Sur-Reply). In the same communication, Plaintiff also notified Defendants of her intent to challenge their February 27, 2020 Notice of Proposed Removal.  *See id.*  Plaintiff requested that Defendants join in her request to hold the entire EEOC proceedings in abeyance pending the Attorney General's resolution of the proposed removal of Plaintiff from DOJ and the federal service.  Defendants, however, declined that invitation.  *See id.*  Accordingly, Plaintiff had provided actual and timely notice of her intent to challenge Defendants' proposal to terminate her employment as a related, discrete act of discriminatory and retaliatory conduct.

Within 30 days after her removal on September 17, 2020, Plaintiff filed an MSPB mixed action appeal to challenge her removal. *See* Exh. 5. *See also* 29 C.F.R. §§ 1614.302(a)(2) & (b). Plaintiff elected the remedy of an MSPB appeal because the MSPB had jurisdiction, in the first instance, to consider the Removal Decision's factual and legal bases, along with any underlying discriminatory or retaliatory motives. *See id.* (a "mixed action appeal" alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, [etc.]"). The MSPB notice of appeal was timely filed within 30 days after the issuance of the Removal Decision. Exh. 5. The date of filing of the "mixed action appeal" notice "[was] deemed to be the date of initial contact with the [EEO Counselor]." *See* 29 C.F.R. § 1614.302(b). The MSPB appeal notice thus apprised Defendants of Plaintiff's intent to challenge the factual and legal bases of the Removal Decision, as well as her affirmative defenses to removal which are based on discrimination, retaliation for prior EEO activity, and whistleblower retaliation.[1] *See* Exhs. 5, 7. Therefore, Plaintiff has properly exhausted the discrimination- and retaliation-related defenses against her removal.

As the Court now knows, Defendants moved to dismiss the MSPB mixed action appeal for lack of jurisdiction. Lacking a full quorum, the MSPB has thrice dismissed Plaintiff's appeal.[2]

---

[1] Though she was not required to, Plaintiff also contacted the EEO Counselor of her employing agency, EOIR, to advise him of the election of the MSPB remedy and the filing of the MSPB appeal on October 19, 2020, that included two affirmative defenses based on discrimination and retaliation. This was done within 45 days after Plaintiff received the Attorney General's Removal Decision. *See* Exh. 7.

[2] Most recently, the MSPB dismissed Plaintiff's mixed action appeal for the third time in two years. *See* Exhibit 33 (filed with this Sur-Reply). The MSPB once again held that it lacked jurisdiction over Plaintiff's mixed action appeal because it lacked a quorum of judges. *Id.* Because Plaintiff has prudentially exhausted the mixed action appeal, she respectfully requests that the Court assume jurisdiction over that appeal, given that the MSPB has repeatedly indicated that it does not have jurisdiction over the dispute, and the EEOC has indicated an unwillingness to reconsider its decision granting summary judgment to Defendants or take up Plaintiff's challenge

Exhs. 8, 9, 10.  In doing so, however, the MSPB suggested that Plaintiff return to the EEOC and seek any available remedies from that agency.  Exh. 8.  Taking her cues from the MSPB, Plaintiff returned to the EEOC on a timely filed motion to reconsider the Commission's March 24, 2021 decision disposing of Plaintiff's appeal.  Exh. 6.  The reconsideration motion apprised the EEOC of Plaintiff's MSPB mixed action appeal and the MSPB's dismissals of that appeal for lack of jurisdiction.  *Id.*  The motion requested that the EEOC reopen and hold in abeyance the EEOC proceedings pending the MSPB's review of the Attorney General's September 2020 Removal Decision, which Plaintiff alleged was discriminatory and retaliatory.  *Id.*  But Defendants opposed that motion to reconsider, too, and the EEOC denied it.  Thus, as of this date Plaintiff has exhausted all available administrative remedies at the EEOC and the MSPB, and the issues and claims set forth in her Amended Complaint are ripe for judicial review.  Having been fully apprised of all of Plaintiff's claims and opposed them at every turn, Defendants cannot now be heard to complain about a lack of exhaustion.  *See* Brown v. Marsh, 777 F. 2d 8, 14 (D.C. Cir. 1985) ("Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out  . . . every vestige of employment discrimination within the federal government.").

## B.    Plaintiff Exhausted Her Retaliation and Hostile Work Environment Claims.

Plaintiff has sufficiently identified the factual and legal bases of her retaliation and hostile work environment claims in several pleadings filed with the EEOC.  *See* Exh. 4, at pp. 13-23

---

to her removal from DOJ and the federal service.  *See* Exhs, 8, 9, 10, 32, 33.  *See also* Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 107 (D.C. Cir. 1986) (To establish the futility exception to the prudential exhaustion requirement, the proponent must show that the administrative processes "appear clearly useless, either because the agency charged [with the process] has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue.").

(Statement of Quynh Vu Bain in Support of Formal Complaint, filed with the EEOC on December 10, 2015); Exh. 4, at pp. 1-5 ; Exh. 3, at pp. 1-3 (First Motion to Amend, filed August 25, 2016); Exh. 4, at pp. 30-51 (Second Motion to Amend, filed May 7, 2018); Exh. 4, at pp. 62-95 (Plaintiff's Answers to Defendants' First Set of Interrogatories); Exh. 4, at pp. 770-804 (Plaintiff's Amended Answers to Defendants' First Set of Interrogatories); Exh. 4, at pp. 509-601, 602-680, 681-760, 761-769 (Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Statement of Disputed Material Facts, Amended Statement of Disputed Material Facts, and Second Declaration of Quynh Vu Bain).   The EEOC administrative accepted 39 allegations and classified them as discrete acts that occurred only once, discrete acts that occurred multiple times between March 2015 and January 2016, and discrete acts that occurred multiple times between January 2016 and May 1, 2018.  *See* Exh. 4, at pp 53-61.

As the pleadings and exhibits sufficiently apprised the Court and Defendants of which claims are based on discrete adverse actions and which are like or related claims, dismissal of this case under Rule 12(b) or Rule 56 would be inappropriate, given Plaintiff's compliance with all exhaustion and filing deadlines.  *See* Steele v. Shafer, 535 F.3d 689, 693 (D.C. Cir. 2008) (Garland, C.J.) (The United States Court of Appeals for the District of Columbia Circuit counsels against premature dismissal of hostile work environment and retaliation claims by Rule 56 summary judgment, when genuine factual disputes regarding the claims have not been resolved.).

Indeed, Steele rejected the very argument that Defendants now make.  535 F.3d at 691. Reversing the district court's dismissal of Steele's hostile work environment claim, the court of appeals concluded that the district court applied a timeliness rule that was inconsistent with the United States Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and, consequently, the district court erred in dismissing discrete act claims that did not

fall within the 45-day EEO Counselor contact period.  *See* <u>Steele</u>, 536 F.3d at 692-693.  The court of appeals reasoned that each discrete act that contributed to the alleged hostile work environment did not have to be raised within 45 days, and that the entire hostile work environment claim was considered timely exhausted because one of the discrete acts occurred within that 45-day period.[3] *Id.*  The court of appeals also did not require Steele to precisely articulate her hostile work environment claim, reasoning that Steele's "complaint alleges 'discrimination,' which in principle includes a hostile work environment theory[.]'"  *Id.* at 696.

Next, the court of appeals reversed the district court's dismissal of Steele's retaliation claim.  The court stated that the district court applied a standard for retaliation claims that was inconsistent with the Supreme Court's decision in <u>Burlington Northern Santa Fe Railway Co. v. White</u>, 548 U.S. 53 (2006).  *See* <u>Steele</u>, 536 F.3d at 693.  The Supreme Court in <u>Burlington</u> held that "Title VII's substantive provision and its anti-retaliation provision are not co-terminous," and that the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms[.]"  548 U.S. at 67 (quoted in <u>Steele</u>, 535 F.3d at 695-696).  Applying the Supreme Court's reasoning in <u>Burlington</u>, the court of appeals concluded that Steele did not have to show that each alleged act of retaliatory treatment was a materially adverse

---

[3] In <u>Morgan</u>, the Supreme Court held that hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."  536 U.S. at 115.  Therefore, a trial court may consider an entire hostile work environment claim for the purpose of determining liability, provided that "an act contributing to the claim occurred within the filing period."  <u>Id.</u> at 117.  *See also* <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986) (A hostile work environment exists when "discriminatory intimidation, ridicule and insult" are "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.'").  *See also* <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1993) (same).

employment practice that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.[4] <u>Steele</u>, 535 F.3d at 695.

Here, Defendants ask the Court to dismiss, as unexhausted, the three discrete acts of discriminatory conduct that occurred more than 45 days before Plaintiff contacted the EEO Counselor on October 9, 2015.  Those three discrete adverse actions are the January 2015 counseling email, the March 2015 reprimand, and the June 2015 counseling letter.  *See* Defendants' Reply, Doc. 32, at pp. 5-6.  The three discrete incidents were expressly incorporated into the August 2015 performance rating and were used to justify the denial of Plaintiff's requests for a court transfer in October 2015, special work opportunities in October 2015, and a promotion in November 2015.  Exh. 4, at pp. 781-785, 13-23; Exh. 3, at pp. 23-25.  Their incorporation into the August 2015 performance rating provides the clearest evidence that Defendants believed they were integral to the performance rating, and the performance rating was exhausted within 45 days through an EEO Counselor contact.  *See* Exh. 4, at p. 18.  Thus, under the reasoning of <u>Steele</u>, the three discrete acts may be considered part of Plaintiff's hostile work environment claim.  Under the reasoning of <u>Steele</u>, those discrete acts are considered reasonably related to Plaintiff's hostile work environment.  *See* <u>Steele</u>, 536 F.3d at 694 ("To establish hostile work environment claims under Title VII, . . . , plaintiffs must show harassing behavior sufficiently severe or pervasive to alter the conditions of [their] employment.") (quoting <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 133 (2004) (internal quotations omitted)).

---

[4] Title VII's anti-discrimination provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race or other protected characteristics.  42 U.S.C. § 2000e-2(a).  Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee because he has opposed any practice made unlawful by Title VII or otherwise has participated in a VII proceeding.  *Id.* § 2000e-3(a).

Regarding those discrete retaliation claims that arose after Plaintiff filed her formal complaint, Plaintiff properly exhausted those claims through the two motions to amend.  For example, the July 28, 2016 counseling letter was exhausted through the first motion to amend. Exh. 3, at pp. 1-3.  The July 28, 2016 counseling letter was incorporated into the October 2016 and August 2017 performance ratings as evidentiary support for the performance ratings.  Since the performance ratings were like or related to the July 28, 2016 counseling letter, Plaintiff was not required to raise those discrete acts of discriminatory or retaliatory conduct through a separate motion to amend filed with the EEOC within 45 days.  And because the July 28, 2016 counseling letter, October 2016 interim performance rating, and August 2017 final performance rating were subsequently used to support other adverse actions including the September 2019 OPR Report of Investigation, February 2020 Notice of Proposed Removal, and September 2020 Removal Decision, Plaintiff was not required to amend her formal complaint to preserve her right to challenge those subsequent discrete acts of retaliation that comprised the scheme to purge her from the immigration judge corps, so that her full-time employment position could be given to an incumbent immigration judge or judge candidate who did not possess her protected characteristics.

Defendants apparently rely on Morgan, 536 U.S. at 101, to argue that Plaintiff's theory of adding "like or related" claims amounts to impermissible "bootstrapping" of unrelated claims. Defendants' Reply, Doc. 32 at pp. 6-8.  But Morgan only holds that "for discrete discriminatory acts, [the filing period] serves as a form of statute of limitations, barring recovery for actions that take place outside the charge-filing period."  536 U.S. at 124.  Accordingly, the courts in this Circuit have interpreted Morgan as merely requiring that a plaintiff first exhaust her administrative remedies before filing a Title VII action in federal court, and Morgan does not require that the plaintiff exhaust every discrete act of retaliatory conduct within 45 days.  For example, in Adams

v. Mineta, No. 04-856 (RBW) at *7-8 (D.D.C. Feb. 16, 2006), one district judge determined that
"[t]he result of the holding in Morgan was to prohibit the plaintiff from pursuing claims of discrete
incidents of discrimination unless he had first filed a complaint with an EEO counselor within the
prescribed time period."  *Id.*  In Green v. Small, No. Civ. A 05-1055, 2006 WL 148740 at *5
(D.D.C. Jan. 19, 2006), another district judge held that Morgan prohibits judicial review of claims
first raised by the plaintiff in federal court, but "separate initiation of administrative exhaustion for
related post-complaint conduct is not required . . . where the ends of administrative exhaustion
have been served by the pursuit of administrative remedies with regard to the subsequent acts."
*Id.*

In addition, the D.C. Circuit Court has analyzed the exhaustion of retaliation claims raised
after the filing of a formal complaint as a causation issue, rather than as a presentment issue.  For
example, in Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006), the court of appeal reversed
the dismissal of a retaliation claim for failure to exhaust, upon concluding that the plaintiff had
established facts sufficient to permit a reasonable inference of a retaliatory motive.  *Id.*  The court
concluded that because Holcomb repeatedly engaged in protected activity during the period when
she experienced material adverse actions, she had made out a *prima facie* case of retaliation.  *Id.*
In Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006), the court of appeals reversed the
dismissal of a retaliation claim in which the plaintiff alleged "that she was subject to a lengthy
investigation" during which she was prevented from receiving promotions and quality
assignments, because "a reasonable jury could find that the prospect of such an investigation could
dissuade a reasonable employee from making or supporting a charge of discrimination."  *Id.*  In
Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000), the court of appeals reversed the district
court's dismissal of the plaintiff's retaliation claim, concluding that "given the circumstances of

14

this case the close temporal proximity of his discrimination complaints to the refusal to consider him for [a promotion] is sufficient to establish a causal connection." *Id.*

Here, Plaintiff has adduced sufficient facts to show that she experienced retaliation as a direct consequence of her pursuing informal and formal discrimination complaints in 2014 and 2015. The temporal connection between each protected activity and Defendants' retaliatory response gives rise to a reasonable inference that her removal from DOJ and the federal service in September 2020 was retaliatory conduct taken to punish her for pursuing the EEO complaints. As documented in her EEOC pleadings, the March 2015 reprimand was retaliation for her pursuit of an EEO complaint after her reasonable accommodation request was denied. *See* Exh. 13, at pp. 2-53. The March 2015 reprimand also was retaliation for calling attention to the problem of persistent video-conference equipment malfunction and unconstitutional prolonged detentions at the York County Jail that elevated litigation risks for the Agency and personal and professional liability risks for Plaintiff. *See* Exh. 13, at p. 66, 71-74 . The June 2015 counseling letter was retaliation for Plaintiff's pursuing an informal discrimination complaint over the March 2015 reprimand. *See* Exh. 15. The August 2015 performance rating was retaliation for her filing a grievance over the June 2015 counseling letter. *See* Exh. 18, at pp. 23-25. The July 28, 2016 counseling letter was retaliation for her filing a formal complaint with the EEOC in December 2015. *See* Exh. 4, at pp. 24-25, 26-28. The October 2016 mid-term performance rating and August 2017 final performance rating retaliated against Plaintiff for challenging the July 28, 2016 counseling letter through the August 25, 2016 first motion to amend. *See* Exh. 3, at pp. 1-3. The August 2017 referral to OPR was retaliation for her opposing the January 2017 leak of privacy-protected information from her personnel file – information that two immigration bar attorneys subsequently used to file an ethics complaint against her in March 2017. *See* Exhs. 4, at 27-28;

Exh. 29.  The September 2019 OPR Report of Investigation was retaliation for her calling out Defendants' misuse of the Constitutionally defective Immigration Judge Complaint Resolution Program to get rid of disfavored immigration judges and her objection to the OPR investigation. *See* Exh. 1, at pp. 146-184, 185-191; Exh. 30, at pp. 124-219.  The February 2020 Notice of Proposed Removal was retaliation for Plaintiff's pursuit of the EEOC action that the administrative judge had just dismissed the preceding day.  *See* Exh. 1, at pp. 133-145.  The September 2020 Removal Decision was retaliation for Plaintiff's pursuit of the EEOC action, including her appeal of the administrative judge's summary judgment decision to the EEOC.  *See* Exh. 1, pp. 192-220. From the above-described temporal connections reasonable inferences of retaliatory motives can be inferred, even though Plaintiff has alleged that the same adverse actions were also motivated by discriminatory animus.  The temporal connections illustrate clearly how EOIR officials marched in lockstep with Justice Department leadership in perpetrating the ultimate act of retaliation – termination of Plaintiff's 29-year career in the DOJ and the federal service, to serve Defendants' goal of giving her full-time employment position to an incumbent judge or judge candidate who did not possess her protected characteristics.

To the extent that the March 2015 reprimand is deemed unexhausted because Plaintiff withdrew the informal EEO complaint that she had lodged, Plaintiff relies on the doctrine of equitable tolling and estoppel to save that discrete act claim.  *See* Morgan, 536 U.S. at 123 (stating that  whether a charge alleges discrete acts or acts constituting a hostile work environment, the time period for filing such charge remains subject to application of equitable doctrines such as waiver, estoppel, and tolling) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).  As stated in her Opposition to the Motion to Dismiss, upon receiving the March 2015 reprimand, Plaintiff immediately contacted ACIJ Santoro to ascertain its effect on her then-

pending court transfer requests.  *See* Doc. 30-1, at p. 28 & n.4.  ACIJ Santoro assured Plaintiff that the reprimand would have no effect on her request to transfer to the Arlington Immigration Court. *Id.*  With that assurance in mind, Plaintiff decided against pursuing an EEO charge or a grievance while she was on FMLA medical leave.  Instead, she wrote a memorandum addressed to ACIJ Santoro, in which she objected to the reprimand and requested that he rescind that personnel action. Exh. 15, at pp. 68-79.  He refused.  When in October 2015 Plaintiff learned that the reprimand was the reason she was disqualified from a court transfer, she immediately contacted the EEO Counselor to lodge a complaint.  Under these circumstances, Defendants are estopped from arguing that Plaintiff did not exhaust the March 2015 reprimand within 45 days.  *See* Jarrell v. United States Postal Service, 753 F.2d 1088, 1092 (D.C. Cir. 1985) (holding that a failure to comply with filing requirements because of "justifiable reliance on the advice of another government officer" is one instance in which a waiver of exhaustion requirements may be appropriate).  Plaintiff should not be penalized for adopting a cautious approach to complaining about discriminatory treatment, just as Defendants should not be rewarded for misleading her about the adverse effects of particular adverse actions.

**C.    Plaintiff Properly Exhausted Her FOIA and Privacy Act Claims By Directing the Requests to the Appropriate Agency Officials.**

Defendants' Reply repeatedly asserts that Plaintiff's requests to correct certain erroneous personnel records must be dismissed for failure to exhaust, because she did not "[write] directly to the Department component that maintains the record" to request an amendment or correction of a Department of Justice record, and she instead "made only informal requests that did not comply with the pertinent regulation," 28 C.F.R. § 16.46.  *See* Defendants' Reply, Doc. 32, at pp. 2-3. Tellingly, the regulation Defendants cited does not prescribe any more process than what Plaintiff

had already employed, to no avail.[5]  *See* Plaintiff's Opposition to Motion to Dismiss, Doc. 30-1, at pp. 36-42.

In light of the Supreme Court's decision in <u>Irwin v. Department of Veteran Affairs</u>, 498 U.S. 89, 95 (1990), the Court of Appeals for the District of Columbia Circuit has rejected the view that the Privacy Act limitations period is jurisdictional.  *See* <u>Chung v. United States Dept. of Justice</u>, 333 F.3d 273, 278 (D.C. Cir. 2003).  Accordingly, in this Circuit exhaustion of Privacy Act claims is prudential rather than jurisdictional.  *See* <u>Doe v. U.S. Dept. of Labor</u>, 451 F. Supp. 2d 156, 169 (D.D.C. 2006).  *See generally* <u>Avocadoes Plus v. Veneman</u>, 370 F.3d 1243, 1247-1249 (D.C. Cir. 2004) (discussing the difference between non-jurisdictional or prudential exhaustion and statutory exhaustion, which is a prerequisite for judicial action).  Because the Privacy Act's statute of limitations is not jurisdictional, it is subject to non-jurisdictional exhaustion as well as equitable tolling and estoppel.  *See* <u>Doe</u>, 451 F. Supp. 2d at 169; <u>Chung</u>, 333 F.3d at 278.

---

[5] From 2015 until her removal in 2020, Plaintiff made good faith efforts to exhaust her Privacy Act claims, but to no avail.  In April 2015, Plaintiff requested in writing that her immediate supervisor, ACIJ Santoro, rescind the March 2015 reprimand, but he refused.  Exh. 4, at pp. 18-19.  In July 2015, Plaintiff requested in writing that ACIJ Santoro rescind the June 2015 counseling letter, but he refused.  Exh. 4, at pp. 18-19.  In August 2015, Plaintiff requested that ACIJ Santoro rescind or amend the errant August 2015 performance rating, but he refused.  Exh. 4, at pp. 18, 781; Exh. 18, at pp. 33-45.

In July 2016, Plaintiff requested that ACIJ Nadkarni rescind the July 28, 2016 counseling letter, but she refused.  Exh. 4, at pp. 34, 26-28, 84-85; Exh. 19, at pp. 25-28.  In October 2016 and August 2017, Plaintiff requested that ACIJ Nadkarni rescind the October 2016 mid-term performance rating and August 2017 final performance rating, which were based on the July 28, 2016 counseling letter.  Exh. 28, at pp. EOIR 1795-1796; Exh. 19, at p. 73; Exh. 4, at p. 27.  ACIJ Nadkarni ignored Plaintiff's request for information about the ratings.  *See* Exh. 4, at p. 27.  *See also* Exhibit 35 (new exhibit filed with this Sur-Reply).

Previously, Plaintiff requested that the Court apply equitable tolling principles and suspend the Privacy Act exhaustion requirement until such time as Defendants produce all of the information that is responsive to her three FOIA requests. *See* Plaintiff's Opposition to the Motion to Dismiss, Doc. 30-1, at p. 54. Equitable tolling is appropriate because, despite her best efforts, Plaintiff had been unable to obtain the information that she needed to advance her requests under the Privacy Act for amendment or expungement of her errant personnel records. *See* Earle v. Holder, 815 F. Supp. 2d 176 (D.D.C. 2011), quoting Chung, 333 F.3d at 278 ("The Privacy Act's statute of limitations is not jurisdictional; it therefore is subject to equitable tolling in appropriate circumstances, 'most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'") (internal quotations marks omitted).

In this Sur-Reply, Plaintiff also requests that the Court waive the Privacy Act's prudential exhaustion requirement altogether. Prudential exhaustion is subject to three commonly recognized exceptions: (1) futility; (2) when administrative remedies are inadequate; and (3) when irreparable injury would result absent immediate judicial review. *See* Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 107 (D.C. Cir. 1986). To establish futility, resort to the administrative process "must appear clearly useless, either because the agency charged [with the process] has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue." *Id.* at 106. Administrative remedies are inadequate "when the administrative agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong." *Id.* at 107. To establish irreparable injury, there must be a clear showing that no remedy exists to repair the injury." *Id.* at 109.

Plaintiff has sufficiently demonstrated that her attempts at non-jurisdictional exhaustion have been futile, there exists no adequate remedy to redress the Privacy Act violations, and Plaintiff has suffered irreparable injury.  As a direct consequence of Defendants' intentional release of privacy-protected information from her personnel file, Plaintiff became the subject of a two-year rancorous OPR investigation that was wrongfully predicated on an ethics complaint containing false accusations of professional misconduct.  Although OPR ultimately absolved Plaintiff of almost all of those false accusations, the damage had already been done.  *See* Plaintiff's Opposition to the Motion to Dismiss, Doc. 30-1, at pp. 11-23, 26-33, 35, 41-49.  In addition, Plaintiff has demonstrated the futility of seeking release of information under the FOIA and Privacy Act that could be used to support her record amendment requests.  *See id.,* at pp. 40-48, 55.  Because Defendants unreasonably refused to release all responsive documents, Plaintiff made the records amendment requests knowing that they were futile or useless.  *See id.*, at p. 55.  Indeed, her supervisors rejected or ignored the requests to amend or expunge certain records, without advising her of any available avenue for seeking further review.  *See id.* at 55.  Accordingly, prudential exhaustion of the Privacy Act's administrative remedy is excused by the futility of doing so.

Finally, the administrative remedies are simply inadequate to right all the grievous injuries that Defendants inflicted over those five years.  Defendants deliberately leaked privacy-protected information from Plaintiff's personnel file that was erroneous or non-existent, refused to claw back that information, accepted an ethics complaint that referred to the leaked information and contained patently false accusations of judicial misconduct, and referred the complaint to OPR for an investigation based on the false accusations.  *See* Opposition to Motion to Dismiss, Doc. 30-1, at pp. 34-36.  If, as Defendants now argue, the Justice Department's own regulations do not permit

amendment or expungement of the Board's January 2, 2018 decision or the OPR September 27, 2019 Report of Investigation (*see* Defendants' Motion to Dismiss, at pp. 9-10), then Plaintiff should not have to exhaust the provisions at 28 C.F.R. §§ 16.84 & 16.80 at all, since those administrative remedies are clearly inadequate. *See* Doe, 451 F. Supp. 2d at 169; Chung, 333 F.3d at 272. Thus, by Defendants' own admission, there is no adequate administrative remedy that could right the wrongs they have caused.

In seeking Plaintiff's removal from DOJ and the federal service, Defendants based their Notice of Proposed Removal and the Removal Decision on the Board decision and the OPR Report. *See* Exh. 1, at pp. 143-144; 215-217. Given the Board's refusal to rescind its January 2, 2018 decision and OPR's refusal to correct its erroneous Report of Investigation,[6] the Court should issue an order requiring Defendants to amend the factual and legal errors in Plaintiff's personnel records or expunge those records altogether, followed by publication in the news media a statement concerning the amendment, expungement, and retraction of those erroneous records.

In sum, Plaintiff's attempts to exhaust all potential avenues of administrative relief under the FOIA and Privacy Act were met with obstreperousness. In view of her good faith attempts to seek release of responsive documents and amendment of her personnel records from each

---

[6] In February 2018, Plaintiff moved the Board of Immigration Appeals to reconsider and rescind its January 2, 2018 decision in case 050/051, which heavily criticized Plaintiff for abusive behavior that an immigration bar attorney, Eileen P. Blessinger, falsely accused Plaintiff of manifesting during a February 17, 2017 court hearing. *See* Plaintiff's Opposition to the Motion to Dismiss, Doc. 30-1, pp. 40-42. The Board, however, denied the Motion to Reconsider, finding that Plaintiff lacked standing to bring it. *Id.* at 42.

After OPR issued a draft Report of Investigation in July 2019, Plaintiff pointed out the most obvious, significant errors in that report and requested that OPR rescind or correct the report. *See* Exh. 1, at pp. 23-51. OPR, however, doubled down on the errors and refused to correct them.

"Department component that maintains the record," 28 C.F.R. § 16.46, the Court should waive prudential exhaustion and grant Plaintiff the remedies she seeks under the Privacy Act.

Dated:  February 25, 2022                              Respectfully submitted,


QUYNH VU BAIN
PRO SE PLAINTIFF
213 3RD ST SE
WASHINGTON DC  20003-1904
quynhbain75@outlook.com
(202) 910-8553