## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **QUYNH VU BAIN,** | ) | |
| | ) | |
| Plaintiff, | ) | **No. 21-Civ-1751 (RDM)** |
| | ) | |
| v. | ) | |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, ET AL.** | ) | |
| | ) | |

### PLAINTIFF'S STATEMENT REGARDING THE NECESSITY OF SEALING PLAINTIFF'S EXHIBITS 1 TO 30

By Minute Order issued on June 29, 2022, this Honorable Court directed the parties to state their respective positions concerning the continued placement of Plaintiff's Exhibits 1 to 30 under seal. The Court directed Plaintiff to provide a chart stating which of the 30 sealed exhibits, or portions thereof, should remain under seal and the reasons they should remain under seal. Through an earlier Order dated July 6, 2021, the Court indicated that the six factors stated in *United States v. Hubbard,* 650 F.2d 293 (D.C. Cir. 1980), should be applied in determining the necessity of sealing the 30 exhibits. *See* Dkt. #4. The six *Hubbard* factors are:

(1)    The need for public access to the documents at issue;
(2)    The extent of previous public access to the documents;
(3)    That someone has objected to disclosure, and the identity of that person;
(4)    The strength of the property and privacy interests asserted;
(5)    The possibility of prejudice to those opposing disclosures; and
(6)    The purpose for which a party introduced the documents during the judicial proceedings.

*Id.* at 317-323.

Plaintiff appreciates that the Court is sensitive to her privacy concerns and desires to strike a proper balance between privacy protection and public access. While there is a strong

presumption in favor of public access to judicial proceedings, *id.*, "that presumption may be outweighed in certain cases." *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). One such situation is when the privacy interest to be protected pertains to an individual's medical, personnel, or similar records. In that situation, Exemption 6 of the FOIA and Privacy Act provides that the information may not be disclosed if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552b(6). *See Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) ("Once withheld material implicates a substantial privacy interest, a Court must evaluate whether release of that material would constitute a 'clearly unwarranted invasion of personal privacy.' "). The Court should evaluate the risk of disclosure "not simply in terms of what the requestor might do with the information, but also in terms of what anyone else might do with it." *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996).

According to the Justice Department's FOIA Policy Guide,[i] the only relevant public interest under Exemption 6 is "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). The requested information must advance that interest. *NARA v. Favish*, 541 U.S. 157, 172 (2004). "Information that reveals little or nothing about an agency's own conduct" will not suffice. *Beck v. U.S. Dept. of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993). Here, Plaintiff recognizes that the general public may have an interest in understanding how an agency evaluates work performance, investigates complaints of misconduct, refers complaints to OPR for investigation, disciplines employees, and removes employees for cause. That interest, however, must be balanced against the nature of the information that Plaintiff seeks to place under seal, which is information that comes from her own medical, personnel, and similar files. The United States Court of Appeals for the D.C. Circuit has

2

held that Exemption 6 categorically protects from disclosure potential and actual disciplinary matters. *Bloomgarden v. Dept. of Justice*, 874 F.3d 757, 760 (D.C. Cir. 2017) (withholding under Exemption 6 a letter describing a prosecutor's grounds for termination). Plaintiff thus has a substantial privacy interest in those records, and, at this point in the litigation, that interest overrides the public interest in disclosure.

Moreover, through Count I Plaintiff seeks to amend or expunge the personnel and disciplinary records that her former employer issued during a five-year period between 2015 and 2020. Plaintiff's claim for amendment and expungement arises under Section 552a(g)(1)(A) and (g)(2)(A) of the Privacy Act, which provides that "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. . . ." *Id.* The crux of her claim is that Defendants issued personnel and disciplinary records that they knew or should have known contained egregious errors of fact, law, and analysis, and thereafter refused to correct or rescind the records. *See* Amended Complaint, ¶ 150. They were motivated by discriminatory and retaliatory animus to destroy Plaintiff's legal career, professional reputation, and sole means of livelihood. *See id.* at ¶¶ 151-157. Until the merits of Count I are resolved, restricting public access to those records would prevent further harm to Plaintiff.[ii] The public interest will not be served by disclosure of records whose aim was to discriminate and retaliate.[iii]

Finally, Plaintiff recognizes the inherent difficulty of seeking access to privacy-protected records about herself, while simultaneously seeking to withhold access from the public. Plaintiff takes this opportunity to clarify that she is only seeking privacy-protected information about herself that Defendants have compiled but have not released to her. *See* endnote i, below. The information she seeks falls into the category of medical, personnel, and similar files. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (stating that the term "similar files"

eyewitnesses

covers records about a person that can be identified as applying to that individual, . . . the release of which would create a palpable threat to privacy."). The "similar files" category includes transcribed testimonies of nine eyewitnesses whom OPR interviewed in the course of the two-year investigation but would not release to Plaintiff, even as a first-party requestor. *See* Amended Complaint, ¶¶ 91-94, 96. Plaintiff has an undisputed statutory right to access that information. *See* 5 U.S.C. 552a(d), 552a(g)(3). OPR's failure to release the nine eyewitness interview transcripts prevented Plaintiff from mounting the strongest possible defense against the charges of removal that rested principally on the OPR Report's findings and conclusions. As a result, Plaintiff was wrongfully discharged. *See* Amended Complaint, ¶¶ 97, 100-103. More recently, OPR's continuing denial of access to the full record of investigation has hampered Plaintiff's ability to respond to Defendants' Partial Motion to Dismiss for failure to state a claim. In view of the continuing deprivation of Plaintiff's due process right to confront the evidence against her, the public disclosure of "similar files" records that Plaintiff has not seen would be highly prejudicial to Plaintiff.

Finally, Plaintiff recognizes that she bears the burden of demonstrating a *prima facie* case of employment discrimination and whistleblower retaliation, and that her employment and disciplinary records are key evidence in meeting that burden. Plaintiff submits that the 30 sealed exhibits contain sufficient evidence, not privacy-protected, to sustain her burden of proving that the adverse actions Defendants undertook against Plaintiff amounted to discrimination, especially in light of the D.C. Circuit's *en banc* decision in *Chambers v. District of Columbia*, __ F.3d __ , No. 19-7098 (D.C. Cir. Jun. 3, 2022) (abolishing the long-standing requirement that, for a Title VII discrimination complaint to be actionable, a plaintiff must show that he suffered "objectively tangible harm" as a direct consequence of a discriminatory adverse action). In addition, the United

States Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), permits a court to find "that a plaintiff's *prima facie* case of discrimination (as defined in *McDonnell Douglas Corp. v. Green*, 422 U.S. 782, 802 (1973), combined with sufficient evidence for a reasonable factfinder to reject the employer's non-discriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination." Should this Court determine, however, that it cannot dispose of the Motion to Dismiss for failure to state a claim unless it publicly discloses key pieces of evidence that happen to be privacy-protected information, Plaintiff respectfully requests a reasonable opportunity to file redacted versions of the privacy-protected information on the public docket. The redactions would be limited to privacy-protected information that is contained in medical, personnel, or similar files.

Dated:  July 18, 2022

Respectfully submitted,

Quynh Vu Bain
Pro Se Plaintiff
213 3RD ST., SE
WASHINGTON, DC  20003
(202) 910-8553
Quynhbain75@outlook.com

---

[i] *See* Department of Justice Guide to the Freedom of Information Act, Exemption 6, at https://www.justice.gov/oip/page/file/1207336/download (last visited July 15, 2022).

[ii] During the June 29, 2022, Defendants' counsel advised the Court and Plaintiff that OPR has not completed its processing of Plaintiff's August 3, 2019 FOIA/Privacy Act, which requests access to the full OPR record of investigation. According to Defendants' counsel, OPR has located approximately 6,000 pages of documents that are potentially responsive. This compilation is much larger than what OPR initially indicated. A March 19, 2020 letter from OPR Deputy Counsel identified a universe of 575 pages, of which OPR released to Plaintiff 45 pages.

[iii] Defendants' Partial Motion to Dismiss asserts that Plaintiff's Amended Complaint should be dismissed for failure to exhaust Plaintiff's Privacy Act request, failure to exhaust the employment discrimination complaint, and failure to state a *prima facie* employment discrimination claim. Should the Court determine that it cannot rule on the Motion without

referring to the contents of Plaintiff's medical or personnel or similar files, Plaintiff would be pleased to provide summaries of those records or redacted versions of the same records.

| | **CHART LISTING SEALED PLAINTIFF'S EXHIBITS 1 TO 30** |
|---|---|
| **Exhibit 1** | **Description**:   Documents that comprise Plaintiff's disciplinary record file and similar files, from 2015 to 2020, including the following: |

- March 2015 Reprimand (*see also* Exhibit 14)
- Plaintiff's Response to the March 2015 Reprimand (Exhibits 13, 15)
- June 2015 Counseling Letter (*see also* Exhibit 15)
- Plaintiff's Response to the June 2015 Counseling Letter (Exhibit 15)
- August 2015 Final Performance Rating (Exhibits 18, 19)
- Plaintiff's Response to the August 2015 Rating by Emails
- July 28, 2016 Counseling Letter (Exhibit 19)
- Plaintiff's Response to the July 28, 2016 Counseling Letter (Exhibit 19)
- October 2016 Interim Performance Rating (Exhibit 20)
- Plaintiff's Response to the October 2016 Performance Rating (Exhibit 35)
- August 2017 Final Performance Rating (Exhibit 20)
- Plaintiff's Response to the August 2017 Performance Rating (Exhibit 35)
- OPR Letter of Inquiry, issued August 29, 2017 (Exhibit 30)
- Plaintiff's Response to the OPR Letter of Inquiry (Exhibit 30)
- Plaintiff's Response to the OPR Draft Report of Investigation (Exhibit 30)
- OPR's Final Report of Investigation, issued on September 27, 2019 (*see also* Exhibit 30)
- EOIR's Notice of Proposed Removal, issued on February 27, 2020 (*see also* Exhibit 30)
- Plaintiff's Response to Notice of Proposed Removal, May 12, 2020
- Plaintiff's Supplemental Response to Notice of Proposed Removal, August 11, 2020
- Attorney General's Removal Decision, issued September 17, 2020.

**Relevance and probative value**:   These privacy-protected personnel and disciplinary records support Plaintiff's claims of employment discrimination and retaliation for prior EEO activity (Count II) and whistleblower retaliation (Count III).  *See* Amended Complaint, ¶¶ 44-58, 80, 81-84, 168-185.

**Reasons for Sealing**: **Exhibit 1, pages 23-51, 53-132, 133-145, 146-175, 176-184, 185-191, and 220 should remain under seal**.  These disciplinary records were compiled and issued in a discriminatory and retaliatory manner, and they contain numerous significant errors of fact, law, and analysis.  The OPR Report of Investigation at pp. 53-132, the EOIR Notice of Proposed Removal at pp. 133-145, and the Attorney General Removal Decision at pp. 192-220 also contain

|  | |
|---|---|
|  | numerous material errors of law, fact, and analysis. For this reason, Plaintiff is seeking the remedy of amendment or expungement under the Privacy Act (Count I). Until Count I is resolved on the merits, disclosure of these documents would be extremely prejudicial to Plaintiff. Their disclosure also will cause confusion rather than contribute to a better misunderstanding of this case. If the Court determines that it cannot rule on Defendants' Motion to Dismiss without unsealing some of these records, Plaintiff respectfully request time to prepare and file redacted versions or summaries of the records. |
| **Exhibit 2** | **Description**:   Three first-party FOIA and Privacy Act requests filed with Defendants in September 2015, January 2018, and August 2019.<br><br>**Relevance and probative value**:  These FOIA/Privacy Act requests support Plaintiff's claims that Defendants violated the FOIA/Privacy Act by failing to respond to the requests in a timely fashion, and by failing to release responsive, non-privileged or non-exempt documents to Plaintiff.<br><br>**Reasons for Unsealing**:  These documents in Exhibit 2 should be unsealed. The public interest in disclosure and the purpose for which the documents are introduced in this judicial proceeding outweigh Plaintiff's privacy interest. (*Hubbard* factors (1), (4), and (6)).<br><br>---<br><br>**Description**:   A February 26, 2020 protective order issued by an EEOC administrative judge in Plaintiff's EEOC proceeding, which restricts public access to a cache of approximately 1,000 pages of documents that were stored on an EOIR server in an electronic folder labeled "BAIN FOIA 2015." The folder was accessible by EOIR employees in the Office of the Chief Immigration Judge, including immigration court employees such as Plaintiff.<br><br>**Relevance and probative value**:  The Order requires special handling to preserve EOIR's right to assert a privilege against disclosure of the documents in the folder "BAIN FOIA 2015." The Order further provides that the use of those documents is not restricted in a non-EEOC proceeding.<br><br>**Reasons for Unsealing**:  The Order should be unsealed. The public interest in disclosure and the purpose for which the document is introduced in this judicial proceeding outweigh Plaintiff's privacy interest. (*Hubbard* factors (1), (4), and (6)).<br><br>---<br><br>**Description**:  An October 29, 2018 Order of the EEOC administrative judge denying EOIR's Motion for Sanctions, finding that EOIR was solely responsible for the data breach, and that Plaintiff did not engage in any improper conduct or |

misconduct when she accessed the "BAIN FOIA 2015" folder and obtained documents for use in the EEOC litigation.

**Relevance and probative value**:  This EEOC Order rejects Defendant EOIR's malicious, false accusation that Plaintiff deserved to be sanctioned for allegedly accessing the "BAIN FOIA 2015" folder without authorization.  The EEOC Order finds that Plaintiff engaged in no such improper conduct or misconduct.  *See* Amended Complaint at ¶¶ 114-116, 118, 189.

**Reasons for Unsealing**:  This document should be unsealed.  The public interest in disclosure and the purpose for which the document is introduced in this judicial proceeding outweigh Plaintiff's privacy interest.  Plaintiff intends to seek an award of attorney's fees that were expended in defending herself against EOIR's frivolous sanctions motion.  (*Hubbard* factors (1), (4), and (6)).

---

**Description**:  Email communications with OPR counsel in August 2019, after OPR issued to Plaintiff a draft Report of Investigation.  The draft Report mentioned numerous documents that OPR did not release to Plaintiff.  OPR denied Plaintiff's request that OPR identify all of the documents that comprised the full OPR record of investigation.  OPR also denied Plaintiff a copy of those documents that OPR had used in preparing the draft Report.

**Relevance and Probative Value**:  These email communications show that OPR denied Plaintiff a procedural due process right to confront the evidence against her.  *See* Amended Complaint, ¶¶ 91, 94, 95-96, 100-102.  The email communications also confirm that EOIR had provided to OPR counsel personnel and disciplinary records belonging to Plaintiff, without Plaintiff's knowledge or consent.  The records EOIR provided to OPR contained grossly inaccurate, false, or misleading information about Plaintiff's employment at EOIR.  Those records skewed the outcome of the OPR investigation in EOIR's favor.  *See id.,* ¶¶ 78, 80.

**Reasons for Unsealing**:  Exhibit 2 should be unsealed.  The public interest in their disclosure and the purpose for which they are introduced in this judicial proceeding outweigh Plaintiff's privacy interest in documents in the "BAIN FOIA 2015" folder that pertain to her.  (*Hubbard* factors (1), (4), and (6)).

---

| | |
|---|---|
| **Exhibit 3** | **Description of Sealed Records:**  Plaintiff's administrative complaint of employment discrimination, filed with the EEOC on December 10, 2015 and amended on May 18, 2018.<br><br>**Relevance and Probative Value**:  These documents establish the timely filing of Plaintiff's  employment discrimination complaint with the EEOC (Count II). |

| | |
|---|---|
| | Thus, this Court has subject matter jurisdiction over the allegations in Count II. *See* Amended Complaint, ¶ 14.<br><br>**Reasons for Unsealing:**  Exhibit 3 should be unsealed.  The public interest in disclosure outweighs Plaintiff's privacy interest.  (*Hubbard* factors (1), (4), and (6)). |
| **Exhibit 4** | **Description of Sealed Records:**  A substantial portion of the case file of Plaintiff's administrative proceeding before the EEOC contains privacy-protected information pertaining to Plaintiff, including her medical, personnel, and similar records.<br><br>**Relevance and Probative Value:**  These documents show that Plaintiff properly exhausted her administrative remedies and timely presented the factual and legal issues of discrimination, retaliation, and hostile work environment to the EEOC for adjudication.  *See* Amended Complaint, ¶¶ 14, 23.<br><br>**Reasons for Sealing:  Exhibit 4 in its entirety should remain under seal** because it contains a substantial amount of sensitive medical, personnel, disciplinary, and similar information that cannot be readily segregated.  If the Court decides that Exhibit 4 should be unsealed, Plaintiff respectfully requests an opportunity to prepare and file a redacted version of this exhibit.  (*Hubbard* factors (4), (5), and (6)). |
| **Exhibit 5** | **Description of Sealed Records:**  Notice of mixed case appeal filed with the MSPB on October 19, 2019.<br><br>**Relevance and Probative Value:**  This document establishes the timely filing of Plaintiff's administrative appeal with the MSPB and that the Court has subject matter jurisdiction over Counts II and III, under the reasoning of *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 46 (2012). *See* Amended Complaint, ¶¶ 18-20, 25-26.<br><br>**Reasons for Unsealing:**  Exhibit 5 should be unsealed.  The public interest in disclosure (*Hubbard* factor 1) outweighs Plaintiff's privacy interest (*Hubbard* factor 4). |
| **Exhibit 6** | **Description**:  Plaintiff's Motion for Reconsideration filed with the EEOC on April 29, 2021, and the EEOC's April 21, 2022 Decision and Order denying the Motion for Reconsideration.<br><br>**Relevance and Probative Value:**  This exhibit establishes the timely filing of Plaintiff's motion to reconsider with the EEOC and shows that this Court has |

subject matter jurisdiction over the new employment discrimination and retaliation claim that Plaintiff asserted in the Motion to Reconsider. The new discrimination and retaliation claim was first exhausted with the MSPB through a Notice of Appeal filed on October 19, 2021. *See* Exhibit 5. After the MSPB twice dismissed the mixed case appeal for lack of jurisdiction, Plaintiff sought the EEOC's consideration of the new discrimination and retaliation claim through the timely filed Motion for Reconsideration. *See* Amended Complaint, ¶¶ 22, 24, 158-167. Under the reasoning of *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 46 (2012), this Court may exercise jurisdiction to consider the new discrimination and retaliation claim.

**Reasons for Unsealing:** Exhibit 6 should be unsealed. The public interest in disclosure (*Hubbard* factor 1) outweighs Plaintiff's privacy interest in non-disclosure (*Hubbard* factor 4).

| | |
|---|---|
| **Exhibit 7** | **Description:** Courtesy notice of the filing of Plaintiff's MSPB mixed case appeal, given to Defendant EOIR on November 1, 2019.<br><br>**Relevance and probative value:** This exhibit shows that Plaintiff gave Defendants actual notice of her election of remedy and the filing of her mixed case appeal with the MSPB. This notice was in addition to the constructive notice that Defendants received through the filing of the MSPB appeal. *See* Amended Complaint, ¶¶ 21, 27. It refutes Defendants' claim that the Court lacks jurisdiction over the new discrimination claim.<br><br>**Reasons for Unsealing:** Exhibit 7 should be unsealed. Plaintiff has little or no privacy interest in this document. |
| **Exhibit 8** | **Description:** MSPB Order dismissing Plaintiff's mixed case appeal without prejudice to reinstatement, issued on November 16, 2020, under the reasoning of *Lucia v. SEC*, 128 S. Ct. 2044 (2018).<br><br>**Relevance and probative value:** This document establishes that Plaintiff properly exhausted her new claim of discrimination and retaliation and that the Court may exercise jurisdiction over that claim under the reasoning of *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 46 (2012). *See* Amended Complaint, ¶¶ 29, 30, 34.<br><br>**Reasons for Unsealing:** Exhibit 8 should be unsealed. (*Hubbard* factors (1) and (6)). |
| **Exhibit 9** | |

| | |
|---|---|
| | **Description:**  MSPB Order issued on May 18, 2021, reinstating Plaintiff's mixed case appeal but advising that the appeal will have to be dismissed once again, under the reasoning of *Lucia v. SEC*, 138 S. Ct. 2044 (2018).<br><br>**Relevance and probative value**:  This document establishes that Plaintiff properly administratively exhausted her new claim of discrimination and retaliation and that the Court may exercise jurisdiction over that claim under the reasoning of *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 46 (2012).  *See* Amended Complaint, ¶¶ 31, 34.<br><br>**Reasons for Unsealing:**  Exhibit 9 should be unsealed.  (*Hubbard* factors (1) and (6)). |
| **Exhibit 10** | **Description:**  MSPB Order issued on June 8, 2021, dismissing Plaintiff's mixed case appeal a second time for lack of jurisdiction, under the reasoning of *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and stating that it would be automatically reinstated on December 13, 2021.<br><br>**Relevance and Probative Value:**  This document establishes that Plaintiff has timely and properly exhausted her MSPB claims.  Owing to the absence of jurisdiction at the MSPB, the Court may assume jurisdiction over those same claims which are articulated in Counts II and III, under the reasoning of *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 46 (2012).  *See* Amended Complaint, ¶¶  32, 34.<br><br>**Reasons for Unsealing:**  Exhibit 10 should be unsealed.  (*Hubbard* factors (1) and (6)). |
| **Exhibit 11** | **Description:**  Letter from the DOJ Office of Information Policy (OIP), dated September 13, 2021, advising Plaintiff that it had ceased the processing of Plaintiff's appeal from the decision of OPR to deny expedited processing of Plaintiff's August 3, 2019 first-party FOIA/Privacy Act request and to withhold the release of information responsive to that FOIA/Privacy Act request, citing as the reason Plaintiff's filing of this district court action.<br><br>**Relevance and Probative Value:**  This document establishes that OPR's and OIP's refusal to expedite and respond to the August 3, 2019 FOIA request deprived Plaintiff of her due process right to access the full OPR record of investigatory evidence, as well as a reasonable opportunity to respond to the OPR Report.  *See* Amended Complaint, at ¶¶ 121-125.<br><br>**Reasons for Unsealing:**  Exhibit 11 should be unsealed.  (*Hubbard* factors (1) and (6)). |

| | |
|---|---|
| **Exhibit 12** | **Description:**  Plaintiff's sworn statement of her temporary disability/medical condition, dated April 15, 2016.  The statement was submitted to EOIR in response to that agency's request for information about Plaintiff's temporary disability/medical condition, which the agency considered in investigating her December 10, 2015 administrative complaint of discrimination.<br><br>**Relevance and Probative Value:**  This exhibit confirms that Plaintiff did suffer a temporary disability or medical condition resulting from the use of malfunctioning video-conference equipment to conduct court hearing during the period 2014 to 2016.  While Plaintiff would rather not disclose this information publicly, it does establish an element of her *prima facie* claims of disability-based discrimination, retaliation for engaging in protected EEO activity, hostile work environment, and whistleblower retaliation.<br><br>**Reasons for Unsealing:  Exhibit 12 should remain under seal because it contains sensitive, privacy-protected medical information**.  Should the Court decide that Exhibit 12 has to be placed on the public docket, Plaintiff respectfully requests an opportunity to prepare and file a redacted version of this exhibit.  (*Hubbard* factors (4), (5), and (6)). |
| **Exhibit 13** | **Description:**  Exhibit 13 contains privacy-protected information about Plaintiff.  The documents include:<br><br>&bull; Email communications with court staff, Plaintiff's supervisors, and fellow judges during the period December 2014 to February 2015, concerning malfunctioning tele-video conference equipment in the Arlington, Virginia and York, Pennsylvania Immigration Courts.  The emails show that Plaintiff's supervisors were very aware of the problem, which had existed for several years before Plaintiff called their attention to it.  The emails show that the managers did not promptly address the problem and instead faulted Plaintiff for calling their attention to the problem.  The emails also show that Plaintiff's supervisor had assigned Plaintiff to an indefinite detail to the York Immigration Court beginning in January 2015, but he did not notify Plaintiff of this sudden and abrupt change in her work assignment and conditions. Exhibit 13, pp. 1-22.  She learned about the detail after it had begun, from speaking with the York Court Administrator. *Id.*<br><br>&bull; Exhibit 13 includes a reprimand letter that former Assistant Chief Immigration Judge, Christopher A. Santoro, issued to Plaintiff on March 16, 2015, after she returned a case file to the resident immigration judge in York for handling because he had been handling the case the preceding three years.  The reprimand was to have a three-year effective period, from March 2015 to March 2018.  Exhibit 13, pp. 23-64.  Plaintiff's |

response to the reprimand letter, dated April 24, 2015, is found at pp. 65-76. Her response pointed out the erroneous assumptions of fact on which ACIJ Santoro based the reprimand and requested that he reconsider and rescind the reprimand letter. Exhibit 13, pp. 65-76. Although, by its terms, the reprimand was to have effect for only three years, the letter was used to support Defendants' decision to terminate Plaintiff's employment.

- Exhibit 13 includes an undated printout from EOIR's Immigration Judge complaint resolution database, which states that Plaintiff had been reprimanded for intemperate conduct and failure to follow instructions. Exhibit 13, pp. 77-79.

- Exhibit 13 includes public source information about the now-retired resident judge. The information is a journal entry that he published on-line about his extended sabbatical in the Summer of 2014, which EOIR managers allowed him to take so that he could hike the Sierra Nevada and attend his son's college graduation. During that time period, the same managers pressed Plaintiff to go on an extended detail to the York Immigration Court to cover the resident judge's docket, but Plaintiff had to take FMLA leave for treatment of her migraine headache condition. Exhibit 13, pp. 80-83.

- Exhibit 13 includes an email communication from the resident judge to Plaintiff, asking that Plaintiff send him a legal opinion that she had prepared for one of his cases. Plaintiff understood this communication to be a request for her work product that he could plagiarize. Exhibit 13, p. 84.

- Exhibit 13 includes a Law360 news article entitled "3rd Cir. Says 3-Year Detention Violated Immigrant's Rights." Exhibit 13, at pp. 85-87. This article discusses the Third Circuit Court of Appeals' conclusion that the prolonged pre-trial detention of an immigrant at the York County Jail without a bond hearing violated the immigrant's statutory and constitutional rights.

**Relevance and Probative Value:** All of the above documents show that EOIR managers, including former ACIJs Christopher Santoro and Mary Beth Keller, discriminated against Plaintiff in favor of the white male resident judge in the York Immigration Court, and that they retaliated against Plaintiff when she expressed concern about malfunctioning video-conference equipment which had the effect of prolonging detentions, which, in turn, elevated litigation and professional liability risks for Plaintiff. *See* Amended Complaint, ¶¶ 40-43, 170-171.

|  | **Reasons for Sealing:  The reprimand letter (pp. 23-64) and the response to the reprimand letter (pp. 65-76) should remain under seal**.  The disclosure of those records would substantially prejudice Plaintiff's ability to seek their amendment or expungement under the Privacy Act (Count I).  The records should remain sealed until Count I is resolved on the merits.  (*Hubbard* factors (4) and (5)). |
|---|---|
| **Exhibit 14** | **Description:**   Select documents from the approximately 1,000 pages of documents that Plaintiff found on an EOIR server in a folder labeled "BAIN FOIA 2015."  This electronic folder was accessible by other EOIR employees.  The documents in this exhibit include:<br><br>• A chart listing incumbent immigration judges, including Plaintiff, who were waitlisted for a temporary detail to the Arlington Immigration Court, while Immigration Judge Rodger Harris was on detail to that court for a five-year period from 2009 to 2016.  Exhibit 13, p. 14.  Judge Harris did not request a permanent transfer to the Arlington Court.  In January 2016, he received a transfer to the Charlotte, North Carolina Immigration Court in 2016.<br><br>• Email communications between EOIR managers Santoro and Keller, dated March 2015, about Plaintiff, her handling of York detained cases, and her attempts to cope with the ongoing video-conference equipment failure and other logistical challenges.  The managers expressed disdain for Plaintiff in an open, hostile, and demeaning manner, copying other EOIR managers on the email exchanges.  Exhibit 14, pp. 3-74.<br><br>• Email communications between EOIR managers Santoro and Keller, dated March 2015, in which they mocked and belittled Plaintiff for calling their attention to the incredibly problematic problem of prolonged detentions at the York County Jail and the litigation risks that those cases presented to Plaintiff, who was assigned to handle them.  Exhibit 14, at pp. 89-100.<br><br>• Email communications between EOIR managers Santoro and Keller, dated March 2015, indicating that they were planning to use the March 2015 reprimand that ACIJ Santoro had just issued to Plaintiff to justify their denial of her request to transfer to the Arlington Court.  Exhibit 14, pp. 75-88, 106-120, 126-131.<br><br>• Email communication between ACIJ Santoro and Plaintiff, dated March 16, 2015, concerning her request for a transfer to the Arlington Court and the effect that the March 2015 reprimand, which ACIJ Santoro had issued earlier that day, would have on her court transfer request.  ACIJ Santoro falsely assured Plaintiff that the status of her court transfer request "has |

|  | remained unchanged" and that her "request has not yet been considered." Exhibit 14, pp. 121-122.

- Email communications between EOIR managers Santoro and Keller, dated September 2015, confirming that Plaintiff's name had been removed from the July 2015 Reassignment Register (a roster of incumbent judges who were eligible for a court transfer) and that Plaintiff's name had been removed from the register as a result of the March 2015 reprimand. Exhibit 14, pp. 138-139, 141-145.

- Email communication between Plaintiff and former Deputy Chief Immigration Judge Print Maggard, dated October 16, 2015, in which Plaintiff advised the then-deputy chief judge of her intent to file a grievance over the removal of her name from the Reassignment Register and the apparent denial of her court transfer request.  Other EOIR managers, including ACIJ Keller and ACIJ Deepali Nadkarni, were apparently alarmed by this news. Exhibit 14, at pp. 146-162.

- Email communications between EOIR managers concerning the granting of requests of other incumbent immigration judges to transfer to their courts of choice.  The emails show that some of those (white male) judges had not formally requested transfers but were nevertheless given transfers. Exhibit 14, pp. 167-176.

- Email communications between EOIR managers Santoro and Keller about oral or written counseling that they had given to certain white, male judges under their supervision for displaying hostile, intemperate, and highly inappropriate behavior on and off the bench.  The emails indicate that none of those judges would be formally disciplined for their inappropriate behaviors. Exhibit 14, pp. 177-208.  None of the judges was discharged from their employment at DOJ.

**Relevance and Probative Value:**  These documents show that EOIR managers, including former ACIJ's Santoro and Keller, discriminated against Plaintiff in favor of white male judges, and that they treated Plaintiff disparately regarding such important matters as detail assignments, court transfer requests, and disciplinary sanctions.  *See* Amended Complaint, ¶¶ 44-49.

**Reasons for Unsealing:  Except for the March 2015 reprimand which should remain under seal,** Exhibit 14 should be unsealed.  The public interest in disclosure of Exhibit 14 outweighs Plaintiff's privacy interest in the records that pertain to her.  (*Hubbard* factors (1) and (6)).

**Exhibit 15** | **Description:**  Select documents from Plaintiff's personnel file, including her disciplinary records.  They include:

<table>
<tr><td></td><td>

- Letter of counseling issued by ACIJ Santoro on June 25, 2015, allegedly for unauthorized travel to the York Immigration Court to conduct court hearings in person, after video-conference equipment in the Arlington Immigration Court failed once again. Plaintiff had obtained approval to make two additional trips to the York Court from other EOIR personnel, while ACIJ Santoro was on a two-week vacation. Exhibit 15, pp. 1-2.

- Plaintiff's response to the counseling letter, pointing out the numerous errors of fact in the letter and requesting that ACIJ Santoro reconsider and rescind the counseling. Exhibit 15, pp. 3-67. ACIJ Santoro refused.

- Email communications concerning the ongoing video-conference equipment malfunction in the Arlington and York Immigration Courts that necessitated Plaintiff's travel to the York Court to conduct in-person hearings in aged detained cases. Exhibit 15, pp. 87-170.

- Email from an EOIR executive officer describing the agency's new policy for requesting travel authorization. Exhibit 15, pp. 80-86.

- Plaintiff's response to the March 2015 reprimand letter. The response pointed out the numerous factual errors and requested that ACIJ reconsider and rescind the reprimand. Exhibit 15, pp. 68-79.

**Relevance and probative value**: These documents show that ACIJ Santoro targeted Plaintiff for criticism and unfairly evaluated her job performance and conduct on and off the bench. During the same time period, ACIJ Santoro worked with other EOIR managers (Keller and Maggard) to replace Plaintiff with a friend and colleague named Vance Spath, who was pursuing an immigration judge appointment in the Arlington Immigration Court. *See* public source information about Spath in Exhibit 21.

**Reasons for Sealing: The June 2015 counseling letter (pp. 1-2), the response to the counseling letter (pp. 3-67), and the response to the March 2015 reprimand (pp. 68-79) should remain under seal because they are sensitive, privacy-protected personnel and disciplinary records**. Through Count I, Plaintiff seeks to amend or expunge these records from her personnel file. Until Count I is resolved on the merits, the disclosure of this privacy-protected information would substantially prejudice Plaintiff's ability to seek their amendment or expungement under the Privacy Act. (*Hubbard* factors (4), (5), and (6)).

</td></tr>
<tr><td>**Exhibit 16**</td><td>

**Description**: Plaintiff's personnel records, including performance ratings from Plaintiff's supervisors in other offices at the Justice Department and recommendation letters that she received from her DOJ colleagues.

</td></tr>
</table>

|  |  |
|---|---|
|  | **Relevance and Probative Value:**  These documents rebuff Defendants' character assassination campaign, which attempted to portray Plaintiff as an employee with performance and conduct issues.  Their aim was to tarnish her professional reputation, blemish her sterling employment record, and remove her from the Arlington Court, so that her job could be given to Vance Spath or another immigration judge candidate they favored.<br><br>**Reasons for Sealing:  Exhibit 16 should remain under seal until such time as Count I is resolved on the merits.**  (Hubbard factors (4), (5), and (6)). |
| **Exhibit 17** | **Description:**   Various and sundry documents concerning OPR's September 27, 2019 Final Report of Investigation.  They include:<br><br>• OPR's inaccurate and misleading investigative summary of the complaint of judicial misconduct and bias that it investigated beginning in August 2017, and the findings and conclusions that it reached two years later.  This summary was published at OPR's webpage at https://www.justice.gov/opr/investigative-summaries.  Although the investigative summary did not identify Plaintiff as the subject of the OPR investigation, Defendants subsequently released the summary to a third-party FOIA requestor who republished the summary as an employment record associated with Plaintiff, *see* https://hoppocklawfirm.com/immigration-judge-lawsuit-raised-disturbing-case-management-and-foia-issues-at-eoir.<br><br>Public reliance on the OPR investigative summary would be misplaced, for it does not accurately summarize OPR's findings and conclusions as set forth in the OPR Final Report of Investigation.  OPR actually rejected almost all of the allegations of intentional misconduct that attorneys Blessinger and Boykin lodged against Plaintiff through the March 2017 Knight complaints, but it did so in a rambling 80-page, singled space report with 475 footnotes that contains inflammatory and inappropriate legal and policy analyses.  Although the investigative summary is now in the public domain, disclosure of the investigative report itself would be highly prejudicial to Plaintiff, given that the report contains numerous errors of fact and law that hold the potential to confuse the public and to put Plaintiff in an even greater false light.  Should the Court determine that disclosure of the report or portions therefore is necessary to the disposition of Defendants' Partial Motion to Dismiss, Plaintiff would be pleased to prepare and file a confidential summary with the Court that discusses OPR's seriously flawed findings and conclusions.<br><br>• Plaintiff's Declaration in Support of her Opposition to EOIR's Motion for Summary Judgment, filed with the EEOC on May 20, 2019.  This |

|  | affidavit documents the numerous irregularities that occurred during the OPR investigation and refutes EOIR's false claims concerning Plaintiff's conduct of the three court hearings that were the subject of the investigation.<br><br>• An April 30, 2019 unsolicited email that former EOIR Deputy Director, Marlene Wahowiak, sent to Plaintiff on the eve of EOIR moving for summary judgment in the EEOC action.  The email forwarded to Plaintiff an earlier August 4, 2017 email from Ms. Wahowiak to OPR counsel, in which Ms. Wahowiak made false assertions about Plaintiff's conduct of three court hearings involving attorneys Blessinger and Boykin, in an apparent attempt to persuade OPR to initiate an investigation of Plaintiff. Plaintiff understood that the April 30, 2019 email was EOIR's attempt to unload a piece of evidence that it failed to disclose during discovery and deemed necessary to its Motion for Summary Judgment.<br><br>**Relevance and Probative Value:**  Through these documents, Plaintiff intends to show that OPR lacked sufficient predication to initiate an investigation of Plaintiff.  The documents also show that OPR initiated an investigation that it knew contravened its own policy of not investigating matters that were in pending litigation.<br><br>**Reasons for Sealing:**  Although the investigative summary has been disclosed to a third-party FOIA requestor and thus is in the public domain, the documents in **Exhibit 17 should remain under seal until such time as Count I has been resolved on the merits**.  (Hubbard factors (2), (4), (5), and (6)). |
|---|---|
| **Exhibit 18** | **Description:**  This exhibit includes:<br><br>• Article 22 of the Collective Bargaining Agreement between EOIR and the Immigration Judges' union which states the criteria for evaluating immigration judge performance and taking disciplinary action against immigration judges (Exhibit 18, pp. 1-22);<br><br>• Plaintiff's August 2014 interim performance rating, and her August 2015 final performance rating.  (Exhibit 18, pp. 23-54);<br><br>• Plaintiff's final performance rating for the years 2013-2015 (Exhibit 18, at pp. 24-45).<br><br>• Emails from EOIR's Office of the Director, Legal Access Programs, complementing Plaintiff for her assistance in providing training to 200 pro bono attorneys in the Model Hearing Program on December 12, 2014. (Exhibit 18, at pp. 47-52). |

| | |
|---|---|
| | **Relevance and Probative Value:** The criteria for evaluating immigration judge performance and conduct were not followed in Plaintiff's case. ACIJ Santoro's final evaluation of Plaintiff's work performance for the period 2013-2015 contradicts his interim evaluation of her work performance which occurred in August 2014. Plaintiff intends to show that the comments he inserted into the August 2015 final performance rating were inaccurate, false, misleading, and disingenuous. They were motivated by a desire to retaliate against Plaintiff for pursuing an informal EEO complaint the preceding year and in March 2015 after her reasonable accommodation requests (a transfer to the Arlington Immigration Court) were denied. They were also motivated by a desire to help Vance Spath land a job in the Arlington Immigration Court. *See* Amended Complaint, ¶¶ 53, 128, 160.<br><br>**Reasons for Sealing:   The final performance rating (pp. 24-54) should remain under seal**. It contains privacy-protected personnel and disciplinary records the disclosure of which would be highly prejudicial to Plaintiff at this stage of the litigation, when she is seeking to amend or expunge those records. (*Hubbard* factors (4) and (5)). |
| **Exhibit 19** | **Description:** This exhibit contains privacy-protected personnel and disciplinary records. They include:<br><br>• Email communications showing that ACIJ Deepali Nadkarni permitted other Arlington Immigration Court judges to dump their unwanted cases on Plaintiff's hearing calendar, causing numerous scheduling conflicts. When Plaintiff raised this and other scheduling problems with ACIJ Nadkarni, she responded by issuing a counseling letter to Plaintiff on July 28, 2016. Exhibit 19, pp. 1-24, 25-28, 29-35, 55.<br><br>• The July 28, 2016 counseling letter accused Plaintiff of engaging Immigration Judge Roxanne Hladylowycz in an unprofessional exchange concerning a schedule conflict that the latter created. Exhibit 19, pp. 25-28. The counseling letter threatened to terminate Plaintiff's employment. Although it states that the counseling would not be placed in Plaintiff's personnel file, the counseling letter was later given to OPR investigative counsel, who used the letter to support OPR's conclusion that Plaintiff mistreated Judge Hladylowycz and was insubordinate to ACIJ Nadkarni.<br><br>• Through an immediate response to ACIJ Nadkarni's counseling letter, Plaintiff objected to the counseling letter as being discriminatory and retaliatory action taken to punish Plaintiff for engaging in prior EEO activity. Exhibit 19, p. 54.<br><br>• Plaintiff's final performance rating issued by ACIJ Santoro. Exhibit 19, pp. 36-53. |

| | |
|---|---|
| | **Relevance and Probative Value:**  ACIJ Nadkarni's counseling letter was discriminatory and retaliatory.  It contains significant errors of fact and omitted to mention that Judge Hladylowycz also received a counseling letter that faulted her for escalating the conflict with Plaintiff.  Exhibit 19, pp. 56-58.  Plaintiff did not receive a copy of the Hladylowycz counseling letter until April 2019, when it was attached to EOIR's Motion for Summary Judgment filed in the EEOC proceeding.  By then, it was too late to move to amend the EEOC complaint as discovery had closed.<br><br>**Reasons for Sealing:  The counseling letter (pp. 25-28) and final performance rating (pp. 36-53) should remain under seal**.  They contain privacy-protected personnel and disciplinary records the disclosure of which would be highly prejudicial to Plaintiff, as she seeks amendment or expungement of those records.  (*Hubbard* factors (4) and (5)). |
| **Exhibit 20** | **Description:**  This exhibit contains the following:<br><br>• Email communications between ACIJ Nadkarni and Plaintiff show that they had a cordial relationship that was at times contentious.  Exhibit 20, pp. 1-32, 36-38, 46-61, 64-92.<br><br>• Documents showing that ACIJ Nadkarni fostered a hostile work environment in the Arlington Court for Plaintiff.  Plaintiff's white male and white female counterparts in the Arlington Court and in other courts that ACIJ Nadkarni supervised did not experience such harassment.  Exhibit 20, pp. 92.<br><br>• Email communications with Arlington Court Administrator Deborah Castro concerning her *ex parte* communication with attorney Eileen P. Blessinger about the complaint of judicial misconduct that Blessinger filed against Plaintiff on March 1, 2017.  Exhibit 20, pp. 39-45.<br><br>• Interim performance rating issued in October 2016 and final performance rating issued in August 2017.  Exhibit 20, at EOIR 1795-1801.<br><br>• Counseling letter ACIJ Nadkarni issued to Immigration Judge Roxanne Hladylowycz on July 28, 2016.  Exhibit 20, pp. 33-35.<br><br>**Relevance and Probative Value:**  These documents show that ACIJ Nadkarni was motivated to retaliate against Plaintiff during the time that she was Plaintiff's supervisor, for engaging in prior EEO activity and whistleblowing activity.  In addition, ACIJ Nadkarni also discriminated against Plaintiff by helping EOIR management purge Plaintiff from the Arlington Immigration Court, at the same |

| | |
|---|---|
| | time that ACIJ Nadkarni worked on hiring and onboarding Vance Spath to that court.<br><br>**Reasons for Sealing:   The counseling letter (pp. 33-35) and final performance rating (pp. EOIR 1795-1801) should remain under seal**.  They contain privacy-protected personnel records the disclosure of which would be highly prejudicial to Plaintiff as she seeks to amend or expunge those records. *See Hubbard* factors (4) and (5). |
| **Exhibit 21** | **Description:**  Public source information about former Immigration Judge Vance Spath.  Exhibit 21, pp. 1-53.<br><br>**Relevance and Probative Value:**  This information confirms that Defendants had a discriminatory motive for removing Plaintiff from her job, so that it could be given to Spath.  The timing of Spath's hiring and onboarding correlated with the timing of disciplinary sanctions that Defendants imposed on Plaintiff, which ultimately led to her removal. *See* Amended Complaint, ¶¶ 135-139.  In addition, Spath's appointment to the Arlington Immigration Court was unethical, in that the United States Court of Appeals for the D.C. Circuit concluded that Spath had improperly and unethically pursued the immigration judge position while presiding over a military commission trial in which Justice Department lawyers appeared for the prosecution.  Instead of removing Spath during his two-year probationary period, EOIR promoted Spath to the position of Assistant Chief Immigration Judge upon his completion of probation.<br><br>**Reason(s) for Unsealing:**  Exhibit 21 should be unsealed.  It contains no privacy-protected information. |
| **Exhibit 22** | **Description:**   Public source information about EOIR's Immigration Judge Complaint Resolution Program, the investigations of immigration judges that OPR conducted before 2017, and the June 28, 2019 PRAO advisory opinion concerning *ex parte* communications between private bar attorneys and the immigration court.  Exhibit 22, pp. 1-60.<br><br>**Relevance and Probative Value:**  The CRP statistics suggest that OPR would not have initiated an investigation of Plaintiff but for the referral by EOIR which was predicated on false or inaccurate claims of misconduct and was motivated by a desire to purge Plaintiff from the Arlington Court, so that her job could be given to another incumbent judge or a judge candidate who wanted to work in the Arlington Court.  In addition, OPR's investigations of Plaintiff is highly irregular and incredibly problematic, because in other investigations OPR cleared other immigration judges of charges of misconduct that were similar to the charges Blessinger and Boykin lodged against Plaintiff.  Finally, the PRAO advisory opinion directly refutes OPR's finding that Plaintiff exercised poor |

judgment in having the Arlington Court Administrator testify in court about her *ex parte* conversation with attorney Blessinger concerning the misconduct complaint that Blessinger filed against Plaintiff on March 1, 2017. According to the PRAO opinion, once Plaintiff learned of the *ex parte* communication, she had an ethical obligation promptly to divulge the *ex parte* communication to DHS counsel, to cure any unfairness that the *ex parte* communication might have engendered. The PRAO opinion thus strongly suggests that OPR's investigation of Plaintiff was a pretext for discrimination and retaliation against Plaintiff for engaging in prior EEO activity and blowing the whistle on EOIR's constitutionally infirm Immigration Judge Complaint Resolution Program. *See* Amended Complaint, ¶¶ 145-145.

**Reason(s) for Unsealing:** Exhibit 22 should be unsealed. It contains no privacy-protected information.

| | |
|---|---|
| **Exhibit 23** | **Description:** Public source information about attorneys Paul L. Knight, Eileen P. Blessinger, and Carmen A. Boykin. Exhibit 23, pp. 1-18.<br><br>**Relevance and Probative Value:** This information is consistent with and supports the statements that Plaintiff made about the three attorneys in her June 8, 2017 Recusal Order. The statements drew on public source information and had a reasonable basis in fact. Although OPR acknowledged that it was permissible to use impeachment evidence to discredit the complaining attorneys (Knight, Blessinger, and Boykin), OPR concluded, incorrectly, that Plaintiff's statements about the three attorneys were false and thus did not serve that purpose. *See* Amended Complaint, ¶¶ 135-139.<br><br>**Reason(s) for Unsealing:** Exhibit 23 should be unsealed. It contains no privacy-protected information. |
| **Exhibit 24** | **Description:** Email communications with EOIR managers about the January 2017 "inadvertent disclosure" of sensitive, privacy-protected information from Plaintiff's personnel file to the private immigration bar, and EOIR's refusal to retrieve or claw back that information. Exhibit 24, pp. 1-27.<br><br>**Relevance and Probative Value:** The information leak was harassing and retaliatory treatment of Plaintiff for participating in EEO activity. Within two months, immigration bar attorneys Blessinger and Boykin filed a complaint of judicial bias and misconduct, in which they referenced the leaked information as support for their complaint. *See* Amended Complaint, ¶¶ 60-61.<br><br>**Reason(s) for Unsealing:** Exhibit 24 should be unsealed. The public interest in disclosure and the purpose for which the document is introduced in this judicial proceeding outweigh Plaintiff's privacy interest. However, while the email |

| | |
|---|---|
| | communications in Exhibit 24 are not privacy-protected information, the underlying personnel record or disciplinary record that was leaked is covered by FOIA Exemptions 6 and 7(C).  Therefore, Plaintiff has a right to assert privacy protection over that record under the Privacy Act. |
| **Exhibit 25** | **Description:**   Seven Board of Immigration Appeals opinions affirming Plaintiff's Recusal Orders issued in seven cases.<br><br>**Relevance and Probative Value:**  In affirming Plaintiff's decisions to deny attorneys Blessinger's and Boykin's Motions for Recusal in those seven cases, the Board did not find that Plaintiff's conduct of court hearings in those seven cases constituted judicial impropriety or misconduct.  *See* Amended Complaint, ¶ 73.  The seven Board opinions undercut the Board's later decision in cases 050/051, which concluded that Plaintiff did not manifest proper demeanor or an appearance of impartiality toward Ms. Blessinger in conducting a February 17, 2017 court hearing.  OPR disregarded the seven Board opinions as evidence showing that its investigation into the June 8, 2017 Recusal Order lacked sufficient predication.  *See id.* ¶ 84.<br><br>**Reason(s) for Unsealing:**   Exhibit 25 should be unsealed.   Redactions of personal identifying information from the seven Board opinions will sufficiently protect the privacy interests of the non-citizens who are the subject of those Board opinions.  *See* 8 C.F.R. § 1206.8. |
| **Exhibit 26** | **Description:**  This exhibit includes a Law360 news article entitled "Judge's 'Hostile and Bullying' Acts Prompt New Hearing."  Exhibit 26, p. 1.  This news article is about the Board's January 2, 2018 decision and order in cases 050/051, finding that Plaintiff did not conduct the February 17, 2017 in accordance with the standards expected of immigration judges.  A week after the news article was published, an immigration bar attorney named Hale Hawbecker who apparently had read the Law360 article expressed an interest in testifying as a character witness for Plaintiff.   Plaintiff advised OPR investigative counsel of Mr. Hawbecker's offer, but OPR counsel declined to interview him.  OPR's decision not to interview Mr. Hawbecker contravened its instructions to Plaintiff that she identify witnesses whom she would like OPR to interview and that she not obtain their affidavits or written statements in lieu of their being interviewed.  *See* Exhibit 26, pp. 2-4 (email communication with OPR investigative counsel about Mr. Hawbecker's offer to testify as a character witness for Plaintiff).  OPR's decision to forego interviewing Mr. Hawbecker deprived Plaintiff of a reasonable opportunity to introduce character evidence in her favor.<br><br>**Relevance and Probative Value:**   These documents show that OPR investigative counsel did not approach the investigation with impartiality and |

| | |
|---|---|
| | open-mindedness.  The refusal to interview a character witness for Plaintiff was prejudicial.<br><br>**Reason(s) for Unsealing:**  Exhibit 26 should be unsealed.  Plaintiff has no privacy interest in that email communication. |
| **Exhibit 27** | **Description:**  Email communications with OPR investigative counsel about the investigation.  Exhibit 27, pp. 1-45.<br><br>**Relevance and Probative Value:**  These documents show that Plaintiff and her then-counsel fully cooperated with OPR investigative counsel at every turn; thus, OPR counsel's accusation that Plaintiff withheld relevant and probative information is unfounded.<br><br>**Reason(s) for Unsealing:**  Exhibit 27 should be unsealed. |
| **Exhibit 28** | **Description:**  Addendum of documents filed in support of Plaintiff's August 11, 2020 Supplemental Response to EOIR's Notice of Proposed Removal.  These documents were filed with Associate Deputy Attorney General G. Bradley Weinsheimer following a hearing on the proposal to terminate Plaintiff's employment at the Justice Department and in the federal service.<br><br>**Relevance and Probative Value:**  These documents show that the OPR Final Report contains significant, prejudicial errors of fact, law, and analysis.  They also show that the proposed penalty of removal is grossly disproportionate to the alleged misconduct, and that EOIR managers treated Plaintiff disparately as compared to white male judges such as Vance Spath who had engaged in extremely serious judicial misconduct and ethical violations but were not investigated or removed from their positions.<br><br>**Reasons for Sealing:  Exhibit 28 should remain under seal because it contains Plaintiff's personnel and disciplinary records.**  (*Hubbard* factors (4) and (5)). |
| **Exhibit 29** | **Description:**  Miscellaneous documents regarding certain responsible management officials (RMO's).<br><br>**Relevance and Probative Value:**  These public source documents establish the timeline for promotions of the RMO's.<br><br>**Reason(s) for Unsealing:**  Exhibit 29 should be unsealed.  Plaintiff has no privacy interest in the documents. |

| | |
|---|---|
| **Exhibit 30** | **Description of Sealed Records:**  The EOIR Record of Removal, filed in support of EOIR's Notice of Proposed Removal.  *See* Exhibit 30, at EOIR 1-1801.<br><br>**Relevance and Probative Value:**  The EOIR Removal Record was used to support EOIR's proposal to terminate Plaintiff's employment.<br><br>**Reason(s) for Sealing:  Exhibit 30 should remain under seal, because it contains many of Plaintiff's personnel and disciplinary records**.  Because the EOIR Removal Record is also incomplete, its disclosure would present a high possibility of confusion on the part of the public and would further put Plaintiff in a false light.  It should not be released until Count I of the Amended Complaint is resolved on the merits. |