# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUYNH VU BAIN,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF THE ATTORNEY GENERAL<br>U.S. Department of Justice,<br><br>OFFICE OF THE DEPUTY ATTORNEY GENERAL<br>U.S. Department of Justice,<br><br>OFFICE OF PROFESSIONAL RESPONSIBILITY<br>U.S. Department of Justice,<br><br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, U.S. Department of Justice,<br><br>OFFICE OF INFORMATION POLICY<br>U.S. Department of Justice,<br><br>    Defendants. | No. 21-Civ-1751 (RDM) |



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG 22 2022

RECEIVED

RECEIVED
Mail Room

AUG 2 2 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## PLAINTIFF'S EXHIBIT 1

Filed Under Seal August 19, 2022

## INDEX – PLAINTIFF'S EXHIBIT 1
### Bain v. USDOJ, No. 21-cv-1751 (RDM)

### PART A

Recusal Order issued on June 8, 2017, addressing both the recusal motion filed by attorneys Eileen Blessinger and Carmen Boykin and the underlying complaint of judicial misconduct filed by their attorney, Paul L. Knight. . . . . . . . . . Pages 1 to 22

Plaintiff's Response to draft Report of Investigation issued by the Office of Professional Responsibility on July 6, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pages 23 to 51

Final Report of Investigation issued by the Office of Professional Responsibility on September 27, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pages 52 to 132

Notice of Proposed Removal issued by former Director James McHenry of the Executive Office for Immigration Review on February 27, 2020. The EOIR Removal Record is found in Exhibit 30. . . . . . . . . . . . . . . . . . . . . . . . . Pages 133-145

Plaintiff's Response to the Notice of Proposed Removal, dated May 12, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pages 146 to 184

Plaintiff's Supplemental Response to the Notice of Proposed Removal, dated August 10, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pages 185 to 191

Removal Decision issued by Associate Deputy Attorney General G. Bradley Weinsheimer, with concurrence by former Attorney General William P. Barr, on September 17, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pages 192 to 220

INDEX – PLAINTIFF'S EXHIBIT 1
Bain v. USDOJ, No. 21-cv-1751 (RDM)

PART B

Article 22 of Collective Bargaining Agreement, Performance Appraisals ...... Pages 221 to 231

January 6, 2015 Counseling Email from ACIJ Mary Beth Keller............. Pages 232 to 240

March 16, 2015 Reprimand Letter from ACIJ Christopher Santoro.......... Pages 241 to 263

Plaintiff's Response to March 16, 2015 Reprimand....................... Pages 264 to 275

June 25, 2015 Counseling Letter from ACIJ Christopher Santoro............ Pages 276 to 277

Plaintiff's Response to June 25, 2015 Counseling Letter.................... Pages 278 to 315

ACIJ Santoro's Response to Plaintiff's Response to the June 25, 2015
Counseling Letter................................................................. Page 316

Interim Performance Rating, dated August 11, 2014, from ACIJ Santoro............ Page 317

Final Performance Rating, dated August 3, 2014, from ACIJ Santoro......... Pages 317 to 326

Plaintiff's Response to the Final Performance Rating, dated August 29,
2015 to September 8, 2015............................................ Pages 327 to 331

ACIJ Santoro's Response to Plaintiff's Response to the Final Performance
Rating, dated August 31, 2015....................................... Pages 332 to 336

July 28, 2016 Counseling Letter from ACIJ Deepali Nadkarni............... Pages 337 to 340

Plaintiff's Response to July 28, 2016 Counseling Letter. . . . . . . . . . . . . . . . . . . . . . . . . . . Page 341

August 22, 2017 Final Performance Rating and October 2016 Interim
Performance Rating from ACIJ Nadkarni . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Pages 342 to 348

Plaintiff's Response to October 2016 Interim Performance Rating and
August 22, 2017 Final Performance Rating. . . . . . . . . . . . . . . . . . . . .. . . . . . . . . Pages 349 to 351

# Article 22
## Performance Appraisals

### 22.1. Introduction

The parties understand that this agreement will be incorporated as an article into the parties' collective bargaining agreement.

### 22.2. Appraisal Period

The appraisal period for Immigration Judges will be two (2) years.

### 22.3. Method of Performance Appraisals:

Performance appraisals will be made in a fair and objective manner. They will assess actual work performance in relation to the performance requirements of the position and will be based on a reasonable and representative sample of the Immigration Judge's work.

a. All performance standards and elements, critical and non-critical, that provide the basis of an Immigration Judge's appraisal will be written and included in the Immigration Judge's Performance Work Plan (PWP).

b. The Agency recognizes that pursuant to 5 USC § 4302, performance standards will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria related to the positions in question.

c. All aspects of each performance standard, including, if requested, specific examples of what is required to meet each element of each performance standard will be communicated preferably through a face-to-face meeting or tele-video conference with the affected Immigration Judge at the time the Immigration Judge receives the PWP. Supervisory expectations will be communicated and discussed as needed. If requested, a supervisor will describe what is required to meet each element of each performance standard with specificity and will provide a clear means for an Immigration Judge to self-assess whether objectives have been met.

d. Each standard and each element of each standard included in the PWP will be numbered and/or lettered for identification purposes. The Agency will inform the Immigration Judge in writing, at the time the elements and standards are communicated, whether aspects of any elements or standards are to be accorded different weights.

-1-

PLAINTIFF'S EXHIBIT 1   0221

e. Prior to rating the Immigration Judge, the supervisor will allow the Immigration Judge to provide a list of cases which he or she feels is representative of the quality of his or her legal ability during the rating period and will take these cases into consideration.

## 22.4. Communication Regarding Performance Concerns

a. The Agency shall appraise performance on a continuing basis and keep employees informed of how they are measuring up to performance standards. At least one formal progress review will be conducted, normally halfway through the appraisal cycle. In addition, the Agency will counsel Immigration Judges in relation to their overall performance on an as needed basis. Such counseling will normally take place when a supervisor notices a decrease in performance. The Agency will provide assistance to any employee whose work is below the Satisfactory level to improve his or her performance, including providing advice, identifying and providing supplemental training, and providing additional coaching, monitoring, mentoring, and other developmental activities, as appropriate, to help improve Immigration Judge performance.

b. A supervisor may choose to write an evaluative recordation to document a performance issue of an immigration judge. An "evaluative recordation" is a supervisor's written record of a performance deficiency. If a supervisor writes an evaluative recordation, a copy will be furnished to the Immigration Judge within a reasonable time following the event which it addresses. Absent extenuating circumstances, the evaluative recordation will be provided to the immigration judge by the end of the quarter in which it occurs.

## 22.5. Surveys

a. The Agency and NAIJ agree that feedback is an important part of performance management and that Immigration Judges would benefit from feedback from attorneys for both parties, respondents and witnesses, court staff and contract interpreters. To that end, the Agency and NAIJ agree that the labor management performance evaluation review committee established pursuant to part 22.13 of this Article shall be tasked with studying how surveys can effectively be used for this purpose.

b. Within thirty (30) calendar days of the effective date of this Article, the Agency and NAIJ will name their representatives on the performance evaluation review committee as established in part 22.13 of this article.

c. The performance evaluation review committee will study the use of surveys as a

"2"

component of individual performance management and review. The first meeting of the performance evaluation review committee will be arranged within forty-five (45) calendar days of the naming of the committee representatives as discussed in paragraph 2 above. The committee's goal shall be to provide a report with its recommendations to the Agency and NAIJ within six (6) months of the naming of the committee members. The committee shall meet as needed to accomplish this task and will not be limited by paragraph 22.13 of this Article. Bargaining unit employees will be provided official time, as appropriate, to attend meetings and perform reasonable amounts of work associated with the committee.

    d.    In completing the task of studying how surveys can effectively be used in the performance review process:

        i.    the committee will solicit input from various sources, including but not limited to the Immigration Judges, the attorneys representing the Department of Homeland Security in court, the American Association of Immigration Lawyers, and non-profit or pro bono organizations;

        ii.    the committee will refer to various scholarly works on the subject, including but not limited to the American Bar Association's "Black Letter Guidelines for the Evaluation of Judicial Performance", February 2005, "Transparent Courthouse, A Blueprint for Judicial Performance Evaluation", by the Institute for the Advancement of the American Legal System, University of Denver and "Shared Expectations, Judicial Accountability in Context", by the Institute for the Advancement of the American Legal System, University of Denver, 2006; and

        iii.    the committee will investigate and contact other federal and state bar organizations and organizations such as the National Judicial College in an effort to thoroughly study the role of surveys in the evaluation of judicial performance.

    e.    The Agency and NAIJ agree to reconvene negotiations on the use of surveys in the

performance review process once the committee has completed its final report on this issue. Unless the parties agree otherwise, no later than forty-five days after the completion of the committee's final report or the one (1) year anniversary of the effective date of this Article, whichever is earlier, the NAIJ will provide the Agency with proposals on the use of surveys in the performance management process. The parties agree to return to the bargaining table as soon as possible

-3-

thereafter. The parties agree that this paragraph does not preclude the Agency from raising any negotiability issues with respect to the use of specific proposals.

### 22.6. Basis of Ratings

After initial issuance of performance standards, the elements and standards will be reissued at the beginning of each appraisal period, normally within thirty (30) days of the beginning of the appraisal period. Immigration Judges will be evaluated based on a comparison of performance with the standards established for the appraisal period.

### 22.7. Rated Work

a. Working rules, policies and procedures must be communicated to the Immigration Judges before they can be held responsible for performance errors related to such rules, policies or procedures. An Immigration Judge may request, and the supervisor will provide, a written clarification of a work rule, policy or procedure.

b. Immigration Judges will not be held accountable or responsible for their elements and standards until they are received by the Immigration Judges.

c. The Agency has determined that only time spent performing work related to an Immigration Judge's PWP will be considered in performance appraisals. Authorized time spent performing collateral duties and the Association's representational functions will not be considered when evaluating any critical elements.

d. When Immigration Judges are detailed or temporarily promoted within EOIR and the assignment is expected to last one hundred-twenty (120) days or more, the Agency will provide the Immigration Judges with critical elements and standards as soon as possible (no later than thirty (30) days from the beginning of the assignment). An interim rating must be prepared when the detail or temporary promotion lasts at least 90 days. These ratings will be considered in deriving the Immigration Judge's next rating of record.

### 22.8. Rating Officials

a. Rating officials will meet with Immigration Judges under their supervision once every six months to discuss elements and standards, during the first rating cycle after this PAP is implemented. The purpose of these meetings will be to clarify any questions that the Immigration Judges have concerning their elements and standards (for example, explanations or examples of what Immigration Judges must do to perform at the "Satisfactory" level). The meetings may take place in-person, by telephone, or by VTC.

    b.    Rating Officials will discuss an Immigration Judge's performance appraisal at the time such appraisal is issued to the Immigration Judge. If an Immigration Judge's rating is unsatisfactory, the Agency will allow them to have an Association representative at the performance appraisal meeting. In those instances, the Immigration Judge will be advised in advance of the meeting that they may have an Association representative and allowed a reasonable amount of time to get a representative for the meeting if they so choose.

    c.    An Immigration Judge who is designated to act as a supervisory judge must be in a supervisory capacity for at least ninety (90) days before conducting performance appraisals. If the acting supervisor has not been in the position for at least ninety (90) days, the appraisal period will be extended to meet the ninety (90) day requirement.

## 22.9. Mechanics of the Appraisal and its Use

### 22.9.1 Performance Appraisals:

    a.    Immigration Judges will sign and date the PWP for each rating cycle to show that it was received and discussed with them. An Immigration Judge's signature on the PWP does not indicate agreement with the Agency's established elements and standards.

    b.    An Immigration Judge's signature on his or her performance appraisal indicates only that the performance appraisal has been received and not that the Immigration Judge agrees with the performance appraisal.

    c.    Use of Rating on a Performance Appraisal:

        i.    A rating on a performance appraisal record cannot be used to bar or in any way affect placement on the Reassignment Register under Article 13 of this agreement.

        ii.    A rating on a performance appraisal record does not in any way impact the advancement of an Immigration Judge through the Immigration Judge pay levels.

        iii.    A less than satisfactory rating on a performance appraisal record will impact an Immigration Judge's eligibility for a special work opportunity, as defined in article 13.3 of this Agreement, only to the extent that the rating is relevant to the specific work opportunity.

        iv.    An Immigration Judge will be advised each time an appraisal is used in a personnel action.

    d.    A written narrative is encouraged for each rating level but is required for any unsatisfactory evaluation.

### 22.9.2

If the Agency plans to observe a hearing of an Immigration Judge for performance evaluation purposes, the Agency will attempt to notify the Immigration Judge in advance if possible. Feedback from the observation will be provided to the Immigration Judge as promptly as possible, but in any event normally within one week of the observation.

### 22.9.3

An employee may prepare a written self-appraisal or respond to a performance appraisal or written interim comments. The employee's written comments will be placed in the employee performance folder with the performance appraisal if requested. Upon request, the Agency will provide an Immigration Judge with a reasonable amount of time out of court and away from case-related duties to prepare such written comments.

## 22.10. General Standards and Principles Agreed upon Regarding Ratings

### 22.10.1

The performance appraisal process shall strive to provide for the uniform treatment of all similarly situated immigration judges (i.e., immigration judges with similar working conditions performing the same job, in the same court environment). The parties agree that transparency, fairness, and thoroughness are important principles in the evaluation of performance. The Agency has determined that it will use the evaluation process to evaluate and improve an employee's performance and when helpful, will discuss an immigration judge's strengths and weaknesses.

### 22.10.2

The Agency will not prescribe a distribution of levels of ratings or required grading/rating curves for Immigration Judges covered by this agreement.

22.10.3

    In the application of performance standards to individual employees, the Agency will take into account mitigating factors including, but not limited to, availability of resources and other factors not in the control of the employee.

22.10.4

    The Agency has determined that in performance standard 3.1 of the PWP, the "goals and priorities established by the Chief Immigration Judge" do not encompass any specific numerical or time-based production standards, such as case completion goals, with the exception of statutorily or regulatory based deadlines.

22.10.5

    Performance evaluations will not be based primarily on numerical standards such as case completion goals with the exception of statutorily or regulatory based deadlines nor will they be based upon any quota system.

22.10.6

    The Parties agree that political considerations will not be used when rating an immigration judge.

22.10.7

    The Agency will not release an individual performance evaluation rating unless required by law, rule or regulation. To the furthest extent possible, the Agency will ensure that performance evaluation (as well as mid-term progress reviews) remain confidential.

22.11. **Consequences of Ratings of Less than Satisfactory Performance: Performance Improvement Plans**

22.11.1
Addressing Unacceptable Performance

    a.    If at any time during the performance appraisal cycle an Immigration Judge's performance is determined to be unsatisfactory in one or more critical elements, the Agency will notify the Judge in writing of the critical element(s) in which performance is unsatisfactory and inform the Judge in writing of the performance requirement(s) or standard(s) that must be attained in order to demonstrate acceptable performance in his or her position. This written notice will be called a "Performance Improvement Plan" (PIP).

b. The PIP will also inform the Immigration Judge that unless his or her performance in the critical element(s) improves to and is sustained at an acceptable level for at least one year, the Judge may be removed or reassigned.

c. For each critical element in which the Immigration Judge's performance is unsatisfactory, the Agency shall afford him or her a reasonable opportunity of at least ninety (90) days to demonstrate acceptable performance.

d. As part of the Immigration Judge's opportunity to demonstrate acceptable performance, the Agency shall offer assistance in improving unacceptable performance.

e. The Agency will describe with specificity the actions the Immigration Judge must take to bring his or her performance to at least an "Improvement Needed" level. Such description must include a list of the standards to be met from the PWP.

22.11.2
Prior to rating an Immigration Judge unsatisfactory, management will seek input from the Immigration Judge's local mentor if applicable, the OCIJ assigned local liaison judge(s) for the rating period, and will consult with the backup Assistant Chief Immigration Judge.

22.11.3
Administration of the PIP

a. The Agency will meet with the Immigration Judge, preferably in-person, to explain the PIP process and expectations, and to answer any questions. The Immigration Judge will be advised in advance of the meeting that they may have a an Association representative and allowed a reasonable amount of time to get a representative for the meeting if they so choose.

b. An Immigration Judge should be an active participant during the PIP process, including offering suggestions for specific forms of ameliorative assistance. The PIP process is intended to be an interactive process with the goal of improving an Immigration Judge's performance. The process of identifying appropriate forms of ameliorative assistance should include a give-and-take of ideas. The Agency agrees to consider any reasonable request made by an Immigration Judge for assistance including but not limited to CLE's, peer mentoring, observation, and appropriate training. If the Agency denies any written request of the Immigration Judge, it will provide a reason in writing. Once the ameliorative assistance to be given to a judge has been identified, it will be memorialized in writing.

    c.    If the Immigration Judge so requests, he or she will be provided a reasonable amount of time off the bench away from case processing duties to provide a self-assessment to be attached to the PIP.

### 22.12. Adverse Actions

Adverse Actions based on unsatisfactory performance shall be taken using the procedures provided in Articles 10.4 and 10.5 of the collective bargaining agreement except as provided below.

    a.    The Parties recognize that the regulations governing performance-based actions require a final agency decision to be issued within sixty (60) days of the date the Immigration Judge is notified of the proposed action. Due to the regulatory time constraints, an Immigration Judge shall generally be limited to the twenty (20) day response period provided in Article 10 except:

        1.    when the request for an extension of time is based on the Immigration Judge's need to obtain medical information or examination when the Immigration Judge has a medical issue relevant to the proposed action;

        2.    when the Immigration Judge has requested to make an oral reply and such reply cannot be arranged within the initial 20 day response period;

        3.    when the Immigration Judge plans to raise the issue of a reasonable accommodation of a handicapping condition in his or her response; or

        4.    when the Immigration Judge would like to be considered for reassignment to a different position.

    In sections 1, 3 and 4 above, the Immigration Judge shall state in his or her request for an extension the basis for the request.

    b.    The Agency's notice of a proposed personnel action to an Immigration Judge will include a statement of the Immigration Judge's right to an attorney and/or an Association representative.

    c.    At the time the Agency issues its notice of proposed action, it shall include a letter written by the Association which outlines the Immigration Judge's right to representation and his or her appeal rights. The Union's letter will be approved by the Agency before it is included. The Agency will not reject the letter without reasonable grounds.

22.13. **Mechanism for Continuing Dialogue**

The parties will establish a joint labor-management performance evaluation review committee, comprised of three (3) labor and three (3) management representatives. The Association representatives will be bargaining unit employees chosen by the Union. The committee will meet as needed, but generally once per quarter to review the performance appraisal system and address concerns raised by employees. Questions posed by the Union, Management or the Committee left unanswered during the meetings referenced above will normally be responded to within two (2) weeks of the end of the meeting. The meetings will normally be held via teleconference. If the committee decides to meet in-person, unless agreed otherwise, the Association representatives' travel expenses will be paid by the Union, except when the meeting is initiated based on concerns raised by the Agency, in which case the Agency will pay the Union's travel expenses.

If significant, unanticipated problems arise relating to the PAP, the committee will discuss them and provide recommended resolutions to the Agency.

Bargaining unit employees will be provided official time to attend meetings and perform reasonable amounts of work associated with the committee. The committee will make recommendations on issues and concerns that arise concerning the performance evaluation system (including critical elements). Members of the committee will make all reasonable efforts to come to agreement on recommendations, but in circumstances where no agreement can be reached, the labor representatives may issue their own set of recommendations. The Agency will consider all recommendations issued by the committee.

22.14. **Miscellaneous matters**

22.14.1

The Agency will not make any changes to the Performance Appraisal Program or Performance Work Plan that affect working conditions of bargaining unit employees for the duration of this agreement, absent a mutual agreement to do so. The Association reserves the right to be provided advance notice and the opportunity to negotiate regarding any policies, procedures, guidance or instructions contemplated by the PAP that affect working conditions issued after the effective date of this agreement or not disclosed in the course of these negotiations.