## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUYNH VU BAIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| OFFICE OF THE ATTORNEY GENERAL<br>U.S. Department of Justice, | ) |
| OFFICE OF THE DEPUTY ATTORNEY GENERAL<br>U.S. Department of Justice, | ) |
| OFFICE OF PROFESSIONAL RESPONSIBILITY<br>U.S. Department of Justice, | ) |
| EXECUTIVE OFFICE FOR IMMIGRATION<br>REVIEW, U.S. Department of Justice, | ) |
| OFFICE OF INFORMATION POLICY<br>U.S. Department of Justice, | ) |
| Defendants. | ) |

**RECEIVED**

AUG 2 2 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

No. 21-Civ-1751 (RDM)

# PLAINTIFF'S EXHIBIT 24
Filed Under Seal August 19, 2022

**INDEX – PLAINTIFF'S EXHIBIT 14**
**<u>Bain v. USDOJ,</u> No. 21-cv-1751 (RDM)**

Documents from the "BAIN FOIA 2015" folder and
obtained through Plaintiff's 2015 FOIA and Privacy Act request ................................. Pages 1 to 168

[THIS INDEX PAGE WAS INSERTED BY ERROR.  REQUEST TO DELETE IS
SOUGHT THROUGH PLAINTIFF'S JANUARY 28, 2023 MOTION IN BAIN
v. USDOJ, 21-cv-1751 (RDM) (D.D.C.)]

**INDEX – PLAINTIFF'S EXHIBIT 24**
<u>Bain v. USDOJ</u>, **No. 21-cv-1751 (RDM)**

Information concerning EOIR's release of privacy-protected information
from Plaintiff's personnel file in January 2017.................................................... Pages 1 to 27

**Bain, Quynh (EOIR)**

| | |
|---|---|
| **From:** | Nadkarni, Deepali (EOIR) |
| **Sent:** | Thursday, January 19, 2017 9:09 AM |
| **To:** | Bain, Quynh (EOIR) |
| **Subject:** | FW: Notice of information release |

Good morning, Judge Bain. It appears the following was included in this release (IJ last name; ACIJ last name; and court). It is my understanding that the information was removed when this third party was contacted by DOJ. Please call if you want to discuss. Thanks. Dee  703.605.0359

Bain, Quynh                           Nadkarni                            Arlington

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, January 17, 2017 6:07 PM
**To:** All of Judges (EOIR)
**Cc:** Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); King, Jean (EOIR); Wahowiak, Marlene (EOIR); Scheinkman, Rena (EOIR)
**Subject:** Notice of information release

Judges,

We want to let you know of some developments in the AILA litigation relating to the identities of immigration judges contained in the conduct and professionalism database. It appears that, due to a processing error, a third party accessed data under some of the redactions that EOIR made in a group of supplemental disclosures to AILA. This attorney published an article yesterday in which he claimed to have matched some of the immigration judges' names to complaints that had been filed – information that we had and continue to withhold as exempted under FOIA.

The affected releases have been removed from AILA's website and EOIR has determined that the key is not accurate. EOIR will continue to defend withholding the names of immigration judges from these complaints, and remains committed to protecting the identities of the immigration judges .

Thank you, and thank you for the outstanding job you do at the courts every day.

PRINT MAGGARD
DEPUTY CHIEF IMMIGRATION JUDGE

Department of Justice
Executive Office for Immigration Review
Office of the Chief Immigration Judge



1

Bain, Quynh (EOIR)

| | |
|---|---|
| **From:** | Bain, Quynh (EOIR) |
| **Sent:** | Thursday, January 19, 2017 10:54 AM |
| **To:** | Nadkarni, Deepali (EOIR) |
| **Cc:** | Maggard, Print (EOIR); King, Jean (EOIR); Bain, Quynh (EOIR) |
| **Subject:** | RE: Notice of information release |

Judge Nadkarni:

I just got out of court and don't know the backdrop, so I cannot discuss this matter with you just yet.  I assume, however, that the agency has demanded the return of any inadvertently released document/information through a claw-back request and the retraction of any publication of the information in the public domain.  I understand from reading DCIJ Maggard's email that the information is no longer on the website; however, I would like confirmation from the Agency that the inadvertently released information has been returned upon the Agency's demand.  I would appreciate the Agency providing me with a copy of the claw-back request.  At that point, I will determine what, if any, action is appropriate.

Thank you.

Quynh Bain
Immigration Judge
Arlington, Virginia

**From:** Nadkarni, Deepali (EOIR)
**Sent:** Thursday, January 19, 2017 9:09 AM
**To:** Bain, Quynh (EOIR)
**Subject:** FW: Notice of information release

Good morning, Judge Bain.  It appears the following was included in this release (IJ last name; ACIJ last name; and court).  It is my understanding that the information was removed when this third party was contacted by DOJ.  Please call if you want to discuss.  Thanks.  Dee  703.605.0359

Bain, Quynh                          Nadkarni                          Arlington

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, January 17, 2017 6:07 PM
**To:** All of Judges (EOIR)
**Cc:** Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); King, Jean (EOIR); Wahowiak, Marlene (EOIR); Scheinkman, Rena (EOIR)
**Subject:** Notice of information release

Judges,

We want to let you know of some developments in the AILA litigation relating to the identities of immigration judges contained in the conduct and professionalism database. It appears that, due to a processing error, a

PLAINTIFF'S EXHIBIT 24   0002

**Bain, Quynh (EOIR)**

| | |
|---|---|
| **From:** | King, Jean (EOIR) |
| **Sent:** | Thursday, January 19, 2017 3:30 PM |
| **To:** | Bain, Quynh (EOIR); Nadkarni, Deepali (EOIR) |
| **Cc:** | Maggard, Print (EOIR) |
| **Subject:** | RE: Notice of information release |

Judge Bain,

I am in receipt of your requests, and we are reviewing them and will get back to you as soon as possible.

Jean

**From:** Bain, Quynh (EOIR)
**Sent:** Thursday, January 19, 2017 2:57 PM
**To:** Nadkarni, Deepali (EOIR)
**Cc:** Maggard, Print (EOIR); King, Jean (EOIR)
**Subject:** RE: Notice of information release

As a supplement to my earlier email request, I ask that you send me the following information in addition to the claw-back request:

Please let me know as soon as possible if the Agency has not requested the return of the information protected under 5 U.S.C. 552(b)(6) and 7(C). I would have to make a direct request of the law firm to return such information to the Agency and to me, on the grounds that it was not subject to release by court order or under the FOIA or Privacy Act. In addition, I request the precise information concerning me that the Agency inadvertently released. Please send the entire document(s) that were inadvertently released, including non-protected and exempt information. You may send it by email, in pdf format. Since the information only pertains to me, the Agency must disclose this information without claiming any exemption under 552(b)(6) or 7(C). I would appreciate your providing the information as soon as possible, so I can take action to protect my privacy.

Thank you.

QVB

**From:** Bain, Quynh (EOIR)
**Sent:** Thursday, January 19, 2017 10:54 AM
**To:** Nadkarni, Deepali (EOIR)
**Cc:** Maggard, Print (EOIR); King, Jean (EOIR); Bain, Quynh (EOIR)
**Subject:** RE: Notice of information release

Judge Nadkarni:

I just got out of court and don't know the backdrop, so I cannot discuss this matter with you just yet. I assume, however, that the agency has demanded the return of any inadvertently released document/information through a claw-back request and the retraction of any publication of the information in the public domain. I understand from reading DCIJ Maggard's email that the information is no longer on the website; however, I would like confirmation from the Agency

1

Executive Office for Immigration Review
Office of the Chief Immigration Judge



PLAINTIFF'S EXHIBIT 24   0004

**Bain, Quynh (EOIR)**

| | |
|---|---|
| **From:** | Nadkarni, Deepali (EOIR) |
| **Sent:** | Monday, January 23, 2017 4:37 PM |
| **To:** | Bain, Quynh (EOIR); Bryant, John M. (EOIR); Burman, Lawrence O. (EOIR); Castro, Deborah (EOIR); Donoso Stevens, Karen (EOIR); Harris, Rodger (EOIR); Hladylowycz, Roxanne (EOIR); Hong, J. Traci (EOIR); O'Leary, Brian (EOIR); Owens, Robert (EOIR); Snow, Thomas (EOIR); Cook, Brenda L. (EOIR); Crosland, David (EOIR); Dornell, Lisa (EOIR); Kessler, Elizabeth (EOIR); Slavin, Denise (EOIR); Williams, Phillip T. (EOIR); Couch, V. Stuart (EOIR); Edwards, R. Elliott (EOIR); Holmes-Simmons, Theresa H. (EOIR); Pettinato, Barry (EOIR); Barrow, Tina (EOIR); Durling, Walter A. (EOIR); Ellington, John P. (EOIR); Golparvar, Kuyomars Q. (EOIR); Alicea, Alterra (EOIR); Carle, John B.. (EOIR); DeCardona, Lisa (EOIR); Honeyman, Charles (EOIR); Malloy, Rosalind (EOIR); Morley, Steven A. (EOIR) |
| **Subject:** | IJ Information Release |

Good afternoon.  I was just advised of the following.  If I learn anything else, I will forward the information.  Dee

https://www.justice.gov/eoir/pr/eoir statement-erroneous-public release immigration-judge information

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

PLAINTIFF'S EXHIBIT 24   0005

Bain, Quynh (EOIR)

| | |
|---|---|
| **From:** | King, Jean (EOIR) |
| **Sent:** | Thursday, January 26, 2017 3:31 PM |
| **To:** | Bain, Quynh (EOIR) |
| **Cc:** | Schaaf, Joseph R. (EOIR) |
| **Subject:** | RE: FOIA release of privacy-protected documents |

Judge Bain,

We are looking into the eofp issue. I will let you know what we find.

For number two, please clarify whether you are referring to AILA or Mr. Johnson?

Jean

**From:** Bain, Quynh (EOIR)
**Sent:** Wednesday, January 25, 2017 8:32 PM
**To:** King, Jean (EOIR)
**Cc:** Bain, Quynh (EOIR)
**Subject:** FOIA release of privacy-protected documents
**Importance:** High

Dear Ms. King:

Thank you for assigning Mr. Schaaf to respond to my request for disclosure of information pertaining to me that is the subject of the FOIA lawsuit. As of cob today, I have received in pdf format a 28-page document that Mr. Schaaf represented was the only document that EOIR has disclosed to AILA thus far.

I am writing about another matter that needs your immediate attention. Yesterday, at 4:49 p.m. I received a notice (attached) from the eopf.gov website stating that additional documents have been added to my eopf file. When I checked my eopf on-line file, I discovered that the agency has uploaded three copies of the same final performance appraisal record for the rating period 2013 to 2015. As you may know, that final performance appraisal record was prepared by ACIJ Christopher Santoro in August 2015, and it is the subject of a formal EEO complaint filed with the agency in December 2015. The agency has accepted that complaint, and the matter is now pending before the EEOC, Washington Field Office. Because the final performance appraisal record is still the subject of litigation, it cannot be posted on the eopf as an official government record at this time. Until the litigation is over, the agency must remove the document from the eopf website. I request that this be done immediately, to prevent further injury to my professional reputation and to minimize the risk of wrongful disclosure of privacy-protected information which I do not consent to release. Frankly, I am at a lost as to why the agency has elected to post this August 2015 final performance appraisal record now. I can only conclude, due to the timing of the posting of the record on the eopf website, that the agency posted the August 2015 final performance appraisal record yesterday afternoon because I requested that the agency release to me all potentially exempt, privacy-protected information pertaining to me that it has compiled that is the subject of the FOIA lawsuit.

For the above reasons, I make the following requests:

(1)  That the agency immediately remove the August 2015 final performance appraisal record from the eopf website. The August 2015 final performance appraisal record in question is wholly inaccurate and contains false slanderous information. Disseminating it through the eopf website as well as to third-parties will subject the agency to actions in tort and for violations of several federal statutes, including the FOIA. I would appreciate

1

Bain, Quynh (EOIR)

| | |
|---|---|
| **From:** | Bain, Quynh (EOIR) |
| **Sent:** | Thursday, January 26, 2017 4:07 PM |
| **To:** | King, Jean (EOIR) |
| **Cc:** | Schaaf, Joseph R. (EOIR); Bain, Quynh (EOIR) |
| **Subject:** | RE: FOIA release of privacy-protected documents |

Ms. King:

Thank you. I appreciate your prompt attention to this matter.

As for number two, I am referring to both AILA and Mr. Johnson, as well as to any third party who has been given exempt, privacy-protected information that pertains to me. To clarify, privacy-protected information is information that EOIR has compiled that is the subject of the FOIA lawsuit, whether or not the information has been released, and whether or not EOIR has determined that the information may be released.

Thank you.

QVB

**From:** King, Jean (EOIR)
**Sent:** Thursday, January 26, 2017 3:31 PM
**To:** Bain, Quynh (EOIR)
**Cc:** Schaaf, Joseph R. (EOIR)
**Subject:** RE: FOIA release of privacy-protected documents

Judge Bain,

We are looking into the eofp issue. I will let you know what we find.

For number two, please clarify whether you are referring to AILA or Mr. Johnson?

Jean

**From:** Bain, Quynh (EOIR)
**Sent:** Wednesday, January 25, 2017 8:32 PM
**To:** King, Jean (EOIR)
**Cc:** Bain, Quynh (EOIR)
**Subject:** FOIA release of privacy-protected documents
**Importance:** High

Dear Ms. King:

Thank you for assigning Mr. Schaaf to respond to my request for disclosure of information pertaining to me that is the subject of the FOIA lawsuit. As of cob today, I have received in pdf format a 28-page document that Mr. Schaaf represented was the only document that EOIR has disclosed to AILA thus far.

I am writing about another matter that needs your immediate attention. Yesterday, at 4:49 p.m. I received a notice (attached) from the eopf.gov website stating that additional documents have been added to my eopf file. When I checked my eopf on-line file, I discovered that the agency has uploaded three copies of the same final performance

1

PLAINTIFF'S EXHIBIT 24   0007

**Bain, Quynh (EOIR)**

| | |
|---|---|
| **From:** | Bain, Quynh (EOIR) |
| **Sent:** | Monday, January 30, 2017 5:09 PM |
| **To:** | Nadkarni, Deepali (EOIR) |
| **Cc:** | Bain, Quynh (EOIR) |
| **Subject:** | RE: eOPF matter |

Judge Nadkarni:

Thanks for letting me know.  Please advise as to who made the determination that the performance appraisal will remain in my eOPF.

Quynh Bain
Immigration Judge
Arlington, Virginia

---

**From:** Nadkarni, Deepali (EOIR)
**Sent:** Monday, January 30, 2017 4:28 PM
**To:** Bain, Quynh (EOIR)
**Subject:** eOPF matter

Good afternoon, Judge Bain.  The Office of the General Counsel informed me that you raised some questions and concerns regarding the recent placement of your performance appraisal record for the 2013-15 rating period in your eOPF.  Specifically, you explained that it was added three times on January 24, 2017, and given the timing, you concluded it was added to your eOPF "because [you] requested that the agency release to [you] all potentially exempt, privacy-protected information pertaining to [you] that it has compiled that is the subject of the FOIA lawsuit."  You requested that the Agency "immediately remove the August 2015 final performance appraisal record from the eopf website," based on your assertions that it is inaccurate and the subject of a pending EEO complaint.

The Agency has looked into the matter and confirmed that indeed your performance appraisal record for the 2013-15 rating period was placed into your eOPF on January 24, 2017.  The Human Resources office explained that it has been playing catch-up and this week scanned a number of old documents, including this one.  Accordingly, while there was a significant delay in uploading this document in your eOPF, it was an action taken solely by HR in its ordinary course of business and nothing more.  With respect to the document being uploaded three times, HR explained that the HR assistant who was scanning the document got a number of system errors before the system accepted the document.  Based on your notification that it appeared three times, and HR's confirmation of the error, it is my understanding that HR removed the duplicates of the document.  I have been advised that the performance appraisal will remain in your eOPF, even though you have a pending EEO matter.

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

1

PLAINTIFF'S EXHIBIT 24   0008

## Bain, Quynh (EOIR)

| | |
|---|---|
| **From:** | Bain, Quynh (EOIR) |
| **Sent:** | Thursday, January 19, 2017 10:54 AM |
| **To:** | Nadkarni, Deepali (EOIR) |
| **Cc:** | Maggard, Print (EOIR); King, Jean (EOIR); Bain, Quynh (EOIR) |
| **Subject:** | RE: Notice of information release |

Judge Nadkarni:

I just got out of court and don't know the backdrop, so I cannot discuss this matter with you just yet. I assume, however, that the agency has demanded the return of any inadvertently released document/information through a claw-back request and the retraction of any publication of the information in the public domain. I understand from reading DCIJ Maggard's email that the information is no longer on the website; however, I would like confirmation from the Agency that the inadvertently released information has been returned upon the Agency's demand. I would appreciate the Agency providing me with a copy of the claw-back request. At that point, I will determine what, if any, action is appropriate.

Thank you.

Quynh Bain
Immigration Judge
Arlington, Virginia

**From:** Nadkarni, Deepali (EOIR)
**Sent:** Thursday, January 19, 2017 9:09 AM
**To:** Bain, Quynh (EOIR)
**Subject:** FW: Notice of information release

Good morning, Judge Bain. It appears the following was included in this release (IJ last name; ACIJ last name; and court). It is my understanding that the information was removed when this third party was contacted by DOJ. Please call if you want to discuss. Thanks. Dee 703.605.0359

Bain, Quynh                          Nadkarni                          Arlington

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, January 17, 2017 6:07 PM
**To:** All of Judges (EOIR)
**Cc:** Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); King, Jean (EOIR); Wahowiak, Marlene (EOIR); Scheinkman, Rena (EOIR)
**Subject:** Notice of information release

Judges,

We want to let you know of some developments in the AILA litigation relating to the identities of immigration judges contained in the conduct and professionalism database. It appears that, due to a processing error, a

third party accessed data under some of the redactions that EOIR made in a group of supplemental disclosures to AILA. This attorney published an article yesterday in which he claimed to have matched some of the immigration judges' names to complaints that had been filed – information that we had and continue to withhold as exempted under FOIA.

The affected releases have been removed from AILA's website and EOIR has determined that the key is not accurate. EOIR will continue to defend withholding the names of immigration judges from these complaints, and remains committed to protecting the identities of the immigration judges .

Thank you, and thank you for the outstanding job you do at the courts every day.

PRINT MAGGARD
DEPUTY CHIEF IMMIGRATION JUDGE

Department of Justice
Executive Office for Immigration Review
Office of the Chief Immigration Judge







Home     Attorneys     News and Views     Directions     Contact Us     In the News

Jan 16

### Secret Identities of Immigration Judges Revealed

The Department of Justice ("DOJ") has aggressively concealed the identities of Immigration Judges in connection with complaints of misconduct made against them for several years.

Until today.

In response to a FOIA from the American Immigration Lawyers Association (AILA), the DOJ released over 14,000 pages of documents in connection to 770 complaints made against immigration judges between 2008 and 2013. The lawsuit is still pending, and DOJ has yet to reveal any of the identities of the Immigration Judges.

This past weekend, I discovered that a significant portion of the documents released by the DOJ were not, in fact, redacted.

Using the information gleaned from the un-redacted documents, I identified 60 immigration judges with 474 complaints. In other words, over half of the complaints are now matched with the immigration judge whom the complaint was made against.

Here is a modified key, which you can use to identify complaints in AILA's database linked to above with the corresponding Immigration Judge.

Here are additional documents I have already combined for the general public's use:

IJ Couch Complaints

IJ Dowell Complaints

IJ Duck Complaints

IJ Arrington Complaints

IJ Vomacka Complaints

IJ Hom Complaints

IJ Cassidy Complaints

Amoachi & Johnson, Attorneys at Law,...

**CONTACT US!**

Our office is conveniently located on Long Island, New York.

Our contact information:

1918 Union Boulevard
Bay Shore, NY 11706

Phone: (631) 647-9701
Fax: (631) 647-9705
Toll Free: (888) 682-0460

Bryan@amjolaw.com
Ala@amjolaw.com

**LIKE US ON FACEBOOK!**



**FOLLOW NEWS AND VIEWS**

Enter your email address to follow Amoachi and Johnson's "News and Views" and receive notifications of new posts by email.

Enter your email address

PLAINTIFF'S EXHIBIT 24_0011

The asylum division granted _60.4%_ of UC asylum applications in the period spanning
from October 1, 2014 to December 31, 2014, as can be seen in the following chart:

| Asylum Office | Pending 12/31/14 | Cases Filed | Approval Rate | Cases Granted | Cases Denied | Interviewed Referrals | Rejected Again | Unknown Referrals | Admin Closed | Re-Juris. Closed | Pending 12/31/15 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALL RPA (NOT PRL) | 145 | 125 | 87.3% | 135 | 0 | 20 | 1 | 1 | 30 | 11 | VW |
| Office PRL (NOT HDR) | 846 | 2516 | 60.4% | 120 | 0 | 472 | 1 | 2 | 100 | 50 | 620 |
| TOTALS RPA (OPRL) + PRL | 2075 | 2637 | 62.5% | 418 | 0 | 492 | 1 | 2 | 126 | 36 | 810 |

At the same time that the asylum division eliminated mandatory headquarters review
for juvenile referrals, the grant rate unaccompanied children dropped by over 19
percentage points to _41%_ from January 1, 2015 to March 31, 2015 with 1772 children
denied and 1230 granted asylum, respectively.

| Asylum Office | Pending 12/31/14 | Cases Filed | Approval Rate | Cases Granted | Cases Denied | Interviewed Referrals | Rejected Again | Unknown Referrals | Admin Closed | Re-Juris. Closed | Pending 3/31/15 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALL RPA (NOT PRL) | 1,000 | 363 | 77.4% | 283 | 0 | 93 | 1 | 2 | 11 | 43 | 28 | 363 |
| Office PRL (NOT HDR) | 1,855 | 1,253 | 48.3% | 1,950 | 0 | 2,204 | 1 | 2 | 90 | 157 | 137 | 4,774 |
| TOTALS RPA (OPRL) + PRL | 4,001 | 1,684 | 40.4% | 4,233 | 0 | 2,344 | 2 | 3 | 74 | 353 | 167 | 5,024 |

The grant rate continued to slide:  for FY 2015 and FY 2016, 41.2 % and 38.2% of UCs
were granted asylum, respectively.

Are there are factors unrelated to the HQ review policy change that account for the
decrease in asylum grant rates? Perhaps, but the overwhelming evidence supports the
conclusion that, indeed, the asylum division's 02/20/2015 about-face in HQ review
was the main driving cause of the steep decline in unaccompanied children granted
asylum.

### An Off-the-Record E-mail From Asylum Division Chief John Lafferty Reveals Intent To Increase Number of Children Denied Asylum.

In August of 2015, Asylum Division Chief John Lafferty responded to an inquiry from
an advocate with the following:

> Your inquiry to the Chicago Asylum Office has been forwarded to HQ for
> response. The Asylum Division regularly reviews and considers revisions
> to our internal quality assurance process.  Not all revisions and
> adjustments to the quality assurance process are accomplished with the
> issuance of a formal memo, and none of the changes impacts the
> requirement that 100% of cases processed by an Asylum Officer are
> reviewed and signed off by a supervisor prior to issuance of the decision.
>
> As you have noted, in January 2014 we revised the category of review of
> cases where the principal is a juvenile from reviewing all such cases to
> reviewing only NOIDS, denials and referrals. _After spending more
> than a year reviewing this revised category of cases, we
> decided in February 2015 to begin work on establishing a
> random review of the full range of UAC decisions, both positive
> and negative. This is consistent with the change that was
> previously made to our QA review of credible fear and
> reasonable fear screening determinations._  While we work to
> establish a procedure for random review, we asked our offices to send us
> the following revised category of juvenile cases that involve both positive
> and negative decisions – cases that fall within one of the other categories
> designated on the QA Referral Sheet and cases involving a novel PSG.

Amoachi & Johnson, Attorneys at Law,...                            Blog at WordPress.com.

PLAINTIFF'S EXHIBIT 24    0012

JUSTICE NEWS

**Department of Justice**

Executive Office for Immigration Review

FOR IMMEDIATE RELEASE                                     Monday, January 23, 2017

## EOIR Statement on Erroneous Public Release of Immigration Judge Information

FALLS CHURCH, Va. – The Executive Office for Immigration Review is a party to litigation related to the release of information regarding its immigration judge conduct and professionalism program. EOIR is committed to ensuring that any allegation of an immigration judge's misconduct is investigated and resolved in a fair and expeditious manner, consistent with federal personnel and privacy laws and regulations that apply to non-supervisory, career civil servants.

During this still-active litigation, the plaintiff, the American Immigration Lawyers' Association, posted to the Internet the 16,000 documents that EOIR provided. These documents were released pursuant to a court order. A private attorney then took the time to manipulate some of the documents in order to uncover data not accessible on the face of the documents themselves, and post his personal assessment of the metadata contained therein.

EOIR believes the attorney, upon finding information was inadvertently provided, should have promptly notified the sender (EOIR) rather than taking steps to publish guesses. This unfortunate incident resulted in the attorney publishing a "key" to the documents. EOIR has determined that the "key" is inaccurate and does not correctly present the actual details associated with the documents. It is instead a representation of one person's assumptions based on his own manipulations of the text, which resulted in the errors.

Individuals who file complaints about immigration judges are not bound to keep private the details of their complaint. EOIR will continue to defend its case in the referenced FOIA litigation, and remains committed to protecting the identities of the immigration judges against whom complaints, some substantiated and some unsubstantiated, have been filed.

It is unfortunate that some members of the agency's highly talented and professional immigration judge corps have been negatively and falsely named in the private attorney's action, and that he chose to publish his erroneous findings without any way of verifying his information.

Executive Office for Immigration Review

*Updated January 23, 2017*

PLAINTIFF'S EXHIBIT 24   0013



POLITICS    ENTERTAINMENT    WORLD



SHUTTERSTOCK

OOPS.

# The DOJ Accidentally Doxxed These Immigration Judges

The Department of Justice thought it had adequately redacted the names of immigration judges involved in complaints in a recent response to a FOIA request. It didn't, and now it might be sued.

    BETSY WOODRUFF 01.24.17 1:13 AM ET

PLAINTIFF'S EXHIBIT 24    0014

   

In the final days of the Obama administration, an immigration attorney based in Long Island made a remarkable discovery: that the Justice Department accidentally doxxed some of its most powerful employees.

The mistake has implications for a Freedom of Information Act lawsuit the department is embroiled in, and it could get the DOJ sued by judges it employs. On top of that, it also has the potential to change the way we think about how the government decides who gets deported.

PLAINTIFF'S EXHIBIT 24   0015

Case 1:21-cv-01751-RDM   Document 64-4   Filed 01/29/23   Page 19 of 30
The DOJ Accidentally Doxxed These Immigration Judges - The Daily Beast                    Page 3 of 15
Case 1:21-cv-01751-RDM   Document 53-25              Filed 08/19/22   Page 19 of 30

This mistake happened in early 2015, when the Justice Department released a trove of heavily redacted documents on complaints filed with the department about immigration judges.

> U.S. immigration courts—the tribunals that decide whether or not undocumented immigrants get deported or gain refugee status—are part of the Justice Department. As a result, their inner workings are often more secretive and obtuse than the federal judiciary. In an effort to make the courts more transparent, the American Immigration Lawyers Association—working with attorneys from the liberal-leaning watchdog group Public Citizen

Litigation Group and the American Immigration Council—sued the DOJ's Executive Office for Immigration Review, demanding documentation on complaints filed against immigration judges and how those complaints were handled.

After litigation, the Justice Department turned over more than 16,000 pages of documents. Those documents included complaints themselves, as well as internal DOJ communications on how to handle them. The documents also detailed what kind of discipline (or lack thereof) judges received for engaging in unethical or unprofessional behavior. But the names of the judges discussed in those documents were blacked out, along with the names of the lawyers who filed the complaints and the names of their clients.

So the American Immigration Lawyers Association went back to court, arguing that the DOJ should reveal the names of the judges who generated those complaints. The Justice Department, in turn, argued that releasing the judges' names would violate their privacy rights. That litigation is ongoing.

A few days before Inauguration Day, meanwhile, an immigration attorney named Bryan Johnson was combing through that document trove in search of any tidbits that could help him. Johnson, of the Long Island, New York, law firm Amoachi & Johnson PLLC, represents children who come to the United States without legal authorization, fleeing drug violence in

PLAINTIFF'S EXHIBIT 24    0016

The DOJ Accidentally Doxxed These Immigration Judges - The Daily Beast          Page 4 of 15

Central America. For these clients, who seek refugee status from some of the most violent parts of the world, deportation can be a death sentence.

Johnson told The Daily Beast that as he was going through those documents, he switched from one document-viewing software program to another, in hopes of making it easier to scroll through.

But when he made the switch, something happened that he hadn't expected: The redactions vanished.

The documents, reviewed by The Daily Beast, show that black marks designed to obscure the names of immigration judges had disappeared, revealing their identities.

Since the judges' names weren't the only thing redacted in those complaints, Johnson didn't post the unredacted text online; in order to protect the personal information of vulnerable immigrants trying to get legal status in the United States.

Instead, he re-posted the redacted documents on his law firm's blog, and used information in the unredacted documents to make a key matching judges with complaints.

Lauren Alder Reid, a spokesperson for the DOJ's Executive Office of Immigration Review, said Johnson's blog post contained inaccuracies.

"EOIR is aware that a private attorney viewed EOIR-provided documents that the American Immigration Lawyers' Association, Plaintiff in the relevant litigation, posted to the Internet and that the private attorney took the time to seek data not accessible on the face of the

PLAINTIFF'S EXHIBIT 24   0017

documents themselves," she said. "EOIR has determined that this unfortunate incident resulted in the attorney publishing an inaccurate 'key' to the documents. EOIR will continue to defend its case in the referenced FOIA litigation, and remains committed to protecting the identities of the immigration judges against whom complaints, some substantiated and some unsubstantiated, have been filed."

When The Daily Beast asked what inaccuracies were in Johnson's post, the spokesperson said, "The 'key' the private attorney released does not accurately pair immigration judges with complaints that have been filed. The 'key' itself, therefore, is the inaccuracy."

Get The Beast In Your Inbox!
Enter your email address
☑ ✔



Daily DigestStart and finish your day with the top stories from The Daily.Beast.
☑ ✔

By clicking "Subscribe," you agree to have read the Terms of Use and Privacy Policy

Thank You! You are now subscribed to the Daily Digest and Cheat Sheet. We will not share your email with anyone for any reason.

She didn't provide any further detail on any alleged inaccuracies, citing the ongoing FOIA litigation.

Johnson said her claims that he erred are baseless.

Julie Murray, a staff attorney for Public Citizen Litigation Group, didn't confirm or deny Johnson's work.

"We have not independently verified the accuracy of his findings," she told The Daily Beast. "However, particularly in light of the possibility that the processing errors may also have revealed non-public information beyond immigration judges' names, including private information regarding non-government employees, we determined to remove from AILA's website for now the affected documents specifically identified by Mr. Johnson."

PLAINTIFF'S EXHIBIT 24   0018

Some of the complaints he highlighted are disturbing. One complainant alleges that an immigration judge gave special leniency to the clients of another immigration attorney. In some complaints, immigrants allege that judges laughed at them, mocked them, and didn't take seriously their pleas for asylum.

One complaint described a judge making "lengthy and unjustified, unprofessional lectures on how to practice law"—wasting valuable courtroom time. Another complaint described an attorney from the Department for Homeland Security trying to get an immigration judge to postpone a hearing because a lawyer for an immigrant was coughing frequently, and admitted to having the flu. The DHS attorney worried other people in the courtroom would get sick, and told the judge as much. The judge responded by spending 20 minutes berating the attorney for being "overly sensitive" to germs, and calling him a germaphobe. Documents showed multiple allegations of that judge rudely yelling at DHS attorneys.

Another attorney alleged that an immigration judge accused her of wearing perfume when she wasn't wearing any, and also said she had tried to kill him by coming into court with a cold.

"Everyone is afraid of making complaints/comments/inquiries," the attorney wrote.

Charles Kuck, an immigration attorney whose practice is based in Atlanta, told The Daily Beast he was appalled by some of the allegations, as well as what he believes were vastly inadequate responses by the Justice Department.

"This is an unprecedented number of complaints against judges that don't appear to be resolved in a way that fixes behavior," he said.

"If this was happening in federal district court, people would be screaming bloody murder," he added. "But because the people who are harmed are usually deported, nobody complains."

As for the Justice Department's redaction screw-up? In Kuck's view, it's "a stunning level of incompetence."

Bradley Moss, an attorney who specializes in FOIA litigation, described it as "government incompetence in all its glory." And he said the immigration judges whose information was inadvertently revealed might have grounds to sue the Justice Department for violating their privacy.

PLAINTIFF'S EXHIBIT 24   0019

Moss isn't alone in that view. Denise Slavin is the executive vice president of the National Association of Immigration Judges, the union that represents them. She said she was astonished that the Justice Department didn't sufficiently protect the judges' identities.

"They have spent so much time and money fighting this case in the courts," she said. "That they didn't take the precautions to make sure that this would not happen is shocking."

And she said there's chatter about potential lawsuits.

"It's something we're looking into, and I know that some judges are looking into that too," she said.

And the Justice Department's approach to handling complaints is also a problem, she added. Judges don't always know when complaints are filed against them, she said, and don't always get a say in how the Justice Department handles those complaints. This means the documents about complaints don't include their side. The union wants an overhaul of the entire system of handling complaints against immigration judges.

"We do want an accountable system for public transparency for complaints filed against judges and how they're dealt with," she said. "But this is not it, and releasing this is defamatory and prejudicial against the judges who are being reported in there."

And she said this all raises a larger issue: the question of whether the Justice Department should be responsible for running the immigration courts. Since immigration judges are excluded from the independent federal judiciary, Slavin's group argues that they are less transparent and accountable than they should be. The immigration courts have a huge backlog—more than half a million cases, according to Syracuse University's Transactional Records Access Clearinghouse. And immigration judges have far fewer clerks than judges on the federal bench.

The result is a system that is extraordinarily overburdened—a system where life-or-death decisions get made every day.

## Sponsored Stories

Recommended by

PLAINTIFF'S EXHIBIT 24   0020

### - The Daily Caller - http://dailycaller.com -

Doxxing: The New Threat To Your Online Safety

Posted By Todd Drake On 5:32 PM 12/07/2016 In | No Comments

When it comes to privacy issues, much of the press focuses on companies like Facebook, Twitter, Google, etc. Unfortunately, that focus often ends up being a distraction from the real offenders. For the most part, we consider Facebook to be a self-inflicted wound since the content is typically posted by the individual themselves. However, it is the postings by others where these platforms like Twitter and Facebook can be very dangerous. We all know (or should know) not to post personal and private information online. These sources feed the practice of doxxing and can lead to many different types of assaults.

*(ManageUrID is a service that can help you make sure there is NO information about you online).*

## DOXXING EXPLAINED

The term Dox or Doxxing is derived from the word "Document." It originates from the practice of researching information about an individual. Doxxing is often defined as an Internet-based practice of researching and broadcasting personally identifiable information (such as names, addresses, phone numbers, spouse, children, relatives, financial history and much more) about an individual. The practice of doxxing is not new. It actually dates back to the 1990s and was often used for constructive purposes such as helping law enforcement locate suspects and/or dangerous criminals, as well as in business analysis and in the legitimate vetting of individuals. Doxxing, however, strays into a very dark area when it is used for other purposes. In last 12 months, we have seen a huge spike in doxxing activity specifically related to individuals in the public safety arena.

The current trend we are seeing in the area of doxxing is mainly focused on confrontational interactions in high profile cases. It is often a situation where an individual is videotaping an incident and there is a specific interest in capturing the public safety individual as much as possible. You will often see that the individual recording the video will interact with public safety personnel in an attempt to get a name. Once they have that name, they are off to the races.

Unfortunately, the reality is that this information is already out there and readily available for the taking. Some of the companies doing this vast collection of public record information and selling it are names you have probably never heard of before such as; Intelius, BeenVerified, PeopleFinder, etc. These people finder websites gather information from a wide arrange of sources and make that information available for purchase to anyone. While there are over 200 companies out there doing this kind of activity, you need to be mostly concerned with 20 to 30 of them. I say this because there are plenty of companies that collect this detailed information for the sole purpose of sending you a coupon in the mail or displaying a pop-up advertisement on your computer screen. You could argue that this is creepy, but the good news is that these companies do not sell this information to individuals.

## DOXXING AS USED BY ONLINE VIGILANTES

PLAINTIFF'S EXHIBIT 24   0021

There are countless recent examples of doxxing that millions of Americans read about every day, often without realizing that doxxing is at the heart of what they are reading. In the last three years, the Social Security number of First Lady Michelle Obama, Beyonce's home address, Aston Kutcher's personal phone number and the credit report of Los Angeles PD chief Charlie Beck were all posted online following acts of doxxing. While these events were troubling enough to the individuals involved, the more recent use of doxxing has taken an even darker turn.

Following recent events in Ferguson, the group called Anonymous acquired the sensitive personal information of Colonel Ronald Replogle, posted it on the Internet and then tweeted the location of this information to thousands of people.

Photo via Todd Drake via Twitter

Literally anyone such as an ill-intended individual, gang member, escapee, former arrestee, protestor, etc. can follow the provided link to acquire a home address, phone number, email address and much more. These kinds of acts essentially put the individual involved and their family at immediate risk.

Erica Garner, the daughter of the man who died following an arrest by a New York City police officer, tweeted out the address of one of the officers present at the time (Justin D'Amico). Her Tweet linked to a web page with addresses for D'Amico and for "five" possible relatives. Erica Garner has more than 5,000 Twitter followers and her post was retweeted about 500 times.

Photo via Todd Drake via Twitter

Following the fatal shooting of a homeless man on Skid Row in Los Angeles in early March, LAPD confirmed that at least two police officers were the victims of doxxing. An unknown individual or group posted the officers' names, addresses, and details about their kids' schools on the Internet.

## THE RISKS AND THREATS OF DOXXING TO LAW ENFORCEMENT OFFICIALS

Law enforcement officials often find themselves in risky situations. It comes with the territory. Doxxing, however, is a new kind of threat and one that can manifest itself in many dimensions and extend the risk beyond the individual involved to include family members and relatives.

The bigger problem here, of course, is the ready availability of sensitive personal information on the Internet to feed the practice of doxxing. More than 50 entities, loosely defined as People Finder Sites or Data Brokers, have compiled comprehensive information profiles about most of us. This information is then made easily available for anyone to acquire on the Internet. These sources feed the practice of doxxing and can lead to many different types of assault including the following   which do not need to be life threatening to be debilitating:

- Targeting
- Physical stalking
- Cyber stalking
- Bullying
- Harassment
- Embarrassment
- Identity Theft
- Extortion

PLAINTIFF'S EXHIBIT 24   0022

• Coercion

Today anyone with a phone, computer or tablet can get almost immediate access to anyone's personal and private information. We all know there are many, many companies out there databasing everything we buy, where we live and where we like to go. These same companies then take all this detailed information and create detailed reports on virtually every individual in the US.

## PROTECTING AGAINST DOXXING

With respect to protecting yourself against doxxing, and other misuses of your personal information, there's lots of good advice out there regarding the use of the Internet, such as:

- Never give out personal information like phone numbers or physical addresses;
- Refrain from providing your first name. It makes it much harder to find the individual online with only a last name.
- Run your own name on these sites and see how easy it is for you to be found.
- Use a PO Box as a mailing address whenever possible.
- Contact each data broker and request your information be removed from their site.

At the end of the day, while all of this is useful and well intended, the only practical solution is to remove your personal information from these sites. But, that task is easier said than done.

The unfortunate reality is that removing personal information from these sites is intentionally convoluted and difficult. While it is technically possible, most people do not have the time or patience to execute each of the following steps:

**Step 1** – Identify all of the more than 200 sites that compile, maintain and sell personal information, and then zero in on the 50 that can really hurt you.

**Step 2** – Dig through each of the sites to locate the particular set of instructions for opting out of that site.

**Step 3** – Follow each of the required processes, prepare and submit the necessary form or forms, and provide the additional information necessary (including a photo ID in some cases) to complete the opt-out request.

**Step 4** – After the full set of opt-out instructions have been submitted, revisit each of the sites to verify they have complied with the opt-out request.

**Step 5** – More than a step, this is an on-going process. Even after many of these sites have complied with the initial removal instructions, they will repopulate personal information over time. So, periodically (at least every 30 days), it is necessary to return to Step 1 and repeat the entire process. Protecting **your** personal information in an on-line world is a never ending and time consuming, but very necessary process for individual and family safety – especially today.

The important takeaway is that virtually anyone can find just about everything they might want to know about you on the internet for any purpose – targeting, stalking, bullying, revenge, embarrassment, identity theft and much more.

PLAINTIFF'S EXHIBIT 24   0023

Activities such as doxxing are not going away. If anything the problem is getting worse. From solo criminals to organized gangs, the data vigilantes are everywhere, operating throughout the world. The best way to deal with this growing problem is to protect yourself by removing your information online either manually as I covered in this article or through a service like ManageURiD, our data privacy company. Do this for yourself and your family before it happens to you.

**If you want to make sure there is no personal or private information about you online, the best idea is to look into a service like ManageUrID. You can read more about ManageUrID here.**

*Todd Drake is the founder of ManageUrID, a personal privacy protection company with decades of information security and proper management of sensitive consumer data experience. Additionally, Todd has more than 25 years experience building and running technology companies in the advanced analytics and data mining software industry and extensive data privacy experience. In the past, Todd provided the government investigative solutions that enabled agencies to locate people, detect fraud, uncover assets, verify identity, perform due diligence and visualize complex relationships – solutions that were used by more than 3,000 agencies to help enforce laws and regulations, fight fraud, waste and abuse and provide essential citizen services. Todd also worked in senior capacities with organizations and major federal agencies with data-intensive mandates in areas such as intelligence, security, finance, health care, homeland security, crime and fraud prevention. And he served as a senior systems consultant for the Department of Defense and the U.S. Navy, with deployments to the Persian Gulf in support of intelligence analysis operations.*

*Contact Todd Drake*

*The Daily Caller is devoted to showing you things that you'll like or find interesting. We do have partnerships with affiliates, so The Daily Caller may get a small share of the revenue from any purchase.*

---

Article printed from The Daily Caller: **http://dailycaller.com**

URL to article: **http://dailycaller.com/2016/12/07/doxxing-manageurid-advertorial/**

Click here to print.

Copyright © 2017 The Daily Caller. All rights reserved.

PLAINTIFF'S EXHIBIT 24   0024

## Bain, Quynh (EOIR)

| | |
|---|---|
| **From:** | Bain, Quynh (EOIR) |
| **Sent:** | Monday, January 23, 2017 6:16 PM |
| **To:** | Nadkarni, Deepali (EOIR); Bryant, John M. (EOIR); Burman, Lawrence O. (EOIR); Donoso Stevens, Karen (EOIR); Harris, Rodger (EOIR); Hladylowycz, Roxanne (EOIR); Hong, J. Traci (EOIR); O'Leary, Brian (EOIR); Owens, Robert (EOIR); Snow, Thomas (EOIR); Crosland, David (EOIR); Dornell, Lisa (EOIR); Kessler, Elizabeth (EOIR); Slavin, Denise (EOIR); Williams, Phillip T. (EOIR); Couch, V. Stuart (EOIR); Edwards, R. Elliott (EOIR); Holmes Simmons, Theresa H. (EOIR); Pettinato, Barry (EOIR); Durling, Walter A. (EOIR); Ellington, John P. (EOIR); Golparvar, Kuyomars Q. (EOIR); Carle, John B.. (EOIR); DeCardona, Lisa (EOIR); Honeyman, Charles (EOIR); Malloy, Rosalind (EOIR); Morley, Steven A. (EOIR |
| **Cc:** | King, Jean (EOIR); Bain, Quynh (EOIR) |
| **Subject:** | RE: IJ Information Release |

Correction:

I meant to say Fed. R. Evid. 502(b).

QVB

**From:** Bain, Quynh (EOIR)
**Sent:** Monday, January 23, 2017 6:11 PM
**To:** Nadkarni, Deepali (EOIR); Bryant, John M. (EOIR); Burman, Lawrence O. (EOIR); Donoso Stevens, Karen (EOIR); Harris, Rodger (EOIR); Hladylowycz, Roxanne (EOIR); Hong, J. Traci (EOIR); O'Leary, Brian (EOIR); Owens, Robert (EOIR); Snow, Thomas (EOIR); Crosland, David (EOIR); Dornell, Lisa (EOIR); Kessler, Elizabeth (EOIR); Slavin, Denise (EOIR); Williams, Phillip T. (EOIR); Couch, V. Stuart (EOIR); Edwards, R. Elliott (EOIR); Holmes-Simmons, Theresa H. (EOIR); Pettinato, Barry (EOIR); Durling, Walter A. (EOIR); Ellington, John P. (EOIR); Golparvar, Kuyomars Q. (EOIR); Carle, John B.. (EOIR); DeCardona, Lisa (EOIR); Honeyman, Charles (EOIR); Malloy, Rosalind (EOIR); Morley, Steven A. (EOIR)
**Cc:** King, Jean (EOIR); Bain, Quynh (EOIR)
**Subject:** RE: IJ Information Release

Dear Judge Nadkarni:

Thank you for the press release, but this does not even begin to address the problem. In his email of Tuesday, January 17, 2017, DCIJ Maggard stated: "It appears that, due to a processing error, a third party accessed data under some of the redactions that EOIR made in a group of supplemental disclosures to AILA." Correct me if I am wrong, but it was EOIR that committed the "processing error." Blaming a third-party requester who clearly was entitled to access the information that AILA has made available on its website does not adequately address the underlying problem: That EOIR has committed a processing error that has resulted in the release of exempt, privacy-protected information. EOIR must promptly rectify the error by requesting the return of the inadvertently released information. See Fed. R. Civ. P. 502(b). Failure to do so will result in a waiver of the judges' right to argue for keeping the information private.

As of today, I still don't know what information EOIR has released about me, but I surmise that the agency has released information that is arguably exempt under FOIA Exemption 6 because you have said so. To avoid waiving a judge's right to protect his or her privacy, EOIR must tell each judge precisely the information that it has voluntarily disclosed pursuant to the negotiated agreement, as well as the information that it has had to

I don't want to be alarming. In my case, there is no indication at this time that the information that was inadvertently released was harmful to me, but I still don't know what was released and I am trying to find out. Nevertheless, because I did not create the information, did not have any part in compiling it or storing it in an electronic database, was not responsible for keeping some of the information private, I would like to make sure that any information that the Agency gathers in bulk concerning judges, going forward, will receive adequate protection under the FOIA and the Privacy Act. In the present reality of computer hackings and leaks, I would like to make sure that the Agency only compiles information that it absolutely needs to function, and that it adequately safeguards the information from improper or wrongful disclosure.

Regards,

Quynh Vu Bain

**From:** Pettinato, Barry (EOIR)
**Sent:** Thursday, January 19, 2017 8:41 AM
**To:** All of Judges (EOIR)
**Subject:** RE: Notice of information release

Judges, regarding Judge Maggard's email, if you are wondering what is currently in the public domain – click on this link:

https://amjolaw.com/blog/

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, January 17, 2017 6:07 PM
**To:** All of Judges (EOIR)
**Cc:** Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); King, Jean (EOIR); Wahowiak, Marlene (EOIR); Schelnkman, Rena (EOIR)
**Subject:** Notice of information release

Judges,

We want to let you know of some developments in the AILA litigation relating to the identities of immigration judges contained in the conduct and professionalism database. It appears that, due to a processing error, a third party accessed data under some of the redactions that EOIR made in a group of supplemental disclosures to AILA. This attorney published an article yesterday in which he claimed to have matched some of the immigration judges' names to complaints that had been filed – information that we had and continue to withhold as exempted under FOIA.

The affected releases have been removed from AILA's website and EOIR has determined that the key is not accurate. EOIR will continue to defend withholding the names of immigration judges from these complaints, and remains committed to protecting the identities of the immigration judges .

Thank you, and thank you for the outstanding job you do at the courts every day.

PRINT MAGGARD
DEPUTY CHIEF IMMIGRATION JUDGE

Department of Justice
Executive Office for Immigration Review
Office of the Chief Immigration Judge

           PLAINTIFF'S EXHIBIT 24   0026

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, January 17, 2017 6:07 PM
**To:** All of Judges (EOIR)
**Cc:** Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); King, Jean (EOIR); Wahowiak, Marlene (EOIR); Scheinkman, Rena (EOIR)
**Subject:** Notice of Information release

Judges,

We want to let you know of some developments in the AILA litigation relating to the identities of immigration judges contained in the conduct and professionalism database. It appears that, due to a processing error, a third party accessed data under some of the redactions that EOIR made in a group of supplemental disclosures to AILA. This attorney published an article yesterday in which he claimed to have matched some of the immigration judges' names to complaints that had been filed – information that we had and continue to withhold as exempted under FOIA.

The affected releases have been removed from AILA's website and EOIR has determined that the key is not accurate. EOIR will continue to defend withholding the names of immigration judges from these complaints, and remains committed to protecting the identities of the immigration judges .

Thank you, and thank you for the outstanding job you do at the courts every day.


PRINT MAGGARD
DEPUTY CHIEF IMMIGRATION JUDGE

Department of Justice
Executive Office for Immigration Review
Office of the Chief Immigration Judge

