**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **QUYNH VU BAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21-Civ-1751 (RDM)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, ET. AL** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE
TO REDACT PLAINTIFF'S EXHIBITS 17, 26, AND 27, AND
MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37**

On January 27, 2023 at 4:00 p.m., Plaintiff received notice that Defendants had filed a motion to redact three of the 27 exhibits that she was to file on the public docket later that day, in compliance with the Court's December 28, 2022 Order. *See* ECF No. 57 ("*Hubbard II* Order") 7 ECF No. 62. Those three exhibits are:

Exhibit 17 (ECF No. 53-18)
Exhibit 26 (ECF No. 53-27), and
Exhibit 27 (ECF No. 53-28).

For the reasons set forth below, Plaintiff opposes Defendants' Motion to Redact Exhibits 17, 26, and 27.

1.       Defendants' Motion to Redact Exhibits 17, 26, 27 is a continuation of an unconscionable, vicious character assassination campaign that they began in 2015 to destroy Plaintiff's professional reputation and to terminate her immigration judge position at the Justice

Department, so that they could give her full-time employment position to an immigration judge candidate they favored.

2.      To carry out their discriminatory agenda, Defendants relied on two complaints of judicial misconduct that attorney Paul L. Knight filed against Plaintiff on March 1 and March 28, 2017.   *See* Exhibit 27 (ECF No. 53-28).   The two complaints alleged that Plaintiff manifested improper bias and demeanor toward his clients, two immigration bar attorneys named Eileen P. Blessinger and Carmen A. Boykin, in the course of conducting four immigration court hearings in February and March 2017.   Nicolas Ahumada, a paralegal who worked for a brief time in Blessinger's law offices, provided an affidavit in support of the Knight complaints.

3.      The two Knight complaints were investigated by the Justice Department's Office of Professional Responsibility (OPR).   After a two-year investigation, OPR concluded that the evidence did not support the Knight complaint allegations, except in one respect.   OPR found that Plaintiff exhibited improper demeanor toward Blessinger during a February 1, 2017 court hearing.

4.      Even though the Knight complaints were largely disproven by OPR, Defendants have continued to use the complaints to harass and injure Plaintiff, in retaliation for her pursuit of an EEO action in December 2015 and now this civil action.   By publishing the Knight complaints on pacer.gov without consulting Plaintiff first, Defendants meant to cast her in a false light.   The Knight complaints had not been published previously, and the general public will not know that the allegations in the two complaints have largely been disproven by OPR.   Thus, their publication through Defendants' latest pleading was done in bad faith, will further injure her professional reputation, and will damage her prospects for finding a new job.

5.      In addition, Defendants do not have standing to make this request, because they do not have a privacy or property interest in the documents that they want to redact. *Hubbard* is not a back channel for amending or expunging official government records that Defendants no longer want to use, as way to shield themselves from potential Constitutional tort liability. Defendants feticiously claim that if the OPR investigative records in Exhibits 17, 26, and 27 were not sanitized as they suggest, the four individuals will suffer ridicule, harassment, stigma, and embarrassment for having pursued what were essentially frivolous complaints of misconduct against Plaintiff.  In other words, those four individuals will suffer the same sort of harm that Plaintiff has suffered over the past five years because of the Knight complaints.  Defendants' argument is both insulting and disingenuous.  If Defendants truly wanted to protect the four individuals from retribution, they should have moved to redact or seal the Knight complaints as soon as the OPR Report of Investigation was issued in September 2019.  Defendants also could have requested redaction of all privacy-protected information in the Knight complaints, including redaction of Plaintiff's name, rather than just the names of the four individuals who filed the frivolous Knight complaints against Plaintiff.  Having unconscionably exploited the Knight complaints to their advantage, Defendants now want the Court to go along with their ploy to deceive the public once again, by ratifying publication of the disproven Knight complaints, but with redactions of the four complainants' names and only their names.

6.      In this regard, Defendants do not have clean hands.  Using the Knight complaints to wage war on Plaintiff, Defendants managed to utterly destroy her professional reputation and cut off her sole means of livelihood.  Over the past two years since she lost her job, Plaintiff has suffered innumerable hardships.  Her health and life insurance were cut off amidst the highly contagious Covid-19 pandemic.  She was unable to collect unemployment compensation under

the laws of the District of Columbia, because she was terminated for cause. She has been unable to find new employment, despite sending over 300 job applications to various employers in the public, private, and non-profit sectors. Last Fall, she managed to land a job with another federal government agency after undergoing three rounds of interviews, followed by a five-month background investigation. She was up front and aboveboard about the reasons she was terminated from the Justice Department. In the end, however, that conditional job offer was revoked because Plaintiff refused to sign a letter acknowledging that she had engaged in professional misconduct in her previous job at DOJ. Moreover, Plaintiff cannot participate in *pro bono* programs as a full-fledged lawyer because her law licenses have been placed in jeopardy. In the September 2020 Removal Decision, Defendants threatened to send Plaintiff to her state bars for further disciplinary proceedings if she does not prevail in this lawsuit. Avoiding potential complications that might arise down the road, Plaintiff has engaged only as an unpaid consultant to other lawyers who handle *pro bono* or paid work. These challenges were directly caused by Defendants' misuse of the Knight complaints and the OPR investigation. The OPR Report of Investigation provides the basis for the Removal Decision. Like the Sword of Damocles, the Removal Decision has made it nearly impossible for Plaintiff to move forward with her life and put this saga behind her.

7.     Indeed, Defendants could have acted much sooner to minimize the harm that the Knight complaints caused Plaintiff. Upon receiving the two Knight complaints in March 2017, EOIR did not attempt to investigate the complaint allegations, nor did it interview Knight, Blessinger, Boykin, and Ahumada to verify the truthfulness and accuracy of the Knight complaint allegations. Instead, EOIR accepted wholesale all of the Knight complaint allegations and then proceeded to use them against Plaintiff. The Knight complaints were attached to a

recusal motion that Blessinger and Boykin filed in 19 cases on Plaintiff's court docket. The recusal motions sought to disqualify Plaintiff from handling all Blessinger and Boykin cases. At her supervisor's direction, Plaintiff prepared a response to the recusal motion and the Knight complaints.

8. In August 2017, EOIR used the two Knight complaints to justify referring Plaintiff to OPR for an investigation. OPR immediately accepted the referral but inexplicably delayed the investigation and thus put off resolution of the Knight complaints. In the meantime, EOIR used the Knight complaints to wreak havoc on Plaintiff's work life, to undermine her position as a tenured immigration judge, and eventually to terminate her long-time DOJ employment in the harshest and most punitive manner possible. First, Plaintiff to OPR, EOIR reassigned all 19 Blessinger and Boykin cases that were on Plaintiff's docket to other Arlington court judges for handling, over Plaintiff's objection. Next, Blessinger presented the two Knight complaints to the Board of Immigration Appeals as evidence in support of her appeal in case 050/051, a case that Plaintiff had heard on February 17, 2017. On appeal, Blessinger argued that Plaintiff must be disqualified from all Blessinger and Boykin cases, because Plaintiff had manifested improper bias and demeanor toward Blessinger in conducting that court hearing. Agreeing with Blessinger, the Board issued an order on January 2, 2018 that remanded the case to another immigration judge for handling, without reaching the merits of the underlying asylum application. In so doing, the Board assumed that all of the Knight complaint allegations were true. It found that Plaintiff's conduct of the February 17, 2017 court hearing did not conform to the high standards expected of immigration judges. Thereafter, the Board refused to entertain Plaintiff's February 5, 2018 Motion to Reconsider its January 2, 2018 decision. The Board also denied Plaintiff's alternative request to certify case 050/051 to the Attorney General for his

review.  Although the Board's January 2, 2018 decision was unpublished and non-precedential, it was swiftly dispatched to the press, which published it in a Law360 article on January 5, 2018. The Board's decision also preempted OPR's investigation of the same court case, effectively tying OPR's hands and forcing it to adopt the Board's rationale even though OPR did not agree with the Board's fact findings on appeal.

9.      Next, EOIR used the two Knight complaints to defeat Plaintiff's then-pending EEOC action.  Commenced in December 2015, the EEOC action challenged a series of adverse personnel actions that EOIR had taken against Plaintiff beginning in January 2015.   Those adverse actions were discriminatory and retaliatory treatment under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973.   The various adverse actions laid the groundwork for Plaintiff's removal from the Justice Department five years later, in September 2020.  The EEOC action proceeded at a very slow pace, because the EEOC had a substantial case backlog.  The EEOC's processing of Plaintiff's case would take five years and would not be completed until February 2020.

10.     Apparently dissatisfied with the pace at which the EEOC case was proceeding, EOIR manipulated the pending OPR investigation to speed up the timetable for completion of Plaintiff's EEOC action.  The OPR investigation which began in August 2017 overlapped with the EEOC action by two years (from August 2017 until September 2019).  During those two years, Plaintiff was unable to participate meaningfully in discovery in the EEOC action.  Because OPR had placed a gag order on Plaintiff through a confidentiality agreement that it required Plaintiff to sign at the start of the OPR investigation, Plaintiff was unable to use any of the materials that could have helped her prove a claim of discrimination or retaliation but those materials were the subject of the OPR investigation.  Consequently, Plaintiff was unable to show

that the OPR investigation itself was a form of harassment.  But because OPR did not place the same restrictions on EOIR, EOIR was free to use materials from the OPR investigation to defeat Plaintiff's EEOC action.  In April 2019, when EOIR moved for summary judgment in the EEOC action, it attached the two Knight complaints to show that Plaintiff had been the subject of multiple complaints of misconduct that OPR was investigating.  Not surprisingly, the EEOC granted summary judgment to EOIR without so much as holding a hearing.  In doing so, the EEOC adopted wholesale the arguments made in EOIR's motion for summary judgment and incorporated the entire 450-page compilation of documents that EOIR introduced for the first time in the EEOC proceeding, as uncontested evidence that supported the EEOC's summary judgment decision.

11.     One day after the EEOC dismissed Plaintiff's EEO complaint on February 26, 2020, EOIR proposed to terminate Plaintiff's employment at the Justice Department.  By then, OPR had issued a Report of Investigation in September 2019 that, for the most part, exonerated Plaintiff's handling of the four hearings that OPR had investigated, except in one respect.  OPR found that Plaintiff had displayed improper demeanor toward Blessinger in conducting a February 17, 2017 court hearing.  By "improper demeanor," OPR meant that Plaintiff had allegedly rolled her eyes, pursed her lips, looked down at her watch, mimicked Blessinger's voice, and made inappropriate comments to Blessinger, such as "Hearsay, as you know because you've gone to law school, is a very weak form of evidence."

12.     Most notably, OPR found that Plaintiff did not knowingly or intentionally violate any statute, regulation, rule of court, or the Immigration Judges' Ethics and Professionalism Guide in conducting the four court hearings.  In addition, OPR found insufficient evidence to substantiate Knight's other misconduct allegations, such as the allegation that Plaintiff had

mistreated Blessinger in the February 1 and March 7, 2017 court hearings.  Those two hearings occurred on February 1 and March 7, 2017.  OPR also rejected the allegation that Plaintiff had mistreated Boykin during a February 16, 2017 hearing.  In addition, OPR did not find that Plaintiff had engaged in witness intimidation or evidence tampering when she invited a court security officer to prepare an affidavit describing that officer's observations of Blessinger's conduct in the February 17, 2017 court hearing.  Finally, OPR did not find that Plaintiff had engaged in professional misconduct when she called the Arlington court administrator to testify about an *ex parte* communication between the court administrator and Blessinger that occurred one day before the March 7, 2017 hearing, and the communication concerned the pending court hearing.  OPR, however, irrationally concluded that Plaintiff exhibited poor judgment in calling the court administrator to testify in open court about the *ex parte* communication.  OPR's opinion in this regard directly contradicted an advisory opinion of the DOJ Professional Responsibility Advisory Office (PRAO), which stated that a complaint of misconduct that one party files against an immigration judge is an *ex parte* communication that must be disclosed to the other party at the earliest possible moment, to avoid prejudice to the opposing party.[1]

13.    There is a lot more that Plaintiff could say about the OPR Report of Investigation, and she plans to say it in her proposed amendment to the complaint, to be filed later this week if

---

[1] Plaintiff acknowledges that the Court has sealed the OPR Report of Investigation, at the request of both parties.  *See* Plaintiff's Sealed Exhibits 1 and 30, ECF Nos. 53-2 and 53-31. Plaintiff does not wish to unseal the OPR Report for a number of reasons, including the fact that the Report is a rambling, disorganized 80-page single-spaced report with over 460 footnotes.  It thus holds the potential to befuddle and confuse the reader, so as to make public disclosure of the OPR Report highly prejudicial to Plaintiff.  Accordingly, Plaintiff would oppose unsealing the report.

Plaintiff further acknowledges that this Opposition contains very few record citations.  In the interest of saving time, Plaintiff will only cite to the relevant exhibit number but not to the page number.  In her proposed amendment to the complaint, Plaintiff will provide pinpoint citations to the records, to satisfy the specificity requirement of Fed. R. Civ. R. 8 and 9.

the Court permits.  For now, Plaintiff submits that Defendants should not be allowed to redact the three exhibits – 17, 26, and 27 – to delete all references to the four individuals.

14.     Redactions of the four individuals' names from the Knight complaints will have the practical effect of defeating Plaintiff's claims of Privacy Act violations, discrimination, Title VII retaliation, and whistleblower retaliation that survived Defendants' partial motion to dismiss. As demonstrated above, the Knight complaints were central to Defendants' efforts to terminate Plaintiff's employment.  Plaintiff would have no ability to compel those individuals' attendance at depositions or to answer interrogatories or to defend against a summary judgment motion that Defendants later bring, if she cannot publicly identify them as potentially liable actors who caused or contributed to her termination.  And in the event she has to defend herself against future disciplinary proceedings before her state bars, Plaintiff will have no access to the OPR records that pertain to the Knight complaints, including recorded or transcribed testimonies of Knight, Blessinger, Boykin, and Ahumada.  As of this date, Defendants have resisted Plaintiff's repeated requests to obtain that information, even as they have not moved to dismiss her FOIA and Privacy Act record access claim.

15.     In this connection, Plaintiff respectfully requests that the Court enter an Order under Fed. R. Civ. P. 37 to compel Defendants to turn over all OPR investigative materials that they used in preparing the OPR Report of Investigation.  Those records have been in OPR's exclusive possession, custody, and control for at least three years.  Notwithstanding the Court's July 29, 2022 Order, Defendants have not turned over those records.  In July 2022, Defendants claimed that they had identified approximately 14,000 pages of responsive records and that they would release to Plaintiff at a rate of 500 pages per month.  Despite much wrangling since then, Plaintiff has only received approximately 1,050 of those 14,000 pages, or less than 8 percent.  At

this rate, Plaintiff will be foreclosed from proving up her claims and defenses in this Court and in any other forum.

16.    In the alternative, given Defendants' repeated failures to ensure release and delivery of OPR records to Plaintiff, Plaintiff respectfully requests that the Court declare Defendants in non-compliance with the Court's July 29, 2022 Order.  For sanctions under Fed. R. Civ. P. 37, Plaintiff further requests that the Court rescind the September 17, 2020 Attorney General Removal Decision, the February 27, 2020 EOIR Notice of Proposed Removal, and the September 27, 2019 OPR Report of Investigation; reinstate Plaintiff to her former position of immigration judge; order the payment of backpay, interests, and attorneys' fees; and grant her any other equitable and monetary relief as the Court deems just and proper.

For all of these reasons, Plaintiff opposes Defendants' request, at this late date, to redact the three exhibits to remove all references to Knight, Blessinger, Boykin, and Ahumada. Because the publication of the three exhibits could only serve the purpose of further injuring Plaintiff, she respectfully requests that the Court impose sanctions under Rule 37.

Date:   January 30, 2023

Respectfully submitted,

Quynh Vu Bain
Pro Se Plaintiff
213 3RD St. SE
Washington, DC  20003
(202) 910-8553
quynhbain75@outlook.com