**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **QUYNH VU BAIN,** | ) | |
| | ) | |
| Plaintiff, | ) | **No. 21-Civ-1751 (RDM)** |
| | ) | |
| v. | ) | |
| | ) | |
| **OFFICE OF THE ATTORNEY GENERAL** | ) | |
| U.S. Department of Justice, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RULE 15(a)(2) AND RULE 54(b) MOTION TO AMEND AND
RECONSIDER THE COURT'S DECEMBER 23, 2022 DECISION**

On December 23, 2022, this Honorable Court granted Defendants' Partial Motion to

Dismiss in part and denied it in part. Pursuant to Fed. R. Civ. P. 54(b) and 15(a)(2), Plaintiff

respectfully requests that the Court reconsider its decision and grant her leave to amend her

complaint to remedy the substantive and procedural deficiencies identified in the Court's decision

with respect to several of the discrimination claims and one retaliation claim in Count II. Plaintiff

also seeks leave to plead a new claim in Count I based on the "adverse effects" and "adverse

determination" provisions of 5 U.S.C. 552a(g)(1)(C) & (D). The proposed amendment to her

complaint does not cause undue delay, is made in good faith, is not futile, and does not prejudice

Defendants.

Under Fed. R. Civ. P. 15(a)(2), a plaintiff may request leave of court to amend a complaint

when a defendant or opposing party refuses to give its written consent. "Where a plaintiff moves

for leave to amend under Rule 15(a)(2), courts must 'freely grant leave when justice so requires.'" *Savignac v. Day*, No. 19-2443 at \*4 (RDM) (D.D.C. May 12, 2022) (citing *Fortran v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiff seeks leave of Court to amend her (first amended) complaint, insofar as Defendants have registered a blanket opposition to any amendment thereof.  For the reasons stated below, the proposed second amendment to the complaint should be granted.  At this stage of litigation, a second amendment of the complaint will not cause undue delay or prejudice to Defendants.  *See Fortran*, 371 U.S. at 182.

As this Court has stated, Fed. R. Civ. P. 54(b)[1] "reflects the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."  *Pilkin v. Sony Interactive Entm't LLC*, No. 17-2501 (RDM) (D.D.C. Dec. 14, 2020) (quoting *Cobell v. Jewell*, 802 F. 3d 12, 25 (D.C. Cir. 2015) (internal quotations omitted).  "In applying the 'as justice requires standard,' the Court may consider whether it 'patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred."  *Pilkin* at \*3 (quoting *In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (citation omitted)).  "Although deciding whether to grant reconsideration lies within the

---

[1] Rule 54(b) states, as follows:

Judgment on Multiple Claims or Involving Multiple Parties.  When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Court's sound discretion, considerations of judicial economy and the obligation of the courts 'to secure the just, speedy, and inexpensive determination of every action and proceeding,' Fed. R. Civ. P. 1, require 'good reason' before reopening matters once resolved." *Pilkin* at *3 (quoting *In Defense of Animals*, 543 F. Supp. 2d at 76).

I.      **Extenuating Circumstances Warrant Reconsideration of the Court's December 23, 2022 Decision.**

The Court's December 23, 2022 decision to assume jurisdiction *sub silentio* over all of Plaintiff's causes of action is a welcomed development.   As the Court's decision noted, this case has been in a "holding pattern" since Defendants moved to dismiss Plaintiff's MSPB mixed case appeal more than two years ago.   Recently, the MSPB re-calendared Plaintiff's appeal and scheduled a hearing for November 4, 2022.  Defendants again moved to dismiss the MSPB appeal, arguing that it must be dismissed now that Plaintiff has filed this civil action.  Because Plaintiff did not agree to voluntarily dismiss this civil action, the MSPB administrative judge granted Defendants' second motion to dismiss. *See* Attachment A.

The Court's December 23, 2022 decision also states that it will confine judicial review primarily to the more recent events, including the September 2019 OPR Report of Investigation, the February 2020 Notice of Proposed Removal, and the September 2020 Removal Decision. Accordingly, Plaintiff has substantially revised her cause of action in Count II to assert claims based on those three discrete acts as discriminatory or retaliatory agency action.  She requests that the Court consider the legality or validity of the Removal Decision in light of her discrimination and retaliation claims in Count II which she asserts as an affirmative defense.  She also requests that the Court review the Attorney General's decision in light of her Privacy Act claims in Count I which she also asserts as an affirmative defense.

The proposed amendment does not prejudice Defendants and are made in good faith. Discovery has not commenced. The Court has just resolved one of two significant evidentiary issues, and it must now address the other significant evidentiary dispute that has resulted from Defendants' denial of record access.

As to the first evidentiary dispute, Plaintiff previously introduced 30 sealed exhibits in support of her first amended complaint. Many of the exhibits contained information that was protected by an OPR confidentiality agreement, an EEOC protective order, or statutes or regulations that required redactions, such as FOIA Exemption 6 and Fed. R. Civ. P. 5.2. The Court only recently resolved this issue through its December 28, 2022 *Hubbard II* Order. *See* ECF No. 57. The Court's resolution of that dispute is another welcomed development. It permits Plaintiff to replead her claims with specificity and plausibility, as she now knows which of the 30 previously sealed Plaintiff's exhibits are a matter of public record. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The second evidentiary dispute that arose in July 2022 is still being resolved. More than three years ago, on August 3, 2019, Plaintiff filed a FOIA and Privacy Act request with OPR, seeking release of the full OPR Record of Investigation. Initially, OPR refused to honor the request or to expedite it. In March 2020, OPR identified a total of 575 pages of responsive documents and released 45 pages without a Vaughn Index. This prompted Plaintiff to file an appeal with OIP. After Plaintiff filed the instant civil action in June 2021 that named OIP as a defendant, OIP issued a letter dated September 13, 2021, advising that it had ceased to process the August 2019 FOIA and Privacy Act request. Thereafter, Plaintiff continued to seek Defendants' cooperation in releasing the OPR records.

In May 2022, Plaintiff filed a Request for Initial Disclosures under Fed. R. Civ. P. 26(a). Defendants refused to honor the request, claiming that they had no obligation to provide the requested OPR evidence. Plaintiff next sought the Court's intervention through filing a request for a Rule 16(a) status conference. *See* ECF No. 45. The Court kindly held a hearing on July 25, 2022 to discuss the parties' respective positions. During that hearing, defense counsel advised, for the first time since the filing of the August 2019 record access request, that OPR had identified a universe of 14,000 pages of responsive documents. Counsel further stated that OPR only had the capacity to process 500 pages per month, and indicated that OPR would begin releasing records in July 2022. The Court memorialized this understanding through an Order dated July 25, 2022. Despite much wrangling since then, Plaintiff has only received approximately 1,050 pages of documents from OPR, or less than 8 percent. In light of the continuing denial of record access, Plaintiff is pleading a new claim in Count I based on a failure to maintain adequate records that resulted in adverse determinations. *See* 5 U.S.C. 552a(g)(1)(C)-(D).

Regarding Plaintiff's record amendment claim in Count I, the Court's December 23, 2022 decision found that Plaintiff could have taken, but did not take, a second-level appeal to the agency EOIR's Privacy Act Office or to the Justice Department's Office of Information Policy (OIP). Plaintiff notes such a second-level appeal was not available to Plaintiff. EOIR did not have a Privacy Act Office, and the Collective Bargaining Agreement (CBA) that governed the work of immigration judges recognized only two second-level appeal options: An EEO complaint or a union grievance. Thus, any perceived failure on the part of Plaintiff to exhaust a second-level record amendment claim was excused by the equitable tolling doctrine of unavailability or insufficiency. For this reason, Plaintiff seeks to correct the Court's misapprehension of the facts through her proposed second amended complaint, which reasserts a limited record amendment in

Count I.  As Defendants have not yet pleaded to the record access claim, the proposed second amended complaint should cause no prejudice to Defendants.

In further support of this Motion, Plaintiff avers the following points and authorities.

## II.       What This Lawsuit Is and Is Not About.

Before proceeding further, Plaintiff respectfully points out several misstatements of fact in the Court's December 23, 2022 decision, in the interest of aiding the Court's judicial review.

First, the Court's decision incorrectly noted that Plaintiff's complaint tried to resurrect two dismissed or abandoned EEO complaints that she filed in March 2014 and March 2015.  Plaintiff's complaint, however, did not make that claim.  She is pressing only the allegations that are found in her December 10, 2015 formal EEO complaint.

Second, Plaintiff is not seeking relief for age discrimination under the Age Discrimination in Employment Act.  As the Court noted, any such relief must be limited to the six-month period before Plaintiff filed this suit on June 22, 2021.  Because Plaintiff was already terminated, she did not experience further age discrimination during that time period so as to have standing to plead an age discrimination claim.  *See* ECF No. 56 at 36.

Third, Plaintiff is not pleading a whistleblower retaliation claim in Count III.

Fourth, although Plaintiff is no longer employed in the Justice Department or in the federal service, she requests a declaratory judgment and injunctive relief to prevent Defendants from continuing to sabotage her legal career.  This request is based on recent events including the revocation of a job offer in October 2022 that resulted from Plaintiff's refusal to sign papers acknowledging that she had engaged in misconduct while employed at the Justice Department.

6

Plaintiff also seeks monetary relief for the irreparable harm to her professional reputation that was caused by the numerous discriminatory or retaliatory adverse personnel actions that Defendants undertook between 2015 and the present time, which resulted in her wrongful termination from DOJ and have prevented her from securing new employment in the legal field.  The crux of her Constitutionally based record access and amendment claim in Count I is that she likely faces future disabilities that are directly traceable to Defendants' discriminatory conduct, and that such past harm is remediable under federal anti-discrimination statutes and the United States Constitution.

Fifth with respect to the claims that the Court did not dismiss, Plaintiff acknowledges that decision and repleads the non-dismissed claims in the second proposed amended complaint. Plaintiff further acknowledges the Court's characterization of the three adverse employment actions (the BIA decision of January 2018, the OPR Report of September 2019, and the Removal Decision of September 2020) as "a piece."  ECF No. 56 at 57.  In doing so, the Court expressed a desire that they be litigated as a single adverse employment action.  Plaintiff agrees with this approach.  Accordingly, she focuses on the allegations relating to those three adverse actions in asserting her affirmative defenses in Counts I and II.  Because records relating to the three adverse actions are sealed per the Court's December 28, 2022 Order (ECF No. 57), Plaintiff does not plead grounds for overturning or nullifying those records in the proposed second amended complaint. Should the Court desire pleadings that specifically refute each and every allegation, charge, finding, or conclusion in the OPR Report or the Attorney General's Removal Decision, Plaintiff would be glad to provide such pleadings after discovery concludes.

For now, Plaintiff respectfully requests leave to plead the following claims.

**III.     Plaintiff Seeks Leave to Replead Her Privacy Act Cause of Action in Count I.**

7

Section 552a(g)(1) of the Privacy Act at Title 5 of the United States Code establishes the circumstances in which a plaintiff may seek civil remedies for various violations of the Privacy Act, including a failure to maintain accurate personnel records that resulted in an adverse effect or determination. *See* 5 U.S.C. § 552a(g)(1). Section (g)(1) recognizes "a civil action for agency misconduct fitting within any of four categories . . . and then makes separate provision for the redress of each." *Doe v. Chao*, 540 U.S. 614, 618 (2004). The first two categories in Section (g)(1) cover deficient management of records. Subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record. *See Feldman v. CIA*, 797 F. Supp. 2d 29, 37 (D.D.C. 2011). Subsection (g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him. *See id.* "The two remaining categories deal with derelictions having consequences beyond the statutory violations *per se*." *Chao*, 540 U.S. at 619. "Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination 'adverse' to that person. Subsection (g)(1)(D) speaks of a violation when someone suffers an 'adverse effect' from any other failure to hew to the terms of the Act." *Chao*, 540 U.S. at 620.

Through the proposed second amended complaint, Plaintiff asserts a claim based on Section 552a(g)(1)(C)-(D). A claim based on adverse determination requires Plaintiff to show that (1) Defendants failed to maintain Plaintiff's records with the degree of accuracy necessary to ensure fairness in the determination; (2) Defendants' reliance on the inaccurate records proximately caused the adverse determination; or (3) Defendants acted intentionally or willfully in failing to maintain Plaintiff's records. *Samtmann v. U.S. Dept. of Justice*, 35 F. Supp. 3d 82, 88 (D.D.C. 2014).

A cause of action arises under the Privacy Act "at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error ; and (3) the plaintiff either knew or had reason to know of the error." *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 4 (D.D.C. 2007). *See also Samtmann*, 35 F. Supp. 3d at 88. In an adverse determination case, the cause of action accrues only once; it "does not arise each time an adverse determination is made based on allegedly erroneous records." *Id.* (quoting *Almon v. Fed. Bureau of Prisons*, 605 F. Supp. 2d 1, 4 (D.D.C. 2009)). The only exception to the rule arises if an agency "materially and willfully misrepresented any information." 5 U.S.C. § 552a(g)(5). In that case, "the action may be brought at any time within two years after discovery by the individual of the misrepresentation." *Id.*

In this case, Plaintiff asserts that the September 27, 2019 OPR Report of Investigation, the EOIR Director's February 26, 2020 Notice of Proposed Removal, and the September 17, 2020 Attorney General Removal Decision were adverse determinations that directly and proximately resulted from EOIR's and OPR's failure to maintain accurate records for Plaintiff. As the adverse determinations by OPR, EOIR, and the Attorney General arose within two years of the filing of this lawsuit on June 22, 2021, this cause of action is timely. The paragraphs in the proposed amended complaint that correlate with this new cause of action are ¶¶ 91-153.

## IV.    Plaintiff Seeks Leave to Re-Plead Two of the Dismissed Discrimination Claims and to Plead One New Discrimination Claim in Count II.

The Court's December 23, 2022 decision noted that discrimination was a possible motive for certain adverse employment actions that Defendants took in the first half of 2015. However, the Court found that Plaintiff did not timely exhaust those adverse actions, namely the March 2015 reprimand letter and the June 2015 counseling letter. The Court dismissed those claims upon finding that Plaintiff did not adequately demonstrate "second level" exhaustion of the claims. As

will be explained, the second level exhaustion that the Court contemplated did not exist in Plaintiff's agency. There was no Privacy Act office to which Plaintiff could have requested a revision of her performance ratings. At the time that these events transpired, Plaintiff's only option was to pursue a record amendment claim through the EEOC process or to pursue a union grievance.

While dismissing some of the early 2015 adverse actions, the Court found that other adverse personnel actions occurring in late 2015 were actionable, because they fell within 45 days of the filing of the informal EEO complaint on October 9, 2015. Those timely exhausted claims included the August 2015 performance rating, which provided justification for the October 2015 decision to deny special work opportunities and the November 2015 decision to deny Plaintiff's Board of Immigration Appeals Member application. The Court also found that the September 2016 interim performance rating or the August 2017 final performance rating may constitute discrimination; therefore, dismissal of those claims at the motion-to-dismiss stage would be premature. *See* ECF No. 56 at 49.

The new discrimination claim is based on the Attorney General's Removal Decision on September 17, 2020, which Plaintiff previously raised in her civil complaint. In the second proposed amended complaint, she amplifies this claim by discussing specific events leading to that discriminatory or retaliatory decision, and by comparing her situation to that of Vance Spath, an immigration judge candidate the agency hired in June 2018 to replace Plaintiff. Previously, Plaintiff raised this new discrimination claim in her Motion for Reconsideration filed with the EEOC on April 29, 2021. After the EEOC denied the Motion for Reconsideration on August 13, 2021, Plaintiff amended her civil complaint on September 22, 2021 to assert this new discrimination claim. Now that the Court has assumed jurisdiction over all of Plaintiff's discrimination related claims in Count II, she takes this opportunity to plead this new

discrimination claim with specificity and plausibility. This new discrimination claim is found in ¶¶ 174-197 of the proposed second amended complaint.

### VI.    Plaintiff Requests Leave to Re-Plead One Retaliation Claim in Count II.

In dismissing all of Plaintiff's retaliation claim in Count II, the Court reasoned that she had not pleaded a plausible claim of retaliation and thus the claim was dismissed under Rule 12(b)(1) and (6). Plaintiff respectfully suggests that the Court permit her to re-plead one Title VII retaliation claim because it is intertwined with the Court's judicial review of the Attorney General's decision. The claim rests on Defendants' decision to propose to terminate Plaintiff's employment at the Justice Department just one day after the EEOC dismissed her EEO complaint by summary judgment. *See* Exhibit 1 at 133-14 (ECF No. 53-2). Given the temporal proximity of the two events, Plaintiff asserts that a retaliatory motive can be inferred from the timing of the proposed removal and the dismissal of the EEOC action. *Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53, 68 (2006) (a "materially adverse action" is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination.").

For the above reasons, Plaintiff respectfully requests that the Court grant the accompanying Motion to Amend and Reconsider and Motion for Leave to File the proposed complaint one day out of time.

Dated: February 25, 2023

Respectfully submitted,

Quynh Vu Bain
Pro Se Plaintiff
213 3rd St. SE
Washington, DC  20003
(202) 910-8553
quynhbain75@outlook.com

11