**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **QUYNH VU BAIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **No. 21-Civ-1751 (RDM)** |
| v. ) | |
| ) | |
| **OFFICE OF THE ATTORNEY GENERAL** ) | |
| U.S. Department of Justice, et. al ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER REQUEST**
**FOR RECORD INSPECTION UNDER FED. R. CIV. P. 34**

On August 21, 2023, Plaintiff filed a motion seeking leave of Court to conduct an inspection of a 14,500-page repository of records of the U.S. Department of Justice's Office of Professional Responsibility (OPR). *See* ECF No. 89. Through a Response filed on September 3, 2023, Defendants opposed the request for record inspection. In this Reply to Defendants' Response, Plaintiff respectfully urges the Court to permit the inspection and to remedy Defendants' non-compliance with the Court's July 25, 2022 record release order by declaring null and void the OPR Report of Investigation issued on September 27, 2019, and the former United States Attorney General's Removal Decision issued on September 17, 2020, which is based principally on the OPR Report.

A.    **Statutory Framework Governing Disclosure of OPR Records**

The Privacy Act regulates the collection, maintenance, use, and dissemination of information about an individual by a federal agency. *Harrison v. BOP*, 248 F. Supp. 3d 172, 179 (D.D.C. 2017). Section 552(d)(1) of Title 5 of the United States Code requires each agency to

provide an individual with access to records that pertain to the individual. 5 U.S.C. § 552(d)(1). Section 552a(t)(2) provides that "[n]o agency shall rely on any exemption in the [Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of [the FOIA]." *Id.* A person who is denied access may sue for injunctive relief under Section 552a(g)(1).[1]

The FOIA statute mandates a "strong presumption" in favor of disclosure. *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). This means that the agency must disclose records on request unless they fall within one of nine statutory exemptions. *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). Contrary to Defendants' contention, the Privacy Act does not require Plaintiff to wait for discovery to commence before she could seek disclosure of records under the Privacy Act's disclosure provisions. *See generally Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987)

---

[1] Section 552a(g)(1) of Title 5 of the United States Code states:

> Whenever any agency (B) refuses to comply with an individual request under subsection (d)(1) of this section . . . , the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1).

The type of injunctive relief that Section 552a(g)(1) provides is found in Section 552a(g)(3)(A):

> In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court shall determine the matter *de novo*, and may examine the contents of any agency records *in camera* to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552a(g)(3)(A).

(holding that the Privacy Act "does not create a qualified discovery privilege" or "any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery," and courts generally consider whether to allow discovery under "the usual discovery standards" of the Federal Rules of Civil Procedure.).

 **B.**  **Factual Background**

On August 5, 2019, Plaintiff filed a FOIA and Privacy Act request with the Justice Department's Office of Professional Responsibility (OPR), seeking disclosure of records that OPR generated, compiled, and aggregated during a two-year investigation of Plaintiff that began in August 2017 and concluded in September 2019. *See* ECF No. 63-2 at 33-41. *See also* ECF No. 1 at ¶ 46; ECF No. 16, at ¶¶ 92.

As the Court now knows, Plaintiff needed to access the OPR Record of Investigation for many reasons. She needed the records to respond to OPR's proposed findings of misconduct in its Report of Investigation, before OPR finalized the Report in September 2019. *See* ECF No. 53-31 at EOIR 1-82 (Exhibit 30) (Sealed). *See also* ECF No. 16 at ¶¶ 93-94. Because she was denied access to the OPR Record of Investigation, Plaintiff was unable to refute OPR's proposed findings before Defendants adopted those findings as the final agency position. *See* ECF No. 1 at ¶¶ 47-48; ECF No. 16 at ¶¶ 93-94; ECF No. 87-1 at ¶ 58. While the OPR investigation was still ongoing, EOIR obtained OPR records that were privileged or confidential and used them to defeat Plaintiff's employment discrimination action before the Equal Employment Opportunity Commission. *See* ECF No. 62-1 at 34-43; ECF No. 16 at ¶ 155. As a result of EOIR's misuse of OPR records, the EEOC administrative judge granted EOIR's summary judgment motion and dismissed Plaintiff's EEO complaint on February 26, 2020. *See* ECF No. 87-1 at ¶23. The very next day, EOIR again

used the OPR records to propose Plaintiff's removal from DOJ and the federal service. *See* ECF No. 87-1 at ¶¶ 24, 73.

In preparing for a pre-termination hearing before the Office of the Deputy Attorney General on July 16, 2020, Plaintiff again requested access to the OPR records. *See* ECF No. 1 at ¶ 57; ECF No. 16 at ¶ 103. OPR again refused access. Without the OPR record at her disposal, Plaintiff was unable to persuade the deciding officials that she did not engage in the serious misconduct with which she was charged and, even assuming that she had engaged in such misconduct, the proposed penalty of removal was grossly disproportionate to any penalty that similarly situated immigration judges had received from the agency. *See* ECF No. 1 at ¶¶ 56, 58-60; ECF No. 16 at ¶ 102; ECF No. 87-1 at ¶¶ 74-75.

After the former Attorney General terminated Plaintiff's employment on September 17, 2020, Plaintiff needed to access the OPR records to file an appeal from the Attorney General's Removal Decision. An appeal of the Removal Decision was absolutely necessary, because the Attorney General had authorized the referral of Plaintiff to her state bars for further disciplinary proceedings in the event she does not prevail on her appeal. *See* ECF No. 87-1 at ¶ 75. An appeal was also necessary to vindicate Plaintiff's Constitutionally protected property and liberty interests in continuing to practice law and in continuing her federal employment without fear of discrimination or retaliation. *See* ECF No. 16 at ¶¶ 104-105; ECF No. 87-1 at ¶ 75. Accordingly, Plaintiff brought this FOIA action in June 2021 to compel the release of the OPR Record of Investigation. *See* ECF No. 1 at ¶¶ 62-75, 77-79; ECF No. 16 at ¶¶ 6-12; ECF No. 87-1 at ¶ 99. In response to the filing of this lawsuit, the Justice Department's Office of Information Policy (OIP) advised Plaintiff that OPR had ceased the processing of her FOIA and Privacy Act request because she had filed suit. *See* ECF No. 63-13.

Plaintiff next appealed to defense counsel through a Rule 26(a)(1)(B) Request for Initial Disclosures. *See* ECF Nos. 45-3 and 45-2. When that entreaty failed, Plaintiff requested a Rule 16(a) status conference with this Court. *See* ECF No. 45. During the July 25, 2022 conference that followed, Defendants advised – for the first time since Plaintiff filed the FOIA and Privacy Act request with OPR three years earlier – that the universe of responsive records stood at approximately 14,500 pages. *See* ECF No. 49. This was a truly astounding revelation, because OPR previously asserted that the universe of responsive records was only 575 pages. *See* ECF No. 63-2 at 47-48. The much larger number of responsive records confirmed Plaintiff's suspicion that she was denied the opportunity to confront the body of evidence on which OPR based its misconduct findings. Based on OPR's assertion that its processing capacity was limited to 500 pages per month, the Court ordered OPR to begin processing and releasing its records to Plaintiff in September 2022. *See* Minute Order, dated July 25, 2022.

Defendants now claim that since September 2022, OPR has "processed and/or released" approximately 9,228 pages of records. *See* ECF No. 91 at 3. They further assert that OPR has been able to exceed its processing capacity of 500 pages per month by processing an additional 3,728 pages. *See id.* These claims are misleading. A close look at the OPR numbers reveals that its processing and production of responsive records have fallen far below what the Court ordered.

The chart below contains information extrapolated from OPR's transmittal letters, which accompanied the record releases that OPR has made over the past 12 months. The letters reveal that OPR has released to Plaintiff only 2,490 pages of records, which constitute only 17 percent of the universe of 14,500 responsive pages, and only 28 percent of the 9,228 pages that OPR claims to have "processed and/or released" to Plaintiff in the past 12 months. The transmittal letters also reveal that a significant number of processed pages are denoted as duplicative. The term

"duplicative" itself is vague and suggests that OPR did not conduct a thorough or accurate record search. OPR deems a record to be "duplicative" if it determines that Plaintiff already has the record, or if the record is one that it had previously withheld on a claim of exemption. How OPR determines what records Plaintiff has or does not have is not explained. In any event, of the 9,228 pages that OPR claims to have "processed and/or released" to date, OPR identified 6,192 pages (or approximately 68 percent) as duplicative records. This astoundingly large number of withheld duplicate pages stands in sharp contrast to the miniscule number of non-duplicative pages – 659 pages – that OPR has released to Plaintiff in the last 12 months. Equally troubling is the fact that OPR released no records in the months of March, April, May, and August 2023, despite claiming that it processed 2,148 pages over the course of those four months. Collectively, the data extrapolated from the OPR transmittal letters raises serious questions about the propriety of OPR's record keeping, processing, and disclosure practices.

As a matter of procedural fairness, the transmittal letters are too vague and non-specific to satisfy OPR's burden of demonstrating compliance with this Court's July 25, 2022 record release order and July 6, 2021 Standing Order to provide Vaughn indexes for FOIA records. *See* ECF No. 5 at ¶ 10.b. The transmittal letters fail to adequately identify the records that OPR has released or withheld. The transmittal letters also fail to specify the reasons that OPR has withheld certain records. The transmittal letters also do not explain why the exemptions apply to Plaintiff as a first-party FOIA requestor. Instead, the letters merely list the three FOIA exemptions that OPR claims are applicable, without specifying which exemptions apply to which records. (The three exemptions that OPR asserts are the deliberative process exemption under 5 U.S.C. § 552(b)(5), the personal privacy exemption under § 552(b)(6), and the law enforcement exemption under § 552(b)(7)). Since the three exemptions are discretionary rather than mandatory, OPR has not

adequately justified its discretionary determinations to withhold the records of its investigation of Plaintiff, as a first-party requestor who has a specific need to access those records.  OPR thus violates the Justice Department's own policy providing that "agencies are not prohibited from disclosing to an individual his own record in response to a "first party" access request pursuant to the Privacy Act's access provisions). *See* https://www.justice.gov/opcl/overiew-privacy-act-1974-2020-edition/disclosures-third-parties#consentrules at 12 (citing *Weatherspoon v. Provincetowne Master Owners Ass'n*, No. 08-cv-02754, 2010 WL 936109, at *3 (D. Colo. Mar. 15, 2010)).

In addition, OPR's invocation of the law enforcement exemption is procedurally deficient. Before invoking Exemption 7(C), an agency must first show that the information it seeks to withhold "was compiled for law enforcement purposes." *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (citing 5 U.S.C. 552(b)(7)).  Because the OPR investigation of Plaintiff was conducted for a personnel supervision-managerial purpose, Exemption (7)(C) does not exempt the OPR Record of Investigation from disclosure to Plaintiff as a first-party FOIA requestor.  *See Barko v. U.S. Dep't of Justice,* 898 F.3d 51, 65 (D.C. Cir 2018); *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002); *Kimberlin v. Department of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998).  To the extent that OPR now invokes Section 552(k)(2) as a general bar to disclosure of law enforcement sensitive information stored in its system of records, that general provision cannot override the more specific, mandatory disclosure provisions of the Privacy Act, such as Section 552a(b)(3)'s "routine use" exception or Section 552a(b)(11)'s "court order" exception. Both of those exceptions to Section 552(k)(2) apply in this case. *See, e.g., Laxalt*, 809 F.2d at 888-89 (rejecting the Privacy Act as a discovery privilege and stating that Section 552a(b)(11) allows for court-ordered disclosures). OPR thus has no legal basis for belatedly invoking Section 552a(k)(2) to withhold the records of its investigation, which was concluded more than four years

ago and resulted in no law enforcement proceeding or criminal sanctions against Plaintiff.[2] *See also Neese v. U.S. Department of Justice*, No. 19-cv-01098 (D.D.C. Mar. 28, 2022) (the burden is on OPR to show that its withholding of investigatory record materials is valid where the OPR investigation was undertaken for employment-supervision purposes rather than for law enforcement purposes).

As a matter of fundamental fairness, the Court should remedy OPR's non-compliance with its record disclosure order by directing OPR to immediately disclose to Plaintiff, as a first-party requestor in this FOIA action, all 14,500 pages of records that OPR generated, compiled, and used in preparing the OPR Report of Investigation, in unredacted form and without regard to any FOIA exemption from disclosure. An injunction would be appropriate in this instance, given that OPR's disclosure and withholding decisions are arbitrary and capricious and are manifestly contrary to law. OPR's inconsistent treatment of witness interview records provides a good example of this concern. In the course of the investigation, OPR interviewed 13 witnesses. *See* ECF No. 16 at ¶ 100. In proposing to terminate Plaintiff's employment, EOIR released only three of those 13 witness interview transcripts to support OPR's finding that Plaintiff had displayed improper demeanor toward immigration bar attorney Eileen P. Blessinger in conducting a February 17, 2017 court hearing. *See* ECF No. 16 at ¶ 76. The three transcripts captured the OPR interview testimonies of Ms. Blessinger, her paralegal Nicolas Ahumada, and a court interpreter named Cherilyn Varela. OPR, however, unreasonably withheld the interview transcripts of two independent eyewitnesses whose testimonies, it has acknowledged, would corroborate Plaintiff's account of the February 17, 2017 hearing and would show that she neither displayed improper

---

[2] An agency must make a showing of "good cause" when it belatedly invokes a FOIA exemption against disclosure of records. *See Shapiro v. U.S. Dep't of Justice*, 177 F. Supp. 3d 467, 469-70 (D.D.C. 2016).

demeanor nor did she mistreat attorney Blessinger in any way. *See* ECF No. 87-1 at ¶ 115. The suppression of those two witnesses' testimonies violated Plaintiff's due process right to a fundamentally fair OPR investigation. It deprived Plaintiff of a right to examine evidence that was favorable to her. Furthermore, OPR relied on the testimony of attorney Carmen A. Boykin to show that Plaintiff had made false statements about Boykin and the other attorneys who complained about Plaintiff's conduct of immigration court hearings. The Boykin interview transcript, however, is so heavily redacted as to be unintelligible. The effect of the heavy redactions is to force Plaintiff to accept Boykin's testimony as unassailable, with no opportunity to confront or refute it.

Finally, OPR concealed from Plaintiff critical information about attorney Paul L. Knight, who – Plaintiff discovered recently – had filed four complaints of judicial misconduct against Plaintiff on behalf of his clients, attorneys Blessinger and Boykin, in the year 2017. *See* ECF No. 87-1 at ¶¶ 107, 116-117. Plaintiff's former supervisor, ACIJ Deepali Nadkarni, had interviewed Knight in early April 2017 in connection with the first two complaints that he filed in March 2017. ECF No. 62-3 at 1-17; ECF No. 62-1 at 14-22, 33-38. Based on that interview, EOIR determined that the first and second Knight complaints provided adequate predication for an OPR investigation. *Id.* But at the time neither EOIR nor OPR disclosed to Plaintiff that Knight had filed two more complaints in June 2107 and December 2017, respectively. Only recently and only in response to this Court's record release order did OPR reveal the third and fourth Knight complaints to Plaintiff. *See* ECF No. 87-1 at ¶¶ 107, 116-117. OPR's concealment of the third and fourth Knight complaints was highly prejudicial, because they contain information that Plaintiff could have used to impeach Knight's credibility and to discredit the first two complaints that he filed in March 2017. *See* ECF No. 87-1 at ¶¶ 39-43. Because Plaintiff was not aware of

the existence of the third and fourth Knight complaints, she was not able effectively to refute the specious and false accusations of judicial bias and misconduct that Knight asserted in his first two complaints. *See id.* at ¶¶ 48-51, 107, 117.

OPR's suppression of the third and fourth Knight complaints raises questions about the propriety of the OPR investigation and the legal sufficiency of the evidence supporting OPR's misconduct findings. It also indicates a tendency toward evasion of its disclosure obligations under the Privacy Act. The 2,490 pages of OPR records that have been produced thus far contain no direct evidence supporting the serious findings of misconduct stated in OPR's Report of Investigation. They do, however, indicate that the OPR investigation was a pretext for the agency's discriminatory treatment of Plaintiff as an incumbent Asian-American female immigration judge who the agency sought to purge from its ranks so that it could give her full-time employment position to a favored immigration judge candidate. *See* ECF No. 16 at ¶¶ 104-105, 141-146, 160-167. The latest disclosures of OPR records (*i.e.*, the third and fourth Knight complaints) and the deliberate withholding of favorable eyewitness testimonies (*i.e.*, the interview transcripts of former DHS counsel Thai Tran and Juliana Bae) only serve to confirm the paucity of evidence supporting the Attorney General's Removal Decision. *See* ECF No. 87-1 at ¶¶ 115, 116-117. As the evidentiary record stands at this moment, OPR's misconduct findings appear to be based on little more than false narratives and testimonies, a tendency to mischaracterize Plaintiff's conduct and motives, seriously flawed assumptions about the work of immigration judges, and an incorrect application of the rules of ethical and professional conduct. *See* ECF No. 16 at ¶¶ 131-144. Unless OPR produces probative evidence to buttress its misconduct findings, it cannot satisfy its burden of showing that Plaintiff's alleged violation of the rules of ethical and professional conduct was so egregious that she deserved to be fired. *See Daniels v. Merit Systems Protection Board*, No. 13-

73913 at * 13-14 (9th Cir. Aug. 9, 2016) (to prevail on appeal, the agency must prove by a preponderance of the evidence that the charged misconduct occurred, establish a nexus between the charged misconduct and the efficiency of the service, and demonstrate that the penalty imposed was reasonable). *See id.* ("An ALJ who makes an erroneous decision does not violate the law (or engage in gross mismanagement) any more than does a district judge who is subsequently reversed on appeal.").

Needless to say, the adverse impact of OPR's investigation, misconduct findings, and denial of record access has been devastating. Plaintiff's 29-year public service career was extinguished without any semblance of due process. She has been unable to find another job because the bad publicity associated with this case has utterly destroyed her professional reputation. Moreover, because the Attorney General's Removal decision authorizes the referral of Plaintiff to her state bars for further disciplinary proceedings – in the event she does not prevail in her appeal of the Removal Decision, her legal career has been brought to a standstill while she focuses on appealing the Attorney General's Removal Decision to this Court. *See* ECF No. 16 at ¶ 147.

### C.    The Court Should Award Injunctive And Equitable Relief.

Because Defendants' unlawful denial of record access has trampled on Plaintiff's statutory rights under the Privacy Act, the Court should enter an order enjoining Defendants from continuing to withhold the OPR Record of Investigation. Under 5 U.S.C. § 552a(d)(1), Plaintiff has an undisputed right to access OPR records, and she needs to access the records for good reasons. Under 5 U.S.C. § 552a(e)(5) and (6), Defendants have a clear statutory obligation to maintain an accurate and complete set of records for and about Plaintiff. The Court should require Defendants to comply with those obligations as well.

11

In addition, the Court should award equitable, non-monetary relief in the form of a declaration that the OPR Report of Investigation and the resulting Attorney General decision to terminate Plaintiff's employment were obtained in violation of Plaintiff's statutory and Constitutional due process rights. *See National Treasury Employees Union v. Hove*, 840 F. Supp. 165, 170 (D.D.C. 1994) (under the APA, a court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). *See also* 5 U.S.C. § 7701(c)(2)(A) (an agency's decision may not be sustained where a plaintiff "shows harmful error in the application of the agency's procedures in arriving at such decision."). *See also* 5 C.F.R. § 1201.56(c)(3) ("Harmful error" is "[e]rror by the agency in the application of its procedures which, in the absence or cure of the error, might have caused the agency to reach a conclusion different than the one reached." ).

The investigation that OPR conducted over a two-year period exceeded the bounds of decency and reasonableness, and it was not appropriately tailored to achieve a legitimate governmental interest. *See Clark v. Library of Congress*, 750 F.2d 89, 98 (D.C. Cir. 1984). It was an unbridled fishing expedition that yielded no direct evidence of serious misconduct or ethical breaches. In conducting the investigation, OPR did not use the least restrictive means possible to protect Plaintiff's Constitutionally protected liberty and property interests in continuing federal employment and in continuing the practice of law. OPR violated Plaintiff's expectation of privacy by freely sharing information that it compiled with EOIR. EOIR, in turn, violated Plaintiff's right to privacy, by unlawfully divulging her privacy-protected information to third parties who did not have a need to know, such as the complaining attorneys (Knight, Blessinger, and Boykin), who then used the information to file complaints of misconduct against Plaintiff. *See* ECF No. 16 at ¶ 152; ECF No. 87-1 at 8 & ¶¶ 27-28. EOIR also selectively released records of the OPR

investigation to the EEOC, while the investigation was still ongoing, in an attempt to defeat Plaintiff's pending EEOC action. *See* ECF No. 62-1 at 39-43; ECF No. 16 at ¶ 155. In doing so, EOIR violated Plaintiff's right to confidentiality as the subject of the OPR investigation. *See* ECF No. 62-1 at 34, 43. The improper release of OPR records to the EEOC apparently served its intended purpose – it prompted the EEOC administrative judge to dismiss Plaintiff's EEO complaint by summary judgment. EOIR then used the same OPR records to propose Plaintiff's removal from DOJ and the federal service. Because the OPR investigation so irreparably damaged Plaintiff's professional reputation, it has visited innumerable hardships on Plaintiff and has essentially robbed her of her sole means of livelihood.

Under Sections 702 of the Administrative Procedure Act, this Court has jurisdiction to grant equitable relief to remedy the egregious Constitutional violations that Defendants' arbitrary, capricious, and unlawful actions have occasioned. *See Clark*, 750 F.2d at 102. *See also Dronenburg v. Zech*, 741 F.2d 1388, 1389-91 n. 3 (D.C. Cir. 1984) (Section 702 eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity); *Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 180 (D.D.C. 2013) (same). The Court should remedy those due process violations by declaring null and void the OPR Report of Investigation The Court should invalidate the Attorney General's Removal Decision, which principally relied on OPR's unsupported findings of misconduct. The Court also should grant any other non-monetary relief that it deems just and proper.

Dated: September 9, 2023          Respectfully submitted,

Quynh Vu Bain
*Pro Se* Plaintiff

13

## DATA FROM OPR TRANSMITTAL LETTERS

| Date of Release | Pages processed | Pages released or referred for consultation | Pages withheld or redacted for exemption | Pages withheld as duplicative or non-responsive |
|---|---|---|---|---|
| February 27, 2020. EOIR released as the Removal Record.* | 1801 | 1801 | 0 | 0 |
| March 20, 2020 | 575 | 45 released | 545 | 0 |
| September 2021[3] | 0 | 0 | 0 | 0 |
| September 30, 2022 | 314 | 186 released | 0 | 0 |
| October 30, 2022 | 201 | 201 released * | 0 | 0 |
| October 31, 2022 | 114 | 0 | 0 | 0 |
| November 30, 2022 | 527 <br> 504 | 163 released * <br> 504 released * | 0 | 0 |
| December 29, 2022 | 500 | 151 released <br> 47 referred | 1 withheld <br> 10 redacted | |
| January 31, 2023 | 500 | 89 released <br> 38 referred | 15 withheld | 352 duplicative <br> 6 non-responsive |

---

[3] OPR incorrectly claims that it released 504 pages of records to Plaintiff on September 3, 2021, and 163 pages on July 22, 2022.  Plaintiff did not receive those records until November 2022 or December 2022.

| February 9, 2023 | 0 | 157 released * 0 withheld | 24 redacted | |
|---|---|---|---|---|
| February 27, 2023 | 500 | 13 released | 0 | 480 duplicative 7 non-responsive |
| March 17, 2023 | 500 | 0 | 0 | 71 duplicative 426 duplicative 3 non-responsive |
| April 19, 2023 | 500 | 0 | 0 | 497 duplicative 3 non-responsive |
| May 2023 | 500 | 0 | 0 | 500 duplicative |
| June 2023 | 1,838 | 30 released 106 referred | 52 withheld 6 redacted | 1,647 duplicative 3 non-responsive |
| July 31, 2023 | 504 | 90 released 202 referred 5 referred | 5 withheld | 205 duplicative 2 non-responsive |
| August 24, 2023 | 648 | 0 | 0 | 648 duplicative |
| **Total** | **8,225** | **689** | **619 withheld 40 redacted** | **6,192 duplicative 24 non-responsive** |

\* The asterisk denotes records that were previously released to Plaintiff as part of EOIR's Record of Removal. The 1801 pages of the EOIR Record of Removal are not counted toward the OPR record releases that are made in response to the Court's July 25, 2022 record release order.



**U.S. Department of Justice**

Office of Professional Responsibility

*950 Pennsylvania Avenue, N.W., Suite 3266*
*Washington, D.C. 20530*
*(202) 514-3365*

August 24, 2023

Quynh Vu Bain
quynhbain75@outlook.com

      Re:    OPR FOIA No. F19-00105 July 2023 Interim Response (CORRECTION)

Dear Ms. Bain:

      This is a correction to the July 2023 interim response from the Office of Professional Responsibility (OPR) to your August 5, 2019 Freedom of Information Act (FOIA)/Privacy Act request seeking any and all information that OPR received, gathered, or compiled in the course of conducting the OPR inquiry and investigation into your conduct and in preparing the OPR July 22, 2019 report of investigation.  Please refer to OPR FOIA number **F19-00105** in any correspondence pertaining to this matter.

      You will recall OPR processed a total of 504 pages of responsive records for its July 2023 interim response.  On July 31, 2023, OPR produced 90 pages of responsive records to you.  Five pages were withheld in full, 2 pages were non-responsive to your request and 205 pages were duplicate pages containing information already processed and provided, as appropriate, to you.  Pursuant to 28 C.F.R. § 16.4(d), OPR sent 202 pages to the Executive Office for Immigration Review (EOIR) for consultation.

      Because 5 pages of responsive records contain information of interest to both the EOIR and the United States Equal Employment Opportunity Commission (EEOC), OPR sent those pages (Bates-numbered F19-00105 003465 to 003469) for consult to EEOC pursuant to 28 C.F.R. § 16.4(d).  Upon receipt of the EOIR and EEOC consultation responses, OPR will finalize and provide the 5 pages, as appropriate, to you.*

      Because you requested access to your own records, OPR has also processed your request under the Privacy Act, 5 U.S.C. § 552(a).  The Department has promulgated rules exempting OPR's database from the Privacy Act under 5 U.S.C. § 552a(k)(2), see JUSTICE/OPR-001, 76 Fed. Reg. 66752, and therefore your access to and our disclosure of those records are limited to what the FOIA does not exempt (5 U.S.C. § 552b(b)(1)-(b)(9)).  By processing your request under both acts, as required, we are able to provide you with the most access allowable.

---

    *    *For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.*

For your convenience in tracking our production, please find attached the *F19-00105 Processed and Produced Page Counts Chart*, which shows the cumulative number of pages OPR has processed and produced in response to your FOIA request from 2020 to present.

OPR is continuing to process the remaining voluminous records responsive to your request and will release interim responses at various intervals until our response is complete. We will provide all responses, including responsive records, electronically, unless you advise us that you prefer to receive them in hard copy.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal with the Office of Information Policy.

Sincerely,

*Carmen Smith Carter*

Carmen Smith Carter
Assistant Counsel for the Freedom of Information
and Privacy Acts

Attachment: F19-00105 Processed and Produced Page Counts Chart

cc: M. Jared Littman, Assistant U.S. Attorney

| Attachment |
|---|
| F19-00105 Processed and Produced Page Counts Chart |

| Interim/ Monthly Interim | Bates Nos. | No. of Pages Processed | Blank, Duplicate, Non-responsive Pages | Produced to Bain=B Consult=C Withheld in Full=WIF | No. of Pages Produced | Pages Produced and Processed |
|---|---|---|---|---|---|---|
| 1st Interim (3/2020) | 1-00575 | 575 | 0 | B=45 WIF=530 | 575 | 575 |
| 2nd Interim (9/2021) | 576-1079 | 504 | 0 | B=504 | 504 | 504 |
| 3rd Interim (7/2022) | 1080-1546 | 627 | 160 | B=163 C=100 (EOIR) WIF=204 | 467 | 627 |
| SEPT 2022 | 1547-2046 | 500 | 0 | B=314* C=186 (EOIR, DHS, FBI) | 500 | 500 |
| OCT 2022 | 2047-2445 | 501 | 61 | B=399 C=38 (EOIR) WIF=3 | 440 | 501 |
| NOV 2022 | 2487-2825 | 527 | 188 | B=174 C=157 (EOIR) C=3 (OIG) WIF=5 | 339 | 527 |
| DEC 2022 | 2826-3024 | 500 | 301 | B=151 C=47 (EOIR) WIF=1 | 199 | 500 |
| JAN 2023 | 3025-3166 | 500 | 358 | B=89 C=38 (EOIR) WIF=15 | 142 | 500 |
| FEB 2023 | 3167-3179 | 500 | 487 | B=13 | 13 | 500 |
| MAR 2023 | -- | 500 | 74 | WIF=426 | 0 | 500 |
| APR 2023 | -- | 500 | 396 | WIF=104 | 0 | 500 |
| MAY 2023 | -- | 500 | 500 | 0 | 0 | 500 |
| JUNE 2023 | 3180-3367 | 1,842 | 1,654 | B=30 C=106 (EOIR, OIP, DHS) WIF=52 | 188 | 1,842 |
| JULY 2023 | 3368-3664 | 504 | 205 | B=90 C=202 (EOIR, EEOC) WIF=5 | 297 | 504 |
| | | | | Total Produced | 3,664 | |
| | | | | Total Produced and Processed | | 8,580 |

\* Page count includes 5 pages that appear as placeholders, Bates-numbered F19-00105 00189 to 001903, because they fell in the middle of an OPR interview transcript and OPR was required to send them to the FBI and DHS for their consult response before release.



**U.S. Department of Justice**

Office of Professional Responsibility

*950 Pennsylvania Avenue, N.W., Suite 3266*
*Washington, D.C.  20530*
*(202) 514-3365*

August 24, 2023

Quynh Vu Bain
quynhbain75@outlook.com

    Re:    OPR FOIA No. F19-00105 August 2023 Interim Response

Dear Ms. Bain:

    This is the August 2023 interim response from the Office of Professional Responsibility (OPR) to your August 5, 2019 Freedom of Information Act (FOIA)/Privacy Act request seeking any and all information that OPR received, gathered, or compiled in the course of conducting the OPR inquiry and investigation into your conduct and in preparing the OPR July 22, 2019 report of investigation.  Please refer to OPR FOIA number **F19-00105** in any correspondence pertaining to this matter.

    For this August 2023 interim response, OPR processed a total of 648 pages of records potentially responsive to your request.  Of the 648 processed pages, all were duplicate pages containing information already processed and provided, as appropriate, to you.*

    For your convenience in tracking our production, please find attached the *F19-00105 Processed and Produced Page Counts Chart*, which shows the cumulative number of pages OPR has processed and produced in response to your FOIA request from September 2022 to present.

    OPR is continuing to process the remaining voluminous records responsive to your request and will release interim responses at various intervals until our response is complete.  We will provide all responses, including responsive records, electronically, unless you advise us that you prefer to receive them in hard copy.

---

\*    *For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.*

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal with the Office of Information Policy.

Sincerely,

*Carmen Smith Carter*

Carmen Smith Carter
Assistant Counsel for the Freedom of Information
and Privacy Acts

Attachment:  F19-00105 Processed and Produced Page Counts Chart

cc:  M. Jared Littman, Assistant U.S. Attorney

| | | | | | | |
|---|---|---|---|---|---|---|
| **Attachment** | | | | | | |
| **F19-00105 Processed and Produced Page Counts Chart** | | | | | | |
| **Interim/ Monthly Interim** | **Bates Nos.** | **No. of Pages Processed** | **Blank, Duplicate, Non-responsive Pages** | **Produced to Bain=B Consult=C Withheld in Full=WIF** | **No. of Pages Produced** | **Pages Produced and Processed** |
| SEPT 2022 | 1547-2046 | 500 | 0 | B=314*<br>C=186 (EOIR, DHS, FBI) | 500 | 500 |
| OCT 2022 | 2047-2445 | 501 | 61 | B=399<br>C=38 (EOIR)<br>WIF=3 | 440 | 501 |
| NOV 2022 | 2487-2825 | 527 | 188 | B=174<br>C=157 (EOIR)<br>C=3 (OIG)<br>WIF=5 | 339 | 527 |
| DEC 2022 | 2826-3024 | 500 | 301 | B=151<br>C=47 (EOIR)<br>WIF=1 | 199 | 500 |
| JAN 2023 | 3025-3166 | 500 | 358 | B=89<br>C=38 (EOIR)<br>WIF=15 | 142 | 500 |
| FEB 2023 | 3167-3179 | 500 | 487 | B=13 | 13 | 500 |
| MAR 2023 | -- | 500 | 74 | WIF=426 | 0 | 500 |
| APR 2023 | -- | 500 | 396 | WIF=104 | 0 | 500 |
| MAY 2023 | -- | 500 | 500 | 0 | 0 | 500 |
| JUNE 2023 | 3180-3367 | 1,842 | 1,654 | B=30<br>C=106 (EOIR, OIP, DHS)<br>WIF=52 | 188 | 1,842 |
| JULY 2023 | 3368-3664 | 504 | 205 | B=90<br>C=202 (EOIR, EEOC)<br>WIF=5 | 297 | 504 |
| AUG 2023 | -- | 648 | 648 | 0 | 0 | 648 |
| | | | | **Total Produced** | **3,664** | |
| | | | | **Total Produced and Processed** | | **9,228** |