**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| QUYNH VU BAIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-Civ-1751 (RDM) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRE-MOTION CONFERENCE**

On April 5, 2024, Defendants filed an opposition (ECF No. 105) to Plaintiff's motion for a pre-motion conference under Rule 10.a.i of the Court's July 6, 2021 Standing Order (ECF No. 5). Defendants argue that the Court lacks jurisdiction to consider Plaintiff's Constitutional challenges to the manner in which the DOJ Office of Professional Responsibility (OPR) conducted an investigation of Plaintiff, maintained and processed her records, and arrived at erroneous fact findings and legal conclusions that DOJ then used to justify terminating her 29-year employment. Plaintiff respectfully offers the following response.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702-706 to review Plaintiff's Constitutional claims arising from the OPR investigation and processing of records. As this Court recognized in *Dodson v. U.S. Capitol Police*, the decision to terminate the employment of a career public sector employee with civil service protection is judicially reviewable under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). *See* Civ. Action No. 18-2680 (RDM) (D.D.C. Sept. 30, 2022). In reviewing a termination decision,

the Court determines "whether the procedure used [by the agency] in terminating [the employee] comported with due process of law." *See id.* at *44. This Constitutional inquiry entails a determination of whether the procedure used in effectuating the termination satisfies the constitutional minimum, as determined by the unique circumstances of the case and an application of the three-prong test in *Mathews v. Elridge*, 424 U.S. 319, 355 (1976). *See Dodson* opinion, at *47.

*Dodson* presents an analogous situation. A career federal employee, Dodson was investigated by his agency's OPR after he voiced concerns about certain discriminatory practices at his agency. *Dodson* opinion at *16-18. Following the OPR investigation, the agency terminated his employment. *Id.* During the pre-termination process, Dodson "explicitly requested to consult the evidence against him," but the deciding official "denied the request and reached his decision [to terminate Dodson's employment] while relying on materials that Dodson never had the opportunity to review or rebut." *Dodson* opinion at *52 (citing *Ramirez v. U.S. DHS*, 975 F.3d 1349, 1350 (Fed. Cir. 2020)). Dodson sued his employing agency for wrongful termination, asserting that the OPR investigation was not conducted in accordance with procedural due process requirements, and thus the termination decision was Constitutionally suspect. *Id.* This Court concluded that Dodson had raised a colorable Constitutional claim of denial of access to the OPR evidence on which Dodson's termination was based. *See id.* at *47-48. The Court, however, ultimately denied both parties' cross-motions for summary judgment because neither party had (1) "established exactly what kind of evidence in the OPR investigation that the deciding official reviewed in affirming the disciplinary decisions;" (2) the practical value that reviewing that evidence would have added to Dodson's ability to contest the

disciplinary decision; and (3) whether a post-termination hearing should be available to Dodson. *Id.* at *51-53.

Here, Plaintiff has satisfied the first two prongs of the *Dodson* test, such that a post-termination *Loudermill* hearing in this Court is warranted.

Prong 1: Like Dodson, Plaintiff was denied an opportunity to review and refute the evidence that OPR claims supports its misconduct findings. The evidence, which OPR released to Plaintiff only after she filed suit in this Court, undercuts OPR's findings that Plaintiff displayed improper demeanor in conducting a court hearing and lacked candor in answering two of OPR's questions. Because such withholding of OPR evidence directly resulted in Plaintiff's termination, it was highly prejudicial. In *Dodson,* this Court held that the denial of record access which caused a federal employee to be terminated was a due process violation. *See Dodson* opinion, at *49-50 (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959) (describing the "immutable" principle that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue[.]"). The question then became the extent to which a post-termination hearing could redress that violation.

Prong 2: Now that OPR has processed 90 percent of its records and has released 30 percent of them to Plaintiff -- albeit with heavy redactions, Plaintiff is in a position to show that the weight of evidence does not support Defendants' decision to terminate her employment. Plaintiff can also demonstrate that certain evidence OPR compiled but withheld from Plaintiff was relevant, probative, and outcome-determinative. Had OPR released such evidence to Plaintiff before her termination, she would have used the favorable evidence to refute OPR's

3

misconduct findings and to oppose the termination decision. Because under *Dodson* the concealment of favorable or outcome-determinative evidence is a due process violation, whether that violation resulted in an erroneous deprivation of Plaintiff's Constitutionally protected interest in continued federal employment is an issue ripe for judicial review.

Plaintiff submits that a post-termination hearing would give her a real opportunity to demonstrate that her termination was wrongful, and that she should not be referred to her state bars for further disciplinary proceedings under DOJ's very low threshold standard for bar referral (*i.e.*, the "implication" standard).[1] Plaintiff realizes that the Court will review the records concerning her employment discrimination complaint to evaluate her due process and equal protection claims. She submits, however, that the delays in filing a redacted version of Plaintiff's Exhibit 4 on the public docket have been unavoidable. The redactions of records in Exhibit 4 are inextricably linked to the government's processing and release of records to Plaintiff. Approximately 60 percent of the records in Exhibit 4 are OPR or EOIR or DOJ records, and the bulk of those records contains privacy-protected and other exempt information. Some of those records also contain information that is inaccurate, false, or inauthentic. All of those records require review and redactions that only government counsel could undertake. Current defense

---

[1] Defendants incorrectly assert that the Court lacks jurisdiction to resolve the Constitutional issues raised in the motion for pre-motion conference because Plaintiff did not raise them previously. Plaintiff did timely raise her concerns about Defendants' non-compliance with the FOIA and Privacy Act in her Amended Complaint and in subsequent pleadings filed with this Court. *See* ECF Nos. 16, 69-2, 87-1. In the same pleadings, Plaintiff also raised due process and equal protection concerns regarding the manner in which she was referred to OPR for an investigation, OPR's improper investigative techniques, OPR's highly irregular record maintenance and processing practices, the denial of OPR record access that prevented Plaintiff from challenging the legal sufficiency of the termination decision, and Defendants' improper weighing of *Douglas* factors in a disparate manner as compared to similarly situated individuals who were not in Plaintiff's protected class. All of these Constitutional deficiencies directly contributed to her wrongful termination. Under *Dodson*, they are ripe for judicial review. As Defendants' Response implicitly acknowledges, the MSPB does not have the authority to consider or redress these Constitutional violations.

counsel has agreed to review the records and the proposed redactions by the court-imposed delay. ECF No. 106. Plaintiff thus is hopeful that this matter can be resolved without further delay.

Finally, Plaintiff accepts shared responsibility for the delays in filing Exhibit 4 on the public docket. She means no disrespect to the Court. She has been working diligently and in good faith to resolve the catch-22 described above. She understands that she will face sanctions if she fails to meet the Court's April 29, 2024 firm deadline. Nevertheless, because only the Court has jurisdiction to consider the Constitutional issues described in her motion for pre-motion conference, Plaintiff respectfully requests that the Court grant her request for a conference to discuss how these issues may be resolved, going forward.

Dated:  April 10, 2024                                   Respectfully submitted,

Quynh Vu Bain
*Pro Se* Plaintiff