UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUYNH BAIN,

            Plaintiff,

    v.

OFFICE OF THE ATTORNEY GENERAL,
U.S. DEPARTMENT OF JUSTICE, et al.,

          Defendants.

Civil Action No. 21-01751 (RDM)

## JOINT STATUS REPORT

Plaintiff, pro se, and Defendants, by and through the undersigned counsel, respectfully submit this joint status report in response to the Court's April 2, 2025 Minute Order.  On April 2, 2025, the Court lifted the stay and ordered "the parties submit a joint status report indicating their respective positions on how the case should proceed going forward."  Min. Order.

### PLAINTIFF'S STATEMENT

Plaintiff respectfully makes the following requests and suggestions.

First, Plaintiff requests to proceed with her record access claim, as pleaded in her first amended complaint (ECF No. 16, at 3-4, 30-40).  Plaintiff intends to seek a court order enjoining Defendants from continuing to withhold the records that she requested through a FOIA and Privacy Act request and during discovery in the MSPB proceeding.  The record access claim is discussed in Section II below.

Second, Plaintiff respectfully requests leave to add a new record maintenance claim and a new record amendment/expungement claim to the first amended complaint (ECF No. 16).  These new claims are discussed in Section III below.

The Court's jurisdiction is discussed in Section I below.  Plaintiff respectfully requests an opportunity to amend the first amended complaint, to reflect the Court's decision of December 23, 2022 which dismissed some of the claims asserted therein and, if the Court permits, to add the new Privacy Act claims.  Plaintiff, however, does not anticipate the need to conduct further discovery.

## I.    THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION.

On October 19, 2020, Plaintiff timely appealed the Agency's September 17, 2020 removal decision to the Merit Systems Protection Board ("MSPB").  *See* ECF No. 63-4.  Between November 2020 and October 2022, the MSPB dismissed the appeal for lack of jurisdiction, without prejudice to its reinstatement within 180 days.  *See* ECF Nos. 63-4, 63-5, 63-6, 35-2, 37, 72-2.  The dismissals were based on the United States Supreme Court's reasoning in *Lucia v. U.S. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018).

In response to the dismissals, Plaintiff filed this civil action seeking judicial review of the removal action and all of the adverse personnel actions that preceded it.  The original complaint was filed on June 22, 2021.  *See* ECF No. 1.  The first amended complaint was filed on September 22, 2021.  *See* ECF No. 16.  Both complaints invoked the Court's jurisdiction under 28 U.S.C. § 1331 and other authorizing statutes.  *See* ECF No. 1 at 3; ECF No. 16 at 3, 9.  In the absence of MSPB jurisdiction, both complaints asserted *Perry v. MSPB*, 137 S. Ct. 1975, 1979 (2017), and *Kloeckner v. Solis*, 568 U.S. 41, 44-45 (2012), as providing the legal basis for this court's exercise of jurisdiction.  *See* ECF No. 1 at 9; ECF No. 16 at 9.  The first amended complaint has three counts.  Count I pertains to Plaintiff's record access and record amendment claims.  Count II pertains to her claims of employment discrimination and retaliation for engaging in EEO activity.  Count III pertains to her claim of whistleblower retaliation.

Previously, both parties acceded to the Court's exercise of jurisdiction.  *See* ECF Nos. 80 & 86.  By Minute Order dated July 6, 2023, the Court ruled that it has jurisdiction over the claims that it had not dismissed as of that date.  Earlier, on December 23, 2022, the Court ruled that it has jurisdiction to consider the FOIA and Privacy Act record access claim and the claim relating to EOIR's unauthorized release of Plaintiff's privacy protected information to the American Immigration Lawyers Association (AILA) in January 2017.  *See* ECF No. 56 at 59-60.

In addition, the Court ruled that it has jurisdiction to review the Removal Decision, the OPR Report of Investigation, and the Board of Immigration Appeals' January 2, 2018 decision in case 050/051 "as a piece."  *See* ECF No. 56 at 57, 59-60.  The Court, however, limited its consideration of Plaintiff's affirmative defenses to those claims that had been timely exhausted and plausibly stated.  Those claims include:

- Four EOIR discrete adverse personnel actions (Count II):

  o  August 2015 performance rating;

  o  July 2016 counseling letter;

  o  September 2016 interim progress review;

  o  August 2017 performance rating;

- EOIR's February 26, 2020 proposal to terminate Plaintiff's employment one day after the dismissal of her EEOC action, in retaliation for her EEO activity (Count II);

- The termination of Plaintiff's employment in retaliation for her whistleblower activity, namely her disclosure of EOIR's Constitutionally defective immigration judge complaint resolution program to the Office of the Deputy Attorney General (Count III).

ECF No. 56 at 59-60.

In February 2024, Plaintiff moved for a stay of the district court proceeding until such time as the Agency has completed its response to her August 2019 FOIA and Privacy Act request. *See* ECF No. 98. After this Court granted Plaintiff's stay motion, she returned to the MSPB in August 2024 to conduct discovery and to try to negotiate a satisfactory resolution of this case.

After discovery in the MSPB parallel proceeding closed in December 2024, the MSPB administrative judge scheduled a hearing to begin on March 19, 2025. Six days before the hearing, the Agency filed a motion seeking clarification of the MSPB's authority to hear constitutional claims in general and Plaintiff's substantive and procedural due process claims in particular. The Agency's motion was based on the February 28, 2025 decision of the United States Court of Appeals for the Federal Circuit in *Clewis-Davis v. Veterans Affairs Administration*, No. 2025-1237 (Fed. Cir. 2025). That decision suggested that the district court is the proper forum for resolving mixed case appeals such as this case. The MSPB administrative judge determined *sua sponte* that she had jurisdiction over Plaintiff's non-constitutional claims and that she would defer to the MSPB and the Federal Circuit to determine whether she has jurisdiction to consider Plaintiff's constitutional due process claim, which included her FOIA/Privacy Act record access claim.

In light of the uncertainty surrounding the MSPB's jurisdiction, Plaintiff requested to postpone the March 19, 2025 hearing or, in the alternative, to stay the hearing until the jurisdictional jurisdiction could be resolved. The MSPB administrative judge denied that motion. Plaintiff next moved to dismiss the appeal for lack of jurisdiction without prejudice to its reinstatement, signaling her intention to return to this Court to complete her appeal. The MSPB administrative judge denied that motion as well. However, the administrative judge gave Plaintiff the option of voluntarily dismissing the appeal with prejudice, with the understanding that Plaintiff would not be able to continue with the mixed case appeal before the MSPB. Plaintiff exercised

that option and moved for voluntary dismissal of the MSPB appeal.  On March 18, 2025, the MSPB administrative judge granted the voluntary dismissal motion and cancelled the hearing.

Since the voluntary dismissal of Plaintiff's MSPB appeal, the MSPB has lost its quorum of Board Members.  The lack of quorum means that even if the hearing had gone forward as scheduled, the MSPB would now lack the authority to administratively review the administrative judge's decision and, once again, would have to dismiss Plaintiff's mixed case appeal for lack of jurisdiction.  Because this Court continues to have jurisdiction, Plaintiff respectfully requests to proceed to the conclusion of this proceeding.

## II.    THE RECORD ACCESS CLAIM IS RIPE FOR ADJUDICATION.

Plaintiff continues to seek the production of OPR records that she requested six years ago through a FOIA and Privacy Act request filed in August 2019.  *See* ECF No. 63-2.  The Agency's denial of record access over the past six years has caused irreparable harm.  Without the records of the investigation, Plaintiff was unable to refute OPR's fact findings and to challenge the legality of OPR's conclusions that she had engaged in professional misconduct and lacked candor in her dealings with OPR.  Moreover, because the OPR Report of Investigation provided the factual and legal bases for the removal action, OPR's denial of record access contributed to Plaintiff's wrongful termination.   The wrongful termination of her 29-year employment has wrought additional adverse consequences, including irreparable damage to her professional reputation, extended periods of unemployment, devasting economic losses, and severe non-economic injuries.

Moreover, following the voluntary dismissal of her MSPB appeal, the Agency on March 26, 2025 referred Plaintiff to her state bars for further disciplinary proceedings.  The bar referrals were improper and premature.  They threatened to inflict further injury that Plaintiff is hoping to avoid by proceeding to the conclusion of this district court proceeding.  The record access claim

plays a pivotal role in this effort.  As of today, Plaintiff still has not received all of the records that

OPR was ordered to produce by this Court and by the MSPB administrative judge.  Without those

records, Plaintiff will be unable to defend herself against any future disciplinary bar proceedings.

Thus, the continuing denial of record access is a procedural due process violation that threatens

her Constitutionally protected property and liberty interests in continuing the practice of law.  For

this reason, Plaintiff seeks to enjoin the Agency from continuing to withhold the records that this

Court and the MSPB have ordered the Agency to produce.  *See* Attachment.

The records that Plaintiff seeks are in the exclusive possession, control, and custody of the

Agency.  Previously, by Minute Order dated July 25, 2022, this court directed OPR to begin

processing and releasing the 14,500 pages of records that it had identified as being responsive to

Plaintiff's FOIA/Privacy Act request.  *See* ECF No. 49.  In August 2024, OPR released its final

tranche of records.  At that point, OPR had released approximately 3,000 to 4,000 pages of records,

but many of those records were heavily redacted.  *See* Attachment.  Plaintiff identified the OPR

records that she had not received in two letters addressed to AUSA Carilli.  *Id.* (the June 30 and

July 5, 2024 "Carilli letters").  After the MSPB proceeding was reinstated in August 2024, Plaintiff

referred the Carilli letters to Agency counsel and requested the immediate production of those

records.  *See id.*

On October 21, 2024, Plaintiff moved to compel the production of records that she

requested in the MSPB proceeding.  The Agency opposed the motion.  On November 27, 2024,

the MSPB administrative judge granted in part and denied in part Plaintiff's motion to compel.  As

of today, not all of the records that the Agency was ordered to produce have been produced.  *See*

Attachment.

In addition, in the MSPB proceeding Plaintiff took three depositions of Agency witnesses and requested the production of records that the three deponents identified during their depositions. As of this date, the Agency has failed to produce those records, too. *See* Attachment.

Because the record access claim has been exhausted, that claim is ripe for judicial review. In this proceeding, Plaintiff respectfully requests that the Court enter an order directing the Agency to produce the records that Plaintiff requested in the MSPB proceeding without further delay. Even if Plaintiff does not prevail in this proceeding, she will need those records to defend herself in future state bar disciplinary proceedings.

### III.    THE NEW RECORD MAINTENANCE CLAIM AND RECORD AMENDMENT/EXPUNGEMENT CLAIMS ARE RIPE FOR ADJUDICATION.

Plaintiff respectfully requests leave to amend the first amended complaint to assert two new claims under the Privacy Act: a record maintenance claim and a record amendment/ expungement claim. Through these new claims Plaintiff intends to show that the Agency's failure to properly maintain her personnel records directly resulted in OPR's erroneous fact findings and legal conclusions that the Agency relied on in proposing and then deciding to terminate Plaintiff's employment. *See* ECF No. 53-2 at 56-134 (Sealed OPR Report of Investigation); ECF No. 53-2 at 135-147. Plaintiff respectfully requests that the Court order the Agency to correct the factual and legal errors in the Removal Decision (ECF No. 53-2 at 194-222 (Sealed)), the OPR Report of Investigation (ECF No. 53-2 at 56-134 (Sealed)), and the BIA's January 2, 2018 decision in case 050/051 (ECF No. 53-31 at EOIR 226-229).

Previously, the Court rejected the record amendment/expungement claim that Plaintiff asserted in the first amended complaint for failure to exhaust administrative remedies. ECF No. 56 at 25-26. Having attempted to exhaust that claim in the MSPB proceeding, Plaintiff respectfully

requests leave to amend the first amended complaint to assert a new record maintenance and a new record amendment/expungement claim.

### A.    The Record Maintenance Claim

The record maintenance claim asserts that the Agency failed to properly maintain a complete and accurate set of records about Plaintiff, in violation 5 U.S.C. § 552a(e).  This failure has caused Plaintiff to suffer severe economic and non-economic harm.

Plaintiff intends to show that the failure to properly maintain her personnel records caused or contributed to her wrongful termination.

In January 2017, EOIR released Plaintiff's personnel records to the American Immigration Lawyers Association (AILA) without her knowledge or consent.  EOIR refused to retract the records.  Two months later, two immigration bar attorneys filed complaints of misconduct against Plaintiff in March 2017.  One of the complaints referenced her counseling record.  This misuse of Plaintiff's personnel records violated her right to privacy under 5 U.S.C. § 552a(e)(8), (10).  The Court previously determined that it has jurisdiction to hear this claim, *see* ECF No. 56 at 57, 60.

In late 2017 or early 2018, EOIR released Plaintiff's personnel records to OPR investigative counsel without Plaintiff's knowledge or consent.  The personnel records contained numerous errors that EOIR managers refused to acknowledge and correct.  OPR counsel used the records to support OPR's findings and conclusions.  DOJ used OPR's erroneous findings and conclusions to terminate Plaintiff's employment, in violation of 5 U.S.C. § 552a(e)(5) & (6).

In January 2018, the Board of Immigration Appeals incorrectly determined that Plaintiff had mistreated attorney Blessinger during a court hearing in February 2017.  The Board's decision ignored counterfactual evidence that was in the hearing record.  The Board made new fact findings on appeal that contradicted OPR's fact findings in the same case.  Plaintiff moved for

reconsideration of the Board's decision.  ECF No. 53-31 at 267-276.  The Board denied that motion.  The Board's erroneous January 2, 2018 decision was dispatched to the news media.  Its publication caused Plaintiff to suffer humiliation and emotional distress.  The Board's failure to ensure the accuracy of records that it compiled and maintained, and to give Plaintiff an opportunity to correct or amend such records, violated her right to privacy under 5 U.S.C. § 552a(e)(5) & (6).  The Court previously determined that it has jurisdiction to hear this claim, *see* ECF No. 56 at 57, 60.

In April 2019, before the OPR investigation was completed, OPR allowed EOIR to use investigative records that were covered by a confidentiality agreement between Plaintiff and OPR, in moving to dismiss Plaintiff's EEOC action.  Plaintiff was unable to refute the derogatory information that EOIR provided to the EEOC, because OPR denied Plaintiff's access to the records that it used in preparing the Report of Investigation.  On February 26, 2020, the EEOC dismissed the EEOC action.  The very next day, EOIR proposed to terminate Plaintiff's employment in EOIR, DOJ, and the federal service.  These adverse personnel actions violated Plaintiff's right to privacy under 5 U.S.C. §§ 552a(e)(5), (6), (10).

In October 2022, another federal agency revoked a job offer that it had offered to Plaintiff in May 2022, after the federal agency checked Plaintiff's employment history and personnel records.  The offer was revoked after Plaintiff refused to sign a statement acknowledging that she had engaged in "misconduct and negligence" while employed in EOIR.  *See* ECF No. 72-3.  EOIR's failure to ensure the accuracy of records that it released to another federal agency violated Plaintiff's right to privacy under 5 U.S.C. §§ 552a(e)(5), (6), and (10).

In addition, Plaintiff intends to rely on new evidence that she obtained during the MSPB proceeding to show that OPR conducted a seriously flawed investigation that bore no semblance of procedural fairness, in violation of 5 U.S.C. § 552a(e)(5).  Specifically, OPR

- failed to collect evidence directly from Plaintiff (5 U.S.C. § 552a(e)(2));

- failed to properly interview witnesses (5 U.S.C. § 552a(e)(5));

- failed to correctly transcribe witness interview testimonies (5 U.S.C. § 552a(e)(5));

- used records that appeared to have been altered to support its false and erroneous findings of misconduct and lack of candor (5 U.S.C. § 552a(e)(5)).

In addition, OPR unreasonably refused to release the records of the investigation to Plaintiff, thus depriving her of an opportunity to contest OPR's erroneous fact findings and legal conclusions before and after her employment was terminated.  This failure violated her right to procedural due process under 5 U.S.C. §§ 552a(d)(1)-(4), (e)(1)-(2).

The above-described procedural errors cast serious doubt on the accuracy and reliability of OPR's findings and conclusions as stated in the OPR Report.  Because the OPR Report provided the factual and legal basis of EOIR's proposal to terminate Plaintiff's employment and DOJ's Removal Decision, the errors committed by OPR directly caused Plaintiff's wrongful termination. Furthermore, because the Agency has ill-advisedly referred Plaintiff to her state bars, OPR's erroneous findings and conclusions will continue to jeopardize her law licenses.

## B.    The Record Amendment/Expungement Claim

The law of this circuit recognizes that "federal courts are empowered to order the expungement of Government records where necessary to vindicate rights secured by the Constitution or statute." *Chastain v. Kelley*, 510 F.2d 1232, 1235 (D.C. Cir. 1975).  This power authorizes the federal courts to "fashion appropriate remedies to protect important legal rights."

*Id.* Expungement of records is one such "equitable remedy." *See id.* at 1236. When a legal remedy to redress the Privacy Act violations is unavailable, civil servants and job applicants could still "seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights." *Spagnola v. Mathis,* 859 F.2d 223, 229–230 (D.C. Cir. 1988) (holding that the availability of a comprehensive remedial scheme in the Civil Service Reform Act ("CRSA") does not preclude constitutional claims that are based on violation of an established legal right, whether that right arises under a statute or the Constitution).

Expungement of records is an available equitable remedy when a plaintiff is "adversely affected" by information contained in them. *Chastain*, 510 F.2d at 1236 (noting the goal of record expungement is to protect the plaintiff from "any adverse consequences that might arise from the information . . . remaining in his records."). A plaintiff is adversely affected when the record sought to be amended or expunged (1) is inaccurate, (2) was acquired by fatally flawed procedures, or (3) is prejudicial without serving any proper governmental purpose. *Id.*

The "adversely affected" determination is made by the district court after a hearing on the merits. *Chastain*, 510 F.2d at 1236. A court does not fashion equitable remedies without first finding that a violation of an established legal right has occurred or is imminent, and that at least one of the above three enumerated conditions is present. *Id.* This determination would involve careful weighing of the litigants' respective interests and paying "close attention to the peculiar facts of each case." *Id. See also Sealed Appellant,* 130 F.3d 695, 700 (5th Cir. 1997) (The fashioning of a remedy should be based on something else. That something [else] is injury to a legally protected interest.").

In this case, Plaintiff intends to show that the Agency's failure to properly maintain her personnel records and refusal to amend or expunge inaccuracies in her personnel records violated

her right to substantive and procedural due process under the Fifth Amendment to the United States Constitution.  That right includes a substantive due process right to continued federal employment and a substantive due process right to continue the practice of law as her chosen profession. *Schroer v. Billington*, 525 F. Supp. 2d 58 (D.D.C. 2007); *McCabe v. Barr*, 490 F. Supp. 3d 198, 22 (D.D.C. 2020).

Plaintiff attempted to exhaust the record amendment/expungement claim during the MSPB proceeding, but Agency counsel refused the request to sanitize her employment records.  *See* Attachment.  *See also* 5 U.S.C. § 552a(d)(1)-(2), (e)(3).  Having exhausted this Privacy Act claim, Plaintiff is ready to proceed to an adjudication of the claim on the merits.  Accordingly, Plaintiff respectfully requests that the Court permit her to amend the first amended complaint to assert the new Privacy Act claims.

The equitable relief that Plaintiff seeks is an amendment and/or expungement of her personnel records which are maintained in the various Agency systems of records.  Such relief is necessary to vindicate her Fifth Amendment-protected property interest in continued federal employment and her liberty interest in continuing the practice of law.  An expungement of her records is necessary because the Agency has referred Plaintiff to her state bars for further disciplinary proceedings.

Accordingly, Plaintiff respectfully requests to amend the first amended complaint to assert the new Privacy Act claims.  After Defendants have answered the amended complaint, Plaintiff would request leave to file a summary judgment motion, followed by a *Chastain*-type hearing.  In that hearing, both parties would have the opportunity to present evidence and arguments in support of, or in opposition to, Plaintiff's request for record amendment/expungement.

Should the Court deny the request to amend the first amended complaint, Plaintiff respectfully requests to proceed with those remaining claims that the Court did not dismiss through its December 23, 2022 Decision and Order (ECF No. 56), without need for a further amendment of the first amended complaint, to which the Agency has already filed a partial answer. Plaintiff would challenge the validity and constitutionality of the Removal Decision, the OPR Report of Investigation, and the Board's January 2, 2018 decision in case 050/051, employing the rubric set forth in Chapter 75 of Title 5 of the United States Code. That Chapter provides various procedural protections for federal employees facing serious adverse actions, including removal and suspensions for more than 14 days. An agency may only take such a serious adverse action against an employee "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513. To meet this burden, the Agency must show (1) by a preponderance of the evidence that the charged conduct occurred; (2) a nexus between that conduct and the efficiency of the service; and (3) the penalty imposed by the agency is reasonable. In addition, because Plaintiff has alleged that her termination violated the Civil Service Reform Act, federal anti-discrimination statutes, and the Whistleblower Protection Act, the Agency must show that the removal action did not violate those statutes. Plaintiff intends to request leave to file a motion for summary judgment seeking declaratory, injunctive, and monetary relief.

## DEFENDANT'S STATEMENT

Defendant is prepared to move forward with the litigation.[1]

First, Defendant would oppose to an amendment of the operative complaint, ECF No. 16. As such, the Court should require Plaintiff to move for leave to amend her complaint pursuant to

---

[1] Defendant does not concede any of Plaintiff's factual assertions or arguments made above.

Federal Rule of Civil Procedure 15(a)(2). After the Court resolves the motion for leave, Defendant reserves the right to file a motion to dismiss or to answer.

Second, only after Defendant answers, the Court should require the parties to proceed consistent with Local Civil Rule 16.3. During the discovery conference, the parties can resolve what discovery is appropriate before proceeding to any summary judgment briefing.

Dated: May 1, 2025

*/s/ Quynh Vu Bain*
QUYNH VU BAIN
213 Third St. S.E.
Washington, DC 20003

*Pro Se*

Respectfully submitted,

EDWARD R. MARTIN, JR.
D.C. Bar #481866
United States Attorney

By:    /s/ Joseph F. Carilli, Jr.
JOSEPH F. CARILLI, JR.
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2525

*Counsel for the United States of America*