UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUYNH VU BAIN,

        Plaintiff,

    v.

OFFICE OF THE ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE, et al.,

        Defendants.

Civil Action No. 21-1751 (RDM)

## JOINT MEET AND CONFER REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Civil Rule 16.3 of

the Rules of the U.S. District Court for the District of Columbia, and the Court's July 14, 2025,

Order (ECF No. 119), Plaintiff Quynh Vu Bain ("Bain"), and Defendants, various components of

the Department of Justice (collectively, the "Department"),[1] report on their July 17, 2025,

conferral.

## Statement of the Case

### Plaintiff

Plaintiff seeks the Court's resolution of this long-standing employment dispute which

culminated in the termination of her 29-year employment in the Department of Justice on

---

[1]    The operative Amended Complaint names as defendants five Department components: the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of Professional Responsibility, and the Executive Office for Immigration Review, and the Office of Information Policy. Am. Compl. (ECF No. 16) at 1. For purposes of Bain's Title VII claims, it is the Department's position that "the only proper defendant in suits brought under [Title VII] is the head of the department or agency being sued," here the Attorney General of the United States. *Lawson v. Sessions*, 271 F. Supp. 3d 119, 124 n.1 (D.D.C. 2017) (citation modified) (quoting *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011) and citing 42 U.S.C. § 2000e–16(c)). Therefore, the Attorney General is the only proper defendant and should be substituted as defendant for all employment discrimination claims.

September 17, 2020.

Prior to her removal, Plaintiff had worked for the U.S. Department of Justice for twenty-nine years as a career civil service employee. In her last twelve years at the Justice Department, Plaintiff served as an immigration judge in the Executive Office for Immigration Review (EOIR). Assigned to two Northern Virginia Immigration Courts, Plaintiff conducted thousands of immigration court removal proceedings by tele-videoconference and in person in multiple jurisdictions across the United States and along the Southwest border. As Defendants have conceded, Plaintiff's work performance was rated satisfactory throughout her tenure in EOIR. *See* Answer, ECF No. at 8, para. 45.

A.       The Removal Action

On February 27, 2020, EOIR proposed to terminate Plaintiff's employment in EOIR, DOJ, and the federal service. The proposed removal was based on a Report of Investigation that the Justice Department's Office of Professional Responsibility (OPR) had issued in September 2019, after it spent two years investigating two complaints of judicial and professional misconduct that two immigration bar attorneys had filed against Plaintiff, with her then-supervisor, in March 2017. ECF No. 53-2 at 55-134 (EOIR 1-81) (Sealed).

The OPR Report made three findings that provided the factual and legal bases for the proposed termination of Plaintiff's employment.

First, OPR concluded that Plaintiff had engaged in reckless misconduct when, in conducting a court hearing in February 2017, she (allegedly) displayed improper demeanor toward one of the complaining attorneys. Although eyewitness testimonies were conflicted, OPR found that Plaintiff's facial expressions, gestures, and comments during the hearing could have conveyed the appearance of bias, and that an appearance of bias was enough to find that her conduct was

prejudicial to the administration of justice and thus violated Rule 8.4 of the Model Rules of Professional Responsibility. Plaintiff will show that this conclusion is erroneous, both factually and legally. Its logic cannot be reconciled with the presumptions of impartiality and regularity that attach to the work of administrative law judges. The finding also conflicts with a separate OPR finding that Plaintiff did not manifest improper bias toward the complaining attorneys. Moreover, the finding contradicts another finding by OPR that Plaintiff did not mistreat the attorneys in the manner that they claimed. In fact, OPR found that Plaintiff's treatment of the attorneys was appropriate to the circumstances. *Id.* at 132 n. 453, 133 n. 466 (EOIR 78 n. 453; EOIR 79 n. 466) (Sealed).

Second, OPR found that Plaintiff's recusal orders made critical statements about the two complaining attorneys that she knew or should have known were false. OPR concluded that these statements amounted to reckless misconduct because they had the potential to embarrass or cause reputational harm. This conclusion defies logic. It contradicts OPR's other findings that Plaintiff did not knowingly make the allegedly false statements, and that her purpose in making the statements was to impeach the attorneys' credibility and to discredit their claims, not to embarrass or impugn their reputations. Moreover, OPR erroneously concluded that Plaintiff committed intentional misconduct when she hesitated to acknowledge the alleged falsity of her statements. Plaintiff did acknowledge the alleged errors and expressed sincere regret for them, long before OPR interviewed her and issued its Report. Thus, OPR had no basis to conclude that Plaintiff "doubled down" on the mistakes and refused to confess error. *Id.* at 119 n. 401 (EOIR 66 n. 401) (Sealed).

In her defense, Plaintiff will show that OPR mischaracterized Plaintiff's conduct in order to find misconduct. Her recusal orders properly applied EOIR's procedure for deciding recusal

motions filed in immigration court.  Known as OPPM 05:02, that procedure is modeled after the procedure for recusal of federal judicial officers under 5 U.S.C. § 455(a) & (b).  In addition, Plaintiff will show that her recusal orders comported with the United States Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540 (1994), which is also incorporated into OPPM 05:02.  Finally, Plaintiff will show that if anyone has suffered reputational harm as a result of the specious, false claims of misconduct that had been leveled at her, it is Plaintiff.

Third, OPR concluded that Plaintiff lacked candor when she claimed to have exercised due diligence in verifying the information in her recusal orders.  The overall tenor of the OPR Report is that Plaintiff provided scant evidence to back up her "due diligence" assertion, so she must be hiding something.  *Id.*  Quite the opposite, Plaintiff took the OPR investigation very seriously.  She knew that it had the potential to kill her legal career.  She promptly responded to each and every OPR inquiry, providing OPR with all the primary evidence (*i.e.*, court hearing records) to which she had access.  In response to OPR's first letter of inquiry, she submitted a 97-page Written Response and a 980-page compilation of exhibits.  Regrettably, much of that evidence was left on the cutting room floor.  In preparing the OPR Report, OPR relied heavily on the complaining attorneys' testimonies to make its case against Plaintiff, while refusing to give Plaintiff access to the attorneys' interview records so she could defend herself against their spurious attacks on her demeanor, character, and conduct.

Plaintiff intends to show that OPR perpetuated the ill-predicated investigation to retaliate against her for calling attention to the rampant abuse of EOIR's Immigration Judge Complaint Resolution Program.  The CRP, as it was known, was a shadow process that allowed supervisory judges to overturn or vacate line judges' adverse decisions, for the purpose of resolving misconduct complaints filed against line judges.  The CRP essentially allowed dissatisfied immigration court

litigants to bypass the regulatory appellate review process, to secure the outcomes they desired. Plaintiff will show that her supervisor reassigned the complaining attorneys' cases from Plaintiff's docket to other judges' dockets, to appease the attorneys. In doing so, the supervisor set aside seven Board of Immigration Appeals decisions that affirmed Plaintiff's recusal orders. Plaintiff will show that such gross abuse of process went unchecked until she called attention to it through her November 2017 Written Response to OPR's inquiry letter. Regrettably, the Agency's response was to initiate an OPR investigation that ultimately ended her DOJ legal career.

Very recently produced OPR records further confirm what Plaintiff had suspected all along – that the two-year OPR investigation was a sham. The newly acquired evidence provides an additional ground for overturning OPR's misconduct findings and for expunging the OPR Report. Using the newly acquired evidence, Plaintiff intends to show that OPR investigators had good reasons to know that the attorneys' misconduct complaints contained falsified or fabricated claims. Giving the false claims a patina of legitimacy, OPR investigators employed techniques that failed to ensure fair treatment of Plaintiff as the investigated subject. They waited a whole year before interviewing key witnesses. Some of the witnesses professed memory failure or lack of preparation for the interviews, so OPR counsel asked leading and sometimes misleading questions to rehabilitate their failed recollections. Furthermore, many of the witnesses were interviewed by telephone and were not placed under oath. This gave them license to slander Plaintiff. They slammed her for being too strict in her application of the law, for excluding hearsay, for denying asylum, for refusing to postpone their court hearings, for expecting them to be prepared, and for admonishing them when they were not. OPR counsel then used the attorneys' opinions to portray Plaintiff as "hostile," "bullying," and "disparaging." *See* ECF No. 53-2 at 129-132 (EOIR 75-79) (Sealed).

The smear campaign that began with the OPR investigation is put on full display in the OPR Report, which spans 80 pages and contains 475 footnotes. The Report opens with a description of Plaintiff as "idiosyncratic." *Id.* at 60 n. 12 (EOIR 7 note 12).  It misrepresents her personnel records as "disciplinary records."[2] *See id.* (EOIR 7, notes 12, 13, 14).  Those records set the tone for OPR's portrayal of Plaintiff as a problem employee who was ill-suited to the job for which she was hired.  An unsuspecting reader, perhaps even a sophisticated legal mind, might be swayed into thinking that Plaintiff's conduct was so deficient and substandard that the only option available to management was to remove her from the bench.  Regrettably, such a reader is likely to miss the "absolution" that is buried deep in the bowels of the Report, in the final pages and footnotes, where it does not see the light of day.  In those final pages, OPR states its penultimate conclusions:  That Plaintiff did not knowingly violate any court rules in conducting court hearings.  *Id.* at 132 (EOIR 75).  That Plaintiff did not knowingly violate any rules of professional and ethical conduct that governed the work of immigration judges.  *Id.* at 136 (EOIR 79).

Because OPR's self-contradictory findings and conclusions are unsupported by the weight of evidence, they must be overturned.  If they are allowed to stand, they will continue to tarnish Plaintiff's exemplary record of employment in DOJ, impede her efforts to find new employment, and jeopardize her law licenses.  Defendants have already referred Plaintiff to her state bars for further disciplinary proceedings, and one of her state bars has opened an inquiry.  Though Plaintiff had hoped to settle this matter long before it got to this point, she has been unable to do so.  Plaintiff

---

[2] Previously, the Court concluded that the July 2016 counseling letter, as well as the August 2015 and August 2017 performance ratings, present plausible discrete claims of discrimination.  *See* ECF No. 56 at 59-60.  Plaintiff continues to challenge those and similar discriminatory personnel practices.

now appeals to this Court to remedy the manifest injustice that has already unfolded. She respectfully requests that the Court order the Agency to amend, expunge, and seal the Removal Decision, the OPR Report, and related records, so that those records could no longer haunt her.[3]

In addition, Plaintiff seeks legal redress for the devastating economic and non-economic injuries that she has suffered as a result of the wrongful termination. On September 17, 2020, the former United States Attorney General issued a Removal Decision that ended her 29-year legal career in DOJ. *See* ECF No. 53-2 at 194-222 (Sealed). Prepared by the deciding and recommending official, former Associate Deputy Attorney General G. Bradley Weinsheimer, the Removal Decision relied principally on OPR's (erroneous) fact findings for evidentiary support. *Id.* at 194. The Removal Decision sustained the two charges of "conduct unbecoming an immigration judge" and lack of candor that EOIR had proposed. It then imposed the penalty of removal. *Id.* The Removal Decision's factual and legal analyses were seriously flawed, and the penalty of removal was so grossly disproportionate to the alleged misconduct as to constitute a separate discriminatory and retaliatory prohibited personnel practice.

First, the Removal Decision erred in concluding that the denial of record access was not prejudicial to Plaintiff. *See* ECF No. 53-2 at 195 n. 1 (Sealed). Plaintiff intends to show that the denial of record access was indeed the biggest obstacle to her defending against the removal action. OPR deliberately withheld records that favored Plaintiff. OPR even withheld records that it had

---

[3] *See* 5 U.S.C. § 552a(d)(1)-(3), (g)(1) (authorizing district court *de novo* review of record amendment requests); 5 U.S.C. § 7701(c)(2) (providing that the agency's decision may not be sustained . . . if the employee "(A) shows harmful error in the application of the agency's procedures in arriving at such decision; (B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or (C) shows that the decision was not in accordance with law."). *See also Chastain v. Kelley*, 510 F. 2d 1232 (D.C. Cir. 1985) (authorizing district court to exercise jurisdiction in equity to expunge personnel and similar records).

reason to know had been falsified or fabricated, so that it could claim the Report of Investigation was amply supported by preponderant evidence. The deciding official, Mr. Weinsheimer, did have access to the withheld records, but he chose not to consider them. In preparing the Removal Decision, he only considered the 1801-page EOIR Removal Record that accompanied the EOIR Notice of Proposed Removal. The EOIR Removal Record did not contain all the court hearing records and OPR interview records that are cited, discussed, or referenced in the OPR Report, nor did it contain the falsified or fabricated records that Plaintiff recently discovered. Had Mr. Weinsheimer considered all of the evidence that was available to him, including evidence that fell outside of the EOIR Removal Record, he would have had to conclude that the weight of evidence did not support the charges of removal. Thus, contrary to his assertion, the withholding of critical evidence from Plaintiff was highly prejudicial. It deprived her of a fair opportunity to contest the factual and legal bases for her removal.

Second, the Removal Decision makes new fact findings that are not supported by the evidence in the Removal Record or by any evidence that Plaintiff has been able to obtain. The decision also applies a nebulous standard of professional conduct that it acknowledges is ill-defined and "has no specific elements of proof." *See* ECF No. 53-2 at 203 (Sealed). The decision also adopts a "lack of candor" standard that does not require Defendants to show an intent to deceive. *Id.* at 202. The decision is otherwise devoid of any concrete legal analysis. There is no discussion of the statutes, regulations, or policies that Plaintiff allegedly violated. Perhaps this is because OPR had already found that she violated none, not even the Immigration Judges' Ethics and Professionalism Guide.

Third and fourth, EOIR did not maintain a Table of Penalties to ensure uniformity in the selection of penalties. *See* ECF No. 16 at 29 para. 105. It had not kept complete and accurate

8

records of disciplinary actions involving immigration judges. *Id.* Through MSPB discovery, Plaintiff learned that she was one of three judges (all females) who were referred to OPR for investigation, while male judges who had committed far more serious misconduct were not referred. And, of all the judges who were investigated by OPR or OIG during a four-year period between 2017 and 2021, Plaintiff was the only judge who was terminated following an OPR or OIG investigation. Because the judges who were not terminated did not possess Plaintiff's protected characteristics, her termination gave rise to a reasonable inference of discrimination or retaliation for engaging in protected EEO activity.

Finally, the Removal Decision found that Plaintiff's conduct implicated, but did not necessarily violate, Rules 8.4 and 4.4 of the Model Rules. But rather than dismissing outright the charges of removal or imposing a lesser penalty, it pressed forward with removal. DOJ policy at that time allowed for state bar referrals when an attorney's conduct "implicated" his or her state bar rules, unless the referral would present manifest injustice. *See* ECF No. 53-2 at 206 (Sealed). In authorizing referrals to her state bars, the Removal Decision conditioned the referrals on Plaintiff losing the MSPB appeal. *See id.* This put Plaintiff in the untenable position of having to appeal her wrongful termination to the MSPB and win, lest she forfeit her law licenses, too.

Defendants' decision in March 2025 to refer Plaintiff to her state bars, even before these proceedings have been completed, smacks of retaliatory animus. Through this civil action, Plaintiff respectfully requests corrective action in the form of record expungement, compensatory damages, and any other relief the Court deems appropriate.

B.      The Affirmative Defenses of Employment Discrimination
        and Whistleblower Retaliation.

Plaintiff's removal from DOJ and the federal service was a discriminatory adverse personnel action that violated Title VII and the Rehabilitation Act. Plaintiff will show that

similarly situated immigration judges who did not share her protected characteristics were not subjected to an OPR investigation or disciplinary actions or removal.

Plaintiff's removal was also a discrete act of retaliation for engaging in prior EEO activity. But for the EEO complaints that she filed in May 2014 and December 2015 to challenge the denials of a reasonable medical accommodation, she would not have faced severe harassment, the threat of removal, and actual removal.

Plaintiff's removal was also whistleblower retaliation. In November 2017, Plaintiff called OPR's attention to the gross abuse of EOIR's Immigration Judge Complaint Resolution Program that operated in the shadows of the legitimate Immigration Court hearing processes, with no oversight by OPR. In response, OPR retaliated against Plaintiff by conducting an investigation that ultimately led to her removal.

The retaliation has continued with the Agency's latest decision to refer Plaintiff to her state bars for further disciplinary proceedings. This latest unconstitutional infringement of her right to earn a living through the practice of law provides an additional justification for granting Plaintiff the requested relief.

C.    The Statutory Basis For Plaintiff's Causes of Actions and Defenses

In this civil action, Plaintiff invokes the following statutory authorizations for the Court's exercise of subject matter jurisdiction to review the removal action:

The federal question statute, 28 U.S.C. § 1331;

The Declaratory Judgment Act, 28 U.S.C. § 2201;

The mandamus statute, 28 U.S.C. § 1361;

The Civil Service Reform Act (CSRA) of 1978, 5 U.S.C. § 7701 *et seq.*; and

The Administrative Procedures Act, 5 U.S.C. §§ 701, 706.

Count I:        Record access, record amendment/expungement, invasion of privacy

The Freedom of Information Act and the Privacy Act, 5 U.S.C. §§ 552 & 552a *et seq.*;

Count II:        Affirmative defense of employment discrimination

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

The Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.;

Count III:        Affirmative defense of whistleblower retaliation

The Whistleblower Protection Act of 1989, as amended, 5 U.S.C. § 2308(b)(8) & (9).

**Defendant**

The Court is familiar with the facts and circumstances of this case. Mem. Op. & Order (ECF No. 56) at 2-17. This case arises from Bain's employment at the Department' Executive Office for Immigration Review ("EOIR") as an immigration judge from approximately 2008 until her termination in September 2020. *Id*. at 3. Bain brings a garden variety of allegations that she was discriminated and retaliated against in a series of alleged employment actions, including (i) the denial of a request to a permanent reassignment to a non-videoconferencing docket, (ii) being reprimanded for rude and disrespectful email communications, (iii) improper treatment by different supervisors while assigned to the York, Pennsylvania and the Arlington, Virginia immigration courts, (iv) receiving lower performance reviews. *Id*. at 2-6. She also alleges that her information was improperly released to the American Immigration Lawyers Association, without her permission. *Id*. at 7.

Bain was also the subject of various complaints from immigration attorneys, alleging that Bain mishandled specific hearings, including verbally abusing and manifesting bias toward the attorneys and her failure to recuse herself from certain cases. *Id*. at 7. EOIR referred those complaints to the Department's Office of Professional Responsibility ("OPR") for an

investigation. *Id*. at 7-8. Around this time, the Board for Immigration Appeals vacated a Bain decision, finding that Bain "displayed unprofessional behavior" toward the attorney appearing before her and remanding the case for rehearing before a different immigration judge. *Id*. at 8. OPR issued its report of investigation, which led to Bain being placed on administrative leave. *Id*. In February 2020, EOIR issued a notice of proposed removal based on the findings in the OPR report; an attorney in the Office of the Deputy Attorney General then proposed that Bain be separated from federal service; and Attorney General William Barr ultimately signed a formal removal decision that terminated Bain from federal service on September 17, 2020. *Id*.

Bain also submitted to the Department three FOIA and Privacy Act requests, in September 2015, January 2018, and August 2019. *Id*. at 12-13. The Department has completed responding to Bain's FOIA requests.

This Court granted in part the Attorney General's motion to dismiss. *See generally id*.

The only remaining claims are Bain's (a) discrimination claims related to her 2015, 2016, and 2017 performance ratings and the July 2016 counseling letter from ACIJ Nadkarni; (b) discrimination and retaliation claims related to allegedly high volume aged cases; (c) rejection of Bain's BIA application and denial of permission to participate in "special work opportunities," (d) the January 2017 release of information to AILA and refusal to claw back the information, and (e) removal from federal service. *Id*. at 60.

### Matters Discussed By the Parties Pursuant to Local Civil Rule 16.3

**(1) Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

Joint Position: The parties agree that the case can likely be resolved by summary judgment. The parties anticipate moving for summary judgment at the close of discovery. To the extent feasible, the parties will work together in good faith on stipulation of material facts

that are not in dispute to facilitate summary judgment.

**(2) The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

Joint Position. The parties do not at this time anticipate any amendments to pleadings.

**(3) Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

Joint Position: The parties do not at this time jointly agree, *see* LCvR 16.3(d), that referral

to a magistrate judge is appropriate.

**(4) Whether there is a realistic possibility of settling the case.**

Joint Response: The parties anticipate engaging in discovery prior to engaging in any

settlement discussions.

**(5) Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients. In assessing the above, counsel shall consider: (i) the client's goals in bringing or defending the litigation; (ii) whether settlement talks have already occurred and, if so, why they did not produce an agreement (iii) the point during the litigation when ADR would be most appropriate, with special consideration given to:**

> **(aa) whether ADR should take place after the informal exchange or production through discovery of specific items of information; and**

> **(bb) whether ADR should take place before or after the judicial resolution of key legal issues;**

**(iv) whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, an assessment of damages and/or the potential settlement value of the case; and**

**(v) whether cost savings or any other practical advantages would flow from a stay of discovery or of other pre-trial proceedings while an ADR process is pending.**

Joint Position: The parties anticipate engaging in discovery prior to engaging in any

settlement discussions, including ADR.

13

**(6) Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

Joint Position:  The Parties anticipate moving for summary judgment and therefore request that the Court conduct a post-discovery status conference to set a summary judgment briefing schedule.

**(7) Whether the parties should stipulate to dispense with the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1), and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

Joint Position: The Parties do not stipulate to dispense with the initial disclosures.  Initial disclosures should be governed by the Federal Rules of Civil Procedures.

**(8) The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

Joint Position: The parties do not anticipate extensive discovery given the substantial amount of materials that have already been exchanged in other relevant proceedings.  Still, the parties anticipate serving on each other interrogatories, requests for production, and requests for admission.  The parties further anticipate holding depositions of relevant witnesses.  The parties disagree regarding the discovery deadlines.

Plaintiff's Addendum:  Plaintiff proposes that discovery proceed on an expedited basis and be completed within 60 days, as the parties do not anticipate engaging in extensive discovery, Plaintiff will rely on discovery materials obtained through the EEOC and MSPB proceedings, and this civil action has been pending for almost five years.  Defendants had the opportunity to depose Plaintiff's treating physician in MSPB discovery but declined to do so.  Plaintiff did depose three government witnesses and intends to rely on those depositions to support her summary judgment motion.  In addition, Defendants' unilateral

14

decision to refer Plaintiff to her state bars for further disciplinary proceedings has added pressure on Plaintiff to seek an expeditious resolution.  For these reasons, Plaintiff submits that this matter is suitable for disposition by summary judgment.  This case is document-intensive, the Court docket already has the most relevant and probative evidentiary materials, there are few disputed issues of material fact, and Plaintiff anticipates no serious dispute over the Court's continuing exercise of subject matter jurisdiction.  Accordingly, Plaintiff submits that discovery could and should be completed by October 26, 2025, or 80 days following the August 6, 2025 initial scheduling conference.

Department's Position: The Department proposes that discovery deadlines be in accordance with the schedule for standard cases in the Court's Order (ECF No. 119) at 4. Using those timeframes, the Department calculated the proposed deadlines in the attached "Defendants' Proposed Scheduling Order," which contemplates conclusion of discovery by December 7, 2025, 120 days following the August 6, 2025, initial scheduling conference.  For example, Bain will have thirty days to respond to discovery once the Department propounds its requests. *See* Fed. R. Civ. P. 34(b)(2)(A).  The Department will then need some time to review Bain's responses, and if necessary, challenge inadequate responses.  The same is true in reverse – the Department is entitled to thirty days to respond to Bain's discovery requests; depending on the extent of those requests, the Department may seek an extension to ensure its responses are complete.  The parties moreover are under an obligation to meaningfully confer before bringing any discovery dispute to the Court's attention.

The Department also anticipates that third party discovery may be necessary.  For example, Bain alleges that she has suffered "much embarrassment and mental anguish," Am. Compl.

(ECF No. 16) ¶ 88, and seeks "compensatory damages for the mental anguish and public humiliation that [she] suffered," *id*. ¶ 202.  Discovery will likely be necessary into Bain's medical files supporting such a claim, including deposition of Bain's treating physician, if any.  The Department will be unable to determine the contours of such third-party discovery until the parties have exchanged discovery requests and initial responses.

It is also apparent from the Parties' responses to items 10 that disputes regarding privilege are likely and the parties will need time to prepare the required logs, engage in meaningful discussions to resolve any differences, and if necessary, raise those issue with the Court.

In short, an expedited discovery period is unfeasible.

**(9) Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

Plaintiff's Position.    Plaintiff agrees to produce and exchange all documents in electronic or digital format.  The parties have not agreed to have a standard e-discovery agreement providing for the preservation of discoverable information, claims of privilege, and protection of trial preparation materials, including an agreement for asserting such claims after production.  Plaintiff has re-served on Defendants' counsel a March 2014 Record Preservation and Spoliation Notice that was previously served on agency counsel.

Department's Position.    The Department will produce all relevant, non-privileged documents in its possession, custody, or control, to include electronically stored information, as the documents are kept in the usual course of business or in .pdf format.  *See* Fed. R. Civ. P. 26(b)(1), Fed. R. Civ. P. 34.

**(10) Any issues about claims of privilege or of protection as trial-preparation materials, including- if the parties agree on a procedure to assert these claims after production- whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

Joint Response.  The parties anticipate that various privileges are at issue, particularly as

they relate to the OPR report and related records.  The parties agree that any party claiming privilege or protection of trial-preparation materials comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure.  If entry of a protective order becomes appropriate, the parties will work collaboratively to prepare such a proposed order.  With respect to the FOIA and Privacy Act claims in Count I, the parties agree to exchange privilege logs or *Vaughn* indexes, as appropriate, prior to seeking summary judgment.  *See* Standing Order in Civ. Cases (ECF No. 5) at 4 ("The agency shall provide search declarations and Vaughn indices, if any, to the requester prior to seeking a pre-motion conference.").

Plaintiff's Addendum.  Until this civil action is resolved, Plaintiff continues to claim privilege with respect to those privacy-protected health, personnel, and similar records that the Court has not ordered to be placed on the public docket.  *See* ECF No. 57.  She understands that the Court disfavors reliance on non-public information in resolving dispositive motions.  Accordingly, Plaintiff will endeavor to justify any future privilege claim using the balancing test articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1981).

**(11) Whether the requirement of exchange of expert witness reports and information pursuant to Federal Rule of Civil Procedure 26(a)(2), should be modified, and whether and when depositions of experts should occur.**

Joint Response:  The Parties' respective proposed scheduling orders include dates to exchange expert disclosures.

**(12) In class actions, appropriate procedures for dealing with Federal Rule of Civil Procedure Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

Joint Response: Not applicable.

**(13) Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

Joint Response:  The Parties do not anticipate a need to bifurcate this case.

Department's Addendum: The Department separately notes that this case concerns FOIA, Privacy Act, and Title VII claims.  Those claims involve separate questions of law and fact, and it may be more convenient to brief them separately.

Plaintiff's Addendum:  Plaintiff will continue pressing for the release of all documents that are responsive to her August 2019 FOIA and Privacy Act request.  Previously, this Court directed Defendant OPR to begin processing and releasing the 14,500 pages of records that it had compiled during an investigation.  *See* July 25, 2022 Minute Order.  As of today, Plaintiff has not received all of those pages in unredacted form.  She will need them in order to challenge the legality of the removal action, the Removal Decision, and related records.  To the extent the Department continues to assert exemptions against disclosure, Plaintiff will raise this issue prior to the commencement of discovery.

**(14) The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

Joint Response:  The parties propose that the Court hold a pretrial conference, if necessary, within forty-five days of the Court's resolution of any motions for summary judgment.

**(15) Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

Joint Response:  The parties request that the Court schedule a firm trial date at the pretrial

18

conference.

**(16) Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

Joint Response:  There are no other matters the parties wish to bring to the Court's attention

at this time.

Dated:   July 21, 2025

Respectfully submitted,

By: _____

       QUYNH VU BAIN
       *Pro Se* Plaintiff

       213 3rd St. SE
       Washington, DC  20003
       (202) 910-8553

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____/s/ *Dimitar P. Georgiev*_____
     DIMITAR P. GEORGIEV, D.C. Bar #1735756
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 815-8654

*Attorneys for the United States of America*

19