**Bain v. U.S. Department of Justice, No. 21-cv-1751 (D.D.C.) (RDM)**

**ATTACHMENT TO PLAINTIFF'S MOTION FOR SANCTIONS**

Quynh Vu Bain
Washington, DC 20003


February 4, 2026

*By electronic transmission to* (b)(6)

Saifuddin Kalolwala, Esquire
Assistant United States Attorney
Office of the United States Attorney
    for the District of Columbia
Civil Division


Dear Mr. Kalolwala:

With less than a month remaining before the close of discovery, I would like to make a final attempt to resolve the protracted discovery dispute in this case without court intervention.

First, thank you for sending your partial interrogatory answers on December 31, 2025; your draft protective order on January 14, 2026; and the Vaugh Index of Office of Professional Responsibility records on February 3, 2026.

Second, I discuss your failure to respond to my requests for production of documents which I tendered on September 24, 2025, and explain why your protective order does not excuse your obligation to produce the requested documents. *See* Section A below.

Third, I address the deficiencies in your interrogatory answers and respond to your objections as stated in your interrogatory answers. *See* Section B below.

Finally, I identify the forms of relief that I intend to seek from the Court at the close of discovery on February 26, 2026, if the parties are unable to resolve the discovery dispute on their own initiative by that date. *See* Section C below.

### A.    Defendants' Failure to Respond to Plaintiff's RFPs.

On September 4, 2025, in anticipation of the start of discovery, I sent your co-counsel, AUSA Dimitar Georgiev-Remmel, a memorandum requesting a record inspection under Rule 34, along with a proposed Rule 502 agreement to preserve privileges and exemptions during the discovery period. *See* Attachment. The memorandum identified the records that I sought to inspect and explained how those records were relevant and proportional to the needs of this case. *See id.* at 8-10 (applying Rule 26(b)'s relevance and proportionality standard and the factors articulated in *Oxbow Carbon Minerals LLC v. Union Pac. R.R.,* 322 F.R.D. 1 (D.D.C. 2017).

Among other things, the record inspection sought access to the approximately 14,500 pages of records that the Office of Professional Responsibility (OPR) compiled during a two-year investigation into two complaints of professional misconduct that two immigration bar attorneys had filed against me in March 2017. OPR used those records to support its finding that I had engaged in professional misconduct. The Justice Department relied on OPR's professional misconduct findings in terminating my employment.

In defending the agency's adverse actions, you will need to produce those records to the Court, as well as to me as the first-party FOIA/Privacy Act requestor and Plaintiff in this civil action. Indeed, the Honorable Judge Moss has already recognized that the OPR records are relevant and that I have a right to access them. By Order dated July 25, 2022, he directed OPR to begin processing and releasing the 14,500 pages to me, at a rate of 500 pages per month. *See* Minute Order dated July 25, 2022, and ECF No. 49 (Defendants' Status Report recognizing this obligation).

In the interest of resolving the discovery dispute within the given time frame, I proposed through my September 4, 2025 memorandum to Mr. Georgiev-Remmel that the parties agree to suspend their privilege claims through Rule 502 agreement while I conducted a record inspection. In requesting a record inspection, I had hoped to spare Judge Moss from having to conduct an *in camera* review of the 14,500 pages records that are at issue in this discovery dispute.

My September 4, 2025 memorandum identifies the following three categories of information, documents, and records that I would like to inspect:

1.    Approximately 11,000 pages of OPR records that OPR had never produced because it claimed those pages were non-responsive to my FOIA/Privacy Act request or were duplicative of records that OPR had already produced. Since OPR did not give an accounting of the 11,000 pages, I dispute their withholding insofar as there is no FOIA exemption or common law privilege for non-responsive or duplicative records. Moreover, because I have not seen those records, I consider OPR's failure to produce the 11,000 pages, or at least to let me inspect them, as a failure to comply with Judge Moss's July 25, 2022 record processing and release order.

2.    Approximately 4,660 pages of heavily redacted records that OPR released to me between September 2022 and August 2024. Those pages were so heavily redacted that I could not make sense of them. During MSPB discovery, I requested that they be produced without redactions. By order dated November 27, 2024, the MSPB administrative judge ordered OPR to produce them in unredacted form. In December 2024, the agency released approximately 3,000 of those 4,660 pages without redactions. It has continued to withhold the remaining 1,660 pages without explanation. *See* Attachment at 8-10;

3.    Records that three government witnesses ((b)(6) rdo, (b)(6) , and (b)(6) ) testified about during their October 2024 depositions, and records that agency counsel acknowledged were in the agency's possession, custody, or control during my deposition in the MSPB proceeding in October 2024. *See* Attachment at 8-10.

2

Since Mr. Georgiev-Remmel declined my request for a record inspection, I decided to request the same records during the discovery period that began on September 7, 2025.

1.    The Scope of Plaintiff's Requests for Production Is
Proportional to the Needs of This Case.

On September 24, 2025, I served 25 interrogatories and 17 requests for production of documents on you and Mr. Georgiev-Remmel. The interrogatories sought information about specific witnesses and comparators (*i.e.*, immigration judges who were similarly situated but not fired). The RFPs sought production of the three categories of records listed above. The RFPs also requested production of EOIR records that EOIR claimed support its proposal to terminate my employment and the Removal Decision.

The original due date for your discovery responses was October 24, 2025. Following the government shutdown, the district court extended the due date for your discovery responses by 53 days, to and including December 16, 2025. On December 16, 2025, you requested an additional two weeks, and I agreed. Your new discovery deadline was December 30, 2025. We also met and conferred about my discovery requests on December 22, 2025.

Even with the two extensions of time and the meet-and-confer, you produced no discovery responses on December 30, 2025. Instead, you notified me the next day that agency personnel did not send you the interrogatory answers until the evening of December 30, and, therefore, you did not have sufficient time to review the answers and forward them to me. You promised to complete your review and send me the interrogatory answers later that day. Although you did send partial interrogatory answers on the afternoon of December 31, you produced no documents in response to my 17 RFPs. *See* email from AUSA Kalolwala to Quynh Bain, dated December 31, 2025 at 12:37 p.m.

Immediately upon receiving your interrogatory answers, I responded with an email stating that your objections to my interrogatories were waived because they were raised late and that, even if not waived, the objections were invalid. I also inquired whether you intended to produce any documents at all. *See* email from Quynh Bain to AUSA Kalolwala, dated December 31, 2025 at at 3:19 p.m.

On January 8, 2026, after not hearing from you, I again sent you an email inquiring whether you will correct the noted deficiencies and defects in your interrogatory answers and produce documents that are responsive to my RFPs. I further advised that I would move for sanctions under Rule 37(a), including for default judgment, if you did not respond by January 12, 2026. *See* email from Quynh Bain to AUSA Kalolwala, dated January 8, 2026, at 12:08 p.m.

In an email response dated January 12, 2026 at 3:31 p.m., you claimed that you were excused from document production because I had "opposed" a protective order that you were seeking from the Court. This claim was not true. As of that date, you had not circulated a proposed protective order for my comment and review, nor had you moved the Court to issue a protective order.

Although I believed your failure to produce documents alone provided good cause for seeking sanctions, I did not move to compel production. Instead, I offered to look at your proposed protective order if you would send it to me. On January 14, 2026 at 1:57 p.m., you emailed me a draft protective order. Your email also indicated that the documents I requested were ready for

production and could be produced as soon as "tomorrow" if I would stipulate to the protective order, as drafted.

The draft protective order that you sent me on January 14 gives no description of the information, documents, and other tangible things that it seeks to protect. After I received the draft proposed order, I requested that you identify the documents you would like to withhold; the reasons you would like to withhold them; the persons or entities who are allowed to access such documents as well as the persons or entities who are to be denied access; the location where the documents are stored; and the custodian of the documents. I needed such information to evaluate the propriety and validity of the proposed protective order.

Yesterday, you sent me a 187-page Vaugh index that was not signed by the preparer and did not have a certification that the preparer had conducted a thorough and complete search for all responsive records. I also have serious concerns about the contents of the Vaughn index.

One objection to the Vaughn index is that it identifies withheld records that the administrative judge in the MSPB proceeding ordered OPR to release to me in November 2024. *See* MSPB Tab 92. The Bates-stamped page numbers that appear on approximately 4,660 pages of OPR records are the same Bates-stamped page numbers assigned to 4,660 pages of records that appear on OPR's Vaughn index. OPR only produced approximately 3,000 pages of the 4,660 pages in unredacted form. In the MSPB proceeding, EOIR used many of the 3,000 pages to defend the removal action, and I used them to advance my claims and defenses. Because the records you are seeking to protect are subject to the MSPB release order and in fact have been introduced into evidence in the MSPB proceeding, they cannot be subject to a proposed protective order, like yours, that seeks to limit their use to this civil action. The privilege claims that you assert through the Vaughn index are considered waived because you did not seek to protect the same records when you used them in the MSPB proceeding to defend the agency's adverse actions.

As for the remaining 1,660 pages of records that OPR has withheld – notwithstanding the MSPB administrative judge's order, you will have to produce those records to the Court and to me, in order to assure the Court that you have not violated its July 25, 2022 record processing and release order or the MSPB administrative judge's record release order. Simply put, it is too late for you to seek protection of the 4,660 pages of OPR records. I would argue that, under the law-of-the-case and issue preclusion doctrines, you are required to produce the records without redactions and without placing any restrictions on their use. I will need those records to advance my causes of action and claims in this civil action. I also will need them to defend myself against the baseless charges of professional misconduct that OPR has referred to my state bars for further disciplinary proceedings. Finally, I will need them to apply for employment, retirement benefits, and similar uses.

A second concern that I have with the Vaughn index is that it lists OPR records that have already been released not only to me as a first-party FOIA requestor, but also to the general public through third-party requests made to OPR or EOIR. Some of the records that you released to third-party FOIA requestors are my privacy-protected personnel records. The release of such records ran afoul of the Court's December 28, 2022 sealing order (*see* ECF No. 57), which placed the covered records on the non-public docket and prohibited their dissemination for the duration of this litigation. Regrettably, my personnel records were released to unauthorized individuals and they appeared on the internet or other public information sources. Having failed to claw back such records before they appeared in the public domain, and having instead used some the records such

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000004

as the OPR Report of Investigation to harass me and to damage my professional reputation, your attempt to seek protection for such records now can only be viewed with skepticism, perhaps as a last-minute ploy to avoid liability for invading my privacy, for infringing my right to continue practicing law, and for causing irreparable reputational harm that has resulted in severe, debilitating economic and non-economic hardships.

The above-stated objections to your privilege claims and protective order are not exhaustive. I have other concerns that I will raise and discuss in my opposition to your motion for a protective order. In any event, without seeing the documents that you are seeking to protect – after five years of litigation the agency still has not produced them to me, I must decline to stipulate to the proposed protective order.

    2. <u>Plaintiff Has Demonstrated a Genuine Need For the Requested Records and No Reasonable Alternative Means of Accessing Them</u>.

In response to my 17 RFPs, you produced no documents, nor did you provide a privilege log or Vaughn index, on the day they were due (December 30, 2025). Yesterday, I received by email the Vaughn index that OPR prepared. For the reasons stated above, I decline to stipulate to the protective order. I also will oppose your motion for protective order on the following grounds.

First, the agency has used the same information, documents, and other records that I am requesting, and which the agency is now seeking to withhold [through the protective order]:

- to support OPR's findings of professional misconduct in September 2019;

- to obtain dismissal of my EEOC action on February 26, 2020;

- to propose the termination of my employment the very next day, on February 27, 2020;

- to terminate my employment in September 2020;

- to cause a prospective employer to revoke a job offer that I had received and accepted in May 2022;

- to refer me to my state bars for further disciplinary actions in March 2025; and

- most recently, to cause another prospective employer to revoke a job offer that I had received and accepted in October 2025.

As noted, both the Court and the MSPB have already granted my requests to access the records that I am requesting through the 17 RFPs. *See* district court's July 25, 2022 Minute Order requiring processing and release of OPR records and Defendants' acknowledgement of that obligation (ECF No. 49); and MSPB November 27, 2024 Order granting, in part, Plaintiff's motion to compel production of approximately 4,660 pages of OPR documents (*see* MSPB Tab 92). I mention these court orders because I want you to beware that your continuing refusal to produce the requested information, documents, and records stands in direct violation of the two court orders.

Second, my need for the requested information, documents, and records has become more urgent due to recent events which I find very upsetting and troubling.

In March 2025, the agency referred me to my state bars for further disciplinary proceedings while this civil action remained pending. Because there was no administratively final or judicially final order upholding the validity of OPR's professional responsibility findings, I consider the bar referrals a retaliatory response to my pursuit of the MSPB mixed case appeal and this district court action. As one of my state bars has opened an inquiry, the bar referrals have triggered a record production request that is not necessarily limited to this litigation.

Also, within the past two weeks, I discovered that the agency has, once again, interfered with my employment rights and contractual relationships with prospective employers. Someone in the agency persuaded an employer to condition an offer of employment on my waiving the agency's liability for any adverse or negative information about me that the agency has provided to the prospective employer. I view this incident as another attempt to sabotage my legal career. A similar incident occurred more than three years ago, in October 2022, when another federal agency conditioned an offer of employment on my signing an acknowledgement that I had engaged in professional misconduct while employed in the Justice Department and that I could be fired if I were to engage in the same or similar misconduct again. Because I declined to sign the acknowledgement, the job offer was revoked, and I was deprived of an opportunity – after leaving the Justice Department – to perform meaningful, impactful work and earn income that was commensurate with my abilities, knowledge, skill sets, and work experience.

Please allow me to put the agency on notice that its attempts to diminish my employment rights are unlawful, and that I will seek injunctive relief to prevent the agency from continuing to inflict further economic and non-economic injuries for the duration of this litigation and in any subsequent appeals.

As the parties are unlikely to reach agreement on a stipulated protective order before discovery closes on February 26, 2026, I request that you immediately produce the sequestered documents to me in unredacted form. This is not an unreasonable request, in light of your prior statement that the withheld documents have been ready for production since January 14, 2026, and that they could be produced as soon as "tomorrow." *See* email from AUSA Kalolwala to Quynh Bain, dated January 14, 2026 at 12:57 p.m.

### B.    Defendants' Deficient Interrogatory Answers and Objections.

Next, I point out the deficiencies in your interrogatory answers. On December 31, 2025, you provided partial interrogatory answers one day after they were due. The interrogatory answers were not signed by the preparer, as required under Rule 33(b). Moreover, many of the interrogatory answers are incomplete. Others contain factual assertions that are inaccurate, false, misleading, or inconsistent with the evidence that both parties have presented to the district court and the MSPB over the course of this five-year litigation.

Your interrogatory answers do not create genuine disputes of material facts that would preclude summary judgment. Nor are they sufficient to satisfy the agency's burden of proof and persuasion in this case. By a preponderance of evidence, the agency must prove that (1) I had committed professional misconduct; (2) the alleged professional misconduct justified the termination of my employment; (3) the penalty of removal was not grossly disproportionate to the

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000006

alleged misconduct, when considered in light of the *Douglas* factors, and when compared to the agency's treatment of eight similarly situated immigration judges who the agency identified as my comparators; (4) the termination of my employment was not pretext for discrimination or whistleblower retaliation; (5) the termination of my employment promoted the efficiency of the service; and (6) my referral to state bar disciplinary authorities would be (or were) adequately predicated on the facts, law, and rules of professional responsibility that governed my work as an immigration judge.  To the extent the interrogatory answers or parts thereof contradict the evidence, arguments, and positions that the agency previously asserted in litigation, I will move to exclude them from evidence.

Next, I address the general objections set forth in your interrogatory answers, which are invalid on their face.  The objections are not signed by you, the attorney who lodged them, as required under Rule 33(b).  Moreover, your general objections – relevance, burdensomeness, and overbreadth – are deemed waived because you answered 24 of the 25 the interrogatories.  *See Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).  Furthermore, I am unable to address your burdensomeness objection since you have not submitted an affidavit and have not offered evidence to illustrate the nature of the burden.  *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 8 (D.D.C. 2007) (citations and internal quotations omitted).  If, after reading my September 4, 2025 memorandum to Mr. Georgiev-Remmel, you wish to continue the objection, please provide an affidavit that details the burden, so I could understand and address it.

As for the specific objections raised in your interrogatory answers, during our meet-and-confer on December 22, 2025, you did not raise those objections and thus denied me the opportunity to address them before you set pen to paper.  Since then, I have considered your specific objections.  One objection you raised is that you believe I already have some of the information, documents, and records that I requested through the RFPs.  Generally, you are obligated to respond and produce the requested information, documents, and records, even if you believe that they have been provided to me at one time or another.  *See generally Puerto Rico Med. Emergency Grp.*, *Inc*. *v. Iglesia Episcopal Puertorriquena, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016) (collecting cases).  And as noted in the preceding paragraphs, there are OPR records that I still have not received.  Another objection you raised is that some of the interrogatories ask for attorney work product or mental impressions.  I disagree.  The interrogatories ask the agency to state its positions regarding disputed issues of fact and law.  "Contention interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims.  The general view is that contention interrogatories are a perfectly permissible form of discovery to which a response ordinarily would be required."  *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n. 2 (6th Cir. 1998).  Accordingly, please answer the contention interrogatories that I have posed.

Moreover, I believe that your specific objections reflect insufficient familiarity with the causes of action, claims, and issues in this case, as well as the case's procedural history.  For example, your interrogatory answers profess no knowledge of my claim that EOIR had deliberately used OPR-generated records of the investigation to defeat my EEOC complaint.  I asserted this claim three years ago, through a proposed amended complaint that I filed with the Court on August 3, 2023.  *See* ECF No. 87-1.  So that we could be on the same page, I refer you to the pleadings listed below as providing a comprehensive overview of the factual and legal issues presented thus far:

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000007

- Plaintiff' Amended Complaint filed on September 23, 2021 (*see* ECF No. 16);

- Plaintiff's proposed amendment of the complaint filed on August 3, 2023 (*see* ECF No. 87-1);

- Defendants' Answer to the Amended Complaint, filed on July 10, 2025 (*see* ECF No. 120);

- Plaintiff's March 5, 2025 Pre-Hearing Memorandum filed in the MSPB proceeding (*see* MSPB Tabs 108 & 109);

- The parties' Joint Status Report filed on May 1, 2025 (*see* ECF No. 112); and

- The parties' Joint Pre-Conference Statement filed on July 21, 2025 (*see* ECF No. 121).

If, after reading the above-described pleadings and my September 4, 2025 memorandum to Mr. Georgiev-Remmel, you still have questions about my interrogatories, please send the questions to me by email, and I will gladly answer them within 24 hours.

### C.    Plaintiff's Proposed Sanctions

As the agency has had more than five years to produce the requested information, I will request declaratory, injunctive, and monetary relief that are commensurate with the injuries I have sustained, as sanctions for the agency's willful non-compliance with its discovery obligations. *See* Amended Complaint, at ECF No. 16 at ¶¶ 186-207. Unless we could reach agreement on some or all of the following forms of relief, I will request them of the Court after discovery closes on February 26, 2026:

1. An order declaring that the agency has violated the FOIA and Privacy Act's record access provisions at 5 U.S.C. §§ 552a(d)(1)-(4), (e)(1)-(2), and (g)(1)(B), by failing to comply with the two court orders described in the preceding paragraphs. *See* ECF No. 112 at 5-7;

2. An order declaring that the agency has violated the Privacy Act's record maintenance provisions at 5 U.S.C. § 552a(e)(5), (8), and (10), by failing to maintain a complete and accurate set of records about me and by disclosing my privacy-protected personnel records to unauthorized recipients. *See* ECF No. 112 at 8-10. *See also* ECF No. 57 (December 28, 2022 protective order placing most of Plaintiff's personnel and disciplinary records under seal);

3. An order deeming as unopposed my November 15, 2024 request that the agency amend and/or expunge certain personnel records of mine that contain inaccurate, false, spoliated, or unreliable information. *See* 5 U.S.C. §§ 552a(d)(1)-(3) & (g)(1)(A). *See also* ECF No. 112 at 10-13;

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000008

4.      An order awarding monetary damages for the agency's Privacy Act violations which directly resulted in adverse effects or adverse determinations made against me. *See* 5 U.S.C. § 552a(g)(1)(C) & (D);

5.      An order prohibiting the agency from using any information that it has refused to produce over the past five years and, most recently, in response to my discovery requests, to satisfy its burden of proof and persuasion in this litigation, including to defend the adverse personnel actions that it has taken against me between January 2015 and the present time. Such adverse actions include my performance ratings and other personnel records that were used to support OPR's findings of professional misconduct, the EOIR proposal to terminate my employment, the former Attorney General's decision to terminate my employment, the agency's motion for summary judgment filed with the EEOC, and the agency's March 2025 decision to refer me to my state bars for further disciplinary proceedings while this civil action was still pending; and

6.      An order prohibiting the agency from using any information, documents, or records that it has refused to produce to support its dispositive or procedural motions, or for rebuttal or impeachment purposes;

7.      An order allowing me, as the Plaintiff, to draw reasonable adverse inferences from the agency's failure to produce the requested information, documents, and records;

8.      An order prohibiting the agency from providing any information, documents, or records from my personnel and similar files to unauthorized non-parties and third parties, without my knowledge and express consent, in violation of the Court's December 28, 2022 sealing order (*see* ECF No. 57);

9.      An order requiring the agency to disclose to me the persons, entities, or organizations to whom it has given access to my personnel and similar files that are stored in the agency's systems of records; the dates when such access was provided; the agency official or officials who provided the record access; the reasons for providing such access; and the specific information or records that was provided.

If you would like to discuss any of the above-listed forms of relief in the interest of resolving them without court involvement, I am available on Monday and Tuesday, February 9 and 10.

Thank you very much for your attention and cooperation.

Sincerely,

/s/

Quynh Vu Bain
*Pro Se* Plaintiff

9

**Quynh Vu Bain**
**Washington, DC  20003**
(b)(6)
(b)(6)

_____

*By electronic mail addressed to*
(b)(6)

September 4, 2025

Dimitar Georgiev-Remmel, Esquire
Assistant United States Attorney
United States Attorney's Office for the
 District of Columbia
601 D Street, NW
Washington, DC  20530

Re:    Bain v. U.S. Department of Justice, et al., No. 21-cv-1751 (D.D.C.) (RDM)

Dear Mr. Georgiev (Dimitar):

    Anticipating the start of discovery next week, I am writing to request that we enter into an agreement to protect privileges and protections that the parties are likely to assert in this case. Enclosed for your consideration is a Rule 502 agreement that I have drafted.  *See* Attachment A. The agreement incorporates the definitions of "attorney work product" and "attorney-client communications" in Rule 502(g) of the Federal Rules of Civil Procedure.  The agreement also implements Rule 502(d)'s non-waiver rule, under which statutory and common law privileges are not waived by disclosure of materials, documents, or records in connection with this litigation.  If accepted, the agreement would enable both parties to complete discovery in the given timeframe, while minimizing potential discovery disputes.

    As you may recall, in July 2022, the district judge directed the Office of Professional Responsibility (OPR) to begin processing and releasing to me 14,500 pages of records that OPR compiled during the two-year investigation.  I understand that OPR finished processing those records in June 2024, but that it still has not prepared a Vaughn Index.  To facilitate the production of the 14,500 pages in unredacted form, I propose to conduct an inspection of those records at a mutually convenient location, during the weeks of September 8 and September 15, 2025.  The enclosed Rule 502 agreement would preserve any privilege or protection that applies to the 14,500 pages.  Accordingly, please let me know by this Monday, September 8, 2025, whether the inspection could go forward in the coming two weeks, the weeks of September 8 and 15, 2025. Please also advise whether your office would require a Rule 45(a)(1)(D) subpoena, and whether it would prefer that I move to compel under Rule 37(a) or to enjoin under 5 U.S.C. § 552a(g)(1)(B).

    Previously, I requested production of the 14,500 pages of OPR records through an August 2019 FOIA and Privacy Act request.  *See* ECF No. 16 at 3-4.  When OPR failed to respond, I filed

an appeal with the Office of Information Policy (OIP) in June 2020. *See id.* When the OIP ignored my appeal, I filed the instant lawsuit in June 2021 to secure access to the OPR investigative records. *See* ECF Nos. 1 & 1-1, 16. Thereafter, I continued to press for the production of the OPR records of investigation through various procedural motions. *See* ECF No. 45-3 (request for initial disclosures, filed May 20, 2022); ECF No. 89 (motion for order permitting inspection of OPR records, filed August 21, 2023).

In September 2022, OPR began processing and releasing the 14,500 pages pursuant to the district court's July 25, 2022 order. *See* Minute Order dated July 25, 2022. By June 2024, OPR had released approximately 4,660 heavily redacted pages, while withholding approximately 11,000 pages as "duplicative" or "non-responsive." *See* Attachment B (June 30, 2024 and July 16, 2024 letter to AUSA Joseph Carilli). In anticipation of the reinstatement of the parallel administrative proceeding at the MSPB, I requested access to all 14,500 pages in unredacted form. *See id.* Mr. Carilli indicated that agency counsel handling the MSPB proceeding would produce those records.

After the Merit Systems Protection Board reinstated my mixed case appeal in August 2024, I again requested access to the 14,500 pages in unredacted form and directed the request to agency counsel, Anette Veldhuyzen. *See* Attachment C (November 15, 2024 and January 13, 2025 letters to EOIR counsel Anette Veldhuyzen). Ms. Veldhuyzen refused to provide access, claiming that she had no obligation to produce records that she considered to be irrelevant to the MSPB proceeding.

I then moved to compel production. On November 27, 2024, the MSPB administrative judge granted the motion to compel in part and denied it in part. The MSPB administrative judge directed OPR to release the heavily redacted 4,660 pages in underacted form, by December 6, 2024. However, as of the conclusion of the MSPB proceeding in March 2025, the agency had released only a small number of pages, with the result that I was unable to litigate fully the merits of my MSPB mixed case appeal.

As you know, the district court has given the parties 120 days to complete discovery in this still-pending case. Because discovery will close on December 7, 2025, I need to have immediate access to the OPR records. For this reason, I request your assistance in arranging for the immediate inspection of the 14,500 pages of OPR records, in unredacted form, to take place in the next two weeks, subject to the enclosed Rule 502 agreement. At this stage of the litigation, this is the most expedient way to resolve the protracted discovery dispute. I remain hopeful that the production of the 14,500 pages will permit the parties to resolve all outstanding discovery-related issues within the time given, as I do have to respond to an open state bar inquiry very soon.

Please consider the following arguments for immediate production, which are based on the Rule 26(b) proportionality factors stated in *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

### 1.    The Importance of the Issues at Stake

Defendants have already acknowledged that the two-year OPR investigation generated approximately 14,500 pages of records that are responsive to my August 2019 FOIA and Privacy Act request. Defendants have acknowledged that the OPR records support OPR's findings and conclusions of professional misconduct and lack of candor. Defendants also have acknowledged

| | |
|---|---|
| | undertaken, the outcome of such investigation, and the disciplinary sanction, if any, that was imposed on each of the eight judges.<br><br>Also include information concerning the disciplinary action taken against the senior EOIR executive whose situation and circumstances, DOJ concluded, were most analogous to mine.<br><br>*See* Removal Decision (ECF No. 53-2 at 194-222 (Sealed)). |
| | All information concerning disciplinary actions (*i.e.*, counseling, suspension, removal) that were taken against immigration judges during the period 2015 to 2021. Include each judge's circumstances, the alleged charge of misconduct, any OPR or OIG investigation that was undertaken, the outcome of such investigation, and the disciplinary sanction, if any, that was imposed. I requested this information during the (b)(6) and (b)(6) depositions in October 2024. *See* Attachment C (January 13, 2025 letter to agency counsel Anette Veldhuyzen, at 2). |
| | OPR's policy of releasing records of its investigation to the investigated attorney. I requested this information during the (b)(6) deposition in October 2024. *See* Attachment C (January 13, 2025 letter to agency counsel Anette Veldhuyzen, at 2). |
| | The 2015 DOJ Memorandum that adopted the standard of "implication" for referring immigration judges and other DOJ attorneys to their state bars for disciplinary actions. I requested this information during the Weinsheimer deposition in October 2024. *See* Attachment C (January 13, 2025 letter to agency counsel Anette Veldhuyzen, at 2). |
| | The 2023 DOJ revised memorandum that reaffirmed the use of the "implication" standard in referring immigration judges and other DOJ attorneys to their state bars for disciplinary actions. I requested this information during the (b)(6) deposition in October 2024. *See* Attachment C (January 13, 2025 letter to agency counsel Anette Veldhuyzen, at 2). |

9

**ATTACHMENT B**

**Quynh Vu Bain**



June 30, 2024

*By electronic mail transmission to* (b)(6)

Joseph Carilli
Assistant United States Attorney
United States Attorneys Office for the
  District of Columbia, Civil Division
(b)(6)
Washington, DC  20530

Re:  <u>Bain v. U.S. Department of Justice</u>, No. 21-cv-1751 (RDM) (D.D.C. filed June 22, 2021)

Dear Mr. Carilli:

By minute order dated July 25, 2022, the district judge ordered the DOJ Office of Professional Responsibility to begin processing and releasing the approximately 14,500 pages of records that it had identified as responsive to my August 4, 2019 record access request, filed under the Freedom of Information Act and Privacy Act.  As of today, OPR has completed the processing of those record pages.  Of the 14,500 pages, OPR has withheld 11,116 pages that it claims are duplicative of previously released records, are blank pages, or are not responsive to my FOIA and Privacy Act request.  I am writing to request access to the 11,116 pages.

Previously, in February and July 2023, I requested that OPR permit an inspection of this category of records (i.e., duplicative, blank, or non-responsive pages), but your office denied my requests because OPR had not yet completed its record processing.  Now that OPR's record processing is completed, I renew my request that OPR release the 11,116 pages of records to me, in unredacted form.  Without access to those records, I will dispute any assertion that you make concerning the completeness, accuracy, and validity of OPR's withholding and segregability determinations.

The 11,116 pages comprise four subsets of records.

The first subset includes records designated as "duplicative" of previously released records. Many of those records, however, were never released to me.  Among them are intra-agency email communications between OPR personnel, or inter-agency email communications between OPR and EOIR personnel, that I was not privy to because I was not copied on the email communications.

Pages 4367 to 4379, and 4393 to 4396, are examples of this subset of records that are improperly designated as "duplicative."

The second subset includes entirely redacted pages or heavily redacted pages that give no clue as to why OPR has designated them as "duplicative." It goes without saying that if I cannot see the contents of records marked as "duplicative" because they have been redacted, I am unable to verify that those records are actually "duplicative" of previously released records. Pages 4366, 4377, 4382, 4384, 4385, 4389, 4391, 4409, 4401 to 4414 are examples of such improperly marked "duplicative" records.

The third subset includes email communications or correspondence that were directed to me at my work email address. As you may recall, after OPR issued the Report of Investigation on September 27, 2019, I was placed on administrative leave and was discharged a year later, on September 17, 2020. Because access to my work email account was cut off in early October 2019, I did not receive correspondence that OPR transmitted to my work email address after the investigation concluded in July 2019. Pages 4390, 4391, 4403, 4404 are examples of such improperly withheld or redacted records.

The fourth subset of records are denoted as blank or non-responsive. Again, it goes without saying that if I cannot see the contents of those records, I am unable to verify that they are blank pages or contain non-responsive information.

Please note that this letter does not exhaustively identify all of the records that I believe have been improperly withheld or redacted. Later this week, I will send you a second letter identifying records that I believe have been improperly withheld or redacted on a claim of exemption. For now, I ask that you coordinate with OPR the release of the 11,116 pages of records as soon as possible.

Thank you for your assistance in resolving this time-sensitive matter.

Sincerely,

Quynh Vu Bain
Pro Se Plaintiff

**Quynh Vu Bain**



(b)(6)
(b)(6)
(b)(6)
(b)(6)

July 5, 2024
(Original letter revised July 16, 2024)

*By electronic mail transmission to joseph.carilli@usdoj.gov*

Joseph Carilli
Assistant United States Attorney
United States Attorneys Office for the
  District of Columbia, Civil Division
(b)(6)
Washington, DC  20530

Re:    <u>Bain v. U.S. Department of Justice,</u> No. 21-cv-1751 (RDM) (D.D.C. filed June 22, 2021)

Dear Mr. Carilli:

        This is the second of two letters which request that DOJ immediately release improperly withheld records to me.  The chart that begins on page 3 of this letter describes the approximately 11,000 to 12,000 pages of records that I still have <u>not</u> received, despite my repeated requests for those records over the past five to six years.  As you know, the MSPB will reinstate my mixed case appeal at the end of this month, with the expectation that I will be prepared to go forward with my appeal of the former Attorney General's decision to terminate my 29-year DOJ employment in September 2020.  OPR's obstinate refusal to release records that it claims support the termination decision is a deprivation of due process.  To avoid a miscarriage of justice, I again request that OPR immediately release the records described in this letter.

        I.      <u>Improperly Withheld Audio Recordings and Other Records of Witness Interviews</u>

        I request that DOJ provide audio recordings of all of the witness interviews that were cited or referenced in the September 27, 2019 OPR Report of Investigation.  To my knowledge, OPR interviewed 13 eyewitnesses in the Spring of 2018, including me.  The 12 other witnesses whom OPR interviewed were:

        Paul L. Knight
        Eileen P. Blessinger
        Carmen A. Boykin
        Nicolas Ahumada
        Deepali M. Nadkarni



Although by now OPR has released 11 paper transcripts of the above-named 12 witnesses, the heavily redacted paper transcripts are exceedingly difficult to read and understand. I contest the heavy redactions which, I note, do not permit DOJ to demonstrate by a preponderance of the evidence the legality of the termination decision. In addition, the paper transcripts do not appear to be official records. At times, the transcriber did not appear to understand the witnesses' testimonies very well, such that certain transcribed testimonies made little sense. Also missing from the transcripts are the transcriber's name, the date of the transcription, and the transcriber's certification of accuracy and completeness. Moreover, the paper transcripts indicate that almost all of the 11 witnesses were interviewed by telephone. Their oral testimonies were captured by audio recordings that OPR had transcribed. The transcriber was unable to transcribe certain portions of the audio files that were inaudible. The poor quality of the paper transcriptions and audio recordings is very concerning to me. Most problematic, however, is that OPR's Report of Investigation does not even cite the transcript pages but rather the audio recordings' time stamps. Consequently, certain witnesses' testimonies cannot be verified insofar as their testimonies do not appear in the paper transcripts produced by OPR.

Finally, some of the paper transcripts mention witness interviews that EOIR investigators conducted approximately one year before the same witnesses were interviewed by OPR. For example, former Assistant Chief Immigration Judge (b)(6) and former EOIR Deputy Director (b)(6) (then an attorney working in the Office of General Counsel/Labor and Relations Unit) interviewed the complaining attorneys, Paul L. Knight, Eileen Blessinger and Carmen Boykin, in the Spring of 2017. Judge Deepali also interviewed independent eyewitnesses including DHS counsel (b)(6) and court interpreter (b)(6) in the Spring of 2017, a year before OPR interviewed them. Deputy Director (b)(6) also interviewed other EOIR witnesses whose identities are not known to me at this time. The records of Judge Nadkarni's and Deputy Director Wahowiak's witness interviews were never released to me, despite my repeated requests which were made to OPR and to your office. Therefore, I request once again that the EOIR investigators' records of witness interviews be released to me as soon as possible.

II.    Improperly Withheld Paper Records

Below is a revised chart listing the records that OPR has released with improper redactions or has withheld altogether as duplicative or non-responsive records. I ask that OPR immediately release such withheld-in-full records or the unredacted portions of partially withheld records. The chart is self-explanatory, but please do not hesitate to call me if you have questions. At the bottom of the chart are additional comments concerning the documents in this chart.

2

releasing the 14,500 pages of records that it claimed comprised the records of the investigation. Because I did not in fact receive those 1,197 pages of records before July 2022, I brought this matter to the attention of AUSA Thomas Duffey. *See* email from Quynh Bain to AUSA Thomas Duffey, dated November 3, 2022 at 2:22 p.m. In response, OPR released two tranches of documents to a Box.com account that it had created for me; however, I was unable to access that account. When I requested access by email (with password protection for the digital document files). Mr. Duffey advised that the two tranches were subsequently sent by password-protected email. However, as of this date, I still have not received the records that are bates-stamped as pages 46-575, 576-1079, and 1080-1242. Therefore, I ask that OPR immediately release those records to me.

The "Never received%" denotes records that were withheld in full or in part. Approximately 8,524 pages of those records were marked as duplicative or non-responsive and were withheld in full. As noted in my June 30, 2024 letter to you, many of those allegedly duplicative records were never released to me or were improperly marked as duplicative. With respect to many of the records falling into the latter category of "improperly marked as duplicative," I was not the intended recipient of those records and thus could not have received them. Although my previous (first) letter of June 30, 2024 indicates that OPR has withheld a larger number of records falling into this category of withheld records (an estimated 11,116 pages), that number came directly from OPR's June 28, 2024 transmittal letter. Because I cannot reconcile the 11,116 number in OPR's letter with my own number of 8,524 pages, I make the request for the 8,524 pages without foregoing my request for access to the larger repository of withheld records that are identified in OPR's letter of June 28, 2024.

The 1,211 pages of records marked as exempt under Section 552a(5), (6), and (7)(C) contain heavy redactions that I intend to challenge. The claimed exemptions have deprived me of information that I need to formulate a proper response to the September 2019 OPR Report of Investigation; the January 2, 2018 Board of Immigration Appeals' decision in case 050/051; and the former Deputy Attorney General's recommendation to terminate my employment in August 2020, which the former Attorney General adopted in September 2020. As you know, these personnel matters remain pending for resolution before the district court, and my affirmatives defenses to the termination decision remain pending before the MSPB. The MSPB will reinstate my mixed case appeal on July 27, 2024. At that time, I intend to raise OPR's abysmal failure to timely process and release records that support the removal decision as a reason to cancel the removal decision.

Thank you for giving your attention and assistance to this time-sensitive matter. I look forward to your response.

Sincerely,

Quynh Vu Bain
*Pro Se* Plaintiff

9

# ATTACHMENT C

Thank you in advance for your cooperation and consideration.  Please let me know if you have any questions.  I look forward to discussing the terms of the proposed settlement agreement with you.

Sincerely,


Quynh Vu Bain
*Pro Se* Appellant

8

**Quynh Vu Bain**


_____

January 13, 2025

Anette H. Veldhuyzen
Associate General Counsel
Employee and Labor Relations
Office of the General Counsel
U.S. Department of Justice
Executive Office for Immigration Review



Re:    Appellant's Request for Production of Documents No. 1 and Documents Requested
       Through Deposition Subpoenas

Dear Ms. Veldhuyzen:

I am writing to request that the Agency produce the following documents or records, which are responsive to Request for Production of Documents No. 1.  My request for the records was made on September 11, 2024.  On November 27, 2024, the Administrative Judge ordered that the Agency produce all 4,000 pages of the records as identified in the second "Carilli letter" of July 16, 2024.  *See* Tab 92.  A copy of that letter is attached for your reference.  As of today, I still have not received the documents listed in the chart below in unredacted form.  I would appreciate your producing them by the end of this week (**Friday, January 17, 2025**), so that I could move forward with preparing the pre-hearing memorandum and for the MSPB hearing.

| **Date of Production by OPR** | **OPRF1900-105 Page Number** |
| --- | --- |
| September 2022 | 1899-1903, 1733-2401, 2402-2403, 2404-2410 |
| November 2022 | 2718-2728, 2735-2740, 2741-2752, 2809-2814, 2815-2817, 2978-2983 |
| December 2022 | 2879-2916 |
| January 2023 | 3056, 3152-3166, 3114-3151, 3888-3909, 3101-3104, 3107-3109, 3110-3112 |
| February 2023 | 2809-2810, 3167-3173 |
| March 2023 | 2977, 2980, 2983, 2984-2991, 2992 |
| June 2023 | 3201-3204 |
| June 2024 | 2404-2410, 2895, 2900-2904, 2991-2994, 3311-3315 |

In addition, I would like to request the following documents or records, which came to my attention during the depositions of Agency witnesses (b)(6) on October 24, 2024; (b)(6) on October 29, 2024; and (b)(6) on October 29, 2024.

For comparison purposes, please produce all information concerning the eight anonymized immigration judge profiles whom EOIR designated as comparators in immigration judge Quynh Bain's Notice of Proposed Removal.  Please also provide all information concerning the one anonymized non-immigration judge profile whom EOIR designated as a comparator and whose misconduct, Mr. (b)(6) testified, was most analogous to Judge Bain's alleged misconduct, for purposes of evaluating EOIR's proposal to terminate Judge Bain's employment.

For comparison purposes, please produce all information concerning the five immigration judges for whom EOIR proposed disciplinary action ranging from suspension to removal during the period 2018 to 2024.  (b)(6) and (b)(6) discussed these five individuals during their depositions.  The five are Immigration Judges (b)(6) , (b)(6) , (b)(6) y (b)(6) , (b)(6) , and a fifth individual whose name Mr. (b)(6) could not recall.  Please produce the recommendations or proposals for disciplinary action that EOIR prepared, even if those recommendations or proposals were never forwarded to the Office of the Deputy Attorney General for consideration.

For comparison purposes, please produce all information concerning the one immigration judge whom EOIR proposed to terminate for conduct unbecoming an immigration judge that Mr. Weinsheimer discussed during his deposition.

For comparison purposes, please produce all information concerning the OPR or OIG investigation of former Immigration Judges (b)(6) and (b)(6) , including the outcome of the investigations and any disciplinary proposals that were made.  During their depositions, Ms. (b)(6) and (b)(6) acknowledged that (b)(6) and (b)(6) were referred to OPR for an investigation.

Finally, please produce any and all memoranda that DOJ used to refer a DOJ attorney to his or her state bar for disciplinary purposes.  Mr. (b)(6) mentioned two memoranda during his deposition.  One memorandum was issued by former Deputy Attorney General (b)(6) sometime in 2015, and the other memorandum was issued more recently, sometime in 2023.

Thank you for your attention and cooperation.  I appreciate your assistance.

Sincerely,

Quynh Vu Bain

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WASHINGTON REGIONAL OFFICE

QUYNH VU BAIN,
      Appellant,

            v.

DEPARTMENT OF JUSTICE,
      Agency.

DOCKET NUMBER:
DC-0752-21-0035-I-8

AJ: Lindsay Young Harrell
Date: March 13, 2025

### AGENCY QUESTION ON MSPB JURISDICTION

On March 7, 2025, the parties met for a pre-hearing conference and Agency counsel expressed concern regarding possible lack of jurisdiction based on the Merit Systems Protection Board's ruling in *Davis-Clewis v. Department of Veterans Affairs*, 124 LRP 9083 (MSPB 2024) in which it held that the MSPB lacks authority to address constitutional challenges regarding removal protections for its administrative judges.

Upon receipt of an appeal, the MSPB administrative judge must first address the question of jurisdiction. If there is no jurisdiction, the case will be dismissed without an adjudication on the merits of the employee's claim. A finding of jurisdiction is a legal conclusion that is not subject to stipulation. *McCarty v. Environmental Protection Agency*, 108 LRP 4990 (MSPB 2008). MSPB's jurisdiction is always before the board and may be raised by either party or *sua sponte* by the board at any time during a board proceeding. *Poole v. Department of the Army*, 112 LRP 11790 (MSPB 2012); *Int'l Elec. Tech. Corp. v. Hughes Aircraft Co*., 476 F.3d 1329 (Fed. Cir. 2007). An appellant bears the burden of proving by preponderant evidence that his appeal is within the board's

jurisdiction. *Bambl v. Department of the Treasury*, 110 LRP 1643 (MSPB 2010), citing 5 CFR 1201.56 (a)(2)(i).

Normally, the Merit System Protection Board's original jurisdiction extends over:

(a) Actions brought by the Special Counsel under 5 U.S.C. §§ 1214, 1215, and 1216;

(b) Requests, by persons removed from the Senior Executive Service for performance deficiencies, for informal hearings; and

(c) Actions taken against administrative law judges under 5 U.S.C. § 7521.

[54 FR 53504, Dec. 29, 1989, as amended at 62 FR 66814, Dec. 22, 1997]

However, recently the President of the United States, Donald Trump, has indicated that the president has the right to treat inferior officers of the Executive Branch as at-will employees. "[T]the judicial may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion." *Dakota Central Telephone Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919). "How the President chooses to exercise the discretion . . . is not a matter for our review." *Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp.*, 333 U.S. 103 at 114 (1948). As the Supreme Court stated in *United States v. George S. Bush & Co.*, 310 U.S. 371 at 380 (1940) "no question of law is raised when the exercise of [the President's] discretion is challenged." *See also Article: Faithful Execution: Where Administrative Law Meets the Constitution*, 108 Geo. L.J. 1 (October 2019) .

The Supreme Court of the United States has stated, "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 203 (2020). "Because no single person

could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Id*. at 203-04.

The Attorney General is the President's Agent within the Department of Justice. If the President has at-will removal power, so does the Attorney General. Judge Bain was not an administrative law judge (ALJ). She was an attorney advisor appointed as an immigration judge, an administrative judge, not an ALJ. Under 5 U.S.C. § 7511, Appellant is neither an excepted service employee or a competitive service employee, but a specially appointed administrative judge who serves at the will of the President and by extension, the Attorney General. Therefore, the MSPB, does not have Independent Right of Action (IRA) jurisdiction or appellate jurisdiction..

Finally, if the MSPB does not have jurisdiction over its own AJs to hear questions involving constitutional law, the MSPB also should not have jurisdiction over other Agencies' AJs when it comes to hearing constitutionally derived rights such as due process rights (one of Appellant's affirmative defenses). The Agency asks that the Honorable Administrative Judge Harrell clarify jurisdiction of this matter.

Respectfully submitted,
**/s/ Anette H. Veldhuyzen**
Anette H. Veldhuyzen
Attorney Advisor
Employee and Labor Relations Unit
Office of the General Counsel
Executive Office for Immigration Review
(b)(6)

(b)(6)
(b)(6)

**CERTIFICATE OF SERVICE**

BAIN ATTACHMENT TO MOTION FOR SANCTIONS

I certify that on March 13, 2025, the foregoing Agency Question on Jurisdiction was sent via MSPB portal:

ADMINISTRATIVE LAW JUDGE
Lindsay Young Harrell

COMPLAINANT
Quynh Vu Bain, pro se
Served via email registered with the MSPB

/s/ **Anette H. Veldhuyzen**
Anette H. Veldhuyzen
Attorney Advisor
Employee and Labor Relations Unit
Office of the General Counsel
Executive Office for Immigration Review



UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

QUYNH VU BAIN,                                      DOCKET NUMBER
                                                   DC-0752-21-0035-I-8
                    Appellant,

          v.

DEPARTMENT OF JUSTICE,                             DATE: November 27, 2024

                    Agency.

**SUMMARY OF STATUS CONFERENCE AND ORDER GRANTING IN
PART AND DENYING IN PART APPELLANT'S MOTION TO COMPEL**


On November 5, 2024, I held a telephonic status conference with the parties in the above-captioned appeal.[1]  Present on the call were the appellant, Quynh Vu Bain, and the agency representative, Annette Veldhuyzen.  We discussed the following matters:

Appellant's Motion to Compel

On October 17, 2024, the appellant filed a "Renewed Emergency Motion for Status Conference."  MSPB Docket No. DC-0752-21-0035-I-8 (I-8), Tab 62. Therein, the appellant argued for an order compelling the agency to respond in full to her Request for the Production of Documents (RFPD) No. 1., which sought documentation related to the agency's investigation into the appellant's alleged misconduct, which was conducted by the agency's Office of Professional Responsibility (OPR).  Although the parties agree that the breadth of those investigative documents may be approximately 14,500 pages or more, the appellant's RFPD No. 1 sought a subset of those documents as enumerated in a

---

[1] The conference was scheduled to be a prehearing conference.  *See* I-8 Appeal File, Tab 4.  However, due to the discovery issues described herein, the prehearing conference will be postponed.

July 5, 2024 letter[2] to AUSA Joseph Carilli ("the Carilli letter").[3]  *See* I-8, Tab 64 at 7-15.  The appellant has asserted that the documents listed in the Carilli letter are approximately 3,500 to 4,000 pages of documentation that was either previously provided to her in "heavily redacted" format, or was never provided to her.  The appellant also asserts that these documents include, or should include, the written transcripts of approximately 11 or 12 interview hearings which were conducted as part of the OPR investigation.

Also on October 17, 2024, I issued an Order on Outstanding Discovery Motions which addressed the appellant's motion to compel.  I-8, Tab 69.  Therein, I noted the appellant's motion was deficient because it did not provide the agency's response to RFPD No.1.  *Id.* at 3.  I explained that the appellant could file a revised motion to compel so long as it was received within the 10-day time period for filing a motion to compel pursuant to 5 C.F.R. § 1201.73(d)(3).  *Id.* at 3.  I further noted that the conclusion of that 10-day time period appeared to be the following day, Friday, October 18, 2024.  *Id.* at 3.

On Monday, October 21, 2024, the appellant filed a "Motion to Compel Production of Agency Records and Motion to File One Business Day Out of Time."  I-8, Tab 70.  Therein, the appellant renewed her arguments with respect to RFPD No. 1, but also urged that I compel the agency to produce responsive documents to RFPD Nos. 2, 6, 7, 3, 5, and 8-15.  *See id.*  These additional RFPDs were not mentioned in the appellant's original motion filed October 17th.  I-8, Tab 62.

With respect to the timeliness of the appellant's motion, the appellant acknowledged her Motion to Compel was filed one day late.  *See* I-8, Tab 70 at 5, n.1.  The appellant referenced illness and confusion related to the exchange of

---

[2] The letter was apparently revised on July 16, 2024, as stated on its face.  *See* I-8, Tab 64 at 7.

[3] The appellant sent this letter to Mr. Carilli under the auspices of her U.S. District Court complaint, which was then (and is still currently) pending.  *See* I-8, Tab 64 at 7.

numerous emails between the parties.  *See id*.  The agency opposed the appellant's request to file the motion out of time, asserting the appellant's arguments were misleading and failed to provide support for her request.  *See* I-8, Tab 76 at 6-7.

I find the appellant has failed to demonstrate good cause for her untimely filing of her Motion to Compel, with the exception of RFPD No. 1.  As noted by the agency in its response, the appellant's motion encompassed far more than her original motion, which only regarded RFPD No. 1, and in attempting to broaden the scope of her original motion, the appellant exceeded the established time limitation for filing a motion to compel.  *See* I-8, Tab 69 at 3; Tab 70 at 5, n.1.  Accordingly, the appellant's Motion to Compel is DENIED with respect to all parts other than RFPD No. 1, which I will permit despite its untimeliness in the interest of fairness, given that RFPD. No. 1 was the one aspect of the new Motion to Compel that was carried over from the original.

As discussed with the parties during the status conference, I find the agency has not demonstrated that it has provided the appellant with all the documentation it has which is relevant to RFPD No. 1.  Thus, I GRANT the appellant's Motion to Complet with respect to RFPD No. 1 and ORDER the agency to provide the relevant documents by **December 6, 2024**.  I discussed with the parties what this would entail for a considerable amount of time during the conference.  First, the agency's production of documents can be limited to the 3,500 – 4,000 pages identified in the Carilli letter, as well as copies of all witness interviews (both written transcripts and audio recordings) which were referenced in the OPR Report of Investigation regarding the appellant.  *See* I-8, Tab 64 at 7-14.  The agency is authorized to utilize redaction only where appropriate (e.g., to protect the names and identities of persons appearing before the appellant regarding immigration-related matters).  The parties are reminded that while the appellant's Carilli letter originated as a FOIA request, she has requested the same

4

documents in this Board appeal, and thus the Board's discovery process and discovery regulations govern.  *See* 5 C.F.R. §§ 1201.71-75.

If the agency fails to comply with this Order or if the appellant, upon review of the agency's further document production regarding RFPD No. 1, the appellant believes the agency has not complied with this Order, she may file a Motion for Sanctions on or before **December 20, 2024**.  If the appellant files such a motion, the agency will have 10 days to file a response.

**Based on this ongoing discovery issue, the previously scheduled hearing and prehearing conference in this appeal are CANCELLED and will be rescheduled at a later date**.  Additionally, I note that the agency filed a prehearing submission while the appellant did not, due to her pending motion to compel.  A new date for prehearing submissions will also be established subsequent to the resolution of this discovery issue; the agency will have the opportunity to amend its prehearing submission or rely on that which it has already filed.  *See* I-8, Tab 80.

Appellant's Request for Further Discovery

During the conference, the appellant also raised an issue with two of the agency's proposed witnesses contained in its prehearing submission, Paul Knight and Carmen Boykin.  *See* I-8, Tab 80 at 4-6.  I informed the parties that at this time, I am not proceeding with the prehearing conference and, thus, I will not be making rulings on any proposed witnesses.  The appellant also argued she should be permitted to depose or otherwise engage in further discovery with respect to Mr. Knight and Ms. Boykin, and suggested she did not expect the agency to call them as potential witnesses.  Given that Mr. Knight and Ms. Boykin's involvement in the issues in this appeal (they were the private attorneys who filed complaints regarding the appellant's alleged actions as an Immigration Judge) have been well-known to the parties throughout this litigation, the appellant is not permitted to engage in new discovery regarding these individuals at this late

juncture.  A potential exception to this may be if further document production from the agency reveals new information relating to Mr. Knight and/or Ms. Boykin with regards to which the appellant was not previously aware and could not have anticipated.

## FURTHER STATUS CONFERENCE

I will hold a further status conference with the parties on **January 9, 2025**, **at 11:30 a.m. ET**.  To join this conference, the parties must dial **347-690-2327** and enter Participant Code **706-086-726** at the prompt.  During this conference, I will address any outstanding motions and will aim to establish a new hearing date (and related dates/deadlines) in this appeal.

I am aware that in the time that has passed since the status conference and the issuance of this summary, the parties have filed further motions.  Those will be considered in a separate order and/or at the January 9th status conference.

## SUMMARY

The foregoing is a summary of conversation which took place on November 5, 2024, and not a verbatim reproduction.  If either party objects to the contents of this summary, they must file a written objection within 5 days of the date of this summary.  Likewise, the parties have 10 days from the date of this summary to file a motion for reconsideration of any ruling set forth herein.


FOR THE BOARD:        _Lindsay Young Harrell_
                      _____
                      Lindsay Young Harrell
                      Administrative Judge

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

QUYNH VU BAIN,                          |
                                        |    Docket No. DC-0752-21-0035-I-8
                Appellant,              |
                                        |    Hon. Lindsay Young Harrell
        v.                              |
                                        |    Date:  March 4, 2025
U.S. DEPARTMENT OF JUSTICE, et al.      |
                                        |
                Agency.                 |


**APPELLANT'S PRE-HEARING MEMORANDUM**

The Agency has failed to demonstrate by a preponderance of the evidence that removal of Appellant from federal service or referral of Appellant to her state bars is warranted.  For the reasons stated in the accompanying Statement of Undisputed Material Facts, Appellant respectfully requests that the MSPB vacate and rescind the removal decision and order appropriate relief.

Dated:  March 4, 2025

Quynh Vu Bain
*Pro Se* Appellant

## <u>TABLE OF CONTENTS</u>

I.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . 3

    A.     **Appellant Became The Subject of Third-Party Complaints** . . . . . . . . . . . . .. 5

    B.     **Appellant's Response To The Knight Complaints.** . . . . . . . . . . . . . . . . . . . . . 8

    C.     **EOIR Referred Appellant to OPR for an Investigation** . . . . . . . . . . . . . . . . .10

    D.     **OPR Opened An Inquiry Into The March 2017 Knight Complaints.** . . . . . . .11

    E.     **EOIR Proposed To Terminate Appellant's Employment.** . . . . . . . . . . . . . . . 15


II.    **THE REMOVAL DECISION RELIED ON INFORMATION THAT THE AGENCY REFUSED TO PRODUCE IN A TIMELY FASHION, THUS PREVENTING APPELLANT FROM DEFENDING AGAINST REMOVAL.** . . . . . . . . . . . . . . . . .18

III.   **THE AGENCY FAILED TO PROVE THE CHARGES OF REMOVAL.** . . . . . . . 20

    A.     **The Evidentiary Record Does Not Support A Finding That Appellant Exhibited A Lack of Candor During The OPR Investigation.** . . . . . . . . . . . . 20

    B.     **The Evidentiary Record Does Not Support A Finding That Appellant Exhibited Conduct Unbecoming An Immigration Judge.** . . . . . . . . . . . . . . . .25

    C.     **The Agency's Legal Conclusions Are Manifestly Contrary to Law.** . . . . . . . 32

    D.     **Referral of Appellant To Her State Bars For Further Disciplinary Proceedings Would Be Manifest Injustice.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    E.

IV.    **THE AGENCY FAILED TO PROPERLY WEIGH THE <u>DOUGLAS</u> FACTORS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

V.     **THE REMOVAL ACTION WAS A DISCRIMINATORY PROHIBITED PERSONNEL PRACTICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

VI.    **THE REMOVAL ACTION WAS A RETALIATORY PROHIBITED PERSONNEL PRACTICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

VII.   **THE REMOVAL ACTION WAS WHISTLEBLOWER RETALIATION.** . . . . . . . 46

VIII.  **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

2

| | |
|---|---|
| **From:** | Knight, Paul L. |
| **To:** | Gerardo, Leslie A. (OPR) |
| **Subject:** | Administrative Judge Bain |
| **Date:** | Monday, December 11, 2017 4:40:39 PM |

Leslie Ann:

I am looking to you for suggestions on what to do with AJ Bain. I tried to call you, but was unsuccessful and the message would have been too long for voicemail.

Both Carmen Boykin and Eileen Blessinger are both having matters that have both come up on AJ Bain's calendar and which are coming up on her calendar in the near future. We are back to the same old problems. For example, Eileen Blessinger entered her appearance on behalf of a client on October 3, 2017. On October 12, 2017, she filed an Asylum petition. This date is critical because it triggers when the client can seek a work permit. In order to avoid confrontations with AJ Bain, Ms. Blessinger had an associate appear for her in the client's matter which came up before AJ Bain on November 21, 2017.

At the November 21st hearing, Bain claimed that the October 12th Asylum petition was null and void because Ms. Blessinger had not entered her appearance prior to filing the petition—which of course was not accurate and it is my understanding that AJ Bain was so told. Bain then stated she would accept the Asylum petition for filing as of November 21st—which seriously penalizes Ms. Blessinger's client. Then, AJ Bain did not have the Asylum petition filed on November 21st so there is no calendaring clock triggered—further penalizing Ms. Blessinger's client. (I can forward to you the October 3, 2017 entry of appearance and the time stamped October 12, 2017 Asylum petition—if you want them. There are also CD's of the November 21st proceeding which I can forward). (I am told that the courtroom clerks also complained to the Clerk about AJ Bain's conduct on November 21st for making them witnesses but I do not have the full details).

Both Boykin and Blessinger have been filing motions to recuse which AJ Bain keeps sidestepping or denying. I know Ms. Blessinger has a trial scheduled before AJ Bain in early January 2018.

In the past I turned to Admin. AJ Nadkarni, but since she has referred this matter to OPR, I am reaching out to you for suggestions. Ms. Blessinger and Ms. Boykin are concerned that their clients are being prejudiced in retaliation for the complaint they filed against AJ Bain.

Please give me a call at 2(b)(6)

Paul


**Paul L. Knight**
Attorney at Law
NOSSAMAN LLP



BAIN ATTACHMENT TO MOTION FOR SANCTIONS

1       Am I able to step out to try calling her, as well, or did you want me to just wait for

2  the paralegal?

3  JUDGE TO MS. BLESSINGER

4       No.  And you are unprofessional --

5  MS. BLESSINGER TO JUDGE

6       Thank you for telling me that, I appreciate it --

7       (Whereupon, the recording was stopped).

8  ASSISTANT COUNSEL GERARDO TO MS. BLESSINGER

9       Okay.  Now I want to stop there, and just for the tape, this is the February 1st,

10  2017 hearing starting at about 2444 on the tape.  Could you hear there where she says

11  we're off the record?  Okay.  And then when you come back on the record, you say

12  thank me -- thank you for telling me that.

13  MS. BLESSINGER TO ASSISTANT COUNSEL GERARDO

14       She told me I was unprofessional.

15  ASSISTANT COUNSEL GERARDO TO MS. BLESSINGER

16       That's what I wanted to ask you, what, what transpired during --

17  MS. BLESSINGER TO ASSISTANT COUNSEL GERARDO

18       I don't remember the exact -- I wish I could tell you exactly what happened.  I

19  know that there were times that she -- I mean, I'm sure this is probably similar where

20  she went off the record and started yelling at me.  Thai Tran was in the courtroom that

21  day.  She was the prosecutor.  I doubt either of us really remember exactly what was

22  said, but I do recall her telling me how unprofessional I was, and I wrote on here that

23  she said it wasn't fair for me to spring that on the court today.

24  ASSISTANT COUNSEL GERARDO TO MS. BLESSINGER

25       To spring the?

BAIN ATTACHMENT TO MOTION FOR SANCTIONS


OPR "[t]here was tension in their tones."[41]  From ███ perspective, the interaction between IJ Bain and ███ "didn't seem overly unusual."[42] ███ recalled, however, that after the hearing, ███ told ███ "I have never been treated like this before."[43]



(b)(6) per DHS

In her Written Response, IJ Bain denied that she had gone ███ to ███ or admonish ███ and initially claimed that she had gone ███ just once during the ███ hearing, for a 10-minute break.[46]  IJ Bain told OPR, "[t]here was no ███ discussion of any kind that could support the claim that I had improperly ███ ███."[49]  Because the recording of the ███ hearing established that IJ Bain in fact took two breaks, and thus contradicted IJ Bain's Written Response, OPR asked IJ Bain to supplement her Written Response with an explanation as to why she claimed she had gone ███ only once during the proceeding.  OPR also requested that IJ Bain describe the content of any conversations or discussions with counsel during both ███ segments.  Although OPR had brought to IJ Bain's attention the fact that there had been two ███ breaks during the ███ hearing, in her Second Supplemental Written Response, IJ Bain continued to insist that she had gone ███ only once, and had not gone ███ approximately 25 minutes into the hearing, as indicated on the DAR annotation:

---

41      *Id.* at 07:42-08:10.

42      *Id.* at 06:44-06:58.

43      *Id.* at 08:32-08:52.

44      ██ Interview at 02:20-02:23.

45      *Id.* at 12:00-12:18.

46      *Id.* at 12:35-12:53.

47      *Id.* at 13:08-13:15.

48      Written Response at 27.  IJ Bain recessed the proceedings at 1:08:25 for a brief bathroom break, which appears to be the break to which she referred in her Written Response.  DAR ███ at 1:08:25; ███ Interview at 29:00-29:05.  There is no indication in the record, and ███ has not claimed, that IJ Bain addressed her during this recess.

49      Written Response at 27.

11

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000036

OPR "[t]here was tension in their tones."[41]  From Haller's perspective, the interaction between IJ Bain and Blessinger "didn't seem overly unusual."[42]  Haller recalled, however, that after the hearing, Blessinger told Haller, "I have never been treated like this before."[43]

(b)(6) did not recall IJ Bain going off the record during the February 1, 2017 hearing.[44] However, (b)(6) remembered IJ Bain telling Blessinger that presenting the competency issue at the last minute was "unfair" to the court and to the government, because no one was prepared to address the issue.[45]  When asked by OPR whether, in her opinion, there was anything inappropriate about IJ Bain communicating this sentiment to Blessinger, (b)(6) responded, "[IJ Bain] certainly seemed upset and . . . was critical, but there are . . . many times where judges are critical when they feel as if an attorney is doing something inappropriate or disrespectful."[46]  (b)(6) did not recall IJ Bain's behavior as being out of the ordinary given the circumstances; (b)(6) told OPR, "There was nothing that shocked me."[47]

In her Written Response, IJ Bain denied that she had gone off the record to berate or admonish Blessinger, and initially claimed that she had gone off the record just once during the February 1, 2017 hearing, for a 10-minute break.[48]  IJ Bain told OPR, "[t]here was no off-record discussion of any kind that could support the claim that I had improperly berated or chastised" Blessinger.[49]  Because the recording of the February 1, 2017 hearing established that IJ Bain in fact took two breaks, and thus contradicted IJ Bain's Written Response, OPR asked IJ Bain to supplement her Written Response with an explanation as to why she claimed she had gone off the record only once during the proceeding.  OPR also requested that IJ Bain describe the content of any conversations or discussions with counsel during both off-the-record segments.  Although OPR had brought to IJ Bain's attention the fact that there had been two off-the-record breaks during the February 1, 2017 hearing, in her Second Supplemental Written Response, IJ Bain continued to insist that she had gone off the record only once, and had not gone off the record approximately 25 minutes into the hearing, as indicated on the DAR annotation:

---

[41]    *Id.* at 07:42-08:10.

[42]    *Id.* at 06:44-06:58.

[43]    *Id.* at 08:32-08:52.

[44]    Tran Interview at 02:20-02:23.

[45]    *Id.* at 12:00-12:18.

[46]    *Id.* at 12:35-12:53.

[47]    *Id.* at 13:08-13:15.

[48]    Written Response at 27.  IJ Bain recessed the proceedings at 1:08:25 for a brief bathroom break, which appears to be the break to which she referred in her Written Response.  DAR Feb. 1, 2017 at 1:08:25; Blessinger Interview at 29:00-29:05.  There is no indication in the record, and Blessinger has not claimed, that IJ Bain addressed her during this recess.

[49]    Written Response at 27.

**EOIR 12**

complaints against immigration judges.[437]  IJ Bain claimed that she had concerns about the new
procedure which she articulated to then-ACIJ Mary Beth Keller.[438]  IJ Bain, however, told OPR
that she did not receive a copy of the complaint protocol from OCIJ until approximately August
2017.[439] (b) (5)



(b) (5)                                                    [441] (b) (5), (b) (6), (b) (7)(C)

In these circumstances, OPR finds that IJ Bain's claimed
unfamiliarity with the process for resolving complaints against immigration judges does not justify
her decision to incorporate a response to (b) (6) Complaint into the (b) (6), (b) (7)(C) denying the
(b) (6), (b) (7)(C).

Based on its investigation and by a preponderance of the evidence, OPR found each of IJ
Bain's explanations for combining her response to the (b) (6) Complaint with her analysis of the
(b) (6), (b) (7)(C) issue unconvincing.[442]  OPR concludes that IJ Bain had no substantial purpose for
incorporating her response to the (b) (6) Complaint into the (b) (6), (b) (7)(C) other than to cause
(b) (6), (b) (7)(C), and (b) (6), (b) (7)(C) embarrassment.  The decision to attack the credibility
of these individuals in the context of a court order, rather than confining a credibility discussion to
a submission made directly to the ACIJ, magnified the harmful impact of IJ Bain's false,

---

[437]    Written Response at 6-7.

[438]    *Id.* at 9.

[439]    *Id.* at 9 n.3.

[440]    Practice Manual § 1.3(c).

[441]    Written Response at 16.

[442]    In *In re Comfort*, 284 Kan. 183, 193, 159 P.3d 1011, 1020 (2007), the Kansas Supreme Court analyzed
Kansas Rule of Professional Conduct 4.4, which is identical to New York Rule 4.4.  In determining whether the rule
had been violated, the court explained that although a lawyer's subjective motive is relevant, "[a] lawyer cannot escape
responsibility for a violation based on his or her naked assertion that, in fact, the 'substantial purpose' of conduct was
not to 'embarrass, delay, or burden' when an objective evaluation of the conduct would lead a reasonable person to
conclude otherwise."

F19-00105 - 003283



[465] IJ Bain failed in her obligation under the Ethics Guide to conduct the proceedings in a dignified, courteous, and professional manner.[466]

OPR did not find evidence that IJ Bain violated the Ethics Guide purposefully or knowingly.  OPR did find, however, that IJ Bain knew or should have known that her conduct violated the Ethics Guide and was objectively unreasonable under the circumstances. Accordingly, OPR concludes that IJ Bain committed reckless misconduct.[467]

---



[462]  (b)(6) per DHS

[463]  OPR did not find by a preponderance of the evidence that IJ Bain was biased against ▮ or her client, or that IJ Bain acted with impermissible prejudice towards them.

[464]  (b)(6) per DHS

[465]  BIA Opinion at 2.

[466]  OPR separately considered whether IJ Bain's decision to go ▮ during the ▮ hearing violated a clear and unambiguous rule of conduct.  The regulations governing maintenance of the record in immigration proceedings contemplate occasional ▮ dialog and do not specify the circumstances in which such dialog would be inappropriate. (b) (5), (b) (6), (b) (7)(C) ▮ Although remaining ▮ while addressing ▮ might have been preferable, IJ Bain did not exhibit such poor judgment in this respect that OPR considers her conduct as in marked contrast to the action the Department would reasonably expect an attorney to take.

[467]  IJ Bain's interaction with ▮ during the ▮ hearing lacked similar indicia of hostility. Based on a review of the DAR, OPR concludes that IJ Bain's treatment of ▮ during the hearing was appropriate to the circumstances. (b) (5), (b) (6), (b) (7)(C) ▮ OPR notes that EOIR has an established procedure for reporting misconduct by immigration court practitioners, and that the better course of conduct would be for an immigration judge to raise

F19-00105 - 003287

BAIN ATTACHMENT TO MOTION FOR SANCTIONS                    000040