UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————

QUYNH VU BAIN,

        Plaintiff,

        v.

U.S. DEPARTMENT OF JUSTICE, et al.

        Defendants.

—————————————————————

Case No. 21-cv-1751 (RDM)


**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR A PROTECTIVE ORDER AND TO EXTEND THEIR DISCOVERY DEADLINE, AND COUNTER-MOTION FOR RULE 37(a) SANCTIONS**

On February 24, 2026, two days before the close of discovery in this five-year-old case, Defendants moved for a protective order that they claim is necessary to protect confidential and sensitive information that has come to light in this litigation. Then, on February 26, 2026 – the day discovery closed, Defendants moved to extend their discovery deadline by an additional 30 to 60 days, ostensibly to complete discovery and to give the Court and Plaintiff time to consider the motion for protective order.

While Plaintiff agrees that a protective order should be in place, application of the protective order would raise three concerns. First, a protective order potentially conflicts with an MSPB administrative judge's November 2024 record disclosure order. Second, the order is unenforceable with respect to information that Defendants have already released into the public domain. Third, the order will unnecessarily delay the completion of this five-year-old proceeding, to Plaintiff's further detriment. Fourth, in light of Defendants' failure to respond to Plaintiff's discovery requests, their spoliation of evidence, and their willful disobedience of this Court's and

the MSPB's disclosure orders, she respectively requests that the Court deny Defendants' motion to extend their discovery deadline. Instead, the Court should impose sanctions under Rule 37(a) of the Federal Rules of Civil Procedure.

### A.    Background

Plaintiff respectfully states the following, which is based on her first-hand knowledge and on information she obtained as of the close of discovery on February 26, 2026. Plaintiff certifies that the information contained in this memorandum is true and correct to the best of her knowledge.

1.    On September 17, 2020, the former Attorney General of the United States signed a decision that terminated Plaintiff's employment in the U.S. Department of Justice after 29 years of exemplary public service. At the time of her wrongful termination, Plaintiff had been serving as an immigration judge in two Northern Virginia immigration courts for 12 years. She consistently received satisfactory performance ratings and had no prior disciplinary records that could have justified the removal action.

2.    The removal action was based on a DOJ Office of Professional Responsibility ("OPR") investigation into two complaints of judicial misconduct that two immigration bar attorneys, Eileen P. Blessinger and Carmen A. Boykin, and their malpractice defense attorney, Paul L. Knight, filed against Plaintiff in March 2017. At the conclusion of the investigation in September 2019, OPR issued a Report of Investigation finding that Plaintiff had committed professional misconduct in conducting a single court hearing in February 2017 involving attorney Blessinger and that she lacked candor in her dealings with OPR.

3.    Based on the findings and conclusions set forth in the OPR Report, the former United States Attorney General terminated Plaintiff's employment in September 2020. The removal decision further authorized the Department of Justice to refer Plaintiff to her state bars for

further disciplinary proceedings, once she has exhausted all avenues of appeal, including an administrative appeal to the Merit Systems Protection Board ("MSPB").

4.      At the time of her removal, OPR had produced to Plaintiff only its Report of Investigation and approximately 450 pages of records that OPR had compiled during the investigation.  When Plaintiff requested specific records that OPR cited, discussed, or quoted in the Report, OPR flatly refused to produce them, forcing Plaintiff to file the instant action to gain access to those records.  *See* ECF No. 16 (Amended Complaint).

5.      Count I of the Amended Complaint asserts a record access claim that is grounded in the record access provisions of the Freedom of Information Act ("FOIA") and Privacy Act.  *See* 5 U.S.C. §§ 552a(d)(1) & (g)(1)(B).  The Court has recognized the record access claim as a viable cause of action.  *See* ECF No. 56 at 60.

6.      In addition, the Amended Complaint asserts an invasion of privacy claim under the Privacy Act, 5 U.S.C. § 552a(e), which alleges that Defendants wrongfully disclosed Plaintiff's privacy-protected adverse personnel records to unauthorized individuals, who then used such records to harm her professional reputation and to bring about her removal.  For the privacy invasion claim, Plaintiff sought the remedy of a record amendment under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A).  The Court has recognized the privacy invasion claim as actionable.  *See* ECF No. 56 at 60.

7.      Finally, the Amended Complaint asserts two additional causes of action as her affirmative defenses to the removal action, employment discrimination (Count II) and whistleblower retaliation (Count III).  The Court has recognized 10 of the claims as timely exhausted and plausibly stated.  *See* ECF No. 56 at 60.

8.      To facilitate discovery, the Court specifically identified the three complaining

attorneys by name in its December 23, 2022 decision and order, which disposed of Defendants' partial motion to dismiss. *See* ECF No. 56 at 4-7. The Court also identified by name or by title five or six responsible agency officials. *See id.* at 4-13.

9.      Through their Answer to Plaintiff's Amended Complaint, Defendants have conceded that the Court has jurisdiction under the Privacy Act, 5 U.S.C. § 552a(d)(1)-(3) & (g)(1)(A), to consider her record amendment claim. See ECF No. 118 at 3-4 at ¶ 12.

10.     The Court's December 23, 2022 decision and order set the stage for discovery in this civil action by identifying the viable causes of action, potential agency and non-agency witnesses, and the scope of discovery. *See* ECF No. 56.

11.     Earlier, on July 25, 2022, the Court ordered Defendants to begin processing and releasing to Plaintiff approximately 14,500 pages of OPR records of the investigation. By the time OPR completed its record processing two years later, in June 2024, it had released only 4,660 heavily redacted pages, with some of the pages redacted or withheld in full. OPR withheld an additional 11,000 pages on a claim that those pages were duplicative of previously released OPR records or were non-responsive to Plaintiff's August 2019 FOIA-Privacy Act request.

12.     Despite claiming that it had completed processing of the records in June 2024, OPR did not produce a Vaughn index, as required by this Court's July 5, 2021 Standing Order. *See* ECF No. 5 at 4. OPR would not produce a Vaughn index until January 16, 2026, five weeks before discovery closed on February 26, 2026. The Vaughn index only covers the approximately 4,660 pages of heavily redacted OPR records. As of today, OPR has produced 3,000 unredacted pages out of 4,660 pages. But OPR has continued to withhold the 11,000 pages that it claims are duplicative or non-responsive.

13.     Over the past five years of litigation, Plaintiff has come to this Court and to the

MSPB to request relief from Defendants' improper withholding of OPR investigative records. She needed those records to contest the legality of her removal, before and after it occurred.

14.    On October 19, 2020, within 30 days of her removal, Plaintiff filed a mixed case appeal with the MSPB. Among other things, Plaintiff asserted that Defendants violated her statutory and procedural due process rights in the removal action, when they refused to produce all of the evidence on which they based her removal.

15.    As soon as her administrative appeal was filed, Defendants moved to dismiss the MSPB appeal, claiming that under the United States Supreme Court's decision in *SEC v. Lucia*, 585 U.S. 237 (2018), the MSPB administrative judge assigned to hear the appeal had not been duly appointed under Article II of the United States Constitution and thus lacked the Constitutional authority to entertain the appeal. The MSPB agreed and granted Defendants' motion to dismiss without prejudice to reinstatement every six months. Thereafter, the MSPB dismissed Plaintiff's appeal multiple times between November 2020 and October 2022, when the MSPB lacked a quorum to operate as a fully functioning administrative agency.

**B.    Discovery In The Parallel MSPB Proceeding**

16.    After the MSPB regained a quorum and reinstated Plaintiff's mixed case appeal, she returned to that forum in August 2024 to conduct administrative discovery and to further exhaust her affirmative defenses to the removal action.

17.    In MSPB discovery, Plaintiff again requested production of the 14,500 pages of OPR records that, in July 2022, this Court had ordered Defendants to process and release to Plaintiff. When Defendants refused to produce the documents in unredacted form, Plaintiff moved to compel production.

18.    On November 27, 2024, the MSPB administrative judge assigned to hear Plaintiff's

appeal ordered OPR to produce 4,660 of the 11,000 pages, without redactions. *See* Addendum 28-32. However, as of March 19, 2025, when the MSPB proceeding was concluded, OPR had produced only 3,000 unredacted pages. OPR withheld the remaining 1,660 pages without explanation and without seeking a protective order from the MSPB administrative judge.

19.    In reviewing the 3,000 unredacted pages, Plaintiff made the shocking discovery that certain OPR records contained deliberately fabricated claims about Plaintiff, while others had been spoliated, or altered, in a manner that supported OPR's findings of professional misconduct.

20.    The spoliated evidence is an OPR interview transcript of attorney Blessinger. *See* ECF No. 53-31 at EOIR 88 (Sealed). Plaintiff was given a copy of that transcript in February 2020, when EOIR proposed to terminate her employment. The February 2020 version of the transcript shows that at one point during the February 1, 2017 hearing, Plaintiff told Blessinger: "No. You are unprofessional." *See* Attachment at 35.

21.    In December 2024, Plaintiff received from OPR a markedly different version of the Blessinger OPR interview transcript. The December 2024 version was produced in response to the MSPB judge's November 27, 2024 disclosure order, The December 2024 version of the transcript does <u>not</u> show that Plaintiff went off-the-record during the court hearing and berated Blessinger, calling her "unprofessional." The four words "No. You are unprofessional" are conspicuously missing. The transcript also shows that Blessinger initially told OPR investigators Plaintiff yelled at her during the hearing. But when OPR asked for clarification, Blessinger retracted that claim and said that Plaintiff did not yell at her.

22.    Blessinger further admitted that a new EOIR policy adopted in January 2017 restricted immigration judges' ability to grant continuances. She admitted that she tried to postpone her court hearings because she suspected that Plaintiff would deny her clients' asylum

claims.  She admitted that, going into the February 17, 2017 hearing in case 050/051, she planned to confront Plaintiff if she had to, to make a record for appeal.

23.    The December 2024 version of the transcript is the original, unaltered, unedited version of Blessinger's OPR testimony.  Plaintiff knows this because the December 2024 transcription matches the audio recording of Blessinger's OPR interview testimony, word for word.  Plaintiff might not have discovered the spoliated evidence had the MSPB judge not ordered OPR to produce it.  OPR's concealment of the transcript deprived Plaintiff of an opportunity to show that Blessinger was not a credible witness.

24.    Of the eight additional OPR witness interview transcripts that Defendants produced in December 2024, four transcripts contain eyewitness testimonies that directly contradict Blessinger's OPR interview testimony.  One of the four transcripts captures the interview testimony of DHS counsel, who recalled no off-record exchanges between Blessinger and Plaintiff during the February 1 or the February 17, 2017 hearings.  DHS counsel offered her impressions that Blessinger was ill-prepared for the two court appearances and sought to delay the hearings. She became confrontational toward Plaintiff during the hearing.

25.    DHS counsel's testimony and recollection of the events are consistent with the testimonies of a court interpreter and a court security officer who witnessed Blessinger's conduct during the two hearings.  DHS counsel's testimony is also consistent with the audio recordings of the two court hearings that Plaintiff provided to OPR in November 2017.  Further, the time stamps of the February 17, 2017 court hearing show that Plaintiff went off-the-record for only 31 seconds, not five minutes as Blessinger claimed, and not five to ten minutes as her paralegal claimed.  In the face of such controvertible evidence, OPR still found that Plaintiff mistreated Blessinger in a manner that amounted to reckless misconduct.  The finding paved the way for Defendants to

terminate her 29-year employment in the Justice Department.

26.     According to the first Knight complaint, Plaintiff mistreated attorney Boykin during a February 16, 2017 court hearing.  *See* ECF No. 53-31 at 89 (Sealed).  Her sworn affidavit claims that going into the hearing, Boykin had filed multiple written motions to consolidate cases that Plaintiff unreasonably denied, and that the hearing became heated when Boykin renewed those consolidation motions in court.

27.     OPR interviewed two independent eyewitnesses who were in the courtroom that day.  Their interview transcripts were produced in December 2024.  Both witnesses told OPR that Plaintiff did not mistreat Boykin in any way.  One of the two witnesses, a DHS attorney, told OPR that Boykin came to the hearing ill-prepared to represent her client and assumed that Plaintiff would grant her a continuance.  The DHS attorney also told OPR that Boykin had not filed any consolidation motions that Plaintiff could have denied.  The second witness, a court interpreter, told OPR that she did not think Plaintiff acted inappropriately in admonishing Boykin to be prepared for the next hearing.

28.     Finally, among the 3,000 unredacted pages of OPR records that Defendants produced in December 2024 are two additional complaints that attorney Knight filed with OPR in June and December 2017, respectively.  OPR did not investigate the June and December 2017 complaints.  Nor did it alert Plaintiff to the two additional complaints and give her an opportunity to respond.  Plaintiff would have pointed out the falsehoods in the complaints and asked OPR to close the investigation.  The December 2017 complaint accuses Plaintiff of verbally abusing attorneys Blessinger and Boykin while conducting court hearings earlier that month.  *See* Attachment at 35.  This accusation is demonstrably false.  As of September 2017, all Blessinger and Boykin cases on Plaintiff's case docket had been reassigned to other judges for handling.

Therefore, Plaintiff could not have mistreated the attorneys, as he falsely claimed.

29.    OPR's decision not to investigate the fourth Knight complaint took it out of play. OPR proceeded to find that Knight was a credible complainant and that his clients were credible witnesses.  By concealing the fourth Knight complaint from Plaintiff, OPR deprived her of an opportunity to show that they were not credible.  The suppression of the fourth Knight complaint also allowed OPR to find that Plaintiff – not Knight, Blessinger, or Boykin – lacked candor in her dealings with OPR.

30.    OPR's concealment of the spoliated Blessinger OPR interview transcript, the eight additional OPR witness interview transcripts, and the fourth Knight complaint deprived Plaintiff of the probative evidence that she needed to contest the attorneys' false claims.  The concealment of evidence also deprived Plaintiff of a meaningful opportunity to contest her removal.

31.    In early March 2025, Plaintiff filed a pre-hearing memorandum with the MSPB administrative judge.  Plaintiff argued that some of the evidence OPR compiled, such as the Blessinger interview transcript, had been spoliated, while other evidence, such as the fourth Knight complaint, had been fabricated.  *See* Attachment at 32-33.

32.    In response, Defendants immediately moved to exclude Plaintiff's pre-hearing memorandum and supporting evidence.

33.    In a highly unusual move, Defendants also filed a memorandum that – for the second time in five years – disputed the MSPB administrative judge's Constitutional authority to hear Plaintiff's appeal.   Attachment at 23-25.

34.    As Plaintiff feared the brewing controversy between independent administrative agencies such as the MSPB and the Executive Branch would further derail her appeal, she moved to dismiss the appeal on March 17, 2025.  The MSPB administrative judge initially denied the

motion to dismiss because it sought dismissal without prejudice.  The judge granted the motion after it was restyled as a motion to dismiss with prejudice.

35.    On March 26, 2025, following the dismissal of her MSPB appeal, Defendants referred Plaintiff to her state bars for further disciplinary proceedings, based on OPR's clearly erroneous findings of professional misconduct.  The bar referrals were clearly improper.  There was no administratively final or judicially final disposition of the merits of her appeal.  Plaintiff believes the improper bar referrals constituted another instance of retaliation for her pursuit of the MSPB mixed case appeal and this civil action.

36.    In response to the state bar referrals by OPR, Plaintiff's state bars have opened inquiries into OPR's professional misconduct findings.  Both state bars have requested that Plaintiff send them the records of the removal action.  Plaintiff has advised both state bars that this civil action is still pending, that many of the requested records are under seal pursuant to the Court's December 28, 2022 sealing order (*see* ECF No. 57), and that she is seeking an expeditious resolution of this lawsuit.

### C.    Discovery In This Civil Action

37.    After her MSPB proceeding was concluded in late March 2025, Plaintiff returned to this Court and moved to lift the stay in this case.  On April 1, 2025, the Court granted that request and directed the parties to file a joint status report.

38.    In the parties' joint status report filed on May 1, 2025, Plaintiff stated her intention to seek a record amendment from this Court, based on the newly discovered OPR evidence.  *See* ECF No. 112.

39.    In the parties' jointly proposed discovery plan filed on July 21, 2025, Plaintiff reiterated her intention to seek a record amendment from this Court.  ECF No. 121 at 7.

40.    Thereafter, and continuing until the close of discovery on February 26, 2026, Plaintiff requested that Defendants amend her personnel records without involving the Court. Defendants, however, have declined all such requests.  The most recent denial occurred just three days before Defendants moved for a protective order that seeks to withhold from public disclosure the same 4,660 pages of OPR records that the MSPB judge had ordered them to produce more than a year earlier.  Those are the same records that Plaintiff needs to seek a record amendment and to defend herself in this civil action as well as in the state bar proceedings.

41.    After the Rule 26(f) status conference on August 6, 2025, the Court issued a discovery schedule, providing that discovery would commence on September 7, 2025, and conclude three months later, on December 7, 2025.

42.    On September 4, 2025, in anticipation of the start of discovery, Plaintiff sent counsel for Defendants a request for record inspection under Rule 34 of the Federal Rules of Civil Procedure, along with a proposed Rule 502 agreement to preserve privileges and exemptions during the discovery period.  *See* Attachment at 11-14.  The record inspection request identified the records that Plaintiff sought to inspect and explained how those records were relevant and proportional to the needs of this case.  *See id.* at 11-12 (applying Rule 26(b)'s relevance and proportionality standard and the factors articulated in *Oxbow Carbon Minerals LLC v. Union Pac. R.R.,* 322 F.R.D. 1 (D.D.C. 2017)).

43.    The record inspection request sought access to two categories of OPR records and one category of non-OPR records.

44.    The first category of OPR records consists of the 11,000 pages of duplicative or non-responsive records that OPR had never released to Plaintiff, in redacted or unredacted form.

45.    The second category consists of the approximately 4,660 pages that the MSPB

judge had ordered Defendants to produce in November 2024, in unredacted form. Since Defendants had produced only 3,000 unredacted pages, Plaintiff requested to inspect the remaining 1,660 pages that Defendants had not produced.

46.     The third category consists of non-OPR records that Plaintiff requested in October 2024, during her own deposition and the depositions of three government witnesses.

47.     In requesting the record inspection, Plaintiff had hoped to spare this Court from having to conduct an *in camera* review of records that Defendants now claim are privileged. Defendants, however, declined the record inspection request.

48.     On September 24, 2025, Plaintiff served on Defendants 25 interrogatories and 17 requests for production of documents ("RFPs"). The interrogatories sought information about specific witnesses and comparators (*i.e.*, current and former immigration judges who were similarly situated to Plaintiff but were not investigated or fired). The RFPs again sought production of the three categories of OPR and non-OPR records. *See* Attachment at 4.

49.     The original due date for Defendants' discovery responses was October 24, 2025. Following the government shutdown, the district court extended the due date for Defendants' discovery responses by 53 days, to and including December 16, 2025. *See* Attachment at 4.

50.     On December 16, 2025, Defendants requested an additional two weeks, and Plaintiff agreed. Their new discovery deadline was December 30, 2025. The parties also met and conferred about Plaintiff's discovery requests on December 22, 2025. *See* Attachment at 4.

51.     Even with the two extensions of time and the meet-and-confer, Defendants produced no discovery responses on December 30, 2025. Instead, the following day, counsel for Defendants informed Plaintiff that he would forward to Defendants' interrogatory answers once he finished reviewing them. *See* Attachment at 4.

52.     Although counsel did send partial interrogatory answers on the afternoon of December 31, 2025, he produced no documents.  *See* Attachment at 4.  Plaintiff responded by asking whether counsel will produce any documents at all.  *See id.* at 4.

53.     On January 8, 2026, after not hearing from counsel, Plaintiff again sent counsel an email inquiring about the documents.  Plaintiff further advised that she intended to move for sanctions.  *See* Attachment at 3.

54.     Responding on January 12, 2026, counsel stated that Defendants were seeking a protective order and would not produce the requested documents without a protective order.  *See* Attachment at 3.

55.     At that point, Plaintiff asked to look at the proposed protective order.  *See* Attachment at 3.

56.     On January 14, 2026, counsel for Defendants emailed Plaintiff a draft protective order.  *See* ECF 125 (proposed order).  Counsel's transmittal email indicated that the documents Plaintiff requested were ready for production and could be produced as soon as "tomorrow" (*i.e.*, on January 15, 2026) if she would stipulate to the protective order, as drafted.  *See id.* at 4.

57.     On January 16, 2026, Plaintiff requested that Defendants identify the specific records that are covered by the protective order; the reasons they seek protection; the persons or entities who are allowed to access and the persons or entities who are to be denied access; the location where the records are stored; and the custodian of the records.  Plaintiff needed that information to evaluate the propriety of the proposed protective order.  *See* Attachment at 4.

58.     On February 3, 2026, Defendants sent Plaintiff a 187-page Vaughn index of OPR records.  The index, however, was not signed by the preparer and did not contain a certification stating that the preparer had conducted a thorough and adequate record search.  *See* Attachment at

4.

59.     The Vaughn index only lists approximately 4,660 pages of OPR records (category 2).  It does not account for the 11,000 pages of OPR records that Defendants claimed were duplicative or non-responsive (category 1).  The Vaughn index also does not list any of the non-OPR records that Plaintiff requested in her September 24, 2025 RFPs (category 3).

60.     Thus, the Vaughn index only asserts privileges with respect to the 4,660 pages of OPR records that Defendants were ordered to produce in November 2024.

61.     Reviewing the Vaughn index, Plaintiff noticed that the page numbers that are listed in the Vaughn index correspond with the Bates-stamped page numbers of the 4,660 pages of OPR records that are subject to the MSPB judge's November 2024 disclosure order.  *See* Attachment at 5.

62.     Through a February 4, 2026 letter, Plaintiff notified Defendants that she declined to stipulate to the protective order.  *See* Attachment at 1-6.  She explained her reasons in that letter.

63.     On February 20, 2026, Defendants advised Plaintiff that they do not intend to correct the noted deficiencies in their interrogatory answers and will not supplement them.  Defendants further stated that they will not produce the documents Plaintiff requested, unless the Court grants their protective order motion.

64.     On February 24, 2026, Defendants filed the motion for protective order.  Prior to filing the motion, Defendants produced no documents to Plaintiff, and they apparently produced no documents to the Court.

65.     Later that day, and having expressly repudiated Plaintiff's discovery requests, Defendants asked her to stipulate to a third extension of their discovery deadline.

66.     On February 26, 2026, the day discovery closed, Defendants file their motion to

extend their discovery deadline by 30 to 60 days.

67.     Plaintiff opposes both motions and respectfully requests that the Court deny them. Plaintiff further requests leave to file a motion for record amendment and supporting memorandum of law.  The motion for record amendment will give the Court a comprehensive overview of all the unresolved issues in this case.  It might assist the Court in deciding Defendant's motion for protective order.

### D.     The Court Should Deny Defendants' Motion for a Protective Order.

The Court may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c).  The Court should deny Defendants' protective order for the following reasons.

First, the order is vaguely worded and open-ended.  It does not specify or describe the information that it seeks to protect or the privileges that it applies.  It does not specify a process for ensuring the proper collection, maintenance, disclosure, protection, retention, and disposal of records.  The order has no enforcement mechanism to ensure compliance.

Second, the protective order gives Defendants unilateral authority to release documents to third parties without having to give Plaintiff notice or to obtain her express consent.  Since most of the protected information in this case relates to Plaintiff's employment history in the Justice Department, the OPR misconduct findings, and the removal action, the third-party disclosure provision holds the potential to violate the Court's December 28, 2022 sealing order, which places her personnel records under seal for the duration of this civil action.  *See* ECF 57.  The privacy protection that the Court's December 28, 2022 protective order provides to Plaintiff could be lost or supplanted by Defendants' protective order.

Defendants' protective order is problematic in other respects.  It would moot out Plaintiff's

invasion-of-privacy claim that this Court recognized as a plausibly stated and timely exhausted Privacy Act or employment discrimination claim. *See* ECF No. 56 at 14-16, 60. The invasion of Plaintiff's privacy has not dissipated with time. It has only gotten worse over the five years since she filed this lawsuit. In October 2022, Defendants improperly disclosed information about Plaintiff's work history and disciplinary proceedings, which caused another federal agency to revoke a job offer that she had received five months earlier. The job offer was revoked after Plaintiff declined to sign a statement acknowledging that she had engaged in "misconduct and negligence" at the Justice Department. A similar incident occurred more recently, in January 2026, when a prospective employer conditioned the offer of temporary employment on Plaintiff waiving Defendants' liability for giving her negative job references. The offer was revoked when Plaintiff declined to sign the waiver of liability, viewing it as another attempt to interfere with her employment rights. Defendants' referrals of Plaintiff to her state bars in March 2025 have only exacerbated her unemployment situation. In response to the bar referrals, both of her state bars have opened inquiries.

Plaintiff has been unemployed for the better part of five years. She has been sidelined from practicing immigration law, her specialty, at this most critical time. Because of the misconduct finding and her involuntary removal, Plaintiff is unable to obtain professional malpractice insurance to open her own law practice. She is unable to gain admission to federal courts where she could handle immigration litigation. Because of the OPR misconduct findings, she remains ineligible for early retirement and unemployment compensation. All of these setbacks have exacerbated Plaintiff's mental health and depleted her finances. This is what unemployment for a fired fed looks like.

Second, the protective order is a claw back order. It is worded in such a way as to allow

Defendants to demand the return of the 3,000 unredacted pages, or at least prohibit Plaintiff from using them.  The Vaughn index itself is geared toward retrieval of all 4,660 pages of records that Defendants had had to produce more than a year ago.  Much of that evidence is unfavorable to their litigation posture.  The Vaughn index invokes three FOIA exemptions (5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7)(C)) and applies them to all 4,660 pages.  While Plaintiff agrees that personally identifying information should be redacted to avoid unwarranted intrusions into individual privacy, Exemptions 6 and 7(C) do not provide for redactions of names, email addresses, and other information that are already in the public domain.  *See DOJ v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) (setting forth five guiding principles for determinations under Exemptions 6 and 7(C)).  *See also Whitmore v. United States Dept. of Justice*, 132 F. Supp. 3d 69 (D.D.C. 2105) (there is a limited privacy interest for matters already in the public domain).

Here, Defendants seek protection of the names and other personally identifying information of the complaining attorneys and Plaintiff's former supervisors.  The ostensible reason is to protect such individuals' privacy interests, so they do not suffer harassment or other unpleasantness.  The Courts's December 23, 2022 decision and order disposing of Defendants' partial motion to dismiss has already resolved this concern, however. To facilitate discovery, the order identified these individuals by name or by title.  The order also describes the adverse actions that each took in relation to Plaintiff.  Since their names, titles, adverse actions, and other related information are already in the public domain, their individual privacy interests cannot outweigh Plaintiff's.  Furthermore, the Privacy Act cannot be used to conceal wrongdoing or misconduct. The law favors disclosure, not concealment, of evidence that is false, fabricated, or spoliated.

Plaintiff also takes issue with Defendants' application of Exemption 5.  The deliberative process privilege shields pre-decisional confidential intra-agency advisory opinions that reflect the

consultative functions of the government.  NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149-150 (1975).  Post-decisional communications that explain decisions are not exempt.  *Id.* at 151-152. Again, the concern here is over-redaction.  When this Court ordered Defendants to begin processing and releasing the 14,500 pages of OPR records to Plaintiff, they responded with over-redaction.  Factual content in their records were redacted when they conflict with or fail to support OPR's fact findings and legal conclusions.  *See* Attachment at 36-41 (four pages from Plaintiff's OPR Report of Investigation).  The Court should deny the protective order if it would give Defendants unilateral authority to segregate or withhold information that favors Plaintiff.

68.     Third, in that way, the protective order is also a gag order.  When viewed in conjunction with the Vaughn index that Defendants produced to Plaintiff but not to the Court, the intent to suppress unfavorable evidence becomes clearer.  The Vaughn index lists 4,660 pages of the 14,500 pages of OPR records that this Court ordered Defendants to process and release to Plaintiff in July 2022.  In the MSPB proceeding, the MSPB judge granted Plaintiff's motion to compel production of the 4,660 pages without redactions.  *See* Attachment at 28-31.  As of March 2025, however, Defendants had produced only 3,000 unredacted pages and withheld the remaining 1,660 pages without explanation.  The 3,000 unredacted pages contain mostly factual or evidentiary materials that are not entitled to privacy protection. But since much of that information is potentially damaging to Defendants' case-in-chief, including the spoliated Blessinger interview transcript and the eight additional eyewitness transcripts, Defendants could conceivably invoke the protective order to prevent Plaintiff from using such information to clear her name, in this case and in her state bar proceedings.  For this reason, the 4,660 pages cannot be placed under protection if the purpose for doing so is to make them off-limits to Plaintiff.

Finally, the protective order is *ultra vires*. It presupposes that the Court's July 25, 2022

order and the MSPB judge's order were wrongly decided and, therefore, need not be obeyed. Considering that this case involves an employment dispute, not a criminal prosecution or even a suitability determination, the invocation of FOIA Exemptions such as (b)(6) and (b)(7C) to bar Plaintiff from using otherwise admissible evidence is impermissible and highly prejudicial

### E.    The Court Should Deny Defendants' Motion to Extend Their Discovery Deadline and Impose Sanctions.

Under Rule 37(a), Plaintiff certifies that she attempted to confer with Defendants' counsel before moving to compel disclosure under Rule 37(a)( or for sanctions under Rule 37(b).  The equities weigh in Plaintiff's favor.

Plaintiff has fully complied with her discovery obligations.  On November 21, 2025, after government offices reopened following the 41-day government shutdown, Plaintiff emailed a complete, signed set of interrogatory answers to counsel for Defendants.  She supplemented her answers on December 4, 2025 and again on February 5, 2026.  In addition, Plaintiff timely responded to Defendants' requests for production of documents.  On December 4, 2025, she arranged to have delivered 11 CDs or compact discs containing documents and digital media that she referenced in her discovery responses.  On February 5, 2026, she sent Defendants' counsel an updated letter from her treating physician and gave counsel the information that he needed to schedule a deposition.

Defendants, however, are non-compliant.  Their partial interrogatory answers are not signed by the preparer or by the attorney asserting objections.  Although no privilege log was provided, Defendants now claim that at least 4,660 pages are covered by the protective order. Those 4,660 pages happen to be the same documents that the MSPB judge had ordered them to produce, without redactions or segregation.  Under these circumstances, a further extension would further delay the resolution of this five-year-old lawsuit, which would further exacerbate Plaintiff's

economic and non-economic injuries. Her situation worsens by the day. This is the price she pays for speaking out against unfair, discriminatory employment practices.

But this Court is not powerless to act. The Court has both statutory and equitable jurisdiction to resolve the remaining claims, and it can promptly end Plaintiff's suffering by conducting a *de novo* review of her record amendment request. Plaintiff has prepared a memorandum of law and motion. She respectfully requests that the Court grant her the remedy of a default judgment against Defendants for disobedience of the Court's order and permit her to submit the motion and memorandum in support of this request.

Accordingly, and for the foregoing reasons, Plaintiff respectfully requests the following sanctions and relief:

(a)    An order denying Defendants' motion for protective order:

(b)    An order denying Defendants' motion to extend their discovery deadline;

(c)    An order declaring that Defendants have violated Plaintiff's right to access government records by failing to comply with the Court's and the MSBP's record disclosure orders. *See* 5 U.S.C. §§ 552a(d)(1)-(4), (e)(1)-(2), and (g)(1)(B). *See also* ECF No. 112 at 5-7;

(d)    An order prohibiting Defendants from using any information that they failed or refused to produce before the close of discovery on February 26, 2026, to satisfy their burdens of proof and persuasion in this case. The order shall prohibit Defendants from using any such information, documents, or records to defend their adverse personnel actions which are the subject of this civil action.

(e)    An order prohibiting Defendants from using any information, documents, or records that they failed to produce by the close of discovery on February 26, 2026, to support any dispositive or procedural motion, or for rebuttal or impeachment purposes;

(f)      An order prohibiting Defendants from providing any information, documents, or records from Plaintiff's personnel and similar record files to unauthorized third persons, without her knowledge and express consent, in violation of the Court's December 28, 2022 sealing order (*see* ECF No. 57) or the Privacy Act, 5 U.S.C. § 552a(e)(5);

(g)      An order permitting Plaintiff to file a motion and memorandum of law in support of her request for record amendment and default judgment against Defendants.  Plaintiff will be prepared to file these pleadings on or before March 11, 2026, if the Court permits.  Plaintiff submits that the Court has statutory authority to conduct a *de novo* record amendment review under the Privacy Act or the Administrative Procedure Act.  *See* 5 U.S.C. §§ 552a(d)(1)-(3) & (g)(1)(A); 5 U.S.C. §§ 702, 706.  The Court also has authority under Rule 37(b) to award sanctions.

Dated:  March 3, 2026                        Respectfully submitted,

                                          By:    _____

                                          Quynh Vu Bain
                                          *Pro Se* Plaintiff
                                          quynhbain75@outlook.com
                                          213 3rd St. SE
                                          Washington, DC  20003
                                          (202) 910-8553

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

QUYNH VU BAIN,                                    |
                                                 |
      **Plaintiff,**                          |        **Case No. 21-cv-1751 (RDM)**
                                                 |
      **v.**                                 |
                                                 |
U.S. DEPARTMENT OF JUSTICE, et al.               |
                                                 |
      **Defendants.**                         |

---

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's opposition to Defendants' motions for a protective order and to extend their discovery deadline, and Plaintiff's motion for sanctions, the Court hereby orders:

(a)     That Defendants' motion for a protective order be denied;

(b)     That Defendants' motion to extend their discovery deadline be denied:

(c)     That Defendants have violated Plaintiff's right to access government records by failing to comply with the Court's and the MSBP's record disclosure orders and that Defendants will be subject to the following sanctions:

      a.     Defendants are prohibited from using any information that they failed or refused to produce before the close of discovery on February 26, 2026, to satisfy their burdens of proof and persuasion in this case.

      b.     Defendants are also prohibited from using any such information, documents, or records to defend their adverse personnel actions which are the subject of this civil action.

c.      Defendants are prohibited from using any information, documents, or records that they failed to produce by the close of discovery on February 26, 2026, to support any dispositive or procedural motion, or for rebuttal or impeachment purposes.

d.      Defendants are prohibited from providing any information, documents, or records from Plaintiff's personnel and similar record files to unauthorized third persons, without her knowledge and express consent, in violation of the Court's December 28, 2022 sealing order (*see* ECF No. 57) or the Privacy Act, 5 U.S.C. § 552a(e)(5).

e.      Plaintiff is awarded the relief of a default judgment.   On or before March 11, 2026, Plaintiff shall submit for the Court's consideration a motion for record amendment that sets forth her arguments for relief and a supporting memorandum of law.

_____
Hon. Randall Moss