**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **QUYNH VU BAIN,** | |
| **Plaintiff,** | **Case No. 21-cv-1751 (RDM)** |
| **v.** | |
| **U.S. DEPARTMENT OF JUSTICE, et al.** | |
| **Defendants.** | |

**PLAINTIFF'S PRE-CONFERENCE MEMORANDUM**

Pursuant to the Court's Standing Order at ECF No. 5 at 4, Plaintiff respectfully submits this memorandum which sets forth the issues, claims, and arguments that remain for disposition following the Court's December 23, 2022 decision and order, which granted in part and denied in part Defendants' Rule 12(b) partial motion to dismiss. *See* ECF No. 56.

In this six-year-old lawsuit, Plaintiff seeks legal and equitable remedies for the wrongful termination of her employment in the U.S. Department of Justice on September 17, 2020. Discovery in this civil action closed on May 11, 2026. During a status conference on May 14, 2026, both parties requested to proceed with the post-discovery conference on May 26, 2026, to discuss the next phase of litigation, which involves the filing of dispositive motions and briefs.

### A.    The Wrongful Termination of Plaintiff's 29-Year Employment

Plaintiff was employed in the U.S. Department of Justice for 29 years, as an attorney in the career civil service. In her final 12 years, she worked in the Executive Office for Immigration Review (EOIR), serving as an immigration judge in two northern Virginia courts.

Plaintiff's removal directly resulted from an investigation that the Justice Department's Office of Professional Responsibility (OPR) conducted between August 2017 and September 2019. The investigation centered on two complaints of judicial bias and improprieties that two immigration bar attorneys, and their attorney, filed with EOIR in March 2017. ECF No. 16, at 17 ¶¶ 61-62, 71. Following the two-year investigation, OPR concluded that Plaintiff had engaged in professional misconduct that violated Rules 4.4 and 8.4 of the rules of professional responsibility of her state bars. Based on OPR's findings and conclusions, the deciding officials in the Office of the Deputy Attorney General recommended that her employment be terminated, and the former United States Attorney General concurred.

This Court indisputably has subject matter jurisdiction to review the legality of the removal decision and related adverse actions, including the OPR Report of Investigation and the January 2, 2018 decision issued by the Board of Immigration Appeals in case 050/051. *See* ECF Nos. 80, 86; July 17, 2023 Minute Order. *See also* 28 U.S.C. § 1331; 5 U.S.C. §§ 701-706.

The Court reviews the removal decision and underlying adverse actions to determine whether the removal action was based on "just cause," *i.e.*, that it was not arbitrary and capricious or was made for a reason that is contrary to the public good. *See* 5 U.S.C. § 7701(c)(2). The Court may reverse the removal decision if (1) there was harmful error in the application of the agency's procedures; (2) the action was based on a prohibited personnel practice (such as discrimination or whistleblower retaliation); or (3) the decision was otherwise not in accordance with the law. *See* 5 U.S.C. § 7701(c)(2); 5 U.S.C. § 2302(b). The Court may rescind the imposed penalty of removal if it exceeds the "tolerable limits of reasonableness." *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302 (1981). In this context, reasonableness means the penalty was not clearly excessive; disproportionate to the sustained charges; or arbitrary, capricious, or

unreasonable. *Id.* at 284. A penalty is unreasonable if it is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. . . ." *Villela v. Department of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984) (internal quotations omitted).

Defendants have the burden of proving that the removal action was supported by a preponderance of the evidence. *See* 5 U.S.C. § 7701(c)(1); 5 C.F.R. § 1201.56(c)(2). Here, OPR has determined that Plaintiff's conduct did not amount to a knowing and intentional violation of the Immigration Judges' Professionalism and Ethics Guide, which governed the day-to-day work of immigration judges. ECF No. 16, at 38 ¶ 142. Despite that finding, OPR conducted a two-year investigation and then issued a Report finding that Plaintiff had violated two rules of professional responsibility of her state bars, Rules 4.4 and 8.4.[1] *See id.*

The deciding officials disagreed with OPR's misconduct finding. They determined that the alleged misconduct merely "implicated" Rules 4.4 and 8.4 but did not actually violate them. Instead of dismissing the proposed removal action outright, however, the deciding officials applied a different standard of conduct to justify Plaintiff's removal. Their application of the "conduct unbecoming an immigration judge" standard was arbitrary and capricious as well as discriminatory

---

[1] According to OPR, Plaintiff violated Rules 4.4 and 8.4 when she displayed improper demeanor while conducting a court hearing in February 2017, issued an order denying the complaining attorneys' motions for recusal that contained information OPR determined to be false, and lacked candor in her dealings with OPR investigative counsel. The evidence that OPR generated and compiled during the investigation fails to support its professional misconduct findings. The evidence indicates that the investigation was pretextual: It sought to lay the foundation for Plaintiff's removal, so that her full-time employment (FTE) position and employment benefits could be given to an external immigration judge candidate who did not share her protected characteristics, who lacked the qualifications for the job, and who was the subject of a scathing federal court of appeals decision holding that he had violated the rules of professional and ethical conduct. Instead of terminating that judge's employment while he was still on probation, however, Defendants terminated Plaintiff's. ECF No. 16, at 43-45 ¶¶ 158-167.

and retaliatory.  It led to the termination of her employment when similarly situated immigration judges, *i.e.*, judges who had allegedly engaged in similar conduct but who did not share her protected characteristics, were not disciplined, much less terminated.

The evidentiary record supporting the removal decision is very limited:  It has only 1,801 pages.  *See* ECF No. 53-31 (Sealed).  It is insufficient to establish that Plaintiff knowingly violated applicable rules of professional responsibility and ethical conduct, including Rules 4.4 and 8.4. Additional evidence that Plaintiff has obtained since her removal confirms that her removal was arbitrary and capricious. Such evidence fails to show that Plaintiff's alleged misconduct was so egregious that she deserved to be fired.  Indeed, Defendants have conceded that, in the ten years before Plaintiff filed suit, no immigration judge was discharged for failing to maintain impartiality, displaying improper demeanor, or using impeachment evidence that turned out to be wrong.  *See* ECF Nos. 16 at 40 ¶ 146; 118 at 25 ¶ 146.

### B.     The Termination of Plaintiff's Employment Was a Discriminatory and Retaliatory Adverse Action.

The Court reviews the removal decision under the framework and standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 7892, 802 (1973).  Under that framework, Plaintiff has the burden to establish a "prima facie" case of employment discrimination.  *Id.*  The burden then shifts to Defendants to demonstrate a non-discriminatory reason for the adverse action.  *Id.*

In this case, Defendants acted with discriminatory animus.  To lay the groundwork for her removal, EOIR referred Plaintiff to OPR for an investigation in August 2017.  ECF No. 16, at 42 ¶ 153. The investigation lacked sufficient predication.  Evidence that Plaintiff has obtained since her removal indicates that EOIR management knew the third-party immigration bar complaints contained false charges of judicial misconduct, yet they referred Plaintiff to OPR anyway.  In

conducting the investigation, OPR investigators employed questionable interview techniques, overlooked evidence that contradicted the findings and conclusions they wanted to reach, and relied on evidence that they knew or should have known were falsified or spoliated to find that Plaintiff had violated the rules of professional responsibility of her state bars.  Defendants then relied on OPR's professional misconduct findings to propose Plaintiff's removal.  More recently, Defendants referred Plaintiff to her state bars for further disciplinary proceedings.  In response, her state bars have opened inquiries.

Defendants' discriminatory intent is established by examining their treatment of similarly situated immigration judges, *i.e.,* judges who were the subject of similar complaints of judicial misconduct but who did not share Plaintiff's protected characteristics.  Those judges were not referred to OPR, were not investigated, and did not face discipline.  Even judges who were found by the Office of Inspector General (OIG) to have engaged in egregious misconduct, such as sexual harassment and assault, were not terminated.

The removal action also constituted retaliation for Plaintiff's pursuit of EEO activity. Defendants used evidence that the OPR investigation generated in moving to dismiss Plaintiff's EEOC action.  One day after the EEOC dismissed her EEO complaint, EOIR proposed to terminate her employment.  ECF No. 16, at 5 ¶ 16.  She was removed six months later.  *Id.* at 6 ¶ 17. Plaintiff's removal was a "materially adverse action" that was meant to "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

### C.    The Termination of Plaintiff's Employment Was Whistleblower Retaliation.

Under the Whistleblower Protection Act, as amended in 2012, Plaintiff has the burden to demonstrate that her protected disclosures were a contributing factor to the decision to terminate her employment.  5 U.S.C. §§ 1221(b), (e)(1).  She must demonstrate that (a) the officials taking the personnel action knew of the disclosure or protected activity; and (b) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action.  *Id.* at § 1221(e)(1)(A)-(B).

Here, Plaintiff exposed EOIR's Constitutionally defective program for resolving immigration judge complaints through her written response to OPR's letter of inquiry.  ECF No. 16, at 24 ¶ 84.  As soon as OPR issued the Report of Investigation in September 2019, which found that Plaintiff had engaged in professional misconduct, EOIR placed Plaintiff on administrative leave while it prepared the proposal to terminate her employment.  *Id*. at 27, 49-50 ¶¶ 97, 181-185.

### D.    Requested Relief

Should the Court rule in Plaintiff's favor, she respectfully requests that the Court award declaratory judgment relief and order the amendment, expungement, and/or rescission of Plaintiff's adverse personnel records.  Plaintiff further requests reinstatement to civil service, back pay, loss of employment-related benefits, compensatory damages for emotional distress and irreparable damage to her professional reputation, and attorneys' fees.

Dated: May 17, 2026                                   Respectfully submitted,

_____
Quynh Vu Bain
*Pro Se* Plaintiff
Washington, DC 20003
quynhbain75@outlook.com
(202) 910-8553