**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **QUYNH VU BAIN,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**U.S. DEPARTMENT OF JUSTICE, et al.**<br><br>**Defendants** | **Case No. 21-cv-1751 (RDM)** |

**RESPONSE TO THE COURT'S JUNE 26, 2026 ORDER TO SHOW CAUSE**

Pursuant to the Court's June 29, 2026 Order to Show Cause, Plaintiff respectfully submits this memorandum in response.

The Court's Show Cause Order directs the parties to discuss

> why Plaintiff's termination-related claims, including any arising under the Civil Service Reform Act, the federal anti-discrimination laws, or the Whistleblower Protection Act, should not be dismissed for lack of jurisdiction due to failure to administratively exhaust. In particular, the parties shall address whether Plaintiff's mixed-case appeal before the Merit Systems Protection Board was actively pending before the Board for at least 120 days, as required to file suit pursuant to 5 U.S.C. § 7702(e)(1)(B) as construed by *Morris v. McCarthy*, 825 F.3d 658 (D.C. Cir. 2016); *see also Jones v. United States* Dep't. of Justice, No. 155246, 2017 WL 3895064 (D.C. Cir. July 14, 2017). To the extent Plaintiff seeks to amend her operative complaint, Dkt. 16, to add a due process claim related to her termination, she shall also address whether the Court has jurisdiction over that claim, or whether it has to be exhausted through her mixed case appeal before the Board.

*See* Minute Order, dated June 29, 2026.

Through this memorandum, Plaintiff respectfully submits that the Court has subject matter jurisdiction under the CSRA to review the legality of Defendants' decision to terminate her

employment on September 17, 2020. This memorandum is divided into two parts. The first part succinctly answers the Court's jurisdictional inquiry, as set forth in the Order to Show Cause. The second part discusses the reasons why this Court has jurisdiction under the CSRA and 28 U.S.C. § 1331 to consider Plaintiff's termination-related Constitutional due process claim.

## I. The Civil Service Reform Act (CSRA) Confers Jurisdiction On This Court To Review The Termination of Plaintiff's Employment.

Judicial review of adverse personnel actions involving federal employees is governed by Sections 7701-7703 of Title 5 of the United States Code.

Section 7701(c)(2) provides the standard for review of agency adverse actions. It provides that the agency's decision "may not be sustained . . . if the employee '(A) shows harmful error in the application of the agency's procedures in arriving at such decision; (B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or (C) shows that the decision was not in accordance with law.' ").

Section 7703(a)(1) authorizes judicial review of administratively final orders issued by the MSPB. It provides that "a petition for review of a final decision of the [MSPB] Board shall be filed in the United States Court of Appeals for the Federal Circuit" within 60 days after the Board issues its final decision. *See* 5 U.S.C. § 7703(b)(1)(A).

Section 7703(b)(2) carves out an exception for "mixed case appeals," or MSPB appeals that assert that an appellant was affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. The unlawful violation must be of one of the anti-discrimination statutes listed in Section 7702(a)(1)(B). Section 7703(b)(2) provides that judicial review of mixed case appeals shall take place in federal district court.

Under Section 7703(b)(2), a mixed case appeal must be filed in the appropriate federal district court within 30 days after the MSBP issues a judicially reviewable action. 5 U.S.C. § 7703(b)(2). However, if the MSPB does not act on a mixed case appeal after it has been pending more than 120 days, the federal employee may proceed directly to federal district court and need not wait for the MSPB to issue a judicially reviewable action. 5 U.S.C. § 7702(e)(1)(B).[1] *See also* 5 C.F.R. § 1614.310(h) (2020).

Section 7703(b)(1)(B) provides that an appellant who has raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) may file a petition the Federal Circuit Court of Appeals to review the MSPB's disposition of that claim within 60 days.

On June 22, 2021, Plaintiff filed this civil action, invoking the Court's jurisdiction under the CSRA at 5 U.S.C. § 7701-7703, and the federal question statute at 28 U.S.C. § 1331, to review the legality of her removal from federal service. Before filing suit in this Court, Plaintiff exhausted her administrative remedies under the CSRA by filing a mixed case appeal at the MSPB and, thereafter, by participating in discovery and status conferences. The MSPB notice of appeal was timely filed on October 19, 2020, within 30 days after the termination of Plaintiff's employment on September 17, 2020. ECF 63-4.

As soon as she filed the appeal notice (ECF No. 63-4), Defendants moved to dismiss the appeal under Article II of the United States Constitution. ECF Nos. 63-6 at 14-19. Defendants

---

[1] "Notwithstanding any other provision of law, if at any time after – (B) the 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section [providing for mixed case appeals], there is no judicial reviewable action. . . an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964. . . ." 5 U.S.C. § 7702(e)(1)(B).

argued that the MSPB administrative judge assigned to hear the appeal was an "inferior officer" who had not been duly appointed under Article II's Appointments Clause. Defendants contended that because the MSPB lacked a quorum of Board Members, it had no Constitutional authority to appoint administrative judges in accordance with the United States Supreme Court's decision in *Lucia v. SEC*, 585 U.S. 237 (2018). As such, Defendants argued, the assigned administrative judge did not have the Constitutional authority to hear Plaintiff's administrative appeal. *See* ECF No. 63-6 at 14-19. Plaintiff opposed the motion to dismiss. *Id.* at 20-25.

On November 16, 2020, the MSPB granted Defendants' motion to dismiss without prejudice to automatic reinstatement of the appeal in 180 days. ECF No. 63-6 at 3-13. Thereafter, the MSPB automatically reinstated and then automatically dismissed the appeal several more times over the next two years, when the MSPB lacked a quorum and did not have the authority under its organizational charter to appoint administrative judges in accordance with Article II's Appointments Clause. ECF Nos. 63-6 at 3-13; 63-7, 63-8.

In response to the dismissals, Plaintiff filed this civil action on June 22, 2021, after her MSPB mixed case appeal had been pending for 183 days without a final decision from the Board. ECF No. 1. *See* 5 U.S.C. § 7703(e)(1)(B). The question presented in the Court's Order to Show Cause is whether the MSPB appeal had been "actively pending" for more than 120 days when this suit was filed. The answer to this inquiry turns on the meaning of the phrase "actively pending" in the context of Section 7703(e)(1)(B). Plaintiff submits that the phrase "actively pending" means the appeal has not been taken off the MSPB docket and has not been transferred to another court or agency for adjudication during the 120-day waiting period. This literal reading of Section 7702(e)(1)(B) recognizes its procedural character.

The Board's regulations provide that "Dismissal without prejudice is a procedural option that allows for the dismissal and subsequent refiling of an appeal." 5 C.F.R. § 1201.29 (2020). The MSPB's dismissal of the appeal on November 16, 2020 was a dismissal on procedural grounds rather than on jurisdictional grounds. The administrative judge issuing the DWOP order stated that it was a procedural mechanism that gave him the flexibility to manage his docket during the Board's no-quorum period. *See* ECF No. 63-6 at 4. The order suspended case processing until such time as the MSPB regained the authority to act. Because the order did not permanently divest the MSPB of adjudicatory authority over the appeal, it was not a "judicially reviewable decision" that precluded Plaintiff from filing suit in this Court after the MSPB appeal had been pending for more than 120 days. When the MSPB reinstated the appeal on May 18, 2021, it still lacked the authority to act and so had to dismiss the appeal again, for another 180 days. *See* ECF Nos. 63-7, 63-8. This holding pattern continued for two years until October 2022, when the Board regained a quorum and duly appointed the administrative judge who was assigned to hear Plaintiff's mixed case appeal.

Viewing the DWOP orders as dismissals on procedural grounds rather than on jurisdictional grounds is consistent with the purpose of Section 7702(e)(1)(B)'s 120-day waiting period. The 120-day waiting period is intended to facilitate prompt and resolution of federal employees' adverse actions at the MSPB. If the MSPB does not act on the appeal within 120 days, the federal employee may skip the administrative review process altogether and proceed directly to the appropriate federal district court where the federal employee may seek judicial review of the same adverse personnel action. 5 U.S.C. § 7702(e)(1)(B).

This view is reinforced by other provisions in the CSRA that are intended to streamline case adjudications. The CSRA restricts the nature and scope of the MSPB's administrative review

authority. For example, MSPB administrative review is confined to a subset of major adverse personnel actions, such as removals, demotions, and suspensions of more than 14 days. *See* 5 U.S.C. §§ 2302(a)(1), 7501(a)(1), and 7512. The causes of action the MSPB reviews are limited to violations of merit systems principles that are designed to protect the federal workforce, and violations of select federal statutes prohibiting discrimination or retaliation. *See* 5 U.S.C. §§ 2301, 2302; 7702(a), (b).

Furthermore, since Section 7702(b) does not have a tolling mechanism, treating the 120-day waiting period as a jurisdictional statute would not make much sense. But even if the 120-day period were subject to tolling, the Court would still have jurisdiction under Section 7702(e)(1)(B). This is because in August 2024, Plaintiff returned to the MSPB after it reinstated the appeal following a DWOP six months earlier, to continue exhausting her administrative remedies. The reinstatement of the appeal following a DWOP constituted a refiling of the appeal*, see* 5 C.F.R. § 1201.29, which enabled the 120-day clock to start anew.

Over the next eight months, from August 2024 to March 2025, Plaintiff participated in status conferences with the administrative judge and agency counsel, attempted to negotiate a mutually satisfactory settlement, raised her affirmative defenses of discrimination and retaliation for whistleblower activity for which she asked the judge to issue affirmative defense instructions. Through discovery, she pressed for access to agency records and deposed three agency witnesses. She propounded two requests for production of documents and 25 interrogatories. She moved to compel when the agency refused to produce the requested documents. She responded to agency counsel's requests for documents and admissions. She also sat for an 8-hour deposition. These activities all occurred while her MSPB mixed case appeal was "actively pending" at the Board for eight months. Because she returned to this Court more than 120 days after the MSPB proceeding

was reinstated, and the Board had not issued a judicially reviewable decision, the Court continues to have jurisdiction under Section 7702(e)(1)(B) to review her termination-related claims and defenses.

Plaintiff's decision to voluntary dismiss her MSPB appeal after it had been pending for more than 120 days was permissible under Section 7702(e)(1)(B). The voluntary dismissal did not constitute a forfeiture of her statutory right to seek judicial review in this Court or a failure to exhaust administrative remedies. The Court's Order to Show Cause directs the parties to discuss whether the D.C. Circuit's in *Morris v. McCarthy*, 825 F.3d 658 (D.C. Cir. 2016), is controlling or distinguishable. Plaintiff submits that it is distinguishable.

In *Morris*, the court of appeals interpreted Section 7702(e)(1)(B)'s 120-day waiting period as a requirement to exhaust administrative remedies. 825 F.3d at 654-56. The court held that to properly exhaust her administrative remedies, an appellant must wait for the MSPB to issue a decision on the merits of her discrimination-related appeal before filing suit in federal district court seeking judicial review of the MSPB's decision. *See id.* at 666. If the appellant files suit before she receives a decision from the MSPB, she has failed to exhaust her administrative remedies. *Id.*

The court of appeals recognized that its analysis might render obsolete the 120-day waiting period applied to cases in which the MSPB has not acted or issued a judicially reviewable decision within 120 days. 825 F.3d at 666-667. Nevertheless, justifying the decision it reached in *Morris* as a policy choice, the court stated:

> Regardless of whether the October 2010 dismissal was judicially reviewable, we conclude that Morris has failed to exhaust her administrative remedies. Morris invited the MSPB to delay the processing of her appeal when she asked the administrative judge to suspend the proceedings. Having requested this postponement, Morris cannot now argue that the agency failed to promptly adjudicate her claim. . . . Indeed, finding the exhaustion requirement of section

> 7702(e)(1)(B) satisfied here would create a problematic loophole. Future litigants wishing to avoid agency adjudication could request a delay before the MSPB, wait 120 days, and then file in district court without ever advancing their claims in the administrative forum. [Citation deleted]. When litigants bypass administrative resolution in this manner, the substantial benefits of exhaustion are lost.

*Id.* at 666-67.

Unlike *Morris,* Plaintiff did not fail to exhaust her administrative remedies. When she filed the notice of appeal six years ago, in October 2020, Defendants shot it down with a motion to dismiss. As a result, her appeal languished for two years. In August 2024, Plaintiff returned to the MSPB to exhaust her remedies under the CSRA, only to have Defendants move to dismiss again at the conclusion of that eight-month proceeding. ECF No. 127-1. Plaintiff chose not to engage in the jurisdictional debate. She acquiesced in Defendants' argument and moved to dismiss for lack of jurisdiction. When that motion was denied, she moved to dismiss without prejudice to reinstatement. When that motion was denied, she moved for voluntary dismissal. The administrative judge granted the third and last motion on March 18, 2025. Defendants now contend that Plaintiff's termination-related claims under the CSRA should be dismissed for failure to exhaust administrative remedies. Exhaustion was obviously futile.

Like *Morris*, the D.C. Circuit's decision in *Jones v. U.S. Department of Justice*, 2017 U.S. App. Lexis 12906, applied the rule in *Morris* that Section 7702(e)(1)(B) is a federal exhaustion requirement. *See* 2017 U.S. App. Lexis 12906 at *1-2. Like *Morris*, *Jones* held that to satisfy the exhaustion requirement, the mixed case appeal must be "actively pending" before the MSPB for at least 120 days. *Id.* But unlike *Morris*, *Jones* filed his civil action in federal district court two weeks before the 120-day period expired. Id. at *2. "Because Jones did not wait the 120 days required by the statute and this Court's precedent, his suit was untimely, and the district court correctly dismissed the case for failing to exhaust administrative remedies." *Id.*

The voluntary dismissal of Plaintiff's MSPB appeal in March 2025 did not constitute a failure to exhaust her administrative remedies, because she did wait at least 120 days (183 days to be exact) to file this civil action under Section 7702(e)(1)(B). The voluntary dismissal also did not work a forfeiture of her right to seek judicial review in this Court. Plaintiff moved for voluntary dismissal because Defendants questioned the judge's Constitutional authority to hear her mixed case appeal and squarely placed a question concerning Plaintiff's protection from removal that the judge could not resolve, because she lacked the Constitutional authority to do so. *See* ECF 127-1. Plaintiff decided not to engage in that debate, as she did not feel well at the time. She also knew that this Court has assumed jurisdiction over her civil action. *See* ECF Nos. 84, 86. Dismissing the reinstated appeal and returning to this Article III forum was the better part of valor.

The MSPB's December 2024 decision in *Davis-Clewis v. Veterans Administration*, 124 LRP 9083 (MSPB 2024), provided justification for Plaintiff's March 18, 2025 motion for voluntary dismissal. *See* ECF No. 127-4 at 24. In that case, the MSPB ruled that it must dismiss the mixed case appeal after the appellant launched a facial attack on the administrative judge's Constitutional authority to hear Constitutional claims. In dismissing Davis-Clewis's mixed case appeal, the MSPB noted that Davis-Clewis was not foreclosed from seeking judicial review of her mixed case appeal in federal district court, under 5 U.S.C. § 7702(e)(1)(B). *See* 124 LRP 9083. Taking her cue from *Davis-Clewis*, Plaintiff responded to Defendants' Article II argument by moving to voluntarily dismiss her mixed case appeal, so that she could return to this Court to continue pressing her termination-related claims and defenses.

To her credit, the administrative judge took the middle ground. While acknowledging the binding precedent in *Davis-Clewis*, the judge ruled that she had the authority to hear Plaintiff's statutory claims but not her Constitutional due process claims. The judge stated that she would

defer Plaintiff's Constitutional claims to the Federal Circuit Court of Appeals for resolution. This approach, however, would not have worked for Plaintiff. It would have required bifurcation of statutory and Constitutional due process claims that ought to be heard together. Moreover, because hers was a mixed case appeal, Plaintiff was not sure how she would or could appeal the Constitutional and whistleblower retaliation claims to the Federal Circuit, while pressing her employment discrimination claim in this Court.

In moving for voluntary dismissal, Plaintiff understood that the dismissal was with prejudice in that it would preclude her from pursuing the appeal further at the MSPB. ECF No. __. But she also understood that the voluntary dismissal would not impair this Court's jurisdiction to consider her termination-related claims and defenses, because the Court previously determined that most of those claims and defenses had been properly and timely exhausted. *See* ECF no. 56, at 57-60.

## II. This Court Has Jurisdiction Under the CSRA and 28 U.S.C. § 1331 to Consider Plaintiff's Termination-Related Constitutional Due Process Claim.

Plaintiff respectfully requests that the Court entertain her termination-related Constitutional due process claim. She has prepared an amendment of the operative complaint (ECF No. 16) to add that claim and will file it if the Court directs. Her efforts to exhaust this claim before and after she filed suit in this Court were previously discussed in her June 5 and June 17, 2026 Statements of Jurisdiction. *See* ECF Nos. 138, 141. In the interest of brevity, Plaintiff will limit her discussion to claims that have arisen since she filed the two Statements of Jurisdiction.

Plaintiff's substantive and procedural due process claims were asserted in the MSPB proceeding, but the MSPB did not have jurisdiction to consider her those claims. Since Defendants do not dispute that Plaintiff's removal action arose under the CRSA, *see* ECF No. 140 (Defendants'

June 12, 2026 Statement of Jurisdiction, they must show that her removal was for "good cause" and that the procedures they used were Constitutionally sufficient. *See McCabe v. Barr*. 490 F. Supp. 3d 198, 217-222 (D.D.C. 2020). Plaintiff respectfully asserts the following substantive and procedural due process claims:

(1) Defendants violated her substantive due process right to continued employment in the federal service and to receive employment-related benefits. Plaintiff further asserts that the deprivation of substantive due process also extended to her retirement benefits. *See McCabe v. Barr*. 490 F. Supp. 3d 198, 217-222, 224-225 (D.D.C. 2020).

(2) Defendants violated Plaintiff's substantive liberty interest in maintaining her professional reputation and to continue the practice of law. *Id.* at 217-222.

(3) Defendants violated Plaintiff's Fifth Amendment procedural due process right to a fundamentally fair termination procedure. *Id.* at 217-222.

Under the CSRA and 28 U.S.C. § 1331, the Court has subject matter jurisdiction over her Fifth Amendment substantive and procedural due process claim. *See McCabe*. 490 F. Supp. 3d 198, 217 (citing *Dodson v. U.S. Capitol Police*, 2019 U.S. Dist. Lexis 169166, 2019 WL 4860720, at *5 (D.D.C. Sept. 30, 2019). The Court also has jurisdiction over her liberty interest claim. *See McCabe*, 490 F. Supp. 3d at 217-222.

In the MSPB proceeding, Plaintiff asserted that Defendants refused to produce records that they compiled, considered, and relied on in terminating her employment. The procedural due process component arose under the Federal Circuit Court of Appeals' decisions in *Stone v. Federal Deposit Insurance Company,* 179 F.3d 1368 (Fed. Cir. 1999), and *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011). Both cases stand for the proposition that if a deciding official is exposed to information affecting the outcome of his decision-making process without the

employee being told of the information and given the opportunity to present a defense, then any opportunity to respond is fundamentally flawed and will not meet the Constitutional requirements set forth in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

Previously, Plaintiff exhausted this Constitutional due process claim when she returned to the MSPB in August 2024. After discovery commenced, the administrative judge issued instructions that were based on the *Stone* and *Ward* decisions. Through two separate requests for production filed in September 2024, Plaintiff requested production of *Stone/Ward* documents. When the agency refused to state whether such documents existed, Plaintiff filed a motion to compel in October 2024. In response, the administrative judge granted the motion to compel in part and denied it in part. The judge stated that the agency must produce not just information that it relied on in preparing the report of investigation and the removal decision. It must also produce information that it had compiled during the investigation. In response to the administrative judge's November 27, 2024 discovery order, the agency produced approximately 3,000 unredacted pages and withheld approximately 1,000 under claims of FOIA Exemptions 5, 6, and 7(C). None of the 3,000 pages contained *Stone/Ward* documents.

After she returned to this Court in April 2025 to continue this proceeding, Plaintiff requested the same documents from government counsel. In April 2026, counsel produced approximately 4,660 pages of unredacted or partially redacted records, none of which contained *Stone/Ward* documents. In June 2026, counsel produced the entire compilation of OPR investigative records which stood at 16,225 pages. Of those, approximately 6,000 pages were records that Plaintiff had never seen before. Among the 6,000 pages were records of witness interviews that Plaintiff's former supervisor compiled. According to those records, the supervisor interviewed witnesses who complained about Plaintiff but had never appeared in her courtroom.

Plaintiff also found among the June 2026 tranche of records an early 2019 email exchange between a deciding official in the Office of the Deputy Attorney General (ODAG) and OPR investigative counsel. In that email, the deciding official advised OPR counsel that, in preparing the report of investigation, she should only write about evidence that she "relied on" in finding professional misconduct. That way, the deciding official advised, OPR could avoid having to produce all of the records that the investigation generated to Plaintiff.

The most shocking thing about this email was not the advice to conceal evidence (though that was bad). Rather, it was the fact that the deciding official had prepared the removal decision which specifically "relied on" the OPR report of investigation. His email evidenced a violation of decisions such as *Stone* and *Ward,* OPR's refusal to produce those records also violated Plaintiff's right to procedural due process in her termination proceeding.

Plaintiff respectfully requests that the Court permit her to amend her complaint to insert a cause of action based on the above-described Constitutional violations.

For the foregoing reasons, Plaintiff respectfully requests that the Court exercise jurisdiction under the CSRA and under 28 U.S.C. § 1331 to review her termination-related statutory and Constitutional claims.

Date: September 29, 2026

Respectfully submitted,

Quynh Vu Bain, Pro Se Plaintiff
Washington, DC 20003
Quynhbain75@outlook.com
(202) 910-8553